**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FLORENCE WALLACE, Individually | : | |
| and on behalf of all others similarly situated | : | CIVIL ACTION |
| and as the parent of B.W., a minor, on behalf | : | |
| of her daughter individually and on behalf of | : | |
| all others similarly situated, | : | |
| | : | |
| Plaintiffs | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| ROBERT J. POWELL, | : | |
| MICHAEL T. CONAHAN, | : | |
| MARK A. CIAVARELLA, | : | |
| PA CHILD CARE, LLC, | : | |
| WESTERN PA CHILD CARE, LLC, | : | |
| ROBERT K. MERICLE, | : | |
| MERICLE CONSTRUCTION, INC., | : | COMPLAINT – CLASS ACTION |
| GREGORY ZAPPALA, | : | |
| PINNACLE GROUP OF JUPITER, LLC, | : | |
| BARBARA CONAHAN and | : | |
| CINDY CIAVARELLA and | : | |
| BEVERAGE MARKETING OF PA, INC., | : | |
| VISION HOLDINGS, LLC, | : | |
| JOE DOE, ESQUIRE, | : | |
| MID ATLANTIC YOUTH SERVICES CORP | : | |
| and POWELL LAW GROUP, P.C., | : | |
| | : | |
| | : | |
| Defendants | : | NO. |

**CLASS ACTION COMPLAINT**

Plaintiff, FLORENCE WALLACE, individually and on behalf of and as
representative of the putative class of all similarly situated persons and, on behalf of her
daughter, B.W., a minor individually and on behalf of and as representative of the putative

1

class of all similarly situated persons, by and through their attorneys, Cefalo & Associates and Caroselli, Beachler McTiernan & Conboy, LLC, by way of Class Action Complaint against the Defendants hereby aver the following:

## I.  JURISDICTION

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this action arises under the laws of the United States and under 28 U.S.C. § 1964(c), because this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.*

2.      This Court has venue over this action pursuant to 28 U.S.C. §1391(b) and (c) and 18 U.S.C. § 1965.  Upon information and belief, Defendants Powell, Conahan, Ciavarella, PA Child Care, LLC, Robert Mericle, Mericle Construction, Inc., Barbara Conahan, Cindy Ciavarella, Beverage Marketing of PA, Inc., Vision Holdings, LLC, Powell Law Group, P.C., Pinnacle Group of Jupiter, LLC, and Mid Atlantic Youth Services Corp., reside in this Judicial District.  Further, a substantial part of the events and omissions giving rise to the claims alleged in the Class Action Complaint occurred in this Judicial District.

## II.  NATURE OF ACTION

3.      This is a class action brought against Defendants who while acting under color of law engaged in a pattern and practice to conspire, cooperate, scheme, engage in racketeering activity, violate, and willfully subject the class member to a violation of civil rights all for personal gain and/or profit.

4.      It is believed and therefore averred that Defendants conspired one and all to violate the civil rights of Plaintiff and those similarly situated utilizing a widespread and

persistent practice in the Luzerne County Juvenile Court to deny youths their constitutional right to counsel and violate their individual and collective civil rights through the widespread scheme and subversion of the Luzerne County juvenile justice system.  This scheme included but was not limited to violations of the RICO Statute and intended to enrich the defendants at the expense of the putative class members constitutionally protected civil rights.

### III.    PARTIES

5.      Plaintiff FLORENCE WALLACE is an adult individual and the mother of B.W., a minor who resides in Shavertown, Pennsylvania.

6.      B.W. is a minor who resides in Shavertown, PA.  In and around May, 2007 B.W., then 14 years old  was charged with multiple criminal offenses including 18 Pa.C.S. § 2706(a)(l) Terroristic Threats.  B.W. appeared before Defendant CIAVARELLA in Luzerne County Juvenile Court for an adjudication hearing on a delinquency petition for inter alia a violation of the Pennsylvania Crimes Code, 18 Pa.C.S. § 2706(a)(l), Terroristic Threats.

7.      Defendant ROBERT J. POWELL, hereinafter POWELL, is an adult individual who resides at 10 Fox Run Road Drums, Pennsylvania, and at all times relevant was an owner, officer, shareholder, and operator of Defendants PA Child Care, LLC, Western PA Child Care, LLC., Vision Holdings LLC, Mid Atlantic Youth Services Corp., and Powell Law Group, P.C.

8.      Defendant MICHAEL T. CONAHAN, hereinafter CONAHAN, is an adult individual residing at 301 Deer Run Road, Mountain Top, PA was at all times relevant a Judge on the Court of Common Pleas of Luzerne County and owner, officer, shareholder, operator, and beneficiary of Defendants Pinnacle Group of Jupiter, LLC, and Beverage

Marketing of PA, Inc.

9.      Defendant MARK A. CIAVARELLA, hereinafter CIAVARELLA, is an adult individual residing at 585 Rutter Ave. , Kingston, Pennsylvania and was at all times relevant a Judge on the Court of Common Pleas of Luzerne County and owner, officer, shareholder, operator, and beneficiary of Defendants Pinnacle Group of Jupiter, LLC, and Beverage Marketing of PA, Inc.

10.     Defendant PA CHILD CARE, LLC, hereinafter PACC, is a Pennsylvania Limited Liability Company with a registered office address of 520 Walnut Street, P.O. Box 8581, Reading, Pennsylvania.

11.     Defendant WESTERN PA CHILD CARE, LLC, hereinafter WPACC, is a Pennsylvania Limited Liability Company with a registered office address of 1105 Berkshire Boulevard, Suite 320, Wyomissing, Pennsylvania.

12.     Defendant ROBERT K. MERICLE, hereinafter MERICLE, is an adult individual residing at 100 Baltimore Drive, Wilkes-Barre, PA and was at all times relevant an owner, shareholder, officer, and operator of Mericle Construction, Inc.

13.     Defendant MERICLE CONSTRUCTION, INC., hereinafter MERICLE CONSTRUCTION, is a Pennsylvania Close Corporation with a registered office address at 33 Beekman Street, Wilkes-Barre, Pennsylvania.

