# EXHIBIT C

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

In re: J.V.R.; H.T., A MINOR THROUGH     :
       HER MOTHER, L.T.; ON BEHALF OF    :    No. 81 MM 2008
       THEMSELVES AND SIMILARLY          :
       SITUATED YOUTH                    :    (Arthur E. Grim, S.J.,
                                              Special Master)

# FIRST INTERIM REPORT AND RECOMMENDATIONS OF THE SPECIAL MASTER

TO: THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA:

The undersigned Special Master respectfully submits this First Interim Report and Recommendations, pursuant to the authority and directives set forth in the Court's Order dated February 11, 2009.

## A. BACKGROUND.

1. Rule 151 of the Pennsylvania Rules of Juvenile Court Procedure ("Assignment of Counsel") states the following in subsection A:

> A. General. If counsel does not enter an appearance for the juvenile, the court shall inform the juvenile of the right to counsel prior to any proceeding. In any case, the court shall assign counsel for the juvenile if the juvenile is without financial resources or otherwise unable to employ counsel.

1

2. Rule 152 of the Pennsylvania Rules of Juvenile Court Procedure ("Waiver of Counsel") provides as follows in subsection A:

> A. Waiver requirements. A juvenile may not waive the right to counsel unless:
>
> (1) the waiver is knowingly, intelligently, and voluntarily made; and
>
> (2) the court conducts a colloquy with the juvenile on the record.

3. The Pennsylvania Rules of Juvenile Court Procedure, including Rules 151 and 152, were adopted April 1, 2005 and became effective October 1, 2005.

4. Long before the adoption of the Pennsylvania Rules of Juvenile Court Procedure, both the United States Supreme Court and the Pennsylvania Legislature took action ensuring that a juvenile has a right to counsel in juvenile delinquency proceedings, and if the juvenile is unable to afford counsel, counsel will be provided for him or her. *In re Gault*, 387 U.S. 1, 41, 87 S. Ct. 1428, 1451 (1967); 42 Pa. C.S. § 6337 (effective June 27, 1978).

5. Also long before the adoption of the Pennsylvania Rules of Juvenile Court Procedure, your Honorable Court stated the following concerning the appropriate inquiry which must occur before a criminal defendant will be deemed to have waived his or her constitutional right to counsel:

> "While an accused may waive his constitutional right, such a waiver must be the 'free and unconstrained choice of its maker' [citation omitted] and also must be made knowingly and intelligently [citation omitted]. To be a knowing and intelligent waiver defendant must be aware of both the right and of the risks of forfeiting that right. [Citation omitted]."
>
> Furthermore, the presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed where the record is silent. The record must show, or there must be an allegation and evidence

2

which show, that an accused was offered counsel but intelligently and understandingly rejected the offer.

*Commonwealth v. Monica*, 528 Pa. 266, 273, 597 A.2d 600, 603 (1991).

6. Your Honorable Court has indicated on prior occasions that when a criminal defendant proceeds to trial *pro se* and when the trial court fails to conduct a thorough, on-the-record colloquy to determine if the waiver of his/her constitutional right to counsel is knowingly and intelligently made, the proper remedy is a new trial. *Commonwealth v. Brazil*, 549 Pa. 321, 701 A.2d 216 (1997); *Commonwealth v. Monica*, 528 Pa. 266, 597 A.2d 600 (1991).

7. Your Honorable Court has also stated that "the appearance of [judicial] impropriety is sufficient justification for the grant of new proceedings before another judge." *In the Interest of McFall*, 533 Pa. 24, ___, 617 A.2d 707, 712 (1992).

8. On February 12, 2009, Judge Ciavarella (and Judge Conahan) entered guilty pleas in the U.S. District Court for the Middle District of Pennsylvania in *United States v. Michael T. Conahan and Mark A. Ciavarella, Jr.*, Docket No. 3:09-CR-028. The Criminal Information in that case alleges, in part, the following:

> 5. Between approximately June of 2000 and January 1, 2007, the defendants Michael T. Conahan and Mark A. Ciavarella, Jr. abused their positions and violated the fiduciary duty they owed to the citizens of the Commonwealth of Pennsylvania and to the Judiciary of the Commonwealth of Pennsylvania by secretly deriving more than $2,600,000 in income, in addition to the compensation to which they were lawfully entitled, in exchange for official actions and anticipated official actions. The actions from which they derived improper income included, but were not limited to: entering into agreements guaranteeing placement of juvenile offenders with PA Child Care, LLC [a privately owned juvenile detention facility].

. . .

    11.    In or before January of 2003, Defendant Michael T. Conahan and Defendant Mark A. Ciavarella, Jr. arranged to receive a payment in the amount of $997,600 in connection with the roles they played as judges in accomplishing the construction of the PA Child Care juvenile detention facility.

