**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FLORENCE WALLACE, ET AL.     :      **CONSOLIDATED TO:**
                                 :
    Plaintiffs,             :      **CIVIL ACTION NO. 3:09-cv-0286**
                                 :
        v.               :
                                 :      (JUDGE CAPUTO)
ROBERT J. POWELL, ET AL.     :
                                 :
    Defendants.            :

……………………………………………………………………………………………………

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM CONWAY, ET AL.      :
                               :
    Plaintiffs,             :     CIVIL ACTION NO. 3:09-cv-0291
                               :
        v.               :
                               :     (JUDGE CAPUTO)
JUDGE MICHAEL T. CONAHAN, :
ET AL.                         :
                               :
    Defendants.            :

……………………………………………………………………………………………………

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| H.T., ET AL. | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 3:09-cv-0357 |
| | : | |
| v. | : | |
| | : | (JUDGE CAPUTO) |
| MARK A. CIAVARELLA, ET AL. | : | |
| | : | |
| Defendants. | : | |

……………………………………………………………………………………

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMANTHA HUMANIK, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 3:09-cv-0630 |
| | : | |
| v. | : | |
| | : | (JUDGE CAPUTO) |
| MARK A. CIAVARELLA, JR., | : | |
| ET AL. | : | |
| | : | |
| Defendants. | : | |

……………………………………………………………………………………

**INDIVIDUAL PLAINTIFFS' MASTER LONG FORM COMPLAINT**
**AND JURY DEMAND**

Pursuant to an Order of the Honorable Richard A. Caputo, the undersigned

attorneys for Individual Plaintiffs in the *Wallace, et al. v. Powell, et al.*, (U.S.D.C.

M.D. Pa. 09-cv-0286) and *Humanik v. Ciavarella, et al.* (U.S.D.C. M.D. Pa. 09-cv-

0630) actions bring this Master Long-Form Complaint.  All Individual Plaintiffs

previously named in *Wallace, et al. v. Powell, et al.*, (U.S.D.C. M.D. Pa. 09-cv-0286) hereby incorporate by reference, repeat and re-allege, as fully as though herein set forth at length, Section B of the Factual Background section of their Second Amended Complaint, Paragraphs 73 – 1140 (facts specific to each Plaintiff). In addition, Plaintiff Samantha Humanik, previously named as the sole Plaintiff in *Humanik v. Ciavarella, et al.* (U.S.D.C. M.D. Pa. 09-cv-0630), hereby incorporates by reference, repeats and re-alleges, as fully as though herein set forth at length, Section B of her Amended Complaint, Paragraphs 72 – 94 (factual background specific to Plaintiff Samantha Humanik) together with Paragraph 3 of her Amended Complaint. The Individual Plaintiffs in *Wallace* and *Humanik* bring this Master Long-Form Complaint against the following defendants:


Robert J. Powell
10 Fox Run Road
Drums, PA

Michael T. Conahan
301 Deer Run Road
Mountain Top, PA

Mark A. Ciavarella
585 Rutter Ave
Kingston, PA

PA Child Care LLC
520 Walnut Street
Reading, PA

Western PA Child Care LLC
1105 Berkshire Blvd
Suite 320
Wyomissing, PA

Robert K. Mericle
100 Baltimore Drive
Wilkes-Barre, PA

Mericle Construction, Inc.
33 Beekman Street
Wilkes-Barre, PA

Gregory Zappala
1101 Cherry Hill Drive
Presto, PA

Pinnacle Group of Jupiter, LLC
301 Deer Run Drive
Mountain Top, PA

Barbara Conahan
301 Deer Run Drive
Mountain Top, PA
Cynthia Ciavarella
585 Rutter Ave
Kingston, PA

Beverage Marketing of PA, Inc.
PO Box 17
Pottsville Road
Seltzer, PA

Vision Holdings, LLC
123 Warren Street
West Hazleton, PA

Robert E. Matta, Esquire
21 Radio Station Road
Shenadoah, PA

Mid Atlantic Youth Services Corp.
701 Sathers Drive
Pittston Township, PA

Powell Law Group, P.C.
10 Fox Run Road
Drums, PA

Sandra Brulo
96 Allenberry Drive
Hanover Township, PA

Frank Vita, Ph.D.
1747 East Broad Street
Hazleton, PA

County of Luzerne
200 North River Street
Wilkes-Barre, PA

Perseus House, Inc. d/b/a Andromeda House
1511 Peach Street
Erie, PA

## I. <u>JURISDICTION</u>

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

1331 and 1343(3) because this action arises under the laws of the United States and

under 28 U.S.C. § 1964(c), because this action alleges violations of the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.*

This Court has subject matter jurisdiction over Counts VII and VIII pursuant to 28

U.S.C. § 1367(a).

2.      This Court has venue over this action pursuant to 28 U.S.C. §1391(b) and (c) and 18 U.S.C. § 1965.  Upon information and belief, Defendants reside in or are subject to service of process in this Judicial District.  Further, a substantial part of the events and omissions giving rise to the claims alleged in the Complaint occurred in this Judicial District.

## II.  PLAINTIFFS

3.      This Complaint is a Master Complaint filed for all individual, non-class Plaintiffs represented by a Plaintiff's counsel who has signed agreement to the Master Long Form Complaint.  All allegations pleaded herein are deemed pleaded in any "Short-Form" Complaint hereafter filed.  Every Plaintiff who uses this Master Long Form Complaint and any Short Form Complaint based hereon agrees that the laws of the United States and the Commonwealth of Pennsylvania apply.

## III.  DEFENDANTS

4.      Defendant ROBERT J. POWELL, hereinafter POWELL, is an adult individual who resides at 10 Fox Run Road Drums, Pennsylvania, and at all times relevant was an attorney-at-law, licensed to practice law in the Commonwealth of Pennsylvania and an owner, officer, shareholder, and operator of Defendants PA CHILD CARE, LLC, WESTERN PA CHILD CARE, LLC., VISION HOLDINGS

LLC, MID ATLANTIC YOUTH SERVICES CORP., and POWELL LAW
GROUP, P.C.

5.     Defendant MICHAEL T. CONAHAN, hereinafter CONAHAN, is an
adult individual residing at 301 Deer Run Road, Mountain Top, Pennsylvania was
at all times relevant a Judge of the Court of Common Pleas of the 11th Judicial
District of the Commonwealth of Pennsylvania (which includes Luzerne County)
and from approximately January 2002 until January 2007 served as the President
Judge of said judicial district.  In addition, upon information and belief
CONAHAN served as an owner, officer, shareholder, operator, and/or other
beneficiary of Defendants PINNACLE GROUP OF JUPITER, LLC, and
BEVERAGE MARKETING OF PA, INC.  Defendant CONAHAN is sued in his
individual capacity.

6.     Defendant MARK A. CIAVARELLA, hereinafter CIAVARELLA, is
an adult individual residing at 585 Rutter Ave., Kingston, Pennsylvania and was at
all times relevant Judge of the Court of Common Pleas of the 11th Judicial District
of the Commonwealth of Pennsylvania (which includes Luzerne County) and from
approximately January 2007 until January 2009 served as the President Judge of
said judicial district.  In addition, upon information and belief, CIAVARELLA
served as an owner, officer, shareholder, operator, and/or beneficiary of
Defendants PINNACLE GROUP OF JUPITER, LLC, and BEVERAGE

MARKETING OF PA, INC.  Defendant CIAVARELLA is sued in his individual capacity.

7.      Defendant PA CHILD CARE, LLC, hereinafter PACC, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address of 520 Walnut Street, P.O. Box 8581, Reading, Pennsylvania, which owns and operates a youth detention center.

8.      Defendant WESTERN PA CHILD CARE, LLC, hereinafter WPACC, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address of 1105 Berkshire Boulevard, Suite 320, Wyomissing, Pennsylvania and a business address located at 123 North Warren Street, West Hazelton, Pennsylvania, which owns and operates a youth detention center.

9.      Defendant ROBERT K. MERICLE, hereinafter MERICLE, is an adult individual residing at 100 Baltimore Drive, Wilkes-Barre, Pennsylvania and was at all times relevant an owner, shareholder, officer, and operator of MERICLE CONSTRUCTION, INC.

10.      Defendant MERICLE CONSTRUCTION, INC., hereinafter MERICLE CONSTRUCTION, is a close corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address at 33 Beekman Street, Wilkes-Barre, Pennsylvania.

11.     Defendant GREGORY ZAPPALA, hereinafter ZAPPALA, is an adult individual residing at 1101 Cherry Hill Drive, Presto, Pennsylvania and was at all times relevant an owner, shareholder, officer, and operator of Defendants PA CHILD CARE, LLC, WESTERN PA CHILD CARE, LLC., and MID ATLANTIC YOUTH SERVICES, CORP.

12.     Defendant PINNACLE GROUP OF JUPITER, LLC, hereinafter PINNACLE, is a limited liability company organized and existing under the laws of Florida with a registered address at 301 Deer Run Drive, Mountain Top, Pennsylvania that was owned and operated by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA.

13.     Defendant BARBARA CONAHAN is an adult individual and upon information and belief the wife of Defendant MICHAEL CONAHAN who resides at 301 Deer Run Road, Mountain Top, Pennsylvania.  At all times relevant hereto Defendant BARBARA CONAHAN was either the owner, officer, shareholder, managing agent, operator and/or beneficiary of Defendant, PINNACLE.

14.     Defendant CYNTHIA CIAVARELLA is an adult individual and upon information and belief the wife of Defendant MICHAEL CIAVARELLA who resides at 585 Rutter Ave., Kingston, Pennsylvania. At all times relevant hereto Defendant CYNTHIA CIAVARELLA was either the owner, officer, shareholder, managing agent, operator and/or beneficiary of Defendant, PINNACLE.

15.    Defendant BEVERAGE MARKETING OF PA, INC., hereinafter BEVERAGE, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a registered address of P.O. Box 17, Pottsville Road, Seltzer, Pennsylvania.  Defendant CONAHAN is identified by the Pennsylvania Department of State as the president, secretary and treasurer of Defendant BEVERAGE.

16.    Defendant VISION HOLDINGS LLC, hereinafter VISION, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a registered address of 123 Warren Street, West Hazelton, Pennsylvania.  At all times relevant hereto, Defendant POWELL was the owner, operator and president of VISION.

17.    It is believed and therefore averred that Defendant ROBERT E. MATTA, ESQUIRE, hereinafter MATTA, is an unnamed co-conspirator and Schuylkill County, Pennsylvania attorney.

18.    Defendant MID ATLANTIC YOUTH SERVICES CORP., hereinafter MAYS, is a Pennsylvania Corporation with a registered office address at 701 Sathers Drive, Pittston Township, Pennsylvania.  MAYS was responsible for the operation of the PACC and WPACC facilities, by virtue of a contractual agreement.

19.     Upon information and belief, WPACC entered into an agreement in June 2005 with MAYS to manage and operate its facility.  Upon further information and belief a revised 36 month agreement with MAYS went into effect on January 1, 2007.  This agreement places the responsibility of keeping the facility at or near capacity with MAYS and states that the compensation to MAYS is dependant on maintaining a high occupancy level, although no specific rate is set forth in the agreement.

20.     Defendant POWELL LAW GROUP, P.C., hereinafter PLG, is a Pennsylvania Professional Corporation with a registered office address at 10 Fox Run Road, Drums, Pennsylvania.

21.     Defendant SANDRA BRULO, hereinafter BRULO, is an adult individual and resides at 96 Allenberry Drive, Hanover Township, Pennsylvania. At all times relevant hereto, until October 1, 2005, BRULO was the Chief Juvenile Probation Officer of Luzerne County.  BRULO is sued in her individual capacity.

22.     Defendant, FRANK VITA, Ph.D., hereinafter VITA, is an adult individual and a citizen of the Commonwealth of Pennsylvania residing at 1747 East Broad Street, Hazelton, Pennsylvania.  At all times relevant hereto, Defendant VITA was a psychologist and the brother-in-law of Defendant CONAHAN.

23.     Upon information and belief from 2001 until 2008, Defendant VITA had an exclusive contract and/or series of contracts with the Luzerne County

11

Department of Probation Services to provide alleged juvenile offenders with psychological evaluations. Dr. VITA received in excess of $1,000,000 for said evaluations.

24.    Upon further information and belief, due to the large number evaluations Dr. VITA was required to perform based upon his exclusive contractual relationship with the Luzerne County Department of Probation Services, an inventory developed which necessitated that juveniles be detained and/or lodged at PACC and/or WPACC for extended periods while awaiting evaluations. Thereafter, some of the juveniles were released based upon Dr. VITA's recommendation.

25.    The result of this inventory was that juveniles were detained and/or lodged at PACC or WPACC for longer than required thereby allowing PACC and WPACC to collect additional fees for said lodging.

26.    At all times relevant hereto, Defendant COUNTY OF LUZERNE, hereinafter LUZERNE, is a political subdivision of the Commonwealth of Pennsylvania and has a principal place of business located at 200 North River Street in the City of Wilkes-Barre, County of Luzerne in the Commonwealth of Pennsylvania.

27.    Perseus House, Inc d/b/a Andromeda House ("ANDROMEDA HOUSE") is a corporation doing business in the Commonwealth of Pennsylvania

and located at 1511 Peach Street, Erie, Pennsylvania, and 39132 Mount Pleasant

Road, Spartansburg, PA 16434.  Plaintiff Samantha Humanik was placed at

Defendant Andromeda House.

28.    At all times relevant hereto, Defendants acted through their agents,

servants, employees, officers, directors and/or other representatives who are

presently known and unknown named individuals.

## IV.  GENERAL ALLEGATIONS

## A.    ACTIONS OF DEFENDANTS COMMON TO ALL COUNTS[1]

29.    On January 26, 2009, the United States Attorney presented a bill of

information alleging two counts of fraud against Mark A. Ciavarella, Jr., then

President Judge in Luzerne County, and former President Judge Michael T.

Conahan, also of Luzerne County.  *See* Criminal Information in *United States of*

---

[1] The facts contained in this section are alleged upon information and belief and are culled from the following documents: Criminal Information in *United States of America v. Michael T. Conahan and Mark A. Ciavarella, Jr.*, M.D. Pa. No. 3:09-CR-028 (January 26, 2009), a copy of which is attached hereto, made a part hereof and marked Exhibit "A"; Plea Agreements in *United States of America v. Michael T. Conahan* and *United States of America v. Mark A. Ciavarella*, M.D. Pa. No. 3:09-CR-028 (January 26, 2009), copies of which are attached hereto, made a part hereof and collectively marked Exhibit "B"; *United States of America v. Robert J. Powell*, M.D. Pa. (June 9, 2009), a copy of which is attached hereto, made a part hereof, and marked Exhibit "C"; Plea Agreement in *United States of America v. Robert J. Powell*, M.D. Pa. (June 9, 2009), a copy of which is attached hereto, made a part hereof, and marked Exhibit "D"; and the Commonwealth of Pennsylvania, Department of Public Welfare, Bureau of Financial Operations February 11, 2009 Draft Proposed Audit Report of Western PA Child Care, LLC, a copy of which is attached hereto, made a part hereof and marked Exhibit "E."

*America v. Michael T. Conahan and Mark A. Ciavarella, Jr.*, M.D. Pa. No. 3:09-CR-028 (January 26, 2009), a copy of which is attached hereto, made a part hereof and marked Exhibit "A." The bill of information, to which both judges have already agreed to plead guilty and serve more than seven years in federal prison, describes, *inter alia*, a conspiracy among the judges and other unnamed parties believed and averred to be Defendants and others as yet unknown to conceal $2.6 million in payments to the judges from Defendants and others as yet unknown in exchange for referring children who appeared before Defendant CIAVARELLA to these juvenile correctional facilities. *See* Exhibits "A" and Plea Agreements in *United States of America v. Michael T. Conahan* and *United States of America v. Mark A. Ciavarella*, M.D. Pa. No. 3:09-CR-028 (January 26, 2009), copies of which are attached hereto, made a part hereof and collectively marked Exhibit "B." In addition, on June 9, 2009 the United States Attorney presented a bill of information alleging one count of Misprison of a Felony and one count of Accessory After the Fact- Conspiracy to File False Income Tax Returns. *See* Criminal Information in *United States of America v. Robert J. Powell,* M.D. Pa. No. 3:02-ra-06000 (June 9, 2009), a copy of which is attached hereto made a part hereof and marked Exhibit "C." Robert Powell has agreed to plead guilty to both charges. *See* Plea Agreement in *United States of America v. Robert J. Powell,*

M.D. Pa. No. 3:02-ra-06000 (June 9, 2009), a copy of which is attached hereto made a part hereof and marked Exhibit "D."

30.     Pursuant to the Bill of Information against Defendants CONAHAN and CIAVARELLA, from in or about June 2000, the exact date being unknown to the Plaintiffs, and upon information and belief, continuing until the present, in the Middle District of Pennsylvania and elsewhere, Defendants, while acting under color of law, engaged in a pattern and practice to conspire, cooperate, scheme, engage in racketeering activity, violate, and recklessly, willfully, wantonly and/or in a manner that shocks the conscience to subject the Plaintiffs to violations of their constitutional rights. Additionally, Defendants aided and abetted each other and by other persons known and unknown, devised a material scheme and artifice to defraud the juveniles of the Commonwealth of Pennsylvania and the Judiciary of the Commonwealth of Pennsylvania and to deprive those juveniles of their right to the honest services of CONAHAN and CIAVARELLA, as judges of the Court of Common Pleas for Luzerne County, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment, and conflict of interest, and within their fiduciary duty.

31.     In furtherance of the scheme and artifice to defraud, Defendants CONAHAN, and CIAVARELLA, abused their positions as judges of the Court of Common Pleas for Luzerne County by accepting compensation from Defendants

15

PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA,

PINNACLE, BEVERAGE, VISION, POWELL, MATTA and perhaps others both

known and unknown.

32.     As judges of the Court of Common Pleas, Defendants CONAHAN

and CIAVARELLA owed a duty to Plaintiffs and the citizens of the

Commonwealth of Pennsylvania and to the Judiciary of the Commonwealth of

Pennsylvania and were required to file an annual statement of financial interests

with the Administrative Office of the Pennsylvania Courts, reporting the source of

any income, direct or indirect. The Administrative Office of the Pennsylvania

Courts maintains offices in Cumberland County, Middle District of Pennsylvania,

and Philadelphia County, Eastern District of Pennsylvania.

33.     Defendants CONAHAN and CIAVARELLA abused their positions

and violated the fiduciary duty they owed to the Plaintiffs and citizens of the

Commonwealth of Pennsylvania and to the Judiciary of the Commonwealth of

Pennsylvania by secretly deriving more than $2,600,000 in income, in addition to

the compensation to which they were lawfully entitled, in exchange for their

official actions, anticipated official actions and official administrative actions.

34.     The actions from which they derived improper income included, but

were not limited to: entering into agreements guaranteeing placement of juvenile

offenders exclusively with Defendant PACC; taking official action to remove

funding from the Luzerne County budget for the Luzerne County juvenile detention facility, thereby making Defendant PACC the sole juvenile detention facility within Luzerne County; facilitating the construction of juvenile detention facilities and an expansion to one of those facilities by Defendants PACC and WPACC; directing that juvenile offenders be lodged at juvenile detention facilities operated by Defendants PACC and WPACC; executed or caused to be executed a contract between Frank Vita, Ph.D. and the Luzerne County Department of Probation Services for the purpose of performing psychological evaluations on juvenile offenders; summarily granting motions to seal the record and for injunctive relief in a civil case related to Defendant PACC thereby keeping their scheme a secret; and, through their actions, assisting Defendants PACC and WPACC to secure agreements with Luzerne County worth tens of millions of dollars for the placement of juvenile offenders, including an agreement in late 2004 worth approximately $58,000,000.

35.     The Defendants together employed a number of schemes in an attempt to hide the transfer of the income forwarded to CONAHAN and CIAVARELLA, including, but not limited to, causing income to pass through intermediaries, including but not limited to some of the defendants herein, and causing false records to be created.

36.     It is believed and therefore averred that Defendants one and all participated in a scheme to ensure that a disproportionate number of juveniles, such as Plaintiffs herein, were incarcerated in juvenile detention facilities owned, operated, and influenced by Defendants.

37.     All Defendants except Defendants BRULO, VITA, COUNTY OF LUZERNE and ANDROMEDA HOUSE, participated in the payment of approximately $2.6 million to Defendants CONAHAN and CIAVARELLA in exchange for their influence over Plaintiffs and to disproportionately sentence juveniles in Luzerne County to detention prior to delinquency determinations and after delinquency determinations.

38.     The collective actions of Defendants were considered sufficiently suspect for the Pennsylvania Supreme Court to exercise King's Bench Power to appoint a receiving judge to review all juvenile matters in Luzerne County from 2003 until 2008.  By order dated March 26, 2009, the Pennsylvania Supreme Court has ordered the expungement of records of certain juveniles who appeared before Defendant CIAVARELLA from 2003 to 2008.

39.     It is believed and therefore averred that in approximately June of 2000, Defendant CIAVARELLA, whose duties then included presiding over juvenile proceedings as a judge of the Court of Common Pleas for Luzerne County, had discussions with Defendant POWELL who was interested in

constructing a juvenile detention facility in Luzerne County. Defendant POWELL was then introduced to a contractor, Defendant MERICLE, who was a friend of Defendant CIAVARELLA, for the purpose of locating land for the juvenile facility and for constructing the facility.

40.     It is believed and therefore averred that Defendants POWELL and ZAPPALA, doing business as Defendant PACC, acquired land in Luzerne County and entered into an agreement with Defendant MERICLE to construct a juvenile detention center to be operated by Defendants PACC and/or MAYS.

41.     On or about January 29, 2002, Defendant CONAHAN, acting in his administrative capacity on behalf of the County of Luzerne and under the color of law, executed a "Placement Guarantee Agreement" between PACC and the Court of Common Pleas for Luzerne County to house juvenile offenders at the PACC facility. The "Placement Guarantee Agreement" provided that the Court of Common Pleas for Luzerne County would pay PACC the annual "Rental Installment" sum of $1,314,000 and stipulated that "[t]he obligation of the Court to make payment of the Rental Installments shall be absolute and unconditional."

42.     In or about December 2002, Defendant CONAHAN, acting in his administrative capacity on behalf of the County of Luzerne and under the color of law, took official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility.

43.     In or before January of 2003, Defendant CONAHAN and Defendant CIAVARELLA arranged to receive a payment in the amount of $997,600 in connection with the actions they took on behalf of the County of Luzerne in accomplishing the construction of Defendant PACC's juvenile detention facility.

44.     In order to conceal the $997,600 payment to Defendants CONAHAN and CIAVARELLA, POWELL and MERICLE signed a written "Registration and Commission Agreement" prepared by MERICLE and backdated to February 19, 2002, which purported to be an agreement for MERICLE to pay a broker's fee of $997,600 to POWELL. In fact, however, a large portion of the money was intended to be paid to Defendants CONAHAN and CIAVARELLA.

45.     Defendants CONAHAN and CIAVARELLA engaged in a series of financial transactions, over time, designed to conceal the $997,600 payment made to them. On January 21, 2003, $610,000 was wire-transferred by Defendant MERICLE to an attorney trust account of an attorney, namely Defendant MATTA. The remaining $387,600 was wire-transferred by Defendant MERICLE to a bank account under the control of POWELL.

46.     In addition to the fees paid by Defendant MERICLE to Defendants CONAHAN and CIAVARELLA and run through Defendant POWELL's accounts, Defendants CONAHAN and CIAVARELLA also demanded kickbacks from Defendant POWELL in exchange for closing the Luzerne County youth detention

center and sending the juvenile offenders to the private youth detention center,

known as PA Child Care in Luzerne County and Western PA Child Care in Butler

County, both built by Defendant MERICLE for Defendant POWELL and his

partner, Defendant ZAPPALA.  In fact, Defendant CIAVARELLA advised

Defendant POWELL that Defendant POWELL was making a lot of money from

the youth detention center and that he had to pay for that privilege.  Implicit in the

demand for kickbacks was the understanding that the payments were a *quid pro*

*quo* for Defendants CONAHAN and CIAVARELLA's exercise of their judicial

authority to send juveniles to Defendants PACC or WPACC and to take other

discretionary acts.

47.     Thereafter, on January 28, 2003, the $610,000 in the MATTA

attorney trust account was wire-transferred to a bank account of Defendant

BEVERAGE, a business entity controlled by Defendant CONAHAN.

48.     In a series of financial transactions thereafter, a portion of the

$610,000 payment was passed from Defendant CONAHAN to Defendant

CIAVARELLA; for example, on or about January 28, 2003, Defendant

CONAHAN directed that $330,000 of the $610,000 be wire-transferred to a bank

account controlled by Defendant CIAVARELLA; on or about April 30, 2003,

Defendant CONAHAN directed that an additional $75,000 of the $610,000 be

wire-transferred to a bank account controlled by Defendant CIAVARELLA; on or

about July 15, 2003, Defendant CONAHAN directed that an additional $75,000 of the $610,000 be wire-transferred to a bank account under the control of Defendant CIAVARELLA; on or about August 13, 2003, Defendant CONAHAN directed that an additional $25,000 of the $610,000 be wire-transferred to a bank account under the control of a third party; and on or about August 20, 2003, Defendant CONAHAN directed that an additional $105,000 of the $610,000 be transferred to a bank account under the control of Defendant CONAHAN.

49.    To conceal the payments to Defendants CONAHAN and CIAVARELLA, Defendant CONAHAN directed that false entries be made in the books and records of Defendant BEVERAGE.

50.    To further conceal the $997,600 payment made to Defendants CONAHAN and CIAVARELLA, a portion of the $387,600 wire transfer made by Defendant MERICLE to POWELL on January 28, 2003, was paid to Defendants CONAHAN and CIAVARELLA in a series of financial transactions which occurred over time. One of those transactions occurred on or about August 29, 2003, when a check in the amount of $326,000, drawn on a bank account under the control of Defendant POWELL, was deposited into a bank account maintained in the name of another person but under the control of Defendant CONAHAN.

51.    Due to the success of the juvenile detention facility operated in Luzerne County, Defendants POWELL and ZAPPALA, his partner, doing

business as Defendant WPACC, constructed a juvenile detention facility in western

Pennsylvania. Defendant MERICLE, the same contractor who built the facility in

Luzerne County, was employed to construct the WPACC facility. In July of 2005,

upon completion of construction, a $1,000,000 payment was made to Defendants

CONAHAN and CIAVARELLA by POWELL. To conceal the payment, it was

made to Defendant PINNACLE, a business entity owned by other persons but

controlled by Defendants CONAHAN and CIAVARELLA.

52.    In order to conceal the payment to Defendants CONAHAN and

CIAVARELLA, POWELL and MERICLE signed a written "Registration and

Commission Agreement" prepared by MERICLE, which purported to be an

agreement for MERICLE to pay a broker's fee of $1,000,000 to POWELL. In fact,

however, the money was wire-transferred by MERICLE to a bank account of

PINNACLE, a business entity owned by other persons but controlled by

CONAHAN and CIAVARELLA.

53.    It is believed and therefore averred that Defendant POWELL and his

partner, Defendant ZAPALLA, doing business as PACC, constructed an addition

to the juvenile detention facility in Luzerne County. Defendant MERICLE

CONSTRUCTION, the same contractor who built the facility, was employed to

complete the expansion project and, in February of 2006, upon completion of

construction of the addition, a $150,000 payment was made to Defendants

CONAHAN and CIAVARELLA. To conceal the payment, it was made to Defendant PINNACLE, a business entity owned by other persons but controlled by Defendants CONAHAN and CIAVARELLA.

54.     In order to conceal the payment to Defendants CONAHAN and CIAVARELLA, Defendants POWELL and MERICLE signed a written "Registration and Commission Agreement" prepared by Defendant MERICLE. which purported to be an agreement for the MERICLE to pay a broker's fee of $150,000 to POWELL. In fact, however, the money was wire-transferred by MERICLE to a bank account of Defendant PINNACLE, a business entity owned by other persons but controlled by Defendants CONAHAN and CIAVARELLA.

55.     In approximately February of 2003, when construction of the PACC juvenile detention facility was completed, Defendant CIAVARELLA, in his capacity as a juvenile court judge, began directing that youthful offenders be sent to that facility. Between approximately February of 2003 and January 1, 2007, Defendants CONAHAN and CIAVARELLA received from POWELL hundreds of thousands of dollars in payments for their past and future actions relating to PACC and WPACC and took steps to conceal and disguise the nature, location, source, ownership, and control of the money paid by POWELL.

56.     Some of the payments were made by checks drawn on one or more bank accounts under the control of Defendant POWELL and were made payable to

Defendant PINNACLE, which was controlled by Defendants BARBARA

CONAHAN and CYNTHIA CIAVARELLA. The payments included, but were not

necessarily limited to, the following:

> $18,000 paid on or about January 13, 2004;
> $52,000 paid on or about January 13, 2004;
> $78,000 paid on or about February 15, 2004;
> $75,000 paid on or about February 15, 2004;
> $47,000 paid on or about February 15, 2004;
> $75,000 paid on or about April 30, 2004; and
> $25,000 paid on or about April 30, 2004.

57.    To conceal the payments to Defendants CONAHAN and

CIAVARELLA, Defendant POWELL made false notations on the checks and

Defendants CONAHAN and CIAVARELLA directed that false entries be made in

the books and records of Defendant PINNACLE.

58.    In addition to payments by check, some of the payments were made

by wire transfers made from one or more bank accounts under the control of

Defendant POWELL and were transferred to an account under the control of the

Defendant PINNACLE, which was controlled by Defendants BARABARA

CONAHAN and CYNTHIA CIAVARELLA. The payments included, but were not

necessarily limited to, the following: $120,000 transferred on July 12, 2004; and

$100,000 transferred on September 23, 2004.

59.    Upon information and belief, Defendant POWELL believed that had

he stopped paying Defendants CONAHAN and CIAVARELLA, they would have

retaliated against him and no more juveniles would have been sent to Defendants PACC and WPACC.

60.     In order to conceal the more than $2,600,000 in unlawful payments they received, Defendants CONAHAN and CIAVARELLA knowingly and intentionally filed materially false annual statements of financial interests with the Administrative Office of the Pennsylvania Courts in which they failed to disclose the source of these payments and in which they failed to disclose their financial relationship with Defendants POWELL, ZAPPALA, MERICLE, MERICLE CONSTRUCTION, PINNACLE, VISION, PACC, and WPACC, all of which were material matters.

61.     Defendants CONAHAN and CIAVARELLA owed a duty to disclose material information affecting their ability to engage in impartial decision-making. Defendants CONAHAN and CIAVARELLA breached this duty.

62.     It was a part of the scheme and artifice to defraud that Defendants CONAHAN and CIAVARELLA acting in an administrative capacity knowingly and intentionally or negligently filed materially false annual statements of financial interests with the Administrative Office of the Pennsylvania Courts in which they failed to disclose the source of income they received and in which they failed to disclose their financial relationship with POWELL, ZAPPALA, MERICLE,

MERICLE CONSTRUCTION, PINNACLE, VISION, PACC, and WPACC, which were material matters.

63.     Defendants CONAHAN and CIAVARELLA made materially false filings with the Administrative Office of the Pennsylvania Courts.

64.     It was further a part of the scheme and artifice to defraud that Defendants CONAHAN and CIAVARELLA, acting in an administrative capacity and with regard to matters in which they had decision-making authority, knowingly and intentionally issued written, oral, and wire communications which were materially false to the extent that Defendants did not disclose their conflict of interest and their financial relationship with POWELL, ZAPPALA, MERICLE, MERICLE CONSTRUCTION, PINNACLE, VISION, PACC, and WPACC, which were material matters.

65.     It was further a part of the scheme and artifice to defraud that Defendants CONAHAN and CIAVARELLA, acting in an administrative capacity and with regard to matters in which they had decision-making authority, knowingly and intentionally issued reports and statements to the Administrative Office of the Pennsylvania Courts which were materially false to the extent that Defendants did not disclose their sources of income and their financial relationship with POWELL, ZAPPALA, MERICLE, MERICLE CONSTRUCTION, PINNACLE, VISION, PACC, and WPACC, which were material matters.

66.     It was further a part of the scheme and artifice to defraud that Defendant CONAHAN acting in his administrative capacity on behalf of the County of Luzerne entered into agreements guaranteeing placement of juvenile offenders exclusively with Defendant PACC and took official administrative action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility, effectively closing the only a county-run youth detention center. Defendants CONAHAN and CIAVARELLA, through their official administrative actions on behalf of the County of Luzerne, facilitated the construction of Defendants PACC and WPACC and an expansion of Defendant PACC.  The result of said administrative actions was that juvenile offenders could only be lodged at Defendant PACC in Luzerne County.  Additionally, Defendants CONAHAN and CIAVARELLA, through their administrative authority directed that juvenile offenders be lodged at juvenile detention facilities operated by Defendants PACC and WPACC. Through their administrative actions on behalf of the County of Luzerne, Defendants assisted PACC and WPACC and by extension Defendants POWELL and ZAPPALA to secure agreements with Luzerne County worth tens of millions of dollars for the placement of juvenile offenders, including an agreement in late 2004 worth approximately $58,000,000.

67.     Defendant CIAVARELLA, and others operating at his behest,

including but not limited to Defendant BRULO, and/or Michael Loughney, also exerted pressure on staff of the Court of Common Pleas to recommend detention of juvenile offenders.  On some occasions, probation officers were pressured to change recommendations of release to recommendations of detention. The foregoing actions, as well as other actions, were all part of a scheme of Defendants that directly related to matters in which Defendants CONAHAN and CIAVARELLA had administrative discretionary decision-making authority.

68.     Upon information and belief, upon the opening of Defendant PACC in 2003, Defendant CONAHAN informed Defendant BRULO that he was upset that juveniles were not going into PACC fast enough, and as a result, Defendant CIAVARELLA instituted a "ramp-up" schedule for Defendant PACC to ensure Defendant PACC was filled with juveniles.

69.     It was further a part of the scheme and artifice to defraud and conspire to violate the constitutional rights of Plaintiffs that, Defendant BRULO was always present in the courtroom during juvenile adjudications, however never gave recommendations or assistance to juvenile offenders.

70.     It was further a part of the scheme and artifice to defraud and conspire to violate the constitutional rights of Plaintiffs that, Defendant BRULO told juvenile offenders that they did not need a lawyer, and that said juveniles should plead guilty or risk being charged with multiple charges that would result in the

juvenile offenders being detained or incarcerated for a longer period of time then if they pled guilty.

71.     It was further a part of the scheme and artifice to defraud and conspire to violate the constitutional rights of Plaintiffs that, on numerous occasions, accused juvenile offenders, including Plaintiffs, were ordered detained by Defendant CIAVARELLA even when Juvenile Probation Officers did not recommend detention.

72.     As discussed above, upon information and belief, due to the backlog of psychological evaluations to be performed by Defendant VITA, juveniles were lodged at PACC and/or WPACC for longer than required thereby allowing PACC and WPACC to collect additional fees for said lodging.

73.     It was further a part of the scheme and artifice to defraud that Defendants CONAHAN and CIAVARELLA violated their duties of independence, impartiality and integrity in the exercise of their discretionary actions on behalf of the Court of Common Pleas for Luzerne County by failing to recuse themselves from acting in matters in which they had a material conflict of interest and in failing to disclose to parties appearing before the court their conflict of interest and their financial relationship with POWELL, MERICLE, MERICLE CONSTRUCTION, PACC, and WPACC, which were material matters.

74.     It was further a part of the scheme and artifice to violate the

constitutional rights of Plaintiffs that Defendant CIAVARELLA utilized

administrative powers on behalf of the County of Luzerne to adopt procedures in

juvenile court, including procedures adopted for a "specialty court." The adoption

of these procedures was accomplished through the administrative decision-making

authority of Defendant CIAVARELLA. The adoption of these procedures created

the potential for an increased number of juvenile offenders to be sent to the

juvenile detention facilities of PACC and WPACC. Defendant CIAVARELLA

took these actions without disclosing to the parties before the court his conflict of

interest and the financial relationship that existed between the Defendants.

75.     On or about each date listed below, in the Middle District of

Pennsylvania and elsewhere, Defendants CONAHAN and CIAVARELLA, aided

and abetted by each other, for the purpose of executing the above-described

material scheme and artifice to defraud and deprive the citizens of Luzerne County

and of the Commonwealth of Pennsylvania of their right to the honest services of

Defendants CONAHAN and CIAVARELLA, transmitted and caused to be

transmitted by means of wire communication in interstate commerce, the following

writings, signals, and sounds: in violation of Title 18, United States Code, §§2,

1341, and 1346:

| Date | Wire Transmission |
| --- | --- |
| July 12, 2004 | Electronic funds transfer of $120,000 transferred from an account of Vision Holdings, Inc., to an account of the Pinnacle Group of Jupiter, LLC, controlled by |

Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA.

| September 23, 2004 | Electronic funds transfer of $100,000 transferred from an account of Vision Holdings, Inc., to an account of Pinnacle Group of Jupiter, LLC, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA. |

July 15, 2005      Electronic funds transfer of $1,000,000 transferred from an account of Mericle Construction, Inc., to an account of Pinnacle Group of Jupiter, LLC, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA.

February 3, 2006      Electronic funds transfer of $150,000 transferred from an account of Mericle Construction, Inc. to an account of Pinnacle Group of Jupiter, LLC, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA.

76.     In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed by Defendants in the Middle District of Pennsylvania and elsewhere:

A.     On or about January 21, 2003, Defendants caused MERICLE and/or MERCILE CONSTRUCTION to wire-transfer $610,000 to the bank account of Defendant MATTA;

B.     On or about January 28, 2003, Defendants caused MATTA Pennsylvania to wire-transfer $610,000 to an account of BEVERAGE;

C.     On or about January 28, 2003, Defendant CONAHAN caused $330,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of Defendant CIAVARELLA;

D.      On or about April 30, 2003, Defendant CONAHAN caused $75,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of Defendant CIAVARELLA;

E.      On or about July 15, 2003, Defendant CONAHAN caused $75,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of Defendant CIAVARELLA;

F.      On or about August 13, 2003, Defendant CONAHAN caused $25,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of a third party;

G.      On or about August 13, 2003, Defendant CONAHAN caused $25,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of a third party;

H.      On or about August 20, 2003, Defendant CONAHAN caused $105,000 to be wire-transferred from a bank account of BEVERAGE to a bank account under the control of Defendant CONAHAN;

I.      To conceal the payments to Defendants CONAHAN and CIAVARELLA, Defendant CONAHAN directed that false entries be made in the books and records of BEVERAGE between on or about January 1, 2002, and on or about April 15, 2007;

J.      On or about January 20, 2004, Defendants caused $18,000 to be deposited in a bank account of PINNACLE which was falsely characterized as "Rent Prepay";

K.      On or about January 20, 2004, Defendants caused $52,000.00 to be deposited in a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA, which was falsely characterized as "Rent Marine Prepay";

L.      On or about February 24, 2004, Defendants caused $47,000 to be deposited into a bank account of PINNACLE,

controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA, which was falsely characterized as "Slip Rental Fees";

M.     On or about February 24, 2004, Defendants caused $78,000 to be deposited into a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA, which was falsely characterized as "Reserving Lease";

N.     On or about February 24, 2004, Defendants caused $75,000 to be deposited into a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA, which was falsely characterized as "Rental Feb, Mar, Apr";

O.     On or about May 3, 2004, Defendants caused $75,000 to be deposited into a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA, which was falsely characterized as "Lease Expenses April May June";

P.     On or about May 3, 2004, Defendants caused $25,000 to be deposited into a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA, which was falsely characterized as "Dock Expenses Related April May June";

Q.     On or about July 12, 2004, Defendants caused $120,000 to be wire-transferred to a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA;

R.     On or about September 23, 2004, Defendants caused $100,000 to be wire-transferred to a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA;

S.     On or about July 15, 2005, Defendants caused $1,000,000 to be wire-transferred to a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA;

T.    On or about February 3, 2006, Defendants caused $150,000 to be wire-transferred to a bank account of PINNACLE, controlled by Defendants BARBARA CONAHAN and CYNTHIA CIAVARELLA;

U.    Between on or about January 1, 2002, and on or about April 15, 2007, Defendants CONAHAN and CIAVARELLA provided information to their respective tax return preparers that contained material omissions and misclassifications;

V.    Between on or about April 15, 2004, and on or about May 21, 2007, Defendants CONAHAN and CIAVARELLA caused to be prepared, subscribed to, and filed with the Internal Revenue Service, materially false tax returns, namely, IRS forms 1040 and 1040X relating to tax years 2003 through 2006.

77.    On February 11, 2009, the Pennsylvania Supreme Court

assumed plenary jurisdiction and granted the Juvenile Law Center's

Amended Application for the Exercise of King's Bench Power or

Extraordinary Jurisdiction arising out of Defendant CIAVARELLA's denial

of juveniles' constitutional right to counsel and acceptance of guilty pleas

without due process during the period from 2003 through May 2008.

Pursuant to that order, and citing the recently revealed criminal allegations

and plea agreement entered into by Defendant CIAVARELLA, among

others, the court appointed Special Master Arthur Grim, Senior Judge, Berks

County Court of Common Pleas, to act on its behalf.  Specifically, the court

authorized Judge Grim to review all juvenile court adjudications and

dispositions affected by the recently revealed criminal charges, including all

cases in which children were committed to Defendants PACC and WPACC, as well as all cases in which it is alleged that youth appearing before Defendant CIAVARELLA were denied their right to counsel, and to make recommendations to the court concerning appropriate remedial actions.

78.     On March 26, 2009, Special Master Grim entered the first of several anticipated orders vacating the adjudications and expunging the records of hundreds of juveniles who appeared before Defendant CIAVARELLA between 2003 and May 2008.  In his Order, Judge Grim specifically noted that his own investigation "point[ed] to the conclusion that a very substantial number of juveniles who appeared without counsel before Judge Ciavarella for delinquency or related proceedings did not knowingly and intelligently waive their right to counsel.  My investigation also has uncovered evidence that there was routine deprivation of children's constitutional rights to appear before an impartial tribunal and to have an opportunity to be heard."  *See* First Interim Report and Recommendations of the Special Master, at ¶10, approved and adopted by Order, No. 81 MM 2008 (Pa. Mar. 26, 2009).

## B.     USE OF THE MAILS AND WIRES

79.     At all times relevant hereto, Defendants used numerous mail and

interstate wire communications to create, execute and manage their fraudulent

scheme, as described above.

80.    Defendants' use of the mails and wires to execute their fraud involved

transfers of funds as described above, communication with Plaintiffs, and

communications throughout the relevant time period, via email, telephone, sent

through the U.S. mails and over the internet including communications concerning

the fraudulent scheme to deprive juvenile offenders of their basic constitutional

rights for personal gain, profit and enrichment.

## C.    <u>CONSPIRACY AND CONCERT OF ACTION</u>

81.  Defendants entered into and through various overt acts described

above an agreement between themselves to illegally deprive Plaintiffs of their

basic constitutional rights for their own personal enrichment and profit.

Defendants implemented said agreement and conspiracy, in concert of action, and

each aiding and abetting the other, such that Defendants were acting under "color

of law" pursuant to 42 U.S. §1983, and Defendants are jointly and severally liable

for the resulting damages to Plaintiffs.  *See Adickes v. S.H. Kress & Co.*, 398 U.S.

144 (1970).

## D.    **FRAUDULENT CONCEALMENT AND TOLLING OF STATUTES OF LIMITATIONS**

82.    Plaintiffs were not and could not have been aware of Defendants'

misconduct before the January 26, 2009 filing of the Criminal Information against

Defendants CONAHAN and CIAVARELLA. *See* Exhibit "A." Defendants concealed the nature of their scheme and artifice to defraud Plaintiffs based upon their actions more fully described herein. Because of these acts and other acts of concealment, Plaintiffs could not have discovered the scheme and other acts and omissions to act described herein in the exercise of reasonable diligence.

83.     Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs could not reasonably have discovered the nature of Defendants' conduct. Accordingly, Defendants are estopped from relying on any statute of limitations to defeat any of Plaintiffs' claims. In addition, the statute of limitations for the Juvenile Plaintiffs is tolled pursuant to Pennsylvania's Minority Tolling Statute, 42 Pa.C.S.A. § 5533(b).

## CAUSES OF ACTION

## COUNT I

## FOR VIOLATION OF RICO, 18 U.S.C. § 1961, et seq

### Plaintiffs v. All Defendants Except Defendants BRULO, VITA, COUNTY OF LUZERNE and ANDROMEDA HOUSE

84.     Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

85.     Defendants, POWELL, CONAHAN, CIAVARELLA, PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA, MAYS, and PLG, hereinafter "RICO Defendants," are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

86.     There is the association-in-fact of all RICO Defendants for the purpose of constructing juvenile detention centers, ordering juveniles to be placed in those centers in violation of their basic constitutional rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"*). The Association-In-Fact Enterprise was created, controlled and conducted by all RICO Defendants for the purposes hereinbefore described. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise.

87.     All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and the have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail above.

88.     RICO Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce

that includes predicate acts indictable under 18 U.S.C. §§ 1341 (mail fraud) and

1343 (wire fraud), through the structuring of the payments described above to the

RICO Defendants and through the following actions, among others, as is set forth

above:

      A.     Entering into agreements guaranteeing placement of juvenile offenders with PACC;

      B.     Taking official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility;

      C.     Facilitating the construction of juvenile detention facilities and an expansion to one of those facilities by PACC and WPACC;

      D.     Directing that juvenile offenders be lodged at juvenile detention facilities operated by PACC and WPACC thereby ensuring increased profits and revenues of PACC and WPACC and increased return on investment and/or other remuneration of Defendants POWELL, ZAPPALA and other of the RICO Defendants; and

      E.     Assisting PACC and WPACC to secure agreements with Luzerne County worth tens of millions of dollars for the placement of juvenile offenders, including an agreement in late 2004 worth approximately $58,000,000.

89.    Each of the RICO Defendants' fraudulent mailings and

interstate wire transmissions constitutes "racketeering activity" with the

meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern

of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

90.    RICO Defendants engaged in a pattern of racketeering activity

intending to defraud the Plaintiffs and to deny juvenile Plaintiffs of their liberty.

91.    RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes.   Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims including adult Plaintiffs.  Based upon the contracts and agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of adult Plaintiffs.

92.    RICO Defendants were an association of individuals, partnerships, and corporations joined in purpose of conspiring to commit honest services fraud and other criminal activity as yet unknown. The association employed a number of schemes in an attempt to hide the income they received including, but not limited to, causing income to pass through intermediaries and causing false records to be created, thereby hiding said income from the United States Internal Revenue Service.

93.    RICO Defendants were organized in a consensual decision-making manner in which to hide and distribute the monies among the conspirators.

94.     RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

95.     As a result of RICO Defendants' violations of RICO, Plaintiffs had wages garnished, public assistance monies taken, social security benefits seized, and were otherwise forced to pay for the wrongful incarceration of the juvenile offenders.  In addition, upon information and belief, those Plaintiffs who have reached the age of majority are now required to make said payments on their own behalf.

96.     Plaintiffs' injuries to their business and property were directly and proximately caused by RICO Defendants' racketeering activity as described above.

97.     By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to  Plaintiffs for three times the damages adult Plaintiffs have sustained, plus the costs of this suit, including reasonable attorneys' fees.

WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT II

## FOR CONSPIRACY TO VIOLATE RICO

### Plaintiffs v. All Defendants Except Defendants BRULO, VITA, COUNTY OF LUZERNE and ANDROMEDA HOUSE

98.    Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

99.    RICO Defendants conspired with one another to commit the violations of 18 U.S.C. §1962 alleged herein.

WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT III

### DEPRIVATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS PURSUANT TO THE CIVIL RIGHTS ACT OF 1871 42 U.S.C. § 1983

### Juvenile Plaintiffs v. All Defendants, except Defendants COUNTY OF LUZERNE and ANDROMEDA HOUSE

100.   Plaintiffs  incorporate by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

101.   At all times relevant hereto, Defendants CONAHAN and

CIAVARELLA were "persons" within the meaning of 42 U.S.C. § 1983.

102.   At all times relevant hereto, Defendants CONAHAN and

CIAVARELLA were acting "under color of state law" pursuant to 42 U.S.C. §

1983.

103.   At all times relevant hereto, Defendant BRULO was a "person"

within the meaning of 42 U.S.C. § 1983.

104.   At all times relevant hereto, Defendant BRULO was acting "under

color of state law" pursuant to 42 U.S.C. §1983.

105.   At all times relevant hereto, Defendant VITA was a "person" within

the meaning of 42 U.S.C. § 1983.

106.   At all times relevant hereto, Defendant VITA, a private psychologist

with an exclusive contract with the Luzerne County Department of Probation

Services to provide psychological services, was acting "under the color of state

law", for the actions that give rise to this lawsuit, pursuant to 42 U.S.C. § 1983.

*See West v. Atkins*, 487 U.S. 42 (1988).

107.   At all times relevant hereto, Defendants POWELL, PACC, WPACC,

MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA

CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA,

MAYS, and PLG, were "persons" within the meaning of 42 U.S.C. § 1983.

108.   At all times relevant hereto, Defendants POWELL, PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA, MAYS, and PLG, were willful participants in joint activity with Defendants CONAHAN and CIAVARELLA and are therefore acting "under color state law", for the purposes of actions that give rise to this lawsuit, within the meaning of 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & CO.*, 398 U.S. 144 (1970).

109.   All Defendants, while acting under the color of state law, unlawfully, and/or recklessly, willfully, wantonly and/or in a manner that shocks the conscience and/or with deliberate and/or reckless indifference to the Juvenile Plaintiffs' rights violated 42 U.S.C. § 1983 and deprived said Plaintiffs their procedural and substantive due process rights as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, that these Defendants without lawful basis caused the aforementioned injures and damages to the Plaintiffs as described herein, in violation of their aforesaid guaranteed rights as follows:

   (a)   Defendants conspired to adjudicate Juvenile Plaintiffs as delinquent without assistance of counsel and without knowing and intelligent waiver of the right to counsel;

   (b)   Defendants conspired to adjudicate Juvenile Plaintiffs as delinquents

without the  due process of law;

(c)    Defendants conspired to violate Juvenile Plaintiffs' constitutional

right to appear before impartial tribunal and to have an opportunity to

be heard, *see Caperton, et al. v. A.T. Massey Coal Company, Inc., et*

*al.,* 2009 U.S. LEXIS 4157 (2009);

(d)    Defendants conspired and improperly ordered Juvenile Plaintiffs to

detention centers owned and/or operated by Defendants PACC and/or

WPACC;

(e)    Defendants conspired to cause the juvenile probation departments to

recommend detention, where detention is not an appropriate

disposition;

(f)    Defendants conspired to negotiate and collect monies for the use of

detention centers owned and/or operated by Defendants PACC and/or

WPACC;

(g)    Defendants conspired and failed to provide Juvenile Plaintiffs an

adjudication of delinquency by a fair and impartial judge, free from

conflict of interest and personal financial gain, *see Caperton, et al. v.*

*A.T. Massey Coal Company, Inc., et al.,* 2009 U.S. LEXIS 4157

(2009);

(h)    Defendants conspired and failed to provide Juvenile Plaintiffs an

adjudication of an appropriate sentence by a fair and impartial judge,

free from conflict of interest and personal financial gain, s*ee*

*Caperton, et al. v. A.T. Massey Coal Company, Inc., et al.,* 2009 U.S.

LEXIS 4157 (2009);

(i)    Defendants conspired and failed to impose punishment equal to, but

not exceeding, the alleged violations of Juvenile Plaintiffs;

(j)    Defendants conspired and failed to provide to Juvenile Plaintiffs

probation officers who would ensure juveniles were not placed in a

detention facility when placement was not recommended;

(k)    Defendants conspired and failed to provide to Juvenile Plaintiffs

probation officers who would ensure or advocate that their

recommendations were followed;

(l)    Defendants conspired and failed to provide Juvenile Plaintiffs timely

psychological evaluations thereby increasing the length of time they

were lodged at PACC and/or WPACC; and

(m)    Defendants conspired to adjudicate Juvenile Plaintiffs as delinquent

through involuntary guilty pleas on behalf of the Juvenile Plaintiffs

without knowing, intelligent, and voluntary plea of guilty and without

the Juvenile Plaintiffs being informed of the rights the Juvenile

Plaintiffs have given up as a consequence of the guilty plea.

110.   At all times relevant hereto, Defendants CONAHAN and

CIAVARELLA were involved in court proceedings without recusing themselves

from matters in which they had a material conflict of interest, and without ever

disclosing to parties and entities involved their conflict of interest and their

financial relationships with Defendants PACC, WPACC, POWELL and

ZAPPALA.  S*ee Caperton, et al. v. A.T. Massey Coal Company, Inc., et al.,* 2009

U.S. LEXIS 4157 (2009).

111.   At all times relevant hereto, Defendants CONAHAN and

CIAVARELLA are not absolutely immune for out of court actions, signed and

unsigned agreements, and conspiracies, which were taken in their administrative

capacities.  Those actions, agreements and conspiracies were designed to, and did

in fact, deprive the Juvenile Plaintiffs of their constitutional rights unlawfully,

and/or recklessly, willfully, wantonly and/or in a manner that shocks the

conscience and/or with deliberate and/or reckless indifference.  These

administrative acts include, but are not limited to:

(a)    the adoption of procedures for a Specialty Court;

(b)    the signing of the Placement Guarantee Agreement and other

agreements;

(c)     actions removing funding for the Luzerne County juvenile detention

facility;

(d)     pressuring the probation officers to recommend detention; and/or

(e)     creating a backlog of psychological evaluations thereby increasing the

length of time plaintiffs were lodged at PACC and/or WPACC.

112.    At all times relevant hereto, either Defendant BRULO or Michael

Loughney was present or had representation from their office present during all

juvenile court proceedings.  Upon information and belief, Defendant BRULO

and/or Michael Loughney recklessly, willfully, wantonly and/or in a manner that

shocks the conscience and/or with deliberate and/or reckless indifference

succumbed to pressure from Defendant CIAVARELLA and CONAHAN to

recommend and ensure that juveniles were placed in juvenile detention facilities

and were not released.

113.    At all times relevant hereto, Defendants knew or should have known

and acted with deliberate indifference to the fact that the actions of Defendants

CONAHAN and CIAVARELLA created the potential for an increased number of

juveniles to be sent to PACC and/or WPACC, thus ensuring high occupancy rates

and increasing the revenues of PACC and/or WPACC and thereby increasing the

return on investment and/or other remuneration to Defendants POWELL,

ZAPPALA and others.

49

114.    By reason of the aforesaid actions and inactions of the above Named Defendants, Juvenile Plaintiffs suffered substantial injuries, damages, and special damages not yet fully ascertainable, including but not limited to: physical and personal injuries, pecuniary harm and damages, emotional distress, mental anguish and/or loss of the value of constitutional rights to Plaintiffs some or all of which may be permanent in nature.

WHEREFORE, Juvenile Plaintiffs demand judgment against Defendants POWELL, CONAHAN, CIAVARELLA, PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA, MAYS, PLG, BRULO, and VITA, individually, jointly, and/or jointly and severally for compensatory damages and for punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief as this Honorable Court may deem appropriate.

## COUNT IV

### DEPRIVATION OF RIGHTS PURSUANT TO THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

### Parent Plaintiffs v. All Defendants, except Defendants COUNTY OF LUZERNE and ANDROMEDA HOUSE

115.    Plaintiffs incorporate by reference herein all preceding and succeeding

paragraphs as if fully set forth herein.

116.   At all times relevant hereto, Defendants CONAHAN and CIAVARELLA were "persons" within the meaning of 42 U.S.C. § 1983.

117.  At all times relevant hereto, Defendants CONAHAN and CIAVARELLA were acting "under color of state law" pursuant to 42 U.S.C. § 1983.

118.   At all times relevant hereto, Defendant BRULO was a "person" within the meaning of 42 U.S.C. § 1983.

119.   At all times relevant hereto, Defendant BRULO was acting "under color of state law" pursuant to 42 U.S.C. §1983.

120.   At all times relevant hereto, Defendant VITA was a "person" within the meaning of 42 U.S.C. § 1983.

121.   At all times relevant hereto, Defendant VITA, a private psychologist with an exclusive contract with the Luzerne County Department of Probation Services to provide psychological services, was acting "under the color of state law", for the actions that give rise to this lawsuit, pursuant to 42 U.S.C. § 1983. *See West v. Atkins*, 487 U.S. 42 (1988).

122.   At all times relevant hereto, Defendants POWELL, PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA

CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA,

MAYS, and PLG, were "persons" within the meaning of 42 U.S.C. § 1983.

123.   At all times relevant hereto, Defendants POWELL, PACC, WPACC,

MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA

CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA,

MAYS, and PLG, were willful participants in joint activity with Defendants

CONAHAN and CIAVARELLA and are therefore acting "under color state law",

for the actions that give rise to this lawsuit, within the meaning of 42 U.S.C. §

1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

124.   All Defendants, while acting under the color of state law, unlawfully,

and/or recklessly, willfully, wantonly and/or in a manner that shocks the

conscience, and/or with deliberate and/or reckless indifference to the Juvenile

Plaintiffs and Parent Plaintiffs' rights violated 42 U.S.C. § 1983 and deprived

Juvenile Plaintiffs and Parent Plaintiffs of their due process rights as guaranteed

under the Fourteenth Amendments to the United States Constitution, in that these

Defendants without lawful basis caused the aforementioned injures and damages to

the Juvenile Plaintiffs and Parent Plaintiffs as described herein, in violation of their

aforesaid guaranteed rights as follows:

(a)     Defendants conspired to adjudicate Juvenile Plaintiffs as delinquent without assistance of counsel and without knowing and intelligent waiver of the right to counsel;

(b)     Defendants conspired to adjudicate Juvenile Plaintiffs as delinquents without the due process of law;

(c)     Defendants conspired to violate Juvenile Plaintiffs' constitutional right to appear before impartial tribunal and to have an opportunity to be heard; s*ee Caperton, et al. v. A.T. Massey Coal Company, Inc., et al.,* 2009 U.S. LEXIS 4157 (2009).

(d)     Defendants conspired and improperly ordered Juvenile Plaintiffs to detention centers  owned and/or operated by Defendants PACC and/or WPACC;

(e)     Defendants conspired to cause the juvenile probation departments to recommend detention, where detention is not an appropriate disposition;

(f)     Defendants conspired to negotiate and collect monies for the use of detention centers owned and/or operated by Defendants PACC and/or WPACC;

(g)     Defendants conspired and failed to provide Juvenile Plaintiffs an adjudication of delinquency by a fair and impartial judge, free from

conflict of interest and personal financial gain; s*ee Caperton, et al. v. A.T. Massey Coal Company, Inc., et al.,* 2009 U.S. LEXIS 4157 (2009).

(h)     Defendants conspired and failed to provide Juvenile Plaintiffs an adjudication of an appropriate sentence by a fair and impartial judge, free from conflict of interest and personal financial gain; s*ee Caperton, et al. v. A.T. Massey Coal Company, Inc., et al.,* 2009 U.S. LEXIS 4157 (2009).

(i)     Defendants conspired and failed to impose punishment equal to, but not exceeding, the alleged violations of Juvenile Plaintiffs;

(j)     Defendants conspired and failed to provide to Juvenile Plaintiffs probation officers who would ensure juveniles were not placed in a detention facility when placement was not recommended;

(k)     Defendants conspired and failed to provide to Juvenile Plaintiffs probation officers who would ensure or advocate that their recommendations were followed;

(l)     Defendants conspired and failed to provide Juvenile Plaintiffs timely psychological evaluations thereby increasing the length of time they were lodged at PACC and/or WPACC; and

(m)     Defendants conspired to adjudicate Juvenile Plaintiffs as delinquent through involuntary guilty pleas on behalf of the Juvenile Plaintiffs without knowing, intelligent, and voluntary plea of guilty and without the Juvenile Plaintiffs being informed of the rights the Juvenile Plaintiffs have given up as a consequence of the guilty plea.

125.    At all times relevant hereto, Defendants CONAHAN and CIAVARELLA are not absolutely immune out of court actions, signed and unsigned agreements, and conspiracies, were taken in their administrative capacities.  Those actions, agreements and conspiracies were designed to, and did in fact, deprive the Juvenile Plaintiffs of their constitutional rights unlawfully, and/or recklessly, willfully, wantonly and/or in a manner that shocks the conscience, and/or with deliberate and/or reckless indifference.  These administrative acts include, but are not limited to:

(a)     the adoption of procedures for a Specialty Court;

(b)     the signing of the Placement Guarantee Agreement and other agreements;

(c)     actions removing funding for the Luzerne County juvenile detention facility;

(d)     pressuring the probation officers to recommend detention; and/or

(e)     creating a backlog of psychological evaluations thereby increasing

the length of time plaintiffs were lodged at PACC and/or WPACC.

126.   By reason of the aforesaid actions and inactions of Defendants, Parent Plaintiffs suffered substantial injuries, damages and special damages not yet fully ascertainable including but not limited to, pecuniary harm, deprivation of property, and incurred damages for the placement, housing and lodging of their children at the juvenile detention facilities owned by Defendants PACC and/or WPACC.

WHEREFORE, Parent Plaintiffs demand judgment against Defendants POWELL, CONAHAN, CIAVARELLA, PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA, MAYS, PLG, BRULO, and VITA, individually, jointly, and/or jointly and severally for compensatory damages and for punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief as this Honorable Court may deem appropriate.

## COUNT V

### DEPRIVATION OF SUBSTANTIVE DUE PROCESS RIGHTS PURSUANT TO THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

#### Parent Plaintiffs v. All Defendants, except Defendants COUNTY OF LUZERNE and ANDROMEDA HOUSE

127.  Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

128.  At all times relevant hereto, Defendants CONAHAN and CIAVARELLA were "persons" within the meaning of 42 U.S.C. § 1983.

129.  At all times relevant hereto, Defendants CONAHAN and CIAVARELLA were acting "under color of state law" pursuant to 42 U.S.C. § 1983.

130.  At all times relevant hereto, Defendant BRULO was a "person" within the meaning of 42 U.S.C. § 1983.

131.  At all times relevant hereto, Defendant BRULO was acting "under color of state law" pursuant to 42 U.S.C. §1983.

132.  At all times relevant hereto, Defendant VITA was a "person" within the meaning of 42 U.S.C. § 1983.

133.  At all times relevant hereto, Defendant VITA, a private psychologist with an exclusive contract with the Luzerne County Department of Probation Services to provide psychological services, was acting "under the color of state

law", for actions that give rise to this lawsuit, pursuant to 42 U.S.C. § 1983.  *See*

*West v. Atkins*, 487 U.S. 42 (1988).

134.   At all times relevant hereto, Defendants POWELL, PACC, WPACC,

MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA

CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA,

MAYS, and PLG, were "persons" within the meaning of 42 U.S.C. § 1983.

135.   At all times relevant hereto, Defendants POWELL, PACC, WPACC,

MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA

CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA,

MAYS, and PLG, were willful participants in joint activity with Defendants

CONAHAN and CIAVARELLA and are therefore acting "under color state law",

for actions that give rise to this lawsuit, within the meaning of 42 U.S.C. § 1983.

*See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

136.   All Defendants, while acting under the color of state law, unlawfully,

and/or recklessly, willfully, wantonly and/or in a manner that shocks the

conscience, and/or with deliberate and/or reckless indifference to the Parent

Plaintiffs' rights violated 42 U.S.C. § 1983 and deprived Parent Plaintiffs of their

substantive due process rights as guaranteed under the Fourteenth Amendments to

the United States Constitution in that these Defendants without lawful basis caused

the aforementioned injures and damages to the Parent Plaintiffs as described

herein, in violation of their aforesaid guaranteed rights caused Parent Plaintiffs to be deprived of their substantive due process right to familial integrity as follows:

(a)     Defendants conspired to adjudicate Juvenile Plaintiffs as delinquent without assistance of counsel and without knowing and intelligent waiver of the right to counsel;

(b)     Defendants conspired to adjudicate Juvenile Plaintiffs as delinquents without the due process of law;

(c)     Defendants conspired to violate Juvenile Plaintiffs' constitutional right to appear  before impartial tribunal and to have an opportunity to be heard, s*ee Caperton, et al. v. A.T. Massey Coal Company, Inc., et al.,* 2009 U.S. LEXIS 4157 (2009);

(d)     Defendants conspired and improperly ordered Juvenile Plaintiffs to detention centers owned and/or operated by Defendants PACC and/or WPACC;

(e)     Defendants conspired to cause the Juvenile Plaintiffs departments to recommend detention, where detention is not an appropriate disposition;

(f)     Defendants conspired to negotiate and collect monies for the use of detention centers owned and/or operated by Defendants PACC and/or WPACC;

(g)     Defendants conspired and failed to provide Juvenile Plaintiffs an

adjudication of delinquency by a fair and impartial judge, free from

conflict of interest and personal financial gain, s*ee Caperton, et al. v.*

*A.T. Massey Coal Company, Inc., et al.,* 2009 U.S. LEXIS 4157

(2009);

(h)     Defendants conspired and failed to provide Juvenile Plaintiffs an

adjudication of an appropriate sentence by a fair and impartial judge,

free from conflict of interest and personal financial gain, s*ee*

*Caperton, et al. v. A.T. Massey Coal Company, Inc., et al.,* 2009 U.S.

LEXIS 4157 (2009);

(i)      Defendants conspired and failed to impose punishment equal to, but

not exceeding, the alleged violations of Juvenile Plaintiffs;

(j)      Defendants conspired and failed to provide to Juvenile Plaintiffs

probation officers who would ensure juveniles were not placed in a

detention facility when placement was not recommended;

(k)     Defendants conspired and failed to provide to Juvenile Plaintiffs

probation officers who would ensure or advocate that their

recommendations were followed;

(l)      Defendants conspired and failed to provide Juvenile Plaintiffs timely

psychological evaluations thereby increasing the length of time they were lodged at PACC and/or WPACC; and

(m)    Defendants conspired to adjudicate Juvenile Plaintiffs as delinquent through involuntary guilty pleas on behalf of the Juvenile Plaintiffs without knowing, intelligent, and voluntary plea of guilty and without the Juvenile Plaintiffs being informed of the rights the Juvenile Plaintiffs have given up as a consequence of the guilty plea.

137.    At all times relevant hereto, Defendants CONAHAN and CIAVARELLA are not absolutely immune for out of court actions, signed and unsigned agreements, and conspiracies, which were taken in their administrative capacities.  Those actions, agreements and conspiracies were designed to, and did in fact, deprive the Juvenile Plaintiffs of their constitutional rights unlawfully, and/or recklessly, willfully, wantonly and/or in a manner that shocks the conscience, and/or with deliberate and/or reckless indifference.  These administrative acts include, but are not limited to:

(a)    the adoption of procedures for a Specialty Court;

(b)    the signing of the Placement Guarantee Agreement and other agreements;

(c)    actions removing funding for the Luzerne County juvenile detention facility;

(d)    pressuring the probation officers to recommend detention; and/or

(e)    creating a backlog of psychological evaluations thereby increasing the length of time plaintiffs were lodged at PACC and/or WPACC.

138.   At all times relevant hereto, Defendants knew or should have known and acted with deliberate indifference to the fact that the actions of Defendants CONAHAN and CIAVARELLA created the potential for an increased number of juveniles to be sent to PACC and/or WPACC, thus ensuring high occupancy rates and increasing the revenues of PACC and/or WPACC and thereby increasing the return on investment and/or other remuneration to Defendants POWELL, ZAPPALA, and others.

139.   By reason of the aforesaid actions and inactions of Defendants, Parent Plaintiffs suffered substantial injuries, damages and special damages not yet fully ascertainable, including but no limited to: physical and personal injuries, emotional distress and/or mental anguish, some or all of which may be permanent in nature.

WHEREFORE, Parent Plaintiffs demand judgment against Defendants POWELL, CONAHAN, CIAVARELLA, PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA, MAYS, PLG, BRULO, and VITA, individually, jointly, and/or jointly and severally for

compensatory damages and for punitive damages in an amount in excess of One

Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of

suit, attorneys' fees and such other relief as this Honorable Court may deem

appropriate.

## COUNT VI

**DEPRIVATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS**
**RIGHTS PURSUANT TO THE CIVIL RIGHTS ACT OF 1871,**
**42 U.S.C. § 1983**

### All Plaintiffs v. Defendant COUNTY OF LUZERNE

140.    Plaintiffs incorporate by reference herein all preceding and succeeding

paragraphs as if fully set forth herein.

141.    At all times relevant hereto, Defendant COUNTY OF LUZERNE was

a "person" within the meaning of 42 U.S.C. § 1983. *See Monell v. Department of*

*Social Services of City of New York*, 436 U.S. 658 (1978).

142.    In Defendant CONAHAN's taking of official actions regarding the

funding of the Luzerne County Juvenile Detention Facility, Defendant CONAHAN

was acting as an employee and/or agent and/or other representative of the

COUNTY OF LUZERNE.

143.    At all times relevant hereto, Defendant CONAHAN was the person

with final authority, in the COUNTY OF LUZERNE, regarding taking official

action regarding the funding of the Luzerne County Juvenile Detention Facility.

Therefore, these actions represent the "policy" of the COUNTY OF LUZERNE and the COUNTY OF LUZERNE is liable under 42 U.S.C. § 1983 for these actions. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

144.   Defendant CONAHAN took these actions as part of a larger conspiracy to violate All Plaintiffs' Constitutional Rights, as set forth herein.

145.   Defendant CONAHAN, a person with final authority for the COUNTY OF LUZERNE, acted in concert with and/or conspired with Defendants POWELL, CIAVARELLA, PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA, MAYS, PLG, BRULO, and VITA.

146.   As a result, Defendant COUNTY OF LUZERNE is liable for the actions of Defendants POWELL, CIAVARELLA, PACC, WPACC, MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA, MAYS, PLG, BRULO, and VITA due to their conspiracy.

147.   At all times relevant hereto, Defendant BRULO, and/or Michael Loughney, were the individuals with final authority, for the COUNTY OF LUZERNE, regarding juvenile probation recommendations made by the County Department of Probation Therefore, these action represent the "policy" of the

COUNTY OF LUZERNE and the COUNTY OF LUZERNE is liable under 42

U.S.C. § 1983 for these actions.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469

(1986).

148.   Defendant BRULO and/or Michael Loughney took these actions as

part of a larger conspiracy to violate All Plaintiffs' Constitutional Rights, as set

forth herein.

149.   Defendant BRULO and Michael Loughney, persons with final

authority for the COUNTY OF LUZERNE, acted in concert with and/or conspired

with Defendants POWELL, CONAHAN, CIAVARELLA, PACC, WPACC,

MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA

CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA,

MAYS, PLG, and VITA.

150.   As a result, Defendant COUNTY OF LUZERNE is liable for the

actions of Defendants POWELL, CONAHAN, CIAVARELLA, PACC, WPACC,

MERICLE, MERICLE CONSTRUCTION, ZAPPALA, PINNACLE, BARBARA

CONAHAN, CYNTHIA CIAVARELLA, BEVERAGE, VISION, MATTA,

MAYS, PLG, and VITA due to their conspiracy.

151.   The persons with final authority, including but not limited to

Defendant BRULO, Michael Loughney and Defendant CONAHAN, for the

COUNTY OF LUZERNE regarding the juvenile justice system were deliberately

indifferent to the constitutional violations that were taking place within the
Luzerne County Juvenile Justice System.

152.    As a result, the COUNTY OF LUZERNE is liable for the deliberate
indifference of the persons with final authority over the Luzerne County Juvenile
Justice System.

153.    Defendant CIAVARELLA instituted a custom, policy and practice in
the Luzerne County Juvenile Court from 2003 to 2008 of denying Juvenile
Plaintiffs their constitutional rights, including the right to counsel, the right against
self-incrimination, and the right to be advised of the consequences of waiving
counsel or entering a guilty plea such that waivers and pleas are knowing,
intelligent, and voluntary, as required by the due process provisions of the United
States Constitution.

154.    These practices in the Luzerne County Juvenile Court, which deprived
Juvenile Plaintiffs of their constitutional rights, were "permanent and well settled"
as to have the "force of law." *Monell v. Department of Social Services of New
York City,* 436 U.S. 658, 691 (1978).

155.    The COUNTY OF LUZERNE's routine and persistent noncompliance
with controlling United States Supreme Court case law, Pennsylvania statutory
law, and Pennsylvania court rules over a period of five years amounted to a custom

or policy of the county for purposes of § 1983 liability.  *Anela v. Wildwood,* 790 F.2d 1063, 1067 (3d. Cir. 1986).

WHEREFORE, All Plaintiffs demand judgment against Defendant COUNTY OF LUZERNE for compensatory damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief as this Honorable Court may deem appropriate.

## COUNT VII

### DEPRIVATION OF RIGHTS PURSUANT TO THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983

### Plaintiff SAMANTHA HUMANIK v. Defendant ANDROMEDA HOUSE

156.   Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

157.   At all times relevant hereto, Defendant ANDROMEDA HOUSE was a "person" and a "state actor" within the meaning of 42 U.S.C. § 1983.

158.   Defendant ANDROMEDA HOUSE wrongly kept Plaintiff Samantha Humanik in custody and deprived her of her liberty and freedom against her will and without a review and subjected her to an unnecessary medical regimen against her will and subjected her to cruel and unusual punishment.

159.   Defendant ANDROMEDA HOUSE's aforesaid conduct, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully,

maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C.
§ 1983 and deprived Plaintiff Samantha Humanik of her rights to both procedural
and substantive due process and right to be free of cruel and unusual punishment as
guaranteed under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the
United States Constitution, similar provisions of the Pennsylvania Constitution,
Federal Law, State Law and/or local law without lawful basis, thus causing injuries
and damages to Plaintiff Samantha Humanik.  Defendant ANDROMEDA
HOUSE's conduct was improperly motivated.

WHEREFORE, Plaintiff Samantha Humanik demands judgment against
Defendant ANDROMEDA House, individually for compensatory and punitive
damages in the amount in excess of One Hundred and Fifty Thousand dollars
($150,000.00) together with interest, costs of suit, attorneys' fees and such other
relief as this Honorable Court may deem appropriate.

## COUNT VIII

## CIVIL CONSPIRACY

**All Plaintiffs v. Defendants PACC, WPACC, POWELL, ZAPPALA,
MERICLE,  MERICLE CONSTRUCTION, MAYS, CONAHAN,
CIAVARELLA, BARBARA CONAHAN and CYNTHIA CIAVARELLA**

160.   Plaintiffs incorporate by reference herein all preceding and succeeding
paragraphs as if fully set forth herein.

161.   At all times relevant hereto, Defendants PACC, WPACC, POWELL, ZAPPALA, MERICLE, MERICLE CONSTRUCTION, MAYS, CONAHAN, CIAVARELLA, BARBARA CONAHAN and CYNTHIA CIAVARELLA conspired to commit unlawful acts, including but not limited to providing kick backs and/or bribes to Defendants CONAHAN and CIAVARELLA.

162.   Defendants PACC, WPACC, POWELL, ZAPPALA, MERICLE, MERICLE CONSTRUCTION, MAYS, CONAHAN, CIAVARELLA, BARBARA CONAHAN and CYNTHIA CIAVARELLA committed overt acts, including but not limited to, providing kick backs and/or bribes to Defendants CONAHAN and CIAVARELLA.  In addition, Said Defendants committed the overt acts in furtherance of the common purpose of the conspiracy, which are more fully described in paragraphs 81 and 88.

163.   As a result of Defendants PACC, WPACC, POWELL, ZAPPALA, MERICLE, MERICLE CORPORATION, MAYS, CONAHAN, CIAVARELLA, BARBARA CONAHAN and CYNTHIA CIAVARELLA's conspiracy to commit said unlawful acts, the said Defendants knew or should have known that the natural consequence of said unlawful acts would result in Juvenile Plaintiffs being unlawfully detained at either PACC or WPACC and suffering actual legal damages as specifically set forth in paragraph 114 in addition to the unlawful detention.

164.   As a result of Defendants PACC, WPACC, POWELL, ZAPPALA, MERICLE, MERICLE CORPORATION, MAYS, CONAHAN, CIAVARELLA, BARBARA CONAHAN and CYNTHIA CIAVARELLA's conspiracy to commit said unlawful acts, said Defendants knew or should have known that the natural consequence of said unlawful acts would result in Parent Plaintiffs loss of property rights and deprivation of right to familial integrity and suffering actual legal damages as specifically set forth in paragraphs 95, 96, 126 and 139.

WHEREFORE, All Plaintiffs demand judgment against Defendants PACC, WPACC, POWELL, ZAPPALA, MERICLE, MERICLE CORPORATION, MAYS, CONAHAN, CIAVARELLA, BARBARA CONAHAN and CYNTHIA CIAVARELLA, for compensatory and punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief as this Honorable Court may deem appropriate.

## COUNT IX

## FALSE IMPRISONMENT

**Juvenile Plaintiffs v. Defendants PACC, WPACC, POWELL, ZAPPALA, and MAYS**

165.   Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

166.   At all times relevant hereto, Juvenile Plaintiffs were detained at

Defendants PACC and/or WPACC.

167.    At all times relevant hereto, Juvenile Plaintiffs were aware they were detained while at Defendant PACC and/or WPACC.

168.    At all times relevant hereto, Defendants PACC, WPACC, POWELL, ZAPPALA, and MAYS conspired to facilitate the detention of Juvenile Plaintiffs at Defendants PACC and/or WPACC by paying kickbacks to Defendants CIAVARELLA and CONAHAN.

169.    At all times relevant hereto, the detention of Juvenile Plaintiffs by Defendants PACC, WPACC, POWELL, ZAPPALA, and MAYS was unlawful.

170.    As a result of their involvement in the conspiracy, specifically set forth in paragraphs 81 and 88, Said Defendants knew or should have known that the Orders issued by Defendant CIAVARELLA to detain Juvenile Plaintiffs were procured by illegal means, thereby eliminating the probable cause necessary for a lawful detention and resulting in the unlawful detention of Juvenile Plaintiffs.  *See Grohmann v. Kirschman*, 168 Pa. 189, 32 A. 32 (Pa. 1895), *see also Fillman v. Ryon*, 168 Pa. 484, 32 A. 89 (1895).

171.    As a result of Defendants PACC, WPACC, POWELL, ZAPPALA, and MAYS' conspiracy that lead to false imprisonment, the said Defendants knew or should have known that the natural consequence of false imprisonment would

result in Juvenile Plaintiffs being unlawfully detained at either PACC or WPACC and suffering actual legal damages as specifically set forth in paragraph 114, in addition to the unlawful detention.

WHEREFORE, All Plaintiffs demand judgment against Defendants PACC, WPACC, POWELL, ZAPPALA, and MAYS, for compensatory and punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief as this Honorable Court may deem appropriate.

## COUNT X

### STATE ACTION FOR FALSE IMPRISONMENT, UNLAWFUL RESTRAINT, MEDICAL MALPRACTICE AND BATTERY

### Plaintiff Samantha Humanik v. Defendant ANDROMEDA HOUSE

172.  Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

173.  By depriving Plaintiff Samantha Humanik of her freedom in the manner set forth herein, Defendant ANDROMEDA HOUSE, through its agents, servants and employees committed the torts of false imprisonment, unlawful restraint and battery.

174.   By requiring Plaintiff Samantha Humanik to take mood-altering medicine and herein set forth Defendant ANDROMEDA HOUSE committed the torts of battery and medical malpractice.

WHEREFORE, Plaintiff Samantha Humanik demands judgment against Defendant ANDROMEDA HOUSE, individually for compensatory and punitive damages in the amount in excess of One Hundred Fifty Thousand dollars ($150,000.00) together with interest, costs of suit, attorneys' fees and such other relief as this Honorable Court may deem appropriate.

CAROSELLI BEACHLER MCTIERNAN & CONBOY

By: /s  William R. Caroselli
WILLIAM R. CAROSELLI, ESQUIRE
20 STANWIX STREET, 7TH FLOOR
PITTSBURGH, PA 19522
T: (412) 391-9860
F: (412) 391-7453

DAVID S. SENOFF, ESQUIRE
RICHARD C. DEFRANCESCO, ESQUIRE
LAUREN C. FANTINI, ESQUIRE
CAROSELLI BEACHLER MCTIERNAN & CONBOY
1500 WALNUT STREET, SUITE 507
PHILADELPHIA, PA 19102
T: (215) 609-1350
F: (215) 609-1351

MICHAEL J. CEFALO, ESQUIRE
JAMES J. ALBERT, ESQUIRE
CEFALO & ASSOCIATES
309 WYOMING AVENUE
WEST PITTSTON, PA 18643
T: (570) 655-5555
F: (570) 655-5100

DANIEL E. KLEINER, ESQUIRE
METZGER & KLEINER
TWO PENN CENTER, SUITE 1204
PHILADELPHIA, PA 19102
T: (215) 567-6616

RICHARD G. FREEMAN, ESQUIRE
924 CHERRY STREET, 4TH FLOOR
PHILADELPHIA, PA 19107
T: (215) 574-8818

*ATTORNEYS FOR PLAINTIFFS*

Date:  JUNE 25, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FLORENCE WALLACE, ET AL. : **CONSOLIDATED TO:**
          :
  Plaintiffs,     : **CIVIL ACTION NO. 3:09-cv-0286**
          :
  v.       :
          : (JUDGE CAPUTO)
ROBERT J. POWELL, ET AL. :
          :
  Defendants.    :
………………………………………………………………………………

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM CONWAY, ET AL. :
          :
  Plaintiffs,     : CIVIL ACTION NO. 3:09-cv-0291
          :
  v.       :
          : (JUDGE CAPUTO)
JUDGE MICHAEL T. CONAHAN, :
ET AL.        :
          :
  Defendants.    :
………………………………………………………………………………

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

H.T., ET AL.      :
          :
  Plaintiffs,     : CIVIL ACTION NO. 3:09-cv-0357
          :
  v.       :
          : (JUDGE CAPUTO)
MARK A. CIAVARELLA, ET AL. :
          :

Defendants.                    :
……………………………………………………………………………………

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMANTHA HUMANIK,              :
                               :
        Plaintiffs,            :        CIVIL ACTION NO. 3:09-cv-0630
                               :
        v.                     :
                               :        (JUDGE CAPUTO)
MARK A. CIAVARELLA, JR.,       :
ET AL.                         :
                               :
        Defendants.            :
……………………………………………………………………………………

### <u>CERTIFICATION OF SERVICE</u>

I, David S. Senoff, Esquire do hereby certify that a true and correct

copy of the Individual Plaintiffs' Master Long Form Complaint was filed

electronically on June 25, 2009, and is available for viewing and

downloading from the ECF system for the United States District Court for

the Middle District of Pennsylvania.  Plaintiffs also mailed a copy of the

Individual Plaintiffs' Master Long Form Complaint via First-Class United

States Mail to:

                    Mark A. Ciavarella
                    585 Rutter Ave
                    Kingston, PA 18704

Robert E. Matta, Esquire
21 Radio Station Road
Shenadoah, PA 17976


County of Luzerne
200 North River Street
Wilkes-Barre, PA 18711


CAROSELLI BEACHLER MCTIERNAN
& CONBOY

By: /s  David S. Senoff
DAVID S. SENOFF, ESQUIRE
1500 WALNUT STREET, SUITE 507
PHILADELPHIA, PA 19102
T: (215) 609-1350
F: (215) 609-1351

*Attorney for Plaintiffs*