IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FLORENCE WALLACE, ET AL.          :          CONSOLIDATED TO:
                                  :
        Plaintiffs,               :          CIVIL ACTION NO. 3:09-cv-0286
v.                                :
                                  :          (JUDGE CAPTUO)
ROBERT J. POWELL, ET AL.          :
                                  :
        Defendants,               :

**FILED**
**SCRANTON**

JUL 2 7 2009

PER _____
DEPUTY CLERK

......................................................................................

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CONWAY, ET AL.            :
                                  :          CIVIL ACTION NO. 3:09-cv-0291
        Plaintiffs,               :
v.                                :          (JUDGE CAPUTO)
                                  :
JUDGE MICHAEL T. CONAHAN,         :
ET AL.                            :
                                  :
        Defendants,               :

......................................................................................

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

H.T., ET AL.                      :
                                  :
        Plaintiffs,               :          NO.  3: 09-CV-00357
vs.                               :
                                  :          (JUDGE CAPUTO)
MARK A. CIAVARELLA, JR., et al. :
                                  :
        Defendants                :

......................................................................................

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMANTHA HUMANIK,       :

                          :     CIVIL ACTION NO. 3:09-cv-0630

     Plaintiffs,      :

                          :

v.                      :     (JUDGE CAPUTO)

                          :

MARK A. CIAVARELLA, JR.,   :
ET AL.                 :

                          :

     Defendants

...................................................................................................

## MEMORANDUM OF LAW OF THE DEFENDANT DEFENDANT MARK A. CIAVARELLA, JR. IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

## I.   PROCEDURAL HISTORY

By an amendment to the original Case Management Order entered in these cases on May 12, 2009, the Court directed the Plaintiffs in the H.T., et al., v. Mark A. Ciavarella, Jr., et al., Civil Action No. 3:09-cv-0357 and William Conway, et al. v. Judge Michael T. Conahan, et al., Civil Action No. 3:09-cv-0291, to file a Consolidated Class Action Complaint by June 25, 2009.  The Plaintiffs in Florence Wallace, et al., v. Robert J. Powell, et al., Civil Action No. 3:09-cv-0286 and Samantha Humanik v. Mark A. Ciavarella, Jr., et al., Civil Action No. 3:09-cv-0630 to file a Master Complaint by June 25, 2009.  The Court further directed

motions to dismiss to be filed on or before July 27, 2009.  The Defendant Mark A.

Ciavarella, Jr. now moves to dismiss all of the Complaints filed by the Plaintiffs.

This brief is filed in support of Mark A. Ciavarella, Jr.'s Motions to Dismiss.

II.   **STATEMENT OF FACTS**

These Complaints have been filed on behalf of numerous minor individuals

and their families who were adjudicated as juveniles by Mark A. Ciavarella, Jr.,

spanning the years between 2003 and 2008 assert claims brought under 42 U.S.C.

§1983 for the redress of rights secured by the United States Constitution and under

18 U.S.C. §1964 for civil violations of the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §1961-1868 ("RICO").

The essence of the Plaintiffs' Complaints are that Ciavarella had a financial

interest in placing youth in detention[1] and that the adjudication of every juvenile

found delinquent or referred for placement by him from February of 2003 through

May of 2008 was tainted.

The Complaints allege that each adjudication which occurred during these

years as well as cases which had been adjudicated prior to February 2003, but

which resulted in dispositions or placements subsequent to February 2003, also

_____

[1] Although not germane for this Motion, Ciavarella denies that any adjudication of any juvenile was entered on a "*quid pro quo*" basis.

3

violated each minor Plaintiff's constitutional right to be adjudicated by an impartial tribunal.

Plaintiffs have alleged that among the constitutional rights violated include the right to appear before an impartial tribunal, the right to counsel and the right to be advised of the consequences of waiving counsel or entering a guilty plea such that waivers and pleas are knowing, intelligent, and voluntary consistent with due process.

All of the alleged unconstitutional treatment of minor Plaintiffs listed in the Complaints were undertaken by Ciavarella in his capacity as Judge of the Court of Common Pleas of Luzerne County.

In these Complaints, the facts of specific juveniles and the alleged circumstances of each juvenile's adjudication and subsequent detention are outlined.[2]  Scrutiny of these Complaints establish that in every juvenile's case, the claim against Ciavarella is grounded upon the alleged conduct of Ciavarella **while acting and deciding upon the minor plaintiff's case in his capacity as a judge.** The remaining factual allegations of the Complaints constitute assertions associated with the alleged financial transactions concerning the construction of

---

[2] Defendant Ciavarella does not adopt these allegations but recognizes that the Court must assume them to be provable at trial for purposes of the instant Motion.

two juvenile detention centers.

Consideration of all of the allegations of the Complaints, read in the light most favorable to the Plaintiffs, demonstrate in categorical fashion that all of the Plaintiffs' claims are based upon the fact that each Plaintiff was adjudicated and, in most if not all instances, placed in detention by Ciavarella.  The one fact that permits each juvenile Plaintiff to bring a claim rests solely on the fact that he or she was adjudicated by Ciavarella.  This fact is undisputed, material to Ciavarella's immunity defense and case dispositive.  Because Ciavarella's actions in this regard are entitled to absolute judicial immunity, the Plaintiffs' claims are fatally flawed and the Complaints must be dismissed in their entirety.

III.   **STATEMENT OF THE QUESTION PRESENTED**

> **WHETHER PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY, BOTH WITH RESPECT TO THE CLAIMS BROUGHT UNDER 42 U.S.C. §1983 AS WELL AS THE CLAIMS BROUGHT UNDER 18 U.S.C. § 1961-1968, BASED UPON THE DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY?**
>
> (Suggested Answer: In the Affirmative)

III.   **ARGUMENT**

**PLAINTIFFS' COMPLAINT SHOULD BE
DISMISSED IN ITS ENTIRETY BASED UPON
THE DOCTRINE OF JUDICIAL IMMUNITY**

A.   **STANDARD OF REVIEW**

When reviewing a motion to dismiss on the pleadings, courts "accept all

factual allegations as true, construe the complaint in the light most favorable to the

Plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d

224, 233 (3d Cir. 2008) (citations and quotations omitted).  Recently, in Bell

Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d 929

(2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court

"retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct.

99, 2 L.Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *Id.* at 1968

(quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a

complaint "must be enough to raise a right to relief above the speculative level."

*Id.* at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly

formulation of the pleading standard can be summed up ths: 'stating . . . a claim

6

requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. At 1965).

B.    **JUDICIAL IMMUNITY**

Judicial immunity provides broad protection for judges from suits for monetary damages.  This immunity is "immunity from suit, not just from an assessment of damages." Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed. 2d 9 (1991).  Judicial immunity can not be overcome by allegations of bad faith or malice. *Id.* (citing Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed. 2d 288 (1967)).  Rather, judicial immunity can only be overcome if the judge is acting outside the scope of the judicial capacity or if the judge is acting in the "complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12, 112 S.Ct. at 288.  In order to determine if an act is within the scope of judicial action, a court should look to the " 'nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" Mireles, 502 U.S. at 12, 112 S.Ct. at 288 (quoting Stump v. Sparkman, 435 U.S. 349, 362, 98 S.Ct. 1099, 1108, 55

7

L.Ed. 2d 331 (1978)). [T]he relevant inquiry is the "nature" and "function" of the act, not the "act itself." *Id.* at 13, 112 S.Ct. at 288.

Scrutiny of the Complaints demonstrate that, while Plaintiffs have attempted to allege certain acts were done by Judge Ciavarella in his "administrative capacity," these allegations relate to the construction of the juvenile facilities in Luzerne and Blair Counties. These alleged acts of wrongdoing have absolutely no bearing on the application of judicial immunity. Each Plaintiff in his or her Complaint alleges that he or she was harmed by Judge Ciavarella's judicial conduct in the adjudication and placement of him or her. As these judicial decisions were the ones which allegedly resulted in harm, these are the decisions to which the judicial analysis must be applied.

A review of the nature and function of the acts taken by Judge Ciavarella demonstrates that the alleged activity stems from Judge Ciavarella's role as a judicial officer and from the parties' involvement with Judge Ciavarella in his judicial capacity. *See* Mireles, 502 U.S. at 12, 112 S.Ct. at 288 (internal citations omitted). Plaintiffs have not made any allegations to demonstrate that Judge Ciavarella was acting outside of his judicial scope.

Further, Plaintiffs have not made any allegations to demonstrate that Judge Ciavarella was acting in the absence of all jurisdiction.

8

The allegations that Judge Ciavarella acted corruptly or that his conduct violated the Civil Rights Act,[3] 42 U.S.C. §1983, or the RICO Act,[4] 18 U.S.C. §§1961-1968, does not change the proper outcome in this case.

Since 1872, the United States Supreme Court has held that the "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Bradley v. Fisher, 13 WALL. 335, 351, 20 L.Ed. 646 (1872).  Moreover, subsequent to the broad holding in Bradley, the Supreme Court held that the doctrine of judicial immunity was applicable in suits under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. §1983, as it is clear that the legislative record developed during the adoptions of that statute gave no indication that Congress intended to abolish this long-established principle.  Pierson v. Ray, 386 U.S. 587, 87 S.Ct. 1213, 18 L.Ed.2d. 288 (1967).

The defense of judicial immunity has also been held applicable in this Circuit to claims brought against judges under 18 U.S.C.A. §1961("RICO"), Purpura v. Buskin, Gaims, Gains, Jonas and Stream, slip copy, 2008 WL 4951324

---

[3] Section 1 of the Civil Rights Act of 1871, Act of April 20, 1871, c. 22, §1, 17 Stat. 13.

[4] Act of October 15, 1970, 84 Stat. 941, as amended.

9

(D.N.J. 2008).[5]

As Plaintiffs have failed to allege facts that they were injured by Ciavarella when he was acting outside the scope of his judicial function or acting in the absence of his jurisdiction, Ciavarella is entitled to judicial immunity for the monetary damages claimed by Plaintiffs.[6]

Respectfully submitted,

Mark A. Ciavarella, Jr., pro se
585 Rutter Avenue
Kingston, PA 18704

---

[5]  A copy of the Purpura Opinion is attached to this Memorandum pursuant to L.R. 7.8(a).

[6]  Defendant recognizes that judicial immunity does not apply to claims for declaratory or injunctive relief.  Pulliam v. Allen, 466 U.S. 522, 542 (1984).  Reference to Plaintiffs' Complaints establishes that there were no claims for equitable relief asserted against Ciavarella.

## CERTIFICATE OF SERVICE

I, Mark A. Ciavarella, Jr., pro se, hereby certify that on 27 day of July, 2009,

I served a true and correct copy of the foregoing Brief in Support of Defendant

Mark Ciavarella's Motion to Dismiss upon the following individuals, by the

means indicated below:

First Class Mail, Postage Prepaid

**Marsha Levick, Esquire**
**Lourdes Rosado, Esquire**
Juvenile Law Center
The Philadelphia Bldg., 4th Fl.
1315 Walnut Street
lrosado@jlc.org
mlevick@jlc.org

**Daniel Segal, Esquire**
**Rebecca L. Santoro, Esquire**
Hangley, Aronchick, Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
dsegal@hangley.com
rsantoro@hangley.com

David S. Senoff, Esquire
Lauren C. Fantini, Esquire
Richard C. DeFranceso, Esquire
Caroselli, Beachler, McTiernan & Conaboy
1500 Walnut Street, Ste. 507
dsenoff@cbmclaw.com
lfantini@cbmclaw.com
rdefrancesco@cbmclaw.com

William R. Caroselli, Esquire
Caroselli, Beachler, McTiernan & Conaboy
20 Stanwix St., 7th Floor
Pittsburgh, PA 15222
wcaroselli@cbmclaw.com

**Michael J. Cefalo, Esquire**
Cefalo & Associates
309 Wyoming Avenue
West Pittston, PA 18643
info@cefaloandassociates.com

**Adrianne Walvoord, Esquire**
**Amber M. Racine, Esquire**
**Sol H. Weiss, Esquire**
Anapol Schwartz Weiss, Cohan,
Feldman & Smalley, P.C.
1710 Spruce Street
Philadelphia, PA 19103
awalvoord@anapolschwartz.com
aracine@anapolschwartz.com
sweiss@anapolschwartz.com

**Barry H. Dyller, Esquire**
Law Office of Barry H. Dyller
88 North Franklin Street
Gettysburg House
Wilkes-Barre, PA 18701
barry.dyller@dyllerlawfirm.com

**Johanna L. Gelb, Esquire**
Gelb Law Firm
538 Spruce Street
Suite 600
Scranton, PA 18503
jgelb7@aol.com

**Daniel E. Kleiner, Esquire**
Metzger & Kleiner
Two Penn Center, Suite 1204
15th Street & JFK Blvd.
Philadelphia, PA 19102
dkleiner@comcast.net

**Richard G. Freeman, Esquire**
924 Cherry Street, 4th Floor
Philadelphia, PA 19107
rgfirm@aol.com

Slip Copy, 2008 WL 4951324 (D.N.J.), RICO Bus.Disp.Guide 11,607

Motions, Pleadings and Filings
Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
Nicholas E. PURPURA, Plaintiff, pro se,
v.
BUSKIN, GAIMS, GAINS, JONAS & STREAM, Monasch & Strauss, Monasch, Moss & Strauss, Jeffrey T.
Strauss, Wachtel & Gold, Wachtel & Masyr, LLP, Barbara Maida, Lester Sacks, Rachel A. Adams, Jane
& John Doe, Defendants.

Civil Action No. 08-2974 (FLW).
Nov. 18, 2008.

West KeySummary

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(F) Ignorance, Mistake, Trust, Fraud, and Concealment or Discovery of Cause of Action
            241k98 Fraud as Ground for Relief
                241k100 Discovery of Fraud
                    241k100(12) k. What Constitutes Discovery of Fraud. Most Cited Cases

An ex-husband's Racketeer Influenced and Corrupt Organizations Act (RICO) complaint against his
ex-wife, a law firm, lawyer, and judges was time-barred. The ex-husband alleged that there was a
conspiracy against him related to his divorce proceedings and that numerous acts of fraud had been
committed against him and he had been deprived of his Constitutional rights. The ex-husband
conceded that he knew of the alleged injury when he began his appeals process seventeen years
previous to the time he filed his RICO action. 18 U.S.C.A. § 1961.

Nicholas Purpura, Wall, NJ, pro se.

George Ervin Patterson, Wachtel & Masyr, LLP, Anthony J. Tomari, State of New York, Seth J. Farber,
New York State Office of the Attorney General, New York, NY, for Defendants.

## OPINION

WOLFSON, District Judge.
   *1 Presently before the Court are motions by Defendants Jeffrey T. Strauss, Esq., Barbara Maida,
and the law firm of Wachtel & Masyr, LLP (collectively, "the Non-State Defendants") [FN1], and Judicial
Hearing Officer Lester Sacks and the Honorable Rachel A. Adams (collectively, "the State
Defendants"), [FN2] to dismiss Plaintiff Nicholas Purpura's ("Plaintiff" or "Purpura"), pro se, Complaint,
pursuant to Fed.R.Civ.P. 12(b)(2) and (6), and 12(b)(1) and (6), respectively. In his Complaint,
Plaintiff alleges that Defendants participated in a conspiracy against him in violation of the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. , by committing
numerous acts of fraud and depriving him of his Constitutional rights stemming from his divorce from
his ex-wife.[FN3] For the reasons that follow, the Court grants Defendants' Motions to Dismiss in their
entirety.

FN1. Bushkin, Gaims, Gains, Jonas & Stream is a law firm with which Jeffrey T. Strauss was formerly associated until 1987. Strauss was a member of Monasch & Strauss and Monasch, Moss & Strauss from 1987 through 1994. In 1994, Strauss joined Gold & Wachtel, now known as Wachtel & Masyr, LLP. Aside from Wachtel & Masyr, the other named entities no longer exist and Plaintiff makes no representations that these named defendants have been served. In his Amended Certification in Support of Motion to Dismiss, Strauss requests that Non-State Defendants' Motion apply to the nonexisting entities. The Court will apply the Motion to these defendants accordingly.

Plaintiff names the law firms of Bushkin, Gaims, Gains, Jonas & Stream, Monasch & Strauss, Monasch, Moss & Strauss, Gold & Wachtel, and Wachtel & Masyr as defendants in this case, but fails to allege any claims against them. Presumably, Plaintiff intends to assert a theory of vicarious liability; specifically, Plaintiff wishes to hold each firm liable for the actions of its employee, Defendant Strauss. However, Plaintiff fails to make any such claims, nor does he allege any facts which would enable him to make such claims in the future. Therefore, Plaintiff's claims against Bushkin, Gaims, Gains, Jonas & Stream, Monasch & Strauss and Monasch, Moss & Strauss, Gold & Wachtel, and Wachtel & Masyr are dismissed.

FN2. Plaintiff's Complaint makes allegations against many other New York State judges and alleges corruption throughout the entire New York State Judiciary, but only the two State Defendants are named as defendants in this action. See Compl. ¶¶ 19, 231, 232. To the extent the State Defendants request that this Court's opinion extend to future claims, resulting in the prospective dismissal of Plaintiff's claims as against any and all additional Judges of the New York State Court system, that request is denied. However, Plaintiff is cautioned that any future filing of time-barred or meritless claims may result in sanction. See n. 22, infra.

FN3. The district court has subject matter jurisdiction over this federal RICO action pursuant to 28 U.S.C. § 1331.

## I. Background and Procedural History

Since Defendants move to dismiss Plaintiff Nicholas E. Purpura's ("Plaintiff" or "Purpura") claims pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6), the following version of events assumes Plaintiff's allegations to be true. For the purposes of deciding this Motion, the Court will refer to Plaintiff's Complaint. Because Plaintiff's Complaint does not sufficiently allege the facts upon which his claims are based, the Court refers to the facts set forth by the United States Bankruptcy Court for the Eastern District of New York, in In re Purpura, 170 B.R. 202 (Bankr.E.D.N.Y.1994), to which both parties have referred, to understand the foundation of this action. From Plaintiff's numerous legal conclusions stated in his Complaint and the public record, the Court can discern that this instant case arises from a series of proceedings stemming from Plaintiff's divorce from his ex-wife, Defendant Barbara Maida ("Maida"), formerly Barbara Purpura. Plaintiff's claims appear to be based on events that occurred over the past two decades, during Purpura and Maida's extended matrimonial litigation in the New York State Courts.

Purpura and Maida were married in July 1967 and, on July 2, 1985, Maida commenced a divorce action in the Supreme Court of New York, Richmond County. In re Purpura, 170 B.R. at 204. By order dated March 25, 1988, and "upon the consent of the parties and their respective attorneys" the matrimonial action was referred to a judicial hearing officer, defendant Lester Sacks ("Sacks"). Id. On September 13, 1990, Sacks granted the divorce and implemented the equitable distribution of assets, which was made after a "hotly contested, bitterly fought and protracted 10 day trial". Id. On January 31, 1991, Sacks issued an order supplementing and amending the divorce judgment. Id.

Purpura moved before the state court to stay enforcement of the divorce judgment, as supplemented and amended by the January 1991 Order, pending an appeal, but Purpura's numerous efforts were not successful in overturning Sacks' rulings. *Id.* at 205. By a decision and order dated May 24, 1993, the Appellate Division of the Supreme Court of the State of New York affirmed both Sacks' entry of the divorce judgment and the January 1991 Order. *Id.* On or about May 28, 1993, Purpura moved for leave to appeal the Appellate Division's decision and order to the Court of Appeals of the State of New York, but by order dated July 9, 1993 his motion for leave to appeal was denied by that state's highest court. *Id.* Thereafter Plaintiff embarked upon a course of repetitive, meritless litigation in which he repeatedly tried to overturn the divorce decree. *Purpura v. Purpura,* 17 A.D.3d 651, 652, 794 N.Y.S.2d 115 (2d Dep't 2005) (denying Purpura's motion to vacate the divorce judgement and subsequent related orders and judgments on ground that trial court lacked "subject matter jurisdiction" and finding Plaintiff's repeated attacks "frivolous" and imposing costs, attorney's fees, and sanctions). Purpura continued his appeals through March 23, 2006, at which time the Court of Appeals for the State of New York issued a final order denying Plaintiff's motion for a rehearing of his appeal.

**\*2** On June 17, 2008, Plaintiff tried a new venue and court by filing the instant Complaint in this Court, alleging Defendants violated RICO, asserting seventeen "Claims for Relief," most of which are based in fraud, and seeking treble damages pursuant to Section 1964(c), punitive damages on all claims, fees and costs, the "reversal of all judgments related to monies issued by New York State Court's (sic) pursuant to the [un]clean hands doctrine, awarding pre-judgment and post-judgment interest on all amounts awarded to the fullest extent permitted by law or in equity," and any other relief the Court may deem proper. Compl. at 88.

Plaintiff alleges that jurists in the Supreme Court, Richmond County, as well as at every level of the court system of the State of New York, including the Appellate Division, Second Department,[FN4] intentionally "engaged in the intentional denial of Complainant's civil rights and intentionally ignored each predicated criminal act." Compl. ¶ 19. Plaintiff further alleges that: (i) the State Defendants acted without "subject-matter jurisdiction" to deny him due process and equal protection, *Id.;* (ii) all of Defendants' repeated false and misleading factual statements were made to deceive and manipulate the higher New York courts to defraud Complainant, *Id.* at 28, 794 N.Y.S.2d 115; (iii) the first act of fraud was formulated on November 13, 1990 at a court conference and continued until December 20, 1999, and that he timely brought his claims before the State of New York courts until the Court of Appeals for the State of New York issued a final Order dated March 23, 2006, which failed to address Plaintiff's allegations that are raised here, Compl. at 10; and (iv) Strauss and Maida, "with impunity, repeatedly misled the Courts by asserting materially false and misleading ... statements as if they were facts" and negligently omitted material facts, which allowed Non-State Defendants to commit repeated acts of fraud.[FN5] Compl. ¶ 38.

> FN4. Plaintiff "has intentionally not named all the players in this ' *enterprise'* other than the original actors at the Trial Court level, adding only the new players to the *'enterprise'* that entered in the year 2003 (Sacks and Adams) ... [because] Sacks and Adams chose to aid and abet the prior fraud of Sacks and Maida and to make possible (sic) additional acts of fraud and 'unjust-enrichment.' " Pl. Opp. Non-State Dfs. Br. at 2. Because Plaintiff does not name any other judges as defendants in his Complaint or allege with any specificity that any other officer of the court was part of the alleged enterprise in his claims for relief, the other judges involved in Plaintiff's matrimonial action will not be considered as part of the enterprise or RICO claim here.

> FN5. Specifically, Plaintiff alleges Strauss "committed fraud using creative accounting and misrepresentation ... to steal money from Complainant," Compl. ¶ 50, for example, Strauss allegedly "submitted [to the court] three fraudulent schedules," which have "mysteriously disappeared from the Court file." *See Id.* ¶ 54. Also, Purpura alleges that Defendants' "intentional misrepresentation[s] and concealment of material fact[s] in the state court], amounted to constructive fraud." Compl. ¶ 56. Plaintiff also alleges that Strauss repeatedly submitted " *'Money Judgments'* for a justice's signature that failed to

conform to any decision and Order issued. Following each signature, defendant Strauss brazenly issued Restraining Orders illegally to collect funds, using the U.S. Postal Service in violation of the Federal Mail Fraud statute, 18 U.S.C. (1982) (sic), carrying out the referenced scheme or artifice to extort monies from Complainant." Compl. ¶ 38.

On September 16, 2008, the Non-State Defendants filed this Motion to Dismiss based upon various legal grounds, i.e. Rules 8(a), 9(b), 12(b)(2) and (6). On September 19, 2008, the State Defendants filed their Motion to Dismiss on similar grounds, i.e. Rules 8(a), 12(b)(1) and (6). In addition, they argue that the Court lacks subject matter jurisdiction under the Eleventh Amendment of the United States Constitution; and the claims against them are barred by absolute judicial, quasi-judicial and qualified immunity, and the Rooker-Feldman Doctrine. The Court grants Defendants' Motions for the reasons that follow.[FN6]

> FN6. The Court notes that Plaintiff has submitted opposition to Defendants' motions. However, the substance of his briefing reads much like his Complaint-brimming with allegations rather than legal arguments. As such, to the extent Plaintiff responds to any of the legal contentions raised by Defendants, the Court will address them and his Complaint concurrently.

## II. Standards of Review

### A. Rule 8(a)

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir.1992).[FN7] The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Id.* " Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957), while abrogating the decision in other respects).

> FN7. Further, the Court is obligated to construe *pro se* pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir.2004) ("[The Court will] apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name.").

**\*3** The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard. *See Phillips v. County of Allegheny*, 515 F.3d 224, 230-34 (3d Cir.2008). The Third Circuit explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage [ ]" but ... "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Id.* at 234 (internal citations omitted).

## B. Rule 9(b)

Allegations of fraudulent concealment sufficient to toll the statute of limitations must meet the requirements of Fed.R.Civ.P. 9(b). In Lum v. Bank of Am., the Third Circuit expounded on the heightened pleading standard imposed on allegations of fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation. See [ Saporito v. Combustion Eng'g, 843 F.2d 666, 675 (3d Cir.1988) ]; Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir.1998); Klein v. General Nutrition Cos., 186 F.3d 338, 345 (3d Cir.1999).

361 F.3d 217, 223-24 (3d Cir.2004).

## C. Rule 12(b)(1)

Both the State and Non-state Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. When jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991). No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction. Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977). Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings. Id. Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

## D. Rule 12(b)(2)

*4 "Once a defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Cateret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir.1992). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.2004); see also Carteret, 954 F.2d at 142 n. 1. "If the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." 4 Wright & Miller, Federal Practice and Procedure: Civil 3d § 1067.6 (3d ed.2002).

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir.1987); see also Fed.R.Civ.P. 4(k). New Jersey's long-arm statute, embodied in New Jersey Court Rule 4: 4-4(c), "extends to the limits of the Fourteenth Amendment Due Process [Clause] protection." Carteret, 954 F.2d at 145. Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted).

## E. Rule 12(b)(6)

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). Recently, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968 (quoting *Conley*, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965).

## III. Statute of Limitations

**\*5** As a preliminary matter, the Non-State Defendants argue that all but the Sixth and Seventh "Claims for Relief" appear to be time-barred because fraud claims are subject to a six-year statute of limitations in both New York, *see* New York Civil Practice Law and Rules, Section 213, and New Jersey. *See Hartford Accident and Indemnity Co. v. Baker*, 208 N.J.Super. 131, 504 A.2d 1250 (Law Div.1985). Because Plaintiff's claims arise out of RICO, the Court necessarily must employ the four-year statute of limitations provided by the Supreme Court, which relied upon the Clayton Act. *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). However, the Supreme Court did not specify when the period begins, and three different interpretations arose. As the Court analyzed the circuit splits, it narrowed the possible accrual rules, but did not articulate one alone. *See Rotella v. Wood*, 528 U.S. 549, 555-559, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (rejecting the "injury and pattern discovery rule" under which a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (rejecting the Third Circuit's "last predicate act rule," under which the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern). In light of *Rotella*, two accrual rules remained possible–an injury discovery rule, where the limitations period begins to run once a plaintiff discovers her injury, or an injury occurrence rule, where discovery is irrelevant; the Third Circuit applied an injury discovery rule "whereby a RICO claim accrues when plaintiffs knew or should have known of their injury." *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir.2001). The Third Circuit reaffirmed the injury discovery rule, which "has 'both subjective and objective' components and, with respect to the subjective, 'a claim accrues no later than when the plaintiffs themselves discover their injuries.' " *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 507 (3d Cir.2006) (citing *Mathews*, 260 F.3d at 252).

In this case, Plaintiff alleges that "unbeknownist to Complainant at the time, and not discovered until years later, these above acts of fraud were no mere *"mistakes"* by defendants Sacks, Strauss and Maida," yet, Purpura fails to assert when he learned of these "fraudulent acts." Compl. at 22. However, Purpura concedes that he knew of the alleged injury when he began his appeals process in 1991, as he began raising these same arguments at that time. Purpura alleges that he "continuously appealed defendant Strauss's and Maida's fraud, and [Sacks'] collusion with it to each level of the New York Court system in a timely fashion from 1991 through 2006." Compl. ¶ 65. Because Purpura concedes that he knew of the alleged activity from the time he began suing Defendants in state court, this Court need look no further. Plaintiff's own allegations make clear that he knew of the existence and source of his alleged injuries more than four years before he filed this action on June 17, 2008. As such, all of Plaintiff's claims are time-barred.

**\*6** Alternatively, Plaintiff argues that the statute of limitations has been tolled because he

continued to raise these allegations of fraud and injury, stemming from the disposition of his divorce litigation, in state trial and appellate courts and it is only now ripe for review by this Court. Compl. at 10-11. In this connection, Plaintiff argues that "the uninterrupted continuance of the original act of fraud at all time (sic) tolled the statute of limitations. By law, Complainant could not bring an action for damages in Federal Court until the final appeals process was exhausted in the State of New York, which was finalized on March 23, 2006." Compl. ¶ 36.FN8 It appears that Plaintiff argues that the Court should apply the abstention doctrine to equitably toll the statute of limitations.

> FN8. It seems Plaintiff also argues that the limitations period should run from the time when the last predicate act that is part of the same pattern of racketeering activity occurred. This rule has been rejected by the Supreme Court in *Klehr.*

Federal courts and state courts have concurrent jurisdiction over RICO claims, see *Tafflin v. Leavitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990), and "when that happens a federal court generally need neither abstain ( *i.e.,* dismiss the case before it) nor defer to the state proceedings ( *i.e.,* withhold action until the state proceedings have concluded)." FN9 See *Growe v. Emison,* 507 U.S. 25, 32, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993) (internal citations omitted). In this case, while Plaintiff alleges he raised the same issues of fraud in the New York State Court, he does not allege that he brought RICO claims. Because Plaintiff's RICO claims alleged here were not raised in the state courts and he brought this action for the very first time in federal court, the statute of limitations cannot be tolled, nor would the court have held it in abeyance had Plaintiff brought the claims simultaneously. Thus, all of Plaintiff's claims are time-barred.

> FN9. Abstention is not necessary for any of Plaintiff's claims. See *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814-817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Railroad v. Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

## IV. Discussion

### A. Judicial Immunity: Plaintiff's RICO Claims Again the State Defendants

As Plaintiff is proceeding in the present matter as a *pro se* litigant, the Court will read his Complaint liberally. Plaintiff's Complaint is a voluminous, meandering mass of venomous verbiage, attacking Defendants in what appears to be an alternative means to modify or overturn the divorce decree, a product of some unsubstantiated conspiracy between individuals, interacting in their professional capacities, whose sole purpose was allegedly to defraud Plaintiff of his property violation of RICO, 18 U.S.C.1961, *et seq.*FN10 Specifically, Plaintiff alleges "Complainant's divorce was the needed tool used as an '*enterprise'* to aid and abet commission of numerous acts of fraud under the '*color of law,'* to extort millions of dollars in retribution against Complainant for prior *'whistle-blowing'* activity." Compl. ¶ 18. Plaintiff requests 17 different "Claims for Relief," nearly every one of which is headed as "Negligent Misrepresentation/Fraud and Deceit/Constructive Fraud" and all of which are indicated to be fraud claims.FN11 Plaintiff's third, fourth, and sixth claims for relief are the only claims that even attempt to allege mail and/ or wire fraud. In addition, Plaintiff repeatedly alleges that the State Defendants, Judge Adams and Sacks, acted absent subject-matter jurisdiction and colluded with Non-State Defendants to defraud him. The State Defendants argue that Plaintiff fails to state a cause of action against State Defendants or properly plead a claim under Civil RICO pursuant to Rules 8, 12 (b)(1) and (6), that the Court lacks subject matter jurisdiction under the Eleventh Amendment of the United States Constitution, and Plaintiff's claims against State Defendants are barred by absolute judicial, quasi-judicial and qualified immunity, and the Rooker-Feldman Doctrine.FN12

> FN10. Plaintiff argues that he "*is not* re-litigating any State Court's decision! Instead, Plaintiff is *using State Court documents from the record as "material evidence[.]"* Pl. Opp.

Non-State Dfs. Br. at 4. However, in Plaintiff's papers submitted to the Court with a variety of legal jargon and widely misapplied legal principles, he fails to allege any actionable claims.

Moreover, if Plaintiff had been trying to seek modification of his divorce decree here, this Court would not have jurisdiction. *See Matusow v. Trans-County Title Agency, LLC,* No. 07-2148, 2008 WL 4590683, at *3 (3d Cir. March 28, 2008) (the domestic relations exception divests the federal courts of diversity jurisdiction).

FN11. Plaintiff fails to specify the misrepresentations allegedly made by each of the several different defendants, nor does he plead that he relied upon such misrepresentations, nor does he particularize just how any of the captioned defendants allegedly perpetrated a fraud. However, these general allegations of fraud, even if true, are not predicate acts sufficient to plead RICO. *See* IV.B, *infra.*

FN12. Because the Court finds that Plaintiff's claims against the State Defendants are barred by the Eleventh Amendment and absolute judicial immunity, the Court need not reach the merits of the other defenses the State Defendants set forth. However, even if the Court were to look at the merits of his claims, Plaintiff fails to state a claim pursuant to Rule 12(b)(6). *See* IV.B, *infra.*

In addition, the parties do not argue choice of law principles. The Court notes that Plaintiff's claims against the State Defendants are barred by judicial immunity as explicated by the Supreme Court, and which has been similarly applied by the Second and Third Circuits. *See Glavin v. Restaino,* 210 Fed. Appx. 122, 123-24 (2d Cir.2006) (citing *Stump,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)); *See Figueroa v. Blackburn,* 39 F.Supp.2d 479, 484 (D.N.J.1999), *aff'd,* 208 F.3d 435 (3d Cir.2000).

**\*7** The State Defendants contend that the Eleventh Amendment to the United States Constitution bars suit in federal court for relief against a State by a private citizen absent the State's consent or specific Congressional abrogation of the immunity. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Absent a waiver on the part of the state or a valid congressional override, state officials acting in their official capacities, may not be sued in federal court by private individuals. *See Bowers v. The Nat'l College Athletic Assoc.,* 475 F.3d 524, 550 (3d Cir.2007); *Garcia v. State Univ. of New York Health Scis. Ctr. of Brooklyn,* 280 F.3d 99, 107 (2d Cir.2001). Plaintiff argues that he is suing individuals, although employed as officials of the State of New York, did not act for the State in violation of federal law and, thus should be stripped of their official or representative capacities. *See* Pl. Opp. State Dfs. Br. ¶¶ 13, 17-18. However, contrary to Plaintiff's assertion, the State Defendants were clearly acting in their official judicial capacities. Accordingly, Plaintiff's claims are barred by the Eleventh Amendment.

The State Defendants also contend that all of Plaintiff's claims fall within the ken of absolute judicial immunity. *See Figueroa v. Blackburn,* 39 F.Supp.2d 479, 484 (D.N.J.1999), *aff'd,* 208 F.3d 435 (3d Cir.2000) ("It is a well-established principle of Angelo-American jurisprudence that judges are generally afforded absolute immunity from civil suits for money damages") (citations omitted). The protection of judicial immunity, though ostensibly for the protection of judges, is in fact "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (internal quotation marks omitted). "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Forrester v. White,* 484 U.S. 219, 226-27, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

Courts have repeatedly emphasized the extensive scope of judicial immunity, holding that immunity applies " 'however injurious in its consequences [the judge's action] may have proved to

the plaintiff'." *Gallas v. Supreme Court,* 211 F.3d 760, 769 (3d Cir.2000) ( *quoting Cleavinger v. Saxner,* 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507)). "Disagreement with the action taken by the judge ... does not justify depriving that judge of his immunity.... The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit." *Stump,* 435 U.S. at 363-64. Further, highlighting its expansive breadth, the court explained "the public policy favoring the judicial immunity doctrine outweighs any consideration given to the fact that a judge's errors caused the deprivation of an individual's basic due process rights." *Figueroa,* 39 F.Supp.2d at 495.

**\*8** The doctrine, albeit expansive, is not without its limits. In *Figueroa,* the court outlined judicial immunity and its two exceptions as:

> Though the sweep of judicial immunity is broad, *Barnes v. Winchell,* 105 F.3d 1111, 1115 (6th Cir.1997) (citations omitted), there are two sets of circumstances which circumscribe the doctrine. First, a judge is not afforded judicial immunity from civil liability for any nonjudicial acts, i.e., actions taken when the judge was not operating in her judicial capacity. [ *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Forrester v. White,* 484 U.S. 219, 227-29, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Stump v. Sparkman,* 435 U.S. 349, 360, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).] Second, even if the act is judicial in nature, a judge is not immune for any actions taken in the "complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12; *Stump,* 435 U.S. at 357. Thus, if [a judge's] actions were judicial actions not taken in the complete absence of all jurisdiction, she must be afforded protection from [a plaintiff's] civil suit.

*Figueroa,* 39 F.Supp.2d at 485-86. To summarize the very narrow exception to the judicial immunity doctrine:

> [O]ur cases make clear that [judicial] immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. *Forrester,* 484 U.S. at 227-229; *Stump v. Sparkman,* 435 U.S. at 360. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.* at 356-357; *Bradley v. Fisher,* 13 Wall. at 351, 20 L.Ed. 646.

*Mireles,* 502 U.S. at 10-12. The State Defendants contend that their actions were judicial in nature, as well as within their jurisdiction, and thus protected by judicial immunity. *See Id.*

The Supreme Court has established a "two-prong test to determine whether an act is 'judicial,' and therefore subject to immunity." *Cavanagh v. Fayette County,* No. 05-1182, 2006 U.S. Dist. LEXIS 10483, at \*5, 2006 WL 469322 (W.D.Pa. Feb. 27, 2006) (citing *Stump,* 435 U.S. at 362). The *Cavanagh* court explained:

> First, the court must consider whether the act in question is a function that is "normally performed by a judge." [ *Stump,* 435 U.S. at 362.] Under this "functionality" inquiry, a court is required to examine the nature and function of the act, rather than the act itself. *Mireles,* 502 U.S. at 13. Even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge. *Id.* Second, in determining whether an act is "judicial," the court must assess the parties' expectations, and whether they dealt with the judge in his or her judicial capacity. *Stump,* 435 U.S. at 362. "Paradigmatic judicial acts" are those that involve "resolving disputes between parties who have invoked the jurisdiction of a court." *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

**\*9** 2006 U.S. Dist. LEXIS 10483 at \*5-6, 2006 WL 469322; *see also Mireles,* 502 U.S. at 13 ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge."); *Trueman v. City of Upper Chichester,* No. 04-5085, 2005 U.S. Dist. LEXIS 23672, at \*3, 2005 WL 2644995 (E.D.Pa. Oct. 12, 2005), aff'd, No. 07-2762, 2008 U.S.App. LEXIS 17767, 289 Fed.Appx. 529 (3d Cir. July 23, 2008).

Actions taken by a judge, judicial or otherwise, will not fall within the scope of judicial immunity if they are taken in the "complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12. Jurisdiction, however, "is to be interpreted broadly." *Cavanagh,* 2006 U.S. Dist. LEXIS 10483 at *9 (citing *Stump,* 435 U.S. at 357). "[A]cts that are merely 'in excess of jurisdiction' are covered by absolute immunity." *Cavanagh,* 2006 U.S. Dist. LEXIS 10483 at *9, 2006 WL 469322 (citing *Barnes v. Winchell,* 105 F.3d 1111, 1116 (6th Cir.1997)). The *Cavanagh* court elaborated:

"[A] judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances," whereas there "is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction...." *Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir.1994) (quotations omitted). The commission of grave procedural errors does not convert legitimate judicial action into action taken in the clear absence of jurisdiction. *Stump,* 435 U.S. at 359. The "erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act," likewise does not render immunity inapplicable. *Id.*

The "absence of jurisdiction" inquiry focuses on jurisdiction over subject matter, rather than over the person or geography: " 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.' " *Figueroa v. Blackburn,* 208 F.3d 435, 444 (3d Cir.2000) (citing *Winchell,* 105 F.3d at 1122). As a result, "when ... a court with subject matter jurisdiction acts where ... personal jurisdiction is lacking, judicial ... absolute immunity remain[s] intact." *Stern v. Mascio,* 262 F.3d 600, 607 (6th Cir.2001). The operative inquiry is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." *Stump,* 435 U.S. at 356.

2006 U.S. Dist. LEXIS 10483 at *9-11, 2006 WL 469322. Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, [nor] if his exercise of authority is flawed by the commission of grave procedural errors." *Stump,* 435 U.S. at 356.

In his Complaint, in an attempt to allege the State Defendants' involvement in his RICO claim, Plaintiff accuses the State Defendants of "recklessly issuing ' *reports*' and '*Orders*' that intentionally misrepresented the true facts surrounding each of their decisions. Each finding negligently omits material facts in order to aid and abet in 'constructive' fraud." Compl. ¶ 48. As previously stated, judicial immunity extends to all the aforementioned judicial acts alleged by Plaintiff. The analysis of whether an act qualifies for judicial immunity "must focus on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." *Gallas,* 211 F.3d at 769 (3d Cir.2000); *see also Mireles,* 502 U.S. at 13 (citation omitted). Furthermore, "[judicial immunity] applies even if the Judge is acting as part of an alleged conspiracy." *Trueman v. City of Upper Chichester,* No. 04-5085, 2005 U.S. Dist. LEXIS 23672, at *3, 2005 WL 2644995 (E.D.Pa. Oct. 12, 2005), *aff'd,* No. 07-2762, 2008 U.S.App. LEXIS 17767, LEXIS 17767 (3d Cir. July 23, 2008) (quoting *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)). Thus, Judge Adams and Sacks' involvement in an alleged RICO conspiracy will not defeat a claim of judicial immunity in the instant matter; even if, as Plaintiff alleges, State Defendants "acted with '*deliberate indifference*' to ignore defendants' wrongdoings[,]" namely fraud and perjury. Pl. Opp. Non-State Dfs. Br. at 9. Irrespective of alleged malice or bad faith, judicial immunity extends to these actions as they are within the State Defendants' jurisdiction and are of a judicial nature.

**\*10** Plaintiff alleges, *inter alia,* that Sacks issued four prospective decisions, all lacking subject-matter jurisdiction, for the purpose of defrauding and depriving Plaintiff of his assets. Compl. ¶¶ 41, 48. In this case, Plaintiff concedes that the State Defendants had the jurisdiction to preside over this matrimonial action.[FN13] *See Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."). In his conclusory allegations, Plaintiff fails to articulate any logical reason to find that State Defendants acted absent all jurisdiction.[FN14] None of these alleged actions, even if done with pure malice, fall outside the province of Judge Adams' and Sacks' jurisdiction.[FN15] Therefore, these allegations too are without merit.

FN13. Plaintiff concedes that "Defendants Sacks and Adams might have had jurisdiction to preside over a matrimonial action[.]" Pl. Opp. State Dfs. Br. at 7.

FN14. Plaintiff argues that State Defendants "lacked subject-matter jurisdiction to hear the issue before them, to 'hear and determine' the appropriateness of his (Sacks's) prior decisions." Plaintiff states that "Defendant Adams lacked 'subject-matter jurisdiction to usurp legislative authority and assign Sacks to do so. Both defendants lacked 'subject-matter jurisdiction' to overturn the ruling of an Appellate court that established 'law of the case' or precedent set by the State's highest court, the Court of Appeals, on the issue before him." Pl. Opp. State Dfs. Br. ¶ 23.

FN15. For example, Plaintiff claims that "Defendant Adams's unlawful behavior occurred between 2003 until 2005, when Adams was assigned to the matter. Adams was assigned to revisit prior orders to determine whether they had been appropriate. Thereafter, *in absence of subject-matter jurisdiction,* Adams immediately usurped the authority of New York State's statutes in order to deny Plaintiff procedural *'due process'* and *'equal protection.'* " Pl. Opp. State Dfs. Br. ¶ 34.

Furthermore, even assuming the State Defendants wholly disregarded settled judicial principles and New York law when conducting the aforementioned acts, FN16 the well-settled doctrine of judicial immunity would still shield Judge Adams and Sacks from liability. Accordingly, all of the State Defendants' actions alleged in the Complaint were judicial in nature and within their jurisdiction, and thus protected by absolute judicial immunity.

FN16. Plaintiff claims that State Defendants are not protected by judicial immunity because they allegedly failed to comply with the Administrative Justice's order to review Sacks' October 14, 1986 Order. Pl. Opp. State Dfs. Br. ¶¶ 36-37.

## B. Plaintiff's RICO Claims Against Non-State Defendants

To properly plead under RICO, a Plaintiff must allege " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity' as well as an injury resulting from the conduct constituting a violation." *Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc.,* 87 Fed. Appx. 227, 231 (3d Cir.2003) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The RICO Act "provides for liability in civil suits brought by any person injured 'in his business or property' by a RICO violation, with a compulsory award of treble damages, costs, and attorneys fees ... [and] makes it unlawful for 'any person' who is employed by or associated with 'any enterprise' affecting interstate commerce to 'participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.' " *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 906 (3d Cir.1991) (citations omitted). A RICO claim requires proof of four elements:

(1) the existence of an enterprise affecting interstate commerce; (2) that Defendants were employed by or associated with the enterprise; (3) that the Defendants participated, directly or indirectly, in the conduct or affairs of the enterprise; and (4) that the Defendants participated through a pattern of racketeering activity that must include the allegation of at least two (2) racketeering acts.

*Zellner v. Monroe County Mun. Waste Mgmt. Auth.,* No. 07-1976, 2008 U.S. Dist. LEXIS 57769, at *19-20, 2008 WL 2962595 (M.D.Pa. July 28, 2008) (citation omitted).

Non-State Defendants move the Court to dismiss Plaintiff's claims pursuant to *Fed.R.Civ.P.* 8(a), 9

(b), 12(b)(2) and 12(b)(6), arguing that the Complaint is without any legal basis or justification.[FN17]

> FN17. The Court denies the Non-State Defendants's Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) because Plaintiff established a *prima facie* case of personal jurisdiction for the purposes of determining this Motion.

> Further, the Non-State Defendants argue that Plaintiff's pleading is so baseless and infirm that leave to amend must be denied pursuant to Rule 15(a). Because Plaintiff has not moved to amend pursuant to Rule 15(a), the Court will not make such a ruling at this time; however, it appears that nothing in Plaintiff's filings suggests that deficiencies in his claims may be cured by amendment.

## 1. Enterprise

**\*11** An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise is "an entity made up of a group of persons associated together for the common purpose of engaging in a course of conduct." *United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).* To establish the existence of an "enterprise," a plaintiff must allege that (1) the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) the members of the enterprise function as a continuing unit with established duties; and (3) the enterprise must be separate and apart from the pattern of activity in which it engages. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 789-90 (3d Cir.1984).* Purpura alleges that the Non-State Defendants "constituted an *'enterprise'* as defined in Title 18, United States Code, Section 1961(4), to wit, a group of individuals associated in fact," with the intent "to defraud Complainant by obtaining, or aiding in obtaining payments, or allowance of fraudulent or false claims illegally to take Complainant's assets (stock, stock dividends, case, monies earned, and home)." Compl. ¶¶ 31-32. Purpura, however, fails to articulate any detail concerning the nature and extent of the alleged fraudulent scheme and the role played by each Defendant in the scheme.[FN18] Instead, Plaintiff alleges that, on one hand, Strauss made continuous material omissions and misleading statements to deceive the court, Compl. at 48, and, on the other hand, Purpura alleges that the court was involved in the scheme, aiding in the acts of fraud by intentionally disregarding Purpura's evidence.[FN19] *Id.* at 18. Purpura fails to articulate any organization, framework, or superstructure implemented to defraud him of money, but rather charges Defendants with the advocacy and decision-making powers within their job descriptions. Therefore, the Court finds that Plaintiff fails to allege an enterprise existed.

> FN18. *Cf. Perlberger v. Perlberger,* No. 97-4105, 1998 WL 76310, at \*5 (E.D.Pa.1998) (finding that the plaintiff sufficiently plead an enterprise where she alleged that a group of five individuals and two professional corporations were the persons liable and the enterprise was the association-in-fact of those persons). Moreover, in *Perlberger,* the plaintiff alleged that after the divorce she learned that the named defendants had devised and perpetuated a fraudulent scheme whereby her husband was able to conceal, by half, the true value of his income from both plaintiff and the state divorce court. *See Id.* at \*2. In the instant case, Plaintiff makes conclusory allegations that Defendants were an association-in-fact, without any support of their scheme or intent to work together to defraud him. Therefore, he fails to articulate that there was an enterprise pursuant to 18 U.S.C. § 1961(4).

> FN19. In the instant case, Plaintiff makes legal conclusions that the Non-State Defendants engaged in a "pattern of racketeering" with one another for the purpose of "furthering their common scheme to defraud monies and other assets belonging to Complainant." Compl. ¶¶ 44-46. Purpura alleges that Strauss made materially false and misleading statements of fact or omitted facts to the court to commit fraud. *Id.* at 26.

Purpura also alleges that Strauss "would issue 'Restraining Orders' to collect these fraudulent[ly issued by the court] funds using the U.S. Postal Service." *Id.* Thus, Purpura's own allegations contradict his theory of the case.

## 2. Racketeering Activity

In addition, to properly allege a RICO violation, a plaintiff must articulate a pattern of racketeering activity, *i.e.*, predicate acts.[FN20] *See Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc.*, 87 Fed. Appx. 227, 231 (3d Cir.2003) (citations omitted). The claim "must include the allegation of at least two (2) racketeering acts." *Zellner, 2008 U.S. Dist. LEXIS 57769, at *20, 2008 WL 2962595.* When fraud is the predicate act, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Warden v. McLelland,* 288 F.3d 105, 114 (3d Cir.2002). Specifically, Rule 9 (b) states "a party must state with particularity the circumstances constituting fraud or mistake." *Fed.R.Civ.P.* 9(b). In *Frederico v. Home Depot,* 507 F.3d 188 (3d Cir.2007), the Third Circuit qualified what information is required to be alleged to satisfy the heightened pleading standard provided for by Rule 9(b):

> FN20. "To set out a prima facie showing of a civil RICO violation under 18 U.S.C. § 1964 (c), a plaintiff must have been injured by 'racketeering activity,' 18 U.S.C. § 1962(c)-(d). 'Racketeering activity' is defined as a violation of certain enumerated statutes-commonly known as 'predicate acts'-in 18 U.S.C. § 1961(1)." *Breslin v. Brainard,* 128 Fed. Appx. 237, 240 (3d Cir.2005); *see also Anderson v. Ayling,* 396 F.3d 265, 269 (3d Cir.2005) ("The term 'racketeering activity' is defined in 18 U.S.C. § 1961(1) to include a long list of state and federal crimes, among them the wire fraud alleged here."); *see generally* 18 U.S.C. §§ 1341, 1343. The Third Circuit permits federal common law or "garden variety" fraud, including mail and wire fraud. *Tabas v. Tabas,* 47 F.3d 1280, 1290 (3d Cir.), *cert. denied,* 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995).

**\*12** Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America,* 361 F.3d 217, 223-224 (3d Cir.2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *See Id.* at 224, *Frederico,* 507 F.3d at 200; *see also Seville Industrial Machinery Corp.,* 742 F.2d at 791.

General allegations, such as fraud and theft, will not satisfy the pleading standard as they are "not included as [specifically listed] racketeering activit[ies] pursuant to 18 U.S.C. § 1961(1)." *Zellner, 2008 U.S. Dist. LEXIS 57769 at *23, 2008 WL 2962595.* Examples of predicate acts include "state felonies punishable by imprisonment of more than a year such as murder, kidnaping, gambling or extortion, as well as more than thirty federal crimes, such as drug offenses, obstruction of justice, obscenity, and mail, wire, bankruptcy, and securities fraud." *Genty,* 937 F.2d at 907; *see also* 18 U.S.C. § 1961(1). In *Zellner,* the court found that general allegations of fraud and theft should be dismissed as potential predicate acts because the statute "lists specific acts, such as mail fraud and wire fraud" as racketeering activity and does not list general fraud. *2008 U.S. Dist. LEXIS 57769 at *23, 2008 WL 2962595.* Thus, because Purpura merely alleges general conclusions of fraud, such as Strauss' alleged intentional misrepresentations and concealment of material facts to the court, in his first, second, fifth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth claims for relief, the Court dismisses these claims.

In Plaintiff's third, fourth, and sixth claims for relief, he attempts to allege "predicate" acts of fraudulently misleading the court, leading to mail and wire fraud. "Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)." *Warden,* 288 F.3d at 105 (citing *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 657-58 (3d Cir.1998)). The court in *Annulli v. Panikkar* addressed the differential pleading nature of mail and wire fraud:

There are two elements of a mail or wire fraud charge: "(a) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme." *Greenberg v. Brewster*, 816 F.Supp. 1039, 1049 (E.D.Pa.1993). Wholly intrastate use of the mails for fraud violates the mail fraud statute. *See, e.g., In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993). In contrast, the federal wire fraud statute requires interstate use of the wire. *See, e.g., Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir.1988) ("As several courts have recognized, the statute requires that the wire communication cross state lines.").

*\*13* 200 F.3d 189, 200 n. 9 (3d Cir.1999); *see also Zellner*, 2008 U.S. Dist. LEXIS 5776 at \*22-23, 2008 WL 2962595 (citing *Stanley v. Int'l Bhd. of Elec. Workers, AFL-CIO CLC*, 207 Fed. Appx. 185, 189 (3d Cir.2006)) (internal quotations omitted) ("[T]he wire fraud statute, 18 U.S.C. § 1343, 'criminalizes a scheme to defraud that is transmitted by wire 'in interstate or foreign commerce''; thus, a complaint must allege interstate use of the wire for each predicate act."). Moreover, when asserting mail fraud allegations, a plaintiff must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentations." *Annulli*, 200 F.3d at 201 n. 10. In other words, the plaintiff's pleading must contain the "who, what, when and where details of the alleged fraud." *Bonavitacola*, 87 Fed. Appx. at 231 (quoting *Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network*, No. 99-4653, 2001 WL 41143 (E.D.Pa. Jan.18, 2001)).

Accordingly, this Court will only consider as predicate racketeering acts those wire frauds which have been alleged to have been transmitted by wire "in interstate or foreign commerce" and those mail frauds that are alleged to have made use of the United States Postal Service. *See Zellner*, 2008 U.S. Dist. LEXIS 57769 at \*23, 2008 WL 2962595 ("As these ... frauds were not properly plead, the Court will not consider them as 'predicate acts.' "). Further, this Court will only consider as predicate racketeering acts those mail and wire frauds alleged with the specificity required by the heightened pleading standard of Rule 9(b).

In his third claim for relief, Purpura alleges mail fraud. He states "the State Courts of New York repeatedly, continuously consistently, and intentionally overlooked a disproportionate number of illegal incidents of fraud and repeatedly ruled absent subject matter jurisdiction ... aided by defendant Sacks, that defendants Strauss and Maida, with impunity, mislead the courts to commit fraud.... [Strauss] personally prepared, for a judge's signature ... [which, after signed] Strauss would issue 'Restraining Orders' to collect these fraudulent funds using the U.S. Postal Service." Compl. at 30. Purpura alleges that, on December 15, 1986, Strauss mailed a letter to Purpura's attorneys, which he alleges contained false claims and statements about him, specifically that Purpura "fail[ed] and refus [ed] to pay retroactive maintenance and child support," in an attempt to get monies from Purpura.[FN21] Compl. ¶ 82. Purpura claims that "at no time did [he] ever refuse to pay maintenance or children support." *Id.* ¶ 83. Although it appears that Purpura sufficiently alleges the required specificity, the letter mailed to Purpura's attorneys does not appear in furtherance of the Non-State Defendants' scheme to defraud Plaintiff. *See Marangos v. Swett*, No. 07-5937, 2008 WL 4508542, at \*9 (D.N.J. September 28, 2008).

> FN21. Purpura also alleges that letter was hand delivered to his employer, Bear Stearns & Co. Inc. Compl. ¶ 82. It appears that Purpura alleges that the *hand delivered* letter to his then place of business Bear Stearns & Co. Inc. was the document in furtherance of Non-State Defendant's scheme to "mislead the courts to commit their fraud." Compl. at 31. Even if this letter to his employer was in furtherance of the alleged scheme, as it was hand-delivered, it cannot constitute mail fraud.

*\*14* Even if, however, the facts alleged in Plaintiff's third claim for relief were in furtherance of Defendants' scheme and are sufficient to allow the Court to "otherwise inject precision or some measure of substantiation into a fraud allegation," it is unnecessary for the Court to continue its analysis as to whether this communication constitutes mail fraud. "A 'pattern of racketeering activity means' at least two predicate acts that 'are related and that amount to or pose a threat of continued criminal activity.' " *Bonavitacola*, 87 Fed. Appx at 231 ( quoting *H. J., Inc. v. Northwestern Bell Tel.*

*Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). Plaintiff fails to sufficiently allege two predicate acts as required by RICO, as discussed herein.

In his fourth claim for relief, Purpura alleges mail and wire fraud. Plaintiff alleges that "Defendant Strauss repeatedly convicts himself of deceit, misrepresentation. *See*, Exhibit (sic) a wire faxed from the law firm of 'Monash & Strauss' and a signed letter by defendant Strauss, forwarded by the U.S. Postal service (sic) a letter, to Complainant's attorney Sidney Siller, Esq." Compl. ¶ 95. Purpura alleges that "Defendant Strauss intentionally misled the Courts about the true facts surrounding the Appendix, presenting the covers as if only the Complainant had appealed." Compl. ¶ 94. Plaintiff appears to allege that there was a printing error that should have included the word "joint" appendix and Plaintiff was forced to make an application for 50% of the costs of the joint appendix, which Strauss and Maida had agreed to pay. *Id.* ¶¶ 95-96, 99. Because Purpura concedes that Defendants' acts occurred in the state of New York, *see* Compl. ¶ 10, and he does not allege that there any interstate or foreign commerce, the Court need not analyze these wire fraud allegations. *See Annulli*, 200 F.3d at 200 n. 9. Further, even though Purpura states that Strauss signed a letter forwarded by the mail, Purpura fails to plead the level of specificity required by the heightened pleading standard of Rule 9(b). It is impossible for this Court to discern the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" of the communications between Defendants. *See Frederico, 507 F.3d at 200*. Therefore, Plaintiff's fourth claim for relief fails to allege a predicate act.

In his sixth claim for relief, Purpura alleges that the State Defendants aided and abetted the Non-State Defendants in committing "constructive" fraud because Sacks and Judge Adams allegedly "recklessly issued '*reports*' and '*Orders*' that intentionally misrepresented the true facts surrounding each of their decisions." Compl. ¶ 113. In this claim, through a *very* liberal reading, Purpura appears to attempt to allege mail fraud when he mentions that the "Trial Transcript of the hearing on dated (sic) March 9, 2004 shows defendant Strauss was not present and his Cross-motion which was submitted through the mail, using the U.S. Postal Service (sic)." Compl. at 47. Purpura, however, does not plead the heightened specificity as required by Rule 9(b). *See Bonavitacola*, 87 Fed. Appx. at 231. Therefore, Plaintiff's sixth claim for relief fails to allege a predicate act.

**\*15** Upon a liberal construction of Plaintiff's voluminous Complaint, this Court can discern only one communication that arguably rises to the level of specificity needed to satisfy 9(b)'s heightened pleading requirement, Plaintiff's third claim for relief; at best, Plaintiff alleges one predicate act of mail fraud in which Strauss mailed a letter to Purpura's then attorneys with allegedly false information. Compl. ¶¶ 82, 83. Thus, Plaintiff has failed to plead two predicate acts of mail or wire fraud sufficient to constitute a pattern of racketeering activity. Accordingly, Plaintiff does not sufficiently allege his RICO claims. Plaintiff is unable to state a claim upon which relief may be granted, and therefore his Complaint must be dismissed pursuant to Rule 12(b)(6).

## C. Additional Relief

The Non-State Defendants request that this Court impose sanctions on Plaintiff by deeming him a vexatious litigant. Pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceeding in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The Third Circuit has held that this Court has the inherent authority to impose sanctions on a *pro se* litigant. *See Institute for Motivational Living, Inc. v. Doulos Institute for Strategic Consulting, Inc.*, 110 Fed. Appx. 283, 287 (3d Cir.2004). In this case, Purpura has filed similar claims against the same defendants in New York State Courts. All of these previous actions, relating to Purpura and Maida's divorce, were resolved against Plaintiff.

In this connection, the Non-State Defendants request that the Court enjoin Purpura from bringing additional claims in federal court in the future. FN22 Because it appears that this is the first time Purpura has filed an action in the District of New Jersey, the Court does not find that Plaintiff's actions here rise to the level of "multipl[ying] the proceedings in an unreasonable and vexatious manner" for the imposition of sanctions. *Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting,*

110 Fed. Appx. 283, 287 (3d Cir.2004). Thus, the Non-State Defendants' request for sanctions against Purpura for bringing this action and an injunction from commencing future lawsuits is denied at this time. However, the Court cautions Plaintiff that should he file additional frivolous claims stemming from his matrimonial litigation, in this Court, I will not hesitate to impose sanctions, pursuant to this Court's inherent power to protect the courts from oppressive and frivolous litigation. *See* 28 U.S.C. § 1651(a); *Hollis-Arrington v. PHH Mortg. Corp.,* No. 05-2556, 2005 WL 3077853, at *9 (D.N.J. November 15, 2005), *aff'd in part, vacated in part,* 205 Fed. Appx. 48 (3d Cir.2006).

FN22. In his Complaint, Purpura indicates that he intends to bring another action in this Court under 42 U.S.C. § 1983 because Defendants allegedly violated his Fifth and Fourteenth Amendment rights. *See* Compl. at 17, 63, 68, 77, 79, 87. Plaintiff is on notice that he cannot piecemeal pick his causes of action and any future claims against Defendants arising out of this matrimonial litigation appear time-barred by the statute of limitations for section 1983 claims. *See Soni v. Holtzer,* 255 Fed. Appx. 614, 617 (3d Cir.2007) (noting that statute of limitations for section 1983 claims accruing in New York was three years and in New Jersey was two years).

## V. Conclusion

**\*16** For the foregoing reasons, Plaintiff's claims are dismissed.

D.N.J.,2008.
Purpura v. Buskin, Gaims, Gains, Jonas & Stream
Slip Copy, 2008 WL 4951324 (D.N.J.), RICO Bus.Disp.Guide 11,607

Motions, Pleadings and Filings (Back to top)

• 2008 WL 4675988 (Trial Pleading) Rico/Breach of Fiductary Duty/Negilence/Fraud (Jun. 17, 2008)
• 3:08cv02974 (Docket) (Jun. 17, 2008)
END OF DOCUMENT

(c) 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.