14.     Defendant GREGORY ZAPPALA, hereinafter ZAPPALA, is an adult individual residing at1212 Cliffview Drive, Monroebille, PA and was at all times relevant an owner, shareholder, officer, and operator of Defendants PA Child Care, LLC, Western PA Child Care, LLC., and Mid Atlantic Youth Services Corp.

15.     Defendant PINNACLE GROUP OF JUPITER, LLC, hereinafter PINNACLE, is a Florida limited liability company with a registered address at 301 Deer Run Drive, Mountain Top, Pennsylvania that was owned and operated by Defendants BARBARA CONAHAN and CINDY CIAVARELLA.

16.     Defendant Barbara Conahan is an adult individual and upon information and belief the wife of Defendant Michael Conahan who resides at 301 Deer Run Road, Mountain Top, PA.  At all times relevant hereto Defendant Barbara Conahan was either the owner, officer, shareholder, operator and/or beneficiary of Defendant, Pinnacle.

17.     Defendant Cindy Ciavarella is an adult individual and upon information and belief the wife of Defendant Mark A. Ciavarella who resides at 585 Rutter Ave. , Kingston, Pennsylvania.  At all times relevant hereto Defendant Cindy Ciavarella was either the owner, officer, shareholder, operator and/or beneficiary of Defendant, Pinnacle.

18.     Defendant BEVERAGE MARKETING OF PA, INC., hereinafter BEVERAGE, is a Pennsylvania Corporation with a registered address of P.O. Box 17, Pottsville Road, Seltzer, Pennsylvania.

19.     Defendant VISION HOLDINGS LLC, hereinafter VISION, is a Cayman Islands Company with a principal address in the Cayman Islands that is unknown at this time, but that was owned and operated by inter alia Defendant POWELL.

20.     It is believed and therefore averred that Defendant JOE DOE, ESQUIRE, hereinafter DOE, is an unidentified Schuylkill County attorney and co-conspirator listed in the Federal Criminal Information filed against Defendant Conahan and Defendant Ciavarella in United States District Court of the Middle District of Pennsylvania.

21.     Defendant MID ATLANTIC YOUTH SERVICES CORP., hereinafter MAYS, is a Pennsylvania Corporation with a registered office address at 701 Sathers Drive, Pittston Township, Pennsylvania.

22.     Defendant POWELL LAW GROUP, P.C., hereinafter POWELL LAW, is a Pennsylvania Professional Corporation with a registered office address at 10 Fox Run Road, Drums, Pennsylvania.

23.     At all times material to this Complaint, Defendants CONAHAN and CIAVARELLA were judges of the Court of Common Pleas for Luzerne County, Pennsylvania.

24.     Between approximately January of 2002 and January of 2007, Defendant CONAHAN served as President Judge for Luzerne County, and between approximately 1996 and June of 2008, Defendant CIAVARELLA served as Judge of the Juvenile Court for Luzerne County.

25.     In approximately January of 2007, Defendant CIAVARELLA was named President Judge for Luzerne County.

26.     At all times relevant hereto, Defendants acted through their agents, servants, employees, officers, directors and/or other representatives who are presently known and unknown named individuals.

27.     As judges of the Court of Common Pleas, Defendants CONAHAN and CIAVARELLA owed a fiduciary duty to Plaintiffs and the citizens of the Commonwealth of Pennsylvania and to the Judiciary of the Commonwealth of Pennsylvania and were required to file an annual statement of financial interests with the Administrative Office of the

Pennsylvania Courts, reporting the source of any income, direct or indirect. The

Administrative Office of the Pennsylvania Courts maintains offices in Cumberland County,

Middle District of Pennsylvania, and Philadelphia County, Eastern District of Pennsylvania.

## FACTUAL BACKGROUND

### A.   ACTION OF DEFENDANTS COMMON TO ALL COUNTS

28.   From in or about June 2000, the exact date being unknown to the Plaintiff, to

on or about April 30, 2007, in the Middle District of Pennsylvania and elsewhere,

Defendants, while acting under color of law, engaged in a pattern and practice to conspire,

cooperate, scheme, engage in racketeering activity, violate, and willfully subject the Plaintiff

and the class to a violation of civil rights. Additionally, Defendants aided and abetted each

other and by other persons known and unknown, devised and intended to devise a material

scheme and artifice to defraud the juveniles of the Commonwealth of Pennsylvania and the

Judiciary of the Commonwealth of Pennsylvania and to deprive those juveniles of their right

to the honest services of CONAHAN and CIAVARELLA, as judges of the Court of

Common Pleas for Luzerne County, performed free from deceit, favoritism, bias, self-

enrichment, self-dealing, concealment, and conflict of interest, and within their fiduciary

duty.

29.   In furtherance of the scheme and artifice to defraud, Defendants CONAHAN,

and CIAVARELLA, abused their positions as judges of the Court of Common Pleas for

Luzerne County by accepting compensation from Defendants PACC, WPACC, MERICLE,

MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BEVERAGE, VISION, and DOE.

30.   Between approximately June of 2000 and January 1, 2007, Defendants

CONAHAN and CIAVARELLA abused their positions and violated the fiduciary duty they owed to the minor Plaintiff and the class and citizens of the Commonwealth of Pennsylvania and to the Judiciary of the Commonwealth of Pennsylvania by secretly deriving more than $2,600,000 in income, in addition to the compensation to which they were lawfully entitled, in exchange for official actions and anticipated official actions.

31.     The actions from which they derived improper income included, but were not limited to: entering into agreements guaranteeing placement of juvenile offenders with Defendant PACC; taking official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility; facilitating the construction of juvenile detention facilities and an expansion to one of those facilities by Defendants PACC and WPACC; directing that juvenile offenders be lodged at juvenile detention facilities operated by Defendants PACC and WPACC; summarily granting motions to seal the record and for injunctive relief in a civil case related to Defendant PACC; and, through their actions, assisting Defendants PACC and WPACC to secure agreements with Luzerne County worth tens of millions of dollars for the placement of juvenile offenders, including an agreement in late 2004 worth approximately $58,000,000.

32.     The Defendants together employed a number of schemes in an attempt to hide the transfer of the income forwarded to CONAHAN and CIAVARELLA, including, but not limited to, causing income to pass through intermediaries including but not limited to some of the defendants herein, and causing false records to be created.

33.     The United States Attorney's filing on January 26, 2009, of a bill of information alleging two counts of fraud against Mark A. Ciavarella, Jr., then President

Judge in Luzerne County, and former President Judge Michael T. Conahan, also of Luzerne

County, *United States of America v. Michael T. Conahan and Mark A. Ciavarella, Jr.*, No.

3:09-LR-028, United States District Court for the Middle District of Pennsylvania. The bill

of information, to which both judges have already agreed to plead guilty and serve more than

seven years in federal prison, describes, *inter alia*, a conspiracy among the judges and other

unnamed parties believed and averred to be Defendants and others as yet unknown to conceal

$2.6 million in payments to the judges from Defendants and others as yet unknown in

exchange for referring children who appeared before Defendant CIAVARELLA to these

juvenile correctional facilities.

34.     It is believed and therefore averred that Defendants one and all participated in

a scheme to ensure that a disproportionate number of juveniles, such as Plaintiff and those

similarly situated, were incarcerated in juvenile detention facilities owned, operated, and

influenced by Defendants.

35.     It is believed and therefore averred that Defendants schemed to deprive

children, including Plaintiff and those similarly situated, of their constitutional rights.

36.     Defendants one and all participated in the payment of approximately $2.6

million to Defendants CONAHAN and CIAVARELLA in exchange for their influence over

Plaintiff and those similarly situated and to disproportionately sentence juveniles in Luzerne

County to detention prior to delinquency determinations and after delinquency

determinations.

37.     The collective actions of Defendants were considered sufficiently suspect for

the Pennsylvania Supreme Court to exercise King's Bench Power to appoint a receiving

judge to review all juvenile matters in Luzerne County from 2003 until 2008.

38.     It is believed and therefore averred that in approximately June of 2000,

Defendant CIAVARELLA, whose duties then included presiding over juvenile proceedings as a judge of the Court of Common Pleas for Luzerne County, had discussions regarding who was interested in constructing a juvenile detention facility in Luzerne County. Defendant CIAVARELLA was introduced to a contractor, Defendant MERICLE, who was a friend of Defendant CIAVARELLA, for the purpose of locating land for the juvenile facility and for constructing the facility.

39.     It is believed and therefore averred that Defendants POWELL and ZAPPALA, doing business as Defendant PACC, acquired land in Luzerne County and entered into an agreement with Defendant MERICLE to construct a juvenile detention center to be operated by Defendant PACC.

40.     On or about January 29, 2002, Defendant CONAHAN, acting in his capacity as President Judge of Luzerne County and under the color of law, surreptitiously signed a "Placement Guarantee Agreement" between PACC and the Court of Common Pleas for Luzerne County to house juvenile offenders at the PACC facility. The "Placement Guarantee Agreement" provided that the Court of Common Pleas for Luzerne County would pay PACC the annual "Rental Installment" sum of $1,314,000 and stipulated that "[t]he obligation of the Court to make payment of the Rental Installments shall be absolute and unconditional."

41.     In or about December 2002, Defendant CONAHAN, acting in his capacity as President Judge of Luzerne County, took official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility.

42.     In or before January of 2003, Defendant CONAHAN and Defendant CIAVARELLA arranged to receive a payment in the amount of $997,600 in connection with

the roles they played as judges in accomplishing the construction of Defendant PACC

juvenile detention facility.

43.     In order to conceal the $997,600 payment to Defendants CONAHAN and

CIAVARELLA, POWELL and MERICLE signed a written "Registration and Commission

Agreement" prepared by MERICLE and backdated to February 19, 2002, which purported to

be an agreement for MERICLE to pay a broker's fee of $997,600 to POWELL. In fact,

however, a large portion of the money was intended to be paid to Defendants CONAHAN

and CIAVARELLA.

44.     Defendants CONAHAN and CIAVARELLA engaged in a series of financial

transactions, over time, designed to conceal the $997,600 payment made to them. On January

21, 2003, $610,000 was wire-transferred by Defendant MERICLE to an attorney trust

account of an attorney, namely Defendant DOE. The remaining $387,600 was wire-

transferred by Defendant MERICLE to a bank account under the control of POWELL.

45.     Thereafter, on January 28, 2003, the $610,000 in the DOE attorney trust

account was wire-transferred to a bank account of Defendant BEVERAGE, a business entity

controlled by Defendant CONAHAN.

46.     In a series of financial transactions thereafter, a portion of the $610,000

payment was passed from Defendant CONAHAN to Defendant CIAVARELLA; for

example, on or about January 28, 2003, Defendant CONAHAN directed that $330,000 of the

$610,000 be wire-transferred to a bank account controlled by Defendant CIAVARELLA; on

or about April 30, 2003, Defendant CONAHAN directed that an additional $75,000 of the

$610,000 be wire-transferred to a bank account controlled by Defendant CIAVARELLA; on

or about July 15, 2003, Defendant CONAHAN directed that an additional $75,000 of the $610,000 be wire-transferred to a bank account under the control of Defendant CIAVARELLA; on or about August 13, 2003, Defendant CONAHAN directed that an additional $25,000 of the $610,000 be wire-transferred to a bank account under the control of a third party; and on or about August 20, 2003, Defendant CONAHAN directed that an additional $105,000 of the $610,000 be transferred to a bank account under the control of Defendant CONAHAN.

47.     To conceal the payments to Defendants CONAHAN and CIAVARELLA, Defendant CONAHAN directed that false entries be made in the books and records of Defendant BEVERAGE.

48.     To further conceal the $997,600 payment made to Defendants CONAHAN and CIAVARELLA, a portion of the $387,600 wire transfer made by Defendant MERICLE to POWELL on January 28, 2003, was paid to Defendants CONAHAN and CIAVARELLA in a series of financial transactions which occurred over time. One of those transactions occurred on or about August 29, 2003, when a check in the amount of $326,000, drawn on a bank account under the control of Defendant POWELL, was deposited into a bank account maintained in the name of another person but under the control of Defendant CONAHAN.

49.     Due to the success of the juvenile detention facility operated in Luzerne County, Defendants POWELL and ZAPPALA and his partner, doing business as Defendant WPACC, constructed a juvenile detention facility in western Pennsylvania. Defendant MERICLE, the same contractor who built the facility in Luzerne County, was employed to

construct the WPACC facility. In July of 2005, upon completion of construction, a $1,000,000 payment was made to Defendants CONAHAN and CIAVARELLA by POWELL. To conceal the payment, it was made to Defendant PINNACLE, a business entity owned by other persons but controlled by Defendants CONAHAN and CIAVARELLA.

50.     In order to conceal the payment to Defendants CONAHAN and CIAVARELLA, POWELL and MERICLE signed a written "Registration and Commission Agreement" prepared by MERICLE, which purported to be an agreement for MERICLE to pay a broker's fee of $1,000,000 to POWELL. In fact, however, the money was wire-transferred by MERICLE to a bank account of PINNACLE, a business entity owned by other persons but controlled by CONAHAN and CIAVARELLA.

51.     It is believed and therefore averred that Defendant POWELL and his partner, Defendant ZAPALLA, doing business as PACC, constructed an addition to the juvenile detention facility in Luzerne County. Defendant MERICLE CONSTRUCTION, the same contractor who built the facility, was employed to complete the expansion project and, in February of 2006, upon completion of construction of the addition, a $150,000 payment was made to Defendants CONAHAN and CIAVARELLA. To conceal the payment, it was made to Defendant PINNACLE, a business entity owned by other persons but controlled by Defendants CONAHAN and CIAVARELLA.

52.     In order to conceal the payment to Defendants CONAHAN and CIAVARELLA, Defendants POWELL and MERICLE signed a written "Registration and Commission Agreement" prepared by Defendant MERICLE. which purported to be an agreement for the MERICLE to pay a broker's fee of $150,000 to POWELL. In fact,

14

however, the money was wire-transferred by MERICLE to a bank account of Defendant

PINNACLE, a business entity owned by other persons but controlled by Defendants

CONAHAN and CIAVARELLA.

53.     In approximately February of 2003, when construction of the PACC juvenile

detention facility was completed, Defendant CIAVARELLA, in his capacity as a juvenile

court judge, began directing that youthful offenders be sent to that facility. Between

approximately February of 2003 and January 1, 2007, Defendants CONAHAN and

CIAVARELLA received from POWELL hundreds of thousands of dollars in payments for

their past and future official actions relating to PACC and WPACC and took steps to conceal

and disguise the nature, location, source, ownership, and control of the money paid by

POWELL.

54.     Some of the payments were made by checks drawn on one or more bank

accounts under the control of Defendant POWELL and were made payable to Defendant

PINNACLE. The payments included, but were not necessarily limited to, the following:

$18,000 paid on or about January 13, 2004;
$52,000 paid on or about January 13, 2004;
$78,000 paid on or about February 15, 2004;
$75,000 paid on or about February 15, 2004;
$47,000 paid on or about February 15, 2004;
$75,000 paid on or about April 30, 2004; and
$25,000 paid on or about April 30, 2004.

55.     To conceal the payments to Defendants CONAHAN and CIAVARELLA,

Defendant POWELL made false notations on the checks and Defendants CONAHAN and

CIAVARELLA directed that false entries be made in the books and records of Defendant

PINNACLE.

56.     In addition to payments by check, some of the payments were made by wire transfers made from one or more bank accounts under the control of Defendant POWELL and were transferred to an account under the control of the Defendant PINNACLE. The payments included, but were not necessarily limited to, the following: $120,000 transferred on July 12, 2004; and $100,000 transferred on September 23, 2004.

57.     In order to conceal the more than $2,600,000 in unlawful payments they received, Defendants CONAHAN and CIAVARELLA knowingly and intentionally filed materially false annual statements of financial interests with the Administrative Office of the Pennsylvania Courts in which they failed to disclose the source of these payments and in which they failed to disclose their financial relationship with Defendants POWELL, MERICLE, MERICLE CONSTRUCTION, PACC, and WPACC, all of which were material matters.

58.     At all times material to this information, Defendants CONAHAN and CIAVARELLA were elected judges of the Court of Common Pleas for Luzerne County and, as such, were public officials. Defendants CONAHAN and CIAVARELLA owed a fiduciary duty to the Plaintiff and the class and to the public not to realize personal financial gain through their office other than compensation provided by law, to refrain from conduct that constitutes a conflict of interest or that constitutes seeking or accepting improper influence, to recuse themselves from matters in which they have a conflict of interest, and to file a truthful and complete annual statements of financial interests, reporting the sources of all income, direct or indirect.

59.     One source of the fiduciary duty owed by Defendants was imposed by constitutional law, including Article 5, §§17(b) and 17(c) of the Pennsylvania Constitution.

60.     Another source, among others, of the fiduciary duty owed by Defendants, independent of statutory law, arose from Defendants' positions as judges of the Court of Common Pleas, including requirements of the Pennsylvania Code of Judicial Conduct and Administrative Orders of the Pennsylvania Supreme Court regarding matters related to Judges of the Court of Common Pleas.

61.     Part of the fiduciary duty owed by Defendants CONAHAN and CIAVARELLA included the duty arising from their positions as judges to disclose material information affecting their ability to engage in impartial decision-making. Defendants CONAHAN and CIAVARELLA breached this duty.

62.     It was a part of the scheme and artifice to defraud that Defendants CONAHAN and CIAVARELLA knowingly and intentionally filed materially false annual statements of financial interests with the Administrative Office of the Pennsylvania Courts in which they failed to disclose the source of income they received and in which they failed to disclose their financial relationship with POWELL, MERICLE, MERICLE CONSTRUCTION, PACC, and WPACC, which were material matters.

63.     Defendants CONAHAN and CIAVARELLA made materially false filings with the Administrative Office of the Pennsylvania Courts.

64.     It was further a part of the scheme and artifice to defraud that Defendants CONAHAN and CIAVARELLA, acting on behalf of the Court of Common Pleas for Luzerne County in matters in which they had discretionary decision-making authority,

knowingly and intentionally issued written, oral, and wire communications which were materially false to the extent that Defendants did not disclose their conflict of interest and their financial relationship with POWELL, MERICLE, MERICLE CONSTRUCTION, PACC, and WPACC, which were material matters.

65.     It was further a part of the scheme and artifice to defraud that Defendants CONAHAN and CIAVARELLA, acting on behalf of the Court of Common Pleas for Luzerne County in matters in which they had discretionary decision-making authority, knowingly and intentionally issued reports and statements to the Administrative Office of the Pennsylvania Courts which were materially false to the extent that Defendants did not disclose their sources of income and their financial relationship with POWELL, MERICLE, MERICLE CONSTRUCTION, PACC and WPACC, which were material matters.

66.     It was further a part of the scheme and artifice to defraud that Defendant CONAHAN entered into agreements guaranteeing placement of juvenile offenders with PACC and took official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility, effectively closing a county-run youth detention center. Defendants CONAHAN and CIAVARELLA, through their actions, facilitated the construction of juvenile detention facilities and an expansion to one of those facilities by Defendants PACC and WPACC and directed that juvenile offenders be lodged at juvenile detention facilities operated by PACC and WPACC. Through their actions, Defendants assisted PACC and WPACC to secure agreements with Luzerne County worth tens of millions of dollars for the placement of juvenile offenders, including an agreement in late 2004 worth approximately $58,000,000. It was further a part of the scheme and artifice to

defraud and conspire to violate the civil rights of Plaintiffs that, on numerous occasions, accused juvenile offenders, including Plaintiffs, were ordered detained by Defendant CIAVARELLA even when Juvenile Probation Officers did not recommend detention. Defendant CIAVARELLA, and others operating at his behest, also exerted pressure on staff of the Court of Common Pleas to recommend detention of juvenile offenders. On some occasions, probation officers were pressured to change recommendations of release to recommendations of detention. The foregoing actions, as well as other actions, were all part of a scheme of Defendants which Defendants CONAHAN and CIAVARELLA directed related to matters in which they had discretionary decision-making authority. Defendants CONAHAN and CIAVARELLA took these actions, and other actions, without recusing themselves from matters in which they had a conflict of interest, and without disclosing to parties involved in court proceedings their conflict of interest and the financial relationship that existed between Defendants and POWELL, MERICLE, MERICLE CONSTRUCTION, PACC, and WPACC, which were material matters.

67.     It was further a part of the scheme and artifice to defraud that Defendants CONAHAN and CIAVARELLA violated their duties of independence, impartiality and integrity in the exercise of their discretionary actions on behalf of the Court of Common Pleas for Luzerne County by failing to recuse themselves from acting in matters in which they had a material conflict of interest and in failing to disclose to parties appearing before the court their conflict of interest and their financial relationship with POWELL, MERICLE, MERICLE CONSTRUCTION, PACC, and WPACC, which were material matters.

68.     It was further a part of the scheme and artifice to violate the civil rights of Plaintiff and the class that Defendant CIAVARELLA utilized administrative powers to adopt procedures in juvenile court, including procedures adopted for a '"specialty court." The adoption of these procedures was accomplished through the administrative discretionary decision-making authority of Defendant CIAVARELLA. The adoption of these procedures created the potential for an increased number of juvenile offenders to be sent to the juvenile detention facilities of PACC and WPACC. Defendant CIAVARELLA took these actions without disclosing to the parties before the court his conflict of interest and the financial relationship that existed between the Defendants.

69.     It was further a part of the scheme and artifice to violate the civil rights of Plaintiffs that Defendants CONAHAN and CIAVARELLA otherwise conducted the affairs of the Court of Common Pleas in matters in which they had discretionary decision-making authority without disclosing their conflict of interest and financial relationship with other Defendants.

70.     On or about each date listed below, in the Middle District of Pennsylvania and elsewhere, Defendants CONAHAN and CIAVARELLA, aided and abetted by each other, for the purpose of executing the above-described material scheme and artifice to defraud and deprive the citizens of Luzerne County and of the Commonwealth of Pennsylvania of their right to the honest services of Defendants CONAHAN and CIAVARELLA, transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signals, and sounds: in violation of Title 18, United States Code, §§2, 1341, and 1346:

| Date | Wire Transmission |
|------|-------------------|
| July 12, 2004 | Electronic funds transfer of $120,000 transferred from an account of Vision Holdings, Inc., to an account of the Pinnacle Group of Jupiter, LLC. |
| September 23, 2004 | Electronic funds transfer of $100,000 transferred from an account of Vision Holdings, Inc., to an account of Pinnacle Group of Jupiter, LLC. |
| July 15, 2005 | Electronic funds transfer of $1,000,000 transferred from an account of Mericle Construction, Inc., to an account of Pinnacle Group of Jupiter, LLC. |
| February 3, 2006 | Electronic funds transfer of $150,000 transferred from an account of Mericle Construction, Inc. to an account of Pinnacle Group of Jupiter, LLC. |

71.     In furtherance of the conspiracy, and to effect the objects thereof, the

following overt acts, among others, were committed by Defendants in the Middle District of

Pennsylvania and elsewhere:

A.     On or about January 21, 2003, Defendants caused MERICLE and/or MERCILE CONSTRUCTION to wire-transfer $610,000 to the bank account of an attorney;

B.     On or about January 28, 2003, Defendants caused John Doe attorney in Schuylkill County, Pennsylvania to wire-transfer $610,000 to an account of BEVERAGE;

C.     On or about January 28, 2003, Defendant CONAHAN caused $330,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of Defendant CIAVARELLA;

D.     On or about April 30, 2003, Defendant CONAHAN caused $75,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of Defendant CIAVARELLA;

E.      On or about July 15, 2003, Defendant CONAHAN caused $75,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of Defendant CIAVARELLA;

F.      On or about August 13, 2003, Defendant CONAHAN caused $25,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of a third party;

G.      On or about August 13, 2003, Defendant CONAHAN caused $25,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of a third party;

H.      On or about August 20, 2003, Defendant CONAHAN caused $105,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of Defendant CONAHAN;

I.      To conceal the payments to Defendants CONAHAN and CIAVARELLA, Defendant CONAHAN directed that false entries be made in the books and records of BEVERAGE between on or about January 1, 2002, and on or about April 15, 2007;

J.      On or about January 20, 2004, Defendants caused $18,000 to be deposited in a bank account of PINNACLE which was falsely characterized as "Rent Prepay";

K.      On or about January 20, 2004, Defendants caused $52,000.00 to be deposited in a bank account of PINNACLE which was falsely characterized as "Rent Marine Prepay";

L.      On or about February 24, 2004, Defendants caused $47,000 to be deposited into a bank account of PINNACLE which was falsely characterized as "Slip Rental Fees";

M.      On or about February 24, 2004, Defendants caused $78,000 to be deposited into a bank account of PINNACLE which was falsely characterized as "Reserving Lease";

N.      On or about February 24, 2004, Defendants caused $75,000 to be deposited into a bank account of PINNACLE which was falsely characterized as "Rental Feb, Mar, Apr";

O.      On or about May 3, 2004, Defendants caused $75,000 to be deposited into a bank account of PINNACLE which was falsely characterized

as "Lease Expenses April May June";

P.       On or about May 3, 2004, Defendants caused $25,000 to be deposited into a bank account of PINNACLE which was falsely characterized as "Dock Expenses Related April May June";

Q.       On or about July 12, 2004, Defendants caused $120,000 to be wire-transferred to a bank account of PINNACLE;

R.       On or about September 23, 2004, Defendants caused $100,000 to be wire-transferred to a bank account of PINNACLE;

S.       On or about July 15, 2005, Defendants caused $1,000,000 to be wire-transferred to a bank account of PINNACLE;

T.       On or about February 3, 2006, Defendants caused $150,000 to be wire-transferred to a bank account of PINNACLE;

U.       Between on or about January 1, 2002, and on or about April 15, 2007, Defendants CONAHAN and CIAVARELLA provided information to their respective tax return preparers that contained material omissions and misclassifications;

V.       Between on or about April 15, 2004, and on or about May 21, 2007, Defendants CONAHAN and CIAVARELLA caused to be prepared, subscribed to, and filed with the Internal Revenue Service, materially false tax returns, namely, IRS forms 1040 and 1040X relating to tax years 2003 through 2006;

**B.       The Case of B.W.**

72.       In May, 2007, B.W. was questioned by Swoyersville Police regarding an argument that took place on Myspace.com, an internet chat web site, between her and another individual.

73.       As a result of the investigation regarding the Myspace.com argument, B.W., then 14 years old, was charged with multiple criminal offenses including 18 Pa.C.S. § 2706(a)(l) Terroristic Threats.

74.   B.W. had no prior contact with law enforcement.

75.   B.W. appeared before Defendant CIAVARELLA in Luzerne County

Juvenile Court for an adjudication hearing on a delinquency petition for inter alia a violation

of the Pennsylvania Crimes Code, 18 Pa.C.S. § 2706(a)(l), Terroristic Threats.

76.   Prior to appearing before Defendant CIAVARELLA, B.W. was persuaded,

without the advice of counsel, to admit guilt in front of Defendant CIAVARELLA.

77.   B.W. was not advised about her right to counsel and was told outside the

courtroom that if she admitted guilt she was to receive 3-6 months of probation.  If she did

not admit guilt, she would be held until she was 18 years old and the judge would be a lot

harder on her.

78.   At the adjudication hearing, and having admitted to the Myspace chat, B.W.

was found delinquent and removed from court in shackles.  B.W. was transported to Camp

Adams, as no beds were available in Defendant PACC.  A psychological evaluation was also

to be scheduled.

79.   Plaintiff Florence Wallace was told to "shut up or be held in contempt" when

she attempted to speak during the proceedings to indicate that she and her daughter were told

that B.W. would be receiving probation for an admission and returned home.

80.   B.W. became hysterical upon learning that she would be incarcerated pending

a psychological evaluation.  B.W. experienced severe anxiety and chest pain which

threatened an underlying heart condition.  As B.W. was led from the courtroom by sheriffs,

her mother was told that her heart condition would be "taken care of".

81.   Plaintiff Florence Wallace contacted her previous medical providers to hastily

arrange the facsimile of her medical records to Camp Adams.

82.     Thereafter it is believed and therefore averred that B.W.'s psychological evaluation was delayed as she was transferred back to Defendant PACC's facility.

83.     B.W. was forced to be incarcerated in Defendant PACC's facility unnecessarily awaiting a psychological evaluation that was delayed by transfers from Camp Adams to Defendant PACC's facility.

84.     At the conclusion of the psychological evaluation it is believed and therefore averred that probation rather than incarceration was recommended.

85.     Additionally, B.W. was required to seek drug and alcohol counseling as a "preventative measure", although no drugs or alcohol were included in the criminal accusations.

### B.     USE OF THE MAILS AND WIRES

86.     During the Class Period, Defendants used numerous mail and interstate wire communications to create, execute and manage their fraudulent scheme, as described above.

87.     Defendants' use of the mails and wires to execute their fraud involved transfers of funds as described above, communication with plaintiffs and the classes, and communications throughout the class period, via email, telephone, sent through the U.S. mails and over the internet including communications concerning the fraudulent scheme to deprive juvenile offenders of their basic civil rights.

### B.     CONSPIRACY AND CONCERT OF ACTION

88.     Defendants entered into and through various overt acts described above an agreement between themselves to illegally deprive juvenile defenders of their basic civil

rights for their own personal enrichment and profit.  Defendants implemented said agreement

and conspiracy, in concert of action, and each aiding and abetting the other, such that

defendants are jointly and severally liable for the resulting damages to plaintiffs.

**E.      CLASS ACTION ALLEGATIONS**

89.      Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a) and 23(b)(1)(B) and 23(b)(3) on behalf of themselves, and the following

Classes, defined as follows:

a)       All minors that were the subject of delinquency proceedings in the Luzerne
County Juvenile Court from June 1, 2000 through January 26, 2009 (the Class
Period), and were the subject of a proceeding presided over by either
Defendants CIAVARELLA or CONAHAN; and were adjudicated delinquent
and/or referred for placement or testing at juvenile detention facilities owned
and/or operated by Defendants PA Child Care, LLC, Western PA Child Care,
LLC, Vision Holdings LLC, Mid-Atlantic Youth Services, Corp.; and,

b)       All adult individuals who were the parents and/or guardians of class member
minors that were charged or caused to be charged fees, costs, or expenses in
connection with psychologist testing and/or placement at juvenile detention
facilities owned and/or operated by Defendants PA Child Care, LLC, Western
PA Child Care, LLC, Vision Holdings LLC, Mid-Atlantic Youth Services,
Corp., as a result of the decisions rendered by Defendants CIAVARELLA
and/or CONAHAN against the minor class member.

90.      Plaintiffs reserve the right herein to define other classes and/or subclasses in

their Motion for Class Certification.  Excluded from the classes are (a) Defendants and any

entity in which any Defendant has a controlling interest, and their legal representatives,

officers, directors, assignees and successors, and (b) any co-conspirators.  Also excluded

from the classes are any Judge or Justice to whom this action is assigned, together with any

relative of such Judge or Justice within the third degree of relationship, and the spouse of any

such person.

91.     The members of the above classes are so numerous that joinder of all members in impracticable, as required by Rule 23(a)(1).  The disposition of the claims of the members of the classes in a single class action will provide substantial benefits to all parties and to the Court.

92.     The exact number of class members is presently unknown, and can only be ascertained by examining the financial and administrative records of Defendants PA Child Care, LLC, Western PA Child Care, LLC, Vision Holdings LLC, Mid-Atlantic Youth Services, Corp., as well as the available records and decisions of Defendants CIAVARELLA and CONAHAN.  Upon information and belief, however, the number of minor class members, and adult class members number well into the hundreds of victims.

93.     The claims of the representative Plaintiffs are typical of the claims of the classes they seek to represent, as required by Rule 23(a), in that minor B.W. was the subject of a juvenile proceeding presided over by Defendant CIAVARELLA within the class period, and was referred for placement and testing at the juvenile detention facility owned and operate by Defendant PACC.  Additionally, Florence Wallace is the parent of B.W., and incurred monetary losses as a result of the decision rendered by Defendant CIAVARELLA regarding her daughter, B.W.

94.     Plaintiffs will fairly and adequately represent the respective classes, and protect the interests of the members of the classes.  The named Plaintiffs are members of the respective classes, and have retained competent counsel, experienced in class action litigation.  Neither of the named Plaintiffs have interests antagonistic to, or in conflict with the interests of the other members of the class.

95.     Common questions of law and fact exist as to all members of the classes and predominate over any questions solely affecting individual members of the classes.  Among the common questions of law and fact common to the classes are:

a)      Whether Defendants participated in and pursued the common course of conduct alleged herein;

b)      Whether Defendants engaged in 'racketeering activity" as defined by RICO § 1961, 18 U.S.C. § 1961 and made unlawful under RICO § 1962, 18 U.S.C. § 1962, including whether Defendants employed the mails and wires in furtherance of a scheme to defraud Plaintiffs and members of the classes;

c)      Whether Defendants improperly adjudicated minor class members by referring them for placement or testing at juvenile detention facilities owned and/or operated by Defendants PA Child Care, LLC, Western PA Child Care, LLC, Vision Holdings LLC, Mid-Atlantic Youth Services, Corp. for profit and/or financial benefit;

d)      Whether Defendants' participated in and pursued a common course of conduct that resulted in the violation of the civil rights of minor class members; and,

e)      Whether Plaintiffs and the members of the classes have sustained damages, and, if so, the appropriate measure thereof.

96.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as required by Rule 23(b)(3).  Plaintiffs, and members of the classes have suffered economic harm and damages as a result of Defendants' unlawful and wrongful conduct.  The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that is conserves the resources of the courts and the litigants, and promotes consistency, and efficiency of adjudication.

## CAUSES OF ACTION

## COUNT I

## For Violation fo RICO, 18 U.S.C. § 1961, et seq by The Class

97.     Plaintiffs and the Class incorporate by reference herein all preceding and
succeeding paragraphs as if fully set forth herein.

98.     Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who
conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18
U.S.C. § 1962(c).

99.     There is the association-in fact of all Defendants for the purpose of
constructing juvenile detention centers, ordering juveniles to be placed in those
centers in violation of their basic civil rights for defendants' own enrichment and
profit as an "enterprise" within the definition of RICO.  (the "Association-In-Fact
Enterprise") the Association-In-Fact Enterprise was created, controlled and conducted
by all defendants for the purposes hereinbefore described. All defendants are
defendants for purposes of the Association-in-Fact Enterprise.

100.     All defendants have exerted ongoing and continuous control over the
Association-In-Fact Enterprise, and the have participated in the operation or
management of the affairs of the Association-In-Fact Enterprise as described in great
detail above.

101.     Defendants have conducted the affairs of the Association-In-Fact Enterprise,
through a pattern of racketeering activity that includes predicate acts indictable under 18
U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), through the structuring of the payments

described above to the defendants and through the following actions, among others, as is set forth above:

     A.    Entering into agreements guaranteeing placement of juvenile offenders with PACC;

     B.    Taking official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility;

     C.    Facilitating the construction of juvenile detention facilities and an expansion to one of those facilities by PACC and WPACC;

     D.    Directing that juvenile offenders be lodged at juvenile detention facilities operated by PACC and WPACC; and

     E.    Assisting PACC and WPACC to secure agreements with Luzerne County worth tens of millions of dollars for the placement of juvenile offenders, including an agreement in late 2004 worth approximately $58,000,000.

102.    Each of the Defendants' fraudulent mailings and interstate wire transmissions constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

103.    Defendants engaged in a pattern of racketeering activity intending to defraud adult plaintiffs and the adult class and deny the minor Plaintiff and the minor class of their liberty.

104.    Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims including adult Plaintiffs and members of the adult

class. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of adult Plaintiffs and the adult Class members.

105.    Defendants were an association of individuals, partnerships, and corporations joined in purpose of conspiring to commit honest services fraud. The association employed a number of schemes in an attempt to hide the income they received including, but not limited to, causing income to pass through intermediaries and causing false records to be created, thereby hiding said income from the United States Internal Revenue Service.

106.    Defendants were organized in a consensual decision-making manner in which to hide and distribute the monies among the conspirators.

107.    Defendants engaged in said association and actions during the entire class period, in violation of 18 U.S.C. §1961.

108.    As a result of Defendants' violations of RICO, Plaintiffs had wages garnished, public assistance monies taken, social security benefits seized, and were otherwise forced to pay for the wrongful incarceration of the juvenile offenders.

109.    Adult Plaintiff and members of the adult class' injuries to their business and property were directly and proximately caused by Defendants' racketeering activity as described above.

110.    By virtue of these violations of 18 U.S.C. § 1962(c) Defendants are jointly and severally liable to adult Plaintiff and members of the adult class for three times the damages adult plaintiff and members of the adult class have sustained, plus the costs of this suit including reasonable attorneys' fees.

WHEREFORE, adult Plaintiff, Florence Wallace and Adult Class Plaintiffs demand judgment against Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT II

## FOR CONSPIRACY TO VIOLATE RICO

110.    Adult Plaintiff and the adult class incorporate by refrence herein all preceding and succeeding paragraphs, as if fully set forth herein.

112.    Defendants conspired with one another to commit the violations of 18 U.S.C. §1962 alleged herein.

WHEREFORE, adult Plaintiff, Florence Wallace and Adult Class Plaintiffs demand judgment against Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT III
## DEPRIVATION OF RIGHTS PURSUANT TO

## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C § 1983

## AGAINST ALL DEFENDANTS ON BEHALF OF ALL MINOR PLAINTIFF and MINOR CLASS

113.    Plaintiffs and the classes incorporate by reference all preceding and succeeding paragraphs as if fully set forth herein.

114.    At all times relevant hereto, all above named Defendants were "persons" within the meaning of 42 U.S.C. § 1983.

115.    At all times relevant hereto, all above named Defendants were acting "under color of state law" pursuant to 42 U.S.C. § 1983.

116.    All the named Defendants, while acting under the color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to the minor Plaintiff and all minor class Plaintiffs' rights violated 42 U.S.C. § 1983 and deprived minor Plaintiff, B.W., and all minor class Plaintiffs their rights a guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law and/or local law in that these Defendants without lawful basis caused the aforementioned injures and damages to the minor Plaintiff, and all minor class Plaintiffs as describe in the Class Action Complaint, in violation of their aforesaid guaranteed rights as follows:

(ggggg)    Defendants conspired to adjudicate juvenile offenders as delinquent without assistance of counsel;

(hhhhh)    Defendants conspired to adjudicate juvenile offenders as delinquents without the due process of law;

(iiiii)    Defendants improperly ordered minor Plaintiff and minor class Plaintiffs to detention centers owned and/or operated by Defendants PACC and/or WPACC;

(jjjjj)    Defendants conspired to interfere with the juvenile probation department's

ability to recommend probation over detention; and

( )     Defendants conspired to negotiate and collect monies for the use of detention

centers owned and/or operated by Defendants PACC and/or WPACC.

117.     Defendants' aforesaid conduct, initiated under color of state law,

unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate

and/or reckless indifference violated 42 U.S.C. § 1983 and deprived minor Plaintiff and

minor class Plaintiffs their rights as guaranteed under the Fifth, Sixth and Fourteenth

Amendments to the United States Constitution, similar provisions of the Pennsylvania

Constitution, Federal Law, State Law and/or local law without lawful basis, thus causing

injuries and damages to minor Plaintiff and minor class Plaintiffs.

118.     By reason of the aforesaid actions and inactions of Defendants, minor

Plaintiff and minor class Plaintiffs suffered substantial injuries, damages and special

damages.

WHEREFORE, minor Plaintiff, B.W., by Florence Wallace, parent and natural

guardian, and minor class Plaintiffs demand judgment against Defendants, individually,

jointly, and/or jointly and severally for compensatory and punitive damages in an amount in

excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of

suit, attorneys' fees and such other relief as this Honorable Court may deem appropriate.

CEFALO & ASSOCIATES

By:  *Michael J. Cefalo, Esquire*
    MICHAEL J. CEFALO, ESQUIRE
    GEORGE G. OSCHAL III, ESQUIRE
    KARL J. KWAK, ESQUIRE
    LINDA L. BARTLETT, ESQUIRE
    PATRICIA K. HARRIS, ESQUIRE
    JAMES J. ALBERT, ESQUIRE
    309 WYOMING AVENUE
    WEST PITTSTON, PA 18643
    T: (570) 655-5555
    F: (570) 655-5100

    WILLIAM R. CAROSELLI, ESQUIRE
    TIMOTHY CONBOY, ESQUIRE
    CAROSELLI BEACHLER MCTIERNAN &
    CONBOY
    20 STANWIX STREET, 7TH FLOOR
    PITTSBURGH, PA 19522
    T: (412) 391-9860
    F: (412) 391-7453

    DAVID S. SENOFF, ESQUIRE
    CAROSELLI BEACHLER MCTIERNAN &
    CONBOY
    1500 WALNUT STREET, SUITE 507
    PHILADELPHIA, PA 19102
    T: (215) 609-1350
    F: (215) 609-1351

    *ATTORNEYS FOR PLAINTIFFS*
    *AND THE CLASSES*