. . .

    22.    In approximately February of 2003, when construction of the PA Child Care juvenile detention facility was completed, Defendant Mark A. Ciavarella, Jr., in his capacity as a juvenile court judge, began directing that youthful offenders be sent to that facility. Between approximately February of 2003 and January 1, 2007, the Defendants Michael T. Conahan and Mark A. Ciavarella, Jr. received from Participant #1 hundreds of thousands of dollars in payment for their past and future official actions relating to PA Child Care . . . .

9.    Title 18 of Pennsylvania Consolidated Statutes, section 9123 ("Juvenile records") states in pertinent part as follows:

> **(a) Expungement of juvenile records.–** Notwithstanding the provisions of section 9105 (relating to other criminal justice information) and except upon cause shown, expungement of records of juvenile delinquency cases wherever kept or retained shall occur after 30 days' notice to the district attorney, whenever the court upon its motion or upon the motion of a child or the parents or guardian finds:
>
>> (1) a complaint is filed which is not substantiated or the petition which is filed as a result of a complaint is dismissed by the court;
>>
>> (2) six months have elapsed since the final discharge of the person from supervision under a consent decree and no proceeding seeking adjudication or conviction is pending;
>>
>> (3) five years have elapsed since the final discharge of the person from commitment, placement, probation or any other disposition and referral and since such final discharge, the person has not been convicted of a felony, misdemeanor or adjudicated delinquent and no proceeding is pending seeking such conviction or adjudication; or

4

(4) the individual is 18 years of age or older, the attorney for the Commonwealth consents to the expungement and a court orders the expungement after giving consideration to the following factors:

    (i) the type of offense;

    (ii) the individual's age, history of employment, criminal activity and drug or alcohol problems;

    (iii) adverse consequences that the individual may suffer if the records are not expunged; and

    (iv) whether retention of the record is required for purposes of protection of the public safety.

10.   My preliminary investigation, including in-chambers discussions on February 17, 2009 with the Chief Public Defender, the First Assistant District Attorney, and the Chief Deputy Juvenile Probation Officer, points to the conclusion that a very substantial number of juveniles who appeared without counsel before Judge Ciavarella for delinquency or related proceedings did not knowingly and intelligently waive their right to counsel. My investigation has also uncovered evidence that there was routine deprivation of children's constitutional rights to appear before an impartial tribunal and to have an opportunity to be heard.

11.   The work I have undertaken so far, and which I intend to take in the future, recognizes the need for a reasoned and thorough approach, along with the concomitant need to conclude my review and recommendations expeditiously for the benefit of the juveniles, the victims, and the entire community. To this end, I convened a meeting in Wilkes-Barre on Thursday, February 26, 2009, with the stated purpose of entertaining discussion from counsel regarding certain categories of cases in which I was considering an interim recommendation that

the proceedings be declared void *ab initio*, and/or vacated, and/or expunged. Present were the President Judge of Luzerne County, counsel for the Petitioners in the above-captioned action (from the Juvenile Law Center), the District Attorney, the Chief Public Defender, the Chief of Probation Services, the Chief Deputy Juvenile Probation Officer, the Acting Court Administrator, the President of the Luzerne County Bar Association, and counsel representing each of the amicus parties in this matter (the Pennsylvania Attorney General, the Pennsylvania Department of Public Welfare, and the Defender's Association of Philadelphia).

12. Counsel for the Petitioners and the District Attorney, as well as counsel for the amicus parties, concur with the following interim recommendation regarding categories of cases in which (i) consent decrees and adjudications should be vacated and (ii) the records should be expunged.

13. The basis for my recommendation below that certain categories of cases should have the consent decrees and/or adjudications therein vacated and the records expunged, rather than having new proceedings, is this: Had the juveniles in these cases been represented by competent counsel, had they appeared before an impartial tribunal, and had their other constitutional rights been protected, the vast majority of these cases would have resulted in consent decrees, or some lesser sanction. Had these cases resulted in consent decrees or lesser sanctions, all of these juveniles would be entitled to have their juvenile delinquency case records expunged by now pursuant to 18 Pa.C.S. § 9123. An additional factor weighing in favor of vacating the adjudications and consent decrees and expunging the records in the categories specified below is that this prompt action in these non-serious cases will be at least one step towards righting the wrongs which were visited upon these juveniles and will help restore

confidence in the justice system. Furthermore, it is not in the interest of the community to re-litigate these non-serious cases, nor do I believe that the victims would be well-served by new proceedings.

14. It has been brought to my attention by the Juvenile Law Center that some of the juveniles whom I am recommending have their records expunged may wish to delay the expungement until they can collect the records and information they need to properly proceed with civil actions which they have already filed. In light of this concern, my recommendation set forth below is for your Honorable Court to approve the expungements in the specified categories of cases, but wait to have the expungement actually performed until I have provided notice and an opportunity to object, to each affected juvenile.

15. The Luzerne County Juvenile Probation Office has, for years, maintained a list for each day of juvenile court which sets forth the name and petition number of each juvenile scheduled to appear that day. These lists also contain for each juvenile (i) the offense(s) alleged, (ii) whether the juvenile had counsel, and if so, whom, and (iii) the court's ruling that day.

16. The Juvenile Law Center, which is counsel of record for the Petitioners in the above-captioned action, already represents approximately seventy juveniles, and approximately thirty parents of juveniles, who had cases in Luzerne County Juvenile Court during the time Judge Ciavarella presided.

17. I believe that releasing copies of the daily juvenile court lists referenced in paragraph 15 above for the years 2003 to 2008 to the Juvenile Law Center and the Luzerne County District Attorney's Office (with appropriate confidentiality restrictions), will expedite

7

resolution of this matter, including preparation for any class certification hearing before the Special Master which may become necessary or advisable.

18. I am making this interim recommendation at this time (i) because I believe it is important, for the juveniles and the community, to make visible progress with the cases about which there is agreement, and (ii) because I believe it is prudent to get started promptly with the enormous amount of categorizing cases and ministerial work which this matter may entail.

### B.  FIRST INTERIM RECOMMENDATIONS.

1. I recommend that for all cases which satisfy the criteria set forth below, your Honorable Court shall grant me the authority to direct, after providing each juvenile notice and an opportunity to object, (i) that all consent decrees and adjudications of delinquency therein shall be vacated, and (ii) that the records of all said juvenile delinquency cases wherever kept or retained shall be expunged.

The criteria are:

Any juvenile who:

(i) During calendar years 2003, 2004, 2005, 2006, 2007, or 2008, appeared in the Juvenile Court of the Luzerne County Court of Common Pleas for an adjudication hearing, a disposition hearing, or any other proceeding before Judge Mark A. Ciavarella, Jr.; and

(ii) was not represented by counsel at said hearing or proceeding; and

(iii) did not waive his/her right to counsel, or did not waive it in conformity with Pa.R.Juv.Ct.P. 152, or, for proceedings prior to October 1, 2005, did not waive it in a manner such that there is evidence in the record of waiver meeting the standard enunciated in *Commonwealth v. Monica*, 528 Pa. 266, 597 A.2d 600 (1991); and

8

    (iv)    where all the offenses alleged in the Petition(s) either

          (a)    stem from a single course of conduct or related incidents; or

          (b)    were handled as part of a single proceeding or hearing; and

    (v)    where all the offenses alleged in the Petition(s) fall within one or more of the following categories:

          (a)    Offenses graded as misdemeanors of the third degree;

          (b)    Offenses graded as summary offenses;

          (c)    Theft offenses graded as misdemeanors of the second degree or third degree pursuant to 18 Pa.C.S. § 3903(b);

          (d)    Offenses under the Controlled Substance, Drug, Device and Cosmetic Act ("CSDDCA"), section 780-113(a)(31);

          (e)    Offenses under the CSDDCA, section 780-113(a)(32); and

          (f)    Offenses under the CSDDCA, section 780-113(a)(16); and

    (vi)    the juvenile was not the subject of any prior or subsequent Petitions which resulted in adjudications of delinquency or consent decrees; and

    (vii)    No proceeding seeking adjudication or conviction is pending.

2.    I recommend that for all cases which satisfy the criteria set forth in 18 Pa.C.S. § 9123(a), your Honorable Court shall grant me the authority to direct, after providing each juvenile and the District Attorney notice and an opportunity to object, that the records of said juvenile delinquency cases wherever kept or retained shall be expunged.

3.    I recommend that Your Honorable Court authorize the Luzerne County Juvenile Probation Office to release to Lourdes M. Rosado, Esquire of the Juvenile Law Center and to the

Honorable Jacqueline M. Carroll, District Attorney of Luzerne County, copies of the Luzerne County Juvenile Court daily case lists from January 1, 2003 to May 31, 2008, which set forth, *inter alia*, the name of each juvenile scheduled to appear that day, the offense(s) alleged, whether the juvenile had counsel, and the court's ruling, subject to the following restrictions:

2.1. At the Juvenile Law Center, in addition to Ms. Rosado, only one other attorney and two support personnel are authorized to view these materials.

2.2. At the District Attorney's Office, only two attorneys and two support personnel are authorized to view these materials.

2.3. These materials may not be copied by the District Attorney's Office or the Juvenile Law Center without prior approval of the Special Master.

2.4. These materials may only be used for the purpose of analyzing the number and types of cases which may fall under the jurisdiction of the Special Master in the instant case. These materials may not be used, either directly or indirectly, to contact juveniles, victims, or any other individual associated with any juvenile case.

2.5. When the Juvenile Law Center personnel or the District Attorney's Office personnel are not using these materials, including during the overnight hours, they must be stored in a locked file cabinet or similar location to which access is restricted to the authorized viewers.

2.6. At the conclusion of this litigation, the Juvenile Law Center and the District Attorney's Office must return all of these materials to the Special Master.

    2.7.    Prior to the Juvenile Probation Office releasing these materials to the above-referenced entities, Ms. Rosado, District Attorney Carroll, and each individual in their respective offices who shall have authority to review these materials must submit to the Special Master a signed and dated certification stating that he or she has reviewed these restrictions and agrees to carefully abide by them.

    Respectfully submitted,

March 12, 2009
Date

Arthur E. Grim, S.J.
Special Master

### IN THE SUPREME COURT OF PENNSYLVANIA
### MIDDLE DISTRICT

IN RE: J.V.R.; H.T., A MINOR THROUGH:   No. 81 MM 2008
HER MOTHER, L.T.; ON BEHALF OF   :
THEMSELVES AND SIMILARLY   :
SITUATED YOUTH   :

### ORDER

**PER CURIAM**

**AND NOW**, this 26th day of March, 2009, this Order acknowledges the Court's receipt of the Special Master's First Interim Report and Recommendations, which was prepared in pursuit of this Court's directive to investigate "the alleged travesty of juvenile justice in Luzerne County ... [and] to identify the affected juveniles and rectify the situation as fairly and swiftly as possible." 81 MM 2008, order dated 2/11/2009. A copy of the First Interim Report and Recommendations is attached to this Order.

The Special Master's First Interim Report proposes procedures to identify in an expeditious fashion a certain class of Luzerne County juvenile cases where the Master believes that summary relief should be afforded in the form of vacating the underlying adjudications or consent decrees, and ordering expungement of the records of such consent decrees or adjudications. The Special Master requests authorization to grant such relief. This Court hereby specifically authorizes the Special Master to grant such relief as expeditiously as possible. Furthermore, we **ADOPT AND APPROVE** the entirety of the Special Master's First Interim Report and Recommendations, subject only to the following two qualifications.

(1) The Special Master has noted that some of the affected juveniles or their counsel may wish to delay expungement until they can collect records and information for

use in pending civil lawsuits. This Court's primary concern remains with identifying and correcting miscarriages of justice in the underlying criminal consent decrees and adjudications as quickly as possible. Accordingly, once appropriate cases are identified according to the criteria the Special Master has set forth, orders of vacatur and expungement shall be entered promptly. This directive in no way shall affect the discretion of the Special Master to provide reasonable advance notice to affected juveniles, and to entertain specific, supported requests to delay the effect of the expungement aspect of such orders.

(2) In order to promptly identify the affected juveniles, the Special Master requests that this Court authorize the Luzerne County Probation Office to release copies of the Luzerne County Juvenile Court daily case lists from January 1, 2003 to May 31, 2008 ("daily lists") to the District Attorney of Luzerne County and an attorney for the Juvenile Law Center ("JLC"). Since this Court's prior order of February 11, 2009, appointing the Special Master, we are aware that the JLC has filed a federal civil law suit seeking monetary damages and attorneys' fees arising from the underlying Juvenile Court adjudications and consent decrees. Notwithstanding the JLC's adversarial role, this Court recognizes that the JLC has been of assistance to the Special Master in addressing the situation in Luzerne County and remains fairly positioned to represent the interests of those juveniles with whom it has specific representation agreements in the proceedings below. However, the Special Master's authorized task is singular: to identify every affected juvenile for purposes of recommending immediate appropriate relief from his or her criminal consent decree and adjudication. Accordingly, the Court directs that the release of these lists is for the sole purpose of identifying those juveniles - whether they are presently represented or not - who fit the criteria for the accelerated disposition proposed by the Special Master, and not for purposes of collateral litigation. The release shall be subject to the security provisions identified by the Special Master, with discretion remaining in the Special Master to modify

or expand those procedures as implementation of this amendment and subsequent events may require.

This Order specifically recognizes that the Special Master's First Interim Report and Recommendations concerns itself only with one class of cases of the many subject to review. See Report and Recommendations at 8, ¶ B(1). Recommendations as to other cases are to follow in due course.

Jurisdiction is retained.