**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FLORENCE WALLACE, et al., | **CONSOLIDATED TO:** |
| Plaintiffs, | CIVIL ACTION NO. 3:09-cv-286 |
| v. | |
| ROBERT J. POWELL, et al., | (JUDGE CAPUTO) |
| Defendants. | |

*********************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM CONWAY, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:09-cv-0291 |
| v. | |
| JUDGE MICHAEL T. CONAHAN, et al., | (JUDGE CAPUTO) |
| Defendants. | |

*********************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| H.T., et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:09-cv-0357 |
| v. | |
| MARK A. CIAVARELLA, JR., et al., | (JUDGE CAPUTO) |
| Defendants. | |

*********************************************************************************************

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMANTHA HUMANIK,

    Plaintiff,

    v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0630

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Class Action Plaintiffs' Second Motion to Amend/Correct Master Complaint for Class Actions. (Doc. 375.) Because the Luzerne County District Attorney acted as a state official in training subordinate assistant district attorneys, the proposed amendments are futile and I will deny the motion to amend.

## BACKGROUND

The Class Action Plaintiffs' allegations relevant to the present motions are as follows:[1]

Defendants Michael Conahan ("Conahan") and Mark Ciavarella ("Ciavarella") abused their positions as judges of the Luzerne County Court of Commons Pleas by accepting compensation in return for favorable judicial determinations. (Class Action Amend. Compl.

---

[1] The individual and class action plaintiffs in this case bring federal and state law claims against a number of defendants for an alleged scheme involving the corruption of the Luzerne County Common Pleas and Juvenile Courts. Because the allegations are lengthy, only those relevant to liability for Luzerne County will be discussed here.

("Amend. Compl.") ¶ 2, Doc. 250.) As part of this conspiracy, Conahan and Ciaverella acted with Defendants Powell, Mericle, Mericle Construction, Pennsylvania Child Care ("PACC"), Western Pennsylvania Child Care ("WPACC"), Pinnacle, Beverage, Vision, and perhaps others. (Amend. Compl. ¶ 2.) The basic outline of the conspiracy was that Conahan and Ciavarella used their influence as judicial officers to select PACC and WPACC as detention facilities, and that they intentionally filled those facilities with juveniles to earn the conspirators excessive profits. (Amend. Compl. ¶ 669.) In return, approximately $2.6 million was paid to Conahan and Ciavarella for their influence. (Amend. Compl. ¶ 670.)

Prosecuting juvenile cases is a specialized practice with its own set of rules and procedures. (Amend. Compl. ¶ 708.) The need for proper training and supervision of the assistant district attorneys appearing in juvenile court was obvious. (Amend. Compl. ¶ 706.) The district attorney knew or should have known that the assistant district attorneys appearing in Ciavarella's courtroom were young and inexperienced. (Amend. Compl. ¶ 707.) Because of the lack of supervision and training for the assistant district attorneys, they did not intervene and prevent the constitutional violations occurring in Ciavarella's courtroom. (Amend. Compl. ¶ 710.) Plaintiffs allege that the district attorney acted as a Luzerne County final policy-maker when training and supervising the assistant district attorneys, thereby creating liability for Luzerne County. (Amend. Compl. ¶ 709-10.)

3

**LEGAL STANDARDS**

I.  **Motion to Amend Pleadings**

Under Federal Rule of Civil Procedure 15(a), "a party may amend the party's pleadings . . . by leave of court . . . and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). It is within the sound discretion of the trial court to determine whether a party shall have leave to amend pleadings out of time. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d Cir. 1981). However, "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182.

In the Third Circuit, the touchstone for the denial of leave to amend is undue prejudice to the non-moving party. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993); *Cornell & Co., Inc. v. OSHRC*, 573 F.2d 820, 823 (1978). "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz*, 1 F.3d at 1414 (citing *Heyl*, 663 F.2d at 425).

The only pertinent issue here is whether Plaintiffs' proposed amendments to their Complaint are "futile." An amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*,

114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).  In making this assessment, the Court must use the same standard of legal sufficiency employed under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  In other words, "[a]mendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss."  *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

## II. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  FED. R. CIV. PRO. 12(b)(6).  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly,* 550 U.S. at 555).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8."  *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*,

499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

## DISCUSSION

Plaintiffs acknowledge that the proposed amendments seek only to add a claim against Luzerne County under the theory that it is liable for the failure of its district attorney to train and supervise subordinate prosecutors. (Pl. Brief in Opp'n 14, Doc. 383.) Plaintiffs are correct that when this Court previously ruled that the District Attorney was a state rather than county decision-maker, it ruled so only as to Plaintiffs' claim that the District Attorney's own prosecutorial decisions created liability. (Memorandum Opinion 22-23, Doc. 335.) The proposed amendments require this Court to now evaluate whether the same is true with

respect to the District Attorney's duties to train and supervise subordinate assistant district attorneys.

## I. *Monell* Liability

Under 42 U.S.C. § 1983, municipal liability cannot be established under the doctrine of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978*)* ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). "A public entity such as [Luzerne] County may be held liable for the violation of a Constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." *Reitz v. County of Bucks*, 125 F.3d 139, 144 (3d Cir. 1997). Alternatively, "in the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983 . . . where the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact.' " *Id.* at 145. Plaintiffs' amended complaint alleges under the latter theory that Luzerne County's policy-maker, the district attorney, was deliberately indifferent to the minor Plaintiffs' rights when training and supervising subordinate prosecutors.

## II. Final Policy-Maker for Luzerne County

To determine if the Plaintiffs articulate a claim against Luzerne County via the proposed amendments, first it must be determined whether the district attorney had final policy-making authority for Luzerne County when training and supervising assistant district attorneys. The power to establish policy is not the exclusive province of the legislature.

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). "*Monell'*s language makes clear that it expressly envisioned other officials whose acts or edicts may fairly be said to represent official policy." *Pembaur v. City of Cinncinnati*, 475 U.S. 469, 480 (1986) (internal quotations omitted). "[T]he authority to make municipal policy is necessarily the authority to make final policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* Similarly, "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies." *Id.* Any inquiry into the status of an official as a final policy-maker must focus on whether decisions are final on a particular issue, not in an "all or nothing manner." *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997); *Praprotnik*, 485 U.S. at 123 (official must have final policy-making authority in that area of the city's business). The identification of policy-making officials is not a question of fact, but is instead a question of law which is appropriate for the court to determine. *Praprotnik*, 485 U.S. at 125-26.

In *McMillian v. Monroe County*, the Supreme Court set forth the applicable standard when determining if a governmental actor has final policy-making authority as a municipal actor under § 1983. The Court noted that state law controlled the determination of whether an actor has final policy-making authority. *McMillian*, 520 U.S. at 783. The Court also emphasized that the inquiry must be focused on the specifically alleged conduct, rather than the general authority of that position under state law. *Id.* at 783. The *McMillian* Court

8

ultimately concluded that an Alabama sheriff acted as a state official, rather than a county official, through a consideration of the Alabama Constitution, Alabama statutory and case law, and the allegations of the parties. *Id.* at 786.

As stated in this Court's prior opinion, the district attorney is defined in the Pennsylvania Constitution as a county officer. PA. CONST. art. IX, § 4. Similarly, there is some Pennsylvania statutory law which reflects the status of the district attorney as the "chief law enforcement officer" for the county in which they were elected. *Carter v. City of Philadelphia*, 181 F.3d 339, 350 (3d Cir. 1999); 71 P.S. §§ 732-101, *et seq.* (2009); 16 P.S. § 401(1)(11) (2009). Pennsylvania case law also identifies that district attorneys may be local officials. *Chalfin*, 233 A.2d , 565; *Schroeck v. Pennsylvania State Police*, 362 A.2d 486, 490 (Pa. Commw. Ct. 1976) ("District attorneys and their assistants are officers of the counties in which they are elected and not officers of the Commonwealth."). There is also evidence demonstrates that district attorneys are state officials. The historical foundation for the office of district attorney as a replacement for state deputy attorneys' general leans in favor of district attorneys as state officers. *Williams v. Fedor*, 69 F. Supp. 649, 660 (M.D. Pa. 1999). Similarly, the relationship between the state's chief law enforcement officer, the Attorney General, and prosecutors when enforcing Pennsylvania statutes also leans in favor of prosecutors as state officials. *Commonwealth v. Bauer*, 261 A.2d 573, 575 (Pa. 1970).

Prosecutors can have "a dual or hybrid status" sometimes as a state officer, and sometimes as a county officer. *Coleman v. Kaye,* 87 F.3d 1491, 1499 (3d Cir. 1996) (discussing New Jersey law). In fact, in Pennsylvania they have such a hybrid role. In *Carter v. City of Philadelphia*, the Third Circuit Court of Appeals considered the status of a

Pennsylvania district attorney and stated:

> When "enforcing their sworn duties to enforce the law . . . they act as agents of the State [but] when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions . . . the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." Absent direct intervention by the state, county prosecutors act as county officials when they are called upon to make administrative decisions on a local level.

*Carter*, 181 F.3d at 353 (citing Coleman, 87 F.3d at 1504). As stated in this Court's prior opinion, the status of the district attorney as a state or county official hinges on whether the actions alleged were prosecutorial or administrative in nature. (Memorandum Opinion 21, Doc. 335.)

Defendants point to *Van de Kamp v. Goldstein*, __ U.S. __, 129 S.Ct. 855 (2009), and argue that it directly controls this issue. As a threshold matter, it is important to note that while analysis under the doctrine of prosecutorial immunity or under the Eleventh Amendment is persuasive when conducting *McMillian* analysis, neither of these related theories is binding. *Williams v. Fedor*, 69 F.Supp. 2d at 658. While *Van de Kamp* discussed prosecutorial immunity and is therefore not controlling, I find that the Supreme Court's analysis is persuasive in this case. *Van de Kamp*, 129 S.Ct. at 858. *Van de Kamp* involved a claim against a district attorney for failing to train or supervise subordinate prosecutors in handling mandatory disclosures of impeachment material. *Id.* at 861. While the Court classified training and supervision as "administrative" duties, it distinguished these duties from more ministerial tasks such as payroll management or managing maintenance requests. *Id.* The Court stated that training assistant district attorneys to exercise their prosecutorial duties is "directly connected with the prosecutor's basic trial advocacy duties."

*Id.* at 863. Because of the similarity between directly prosecuting and training others to do the same, the Court held that prosecutorial immunity extended to training or supervision of subordinates performing prosecutorial acts. *Id.* at 861. This analysis is convincing that training a prosecutor is more similar to a prosecutorial than administrative function. Plaintiffs correctly argue that *Van de Kamp* did not consider any Pennsylvania law as this Court must when conducting *McMillian* analysis. This does not, however, weaken the persuasiveness of the Court's arguments as to the similarity between direct prosecutorial actions and training subordinates to do the same.

Plaintiffs argue that the Third Circuit Court of Appeals decision in *Carter v. City of Philadelphia* requires the opposite conclusion. The facts of that case, however, distinguish it from the present situation. In *Carter*, the court determined, while considering a claim of sovereign immunity under the Eleventh Amendment, that a district attorney acted as a county official in supervising municipal police officials, and training assistant district attorneys to do the same. *Carter*, 181 F.3d at 383. The court found the district attorney was a municipal actor where they supervised *municipal officials* and instructed others to do the same. *Id.* Unlike in *Carter*, here the district attorney was to instruct subordinate prosecutors on prosecutorial functions. In *Carter*, it was clearly a municipal act for the district attorney to directly oversee municipal police. It made sense, therefore, that training a subordinate to perform the same task would also be a municipal act. Here, the underlying prosecutorial acts would be state acts if taken directly by the district attorney. Plaintiffs' argument identifies the district attorney a county actor when training others to perform this state act, creating the anomalous result of requiring a county actor train a state actor on

11

how to perform a state prosecutorial function. I find that it is simply too broad to state that all training and supervision tasks are county acts, and that instead it is appropriate to consider the nature of the act being taught. Here, the instruction is on state prosecutorial conduct, therefore, the district attorney acts in his role as a state official.

As explicitly warned in *McMillian*, the question is to "ask whether governmental officials are final policymakers for the local government *in a particular area*, or on a particular issue." *McMillian*, 520 U.S. at 785 (citing *Jett*, 491 U.S. at 737) (emphasis added). In many capacities the district attorney is indeed the "chief law enforcement officer" for Luzerne County. But after examining Pennsylvania law and in light of the Supreme Court's recent decision in *Van de Kamp*, I find that in making direct prosecutorial decisions in the courtroom, and in training subordinates to do the same, a district attorney is a *state* actor. Plaintiffs' proposed amendments with respect to Luzerne County fail to allege decisions by a final policy-maker for the municipality, and therefore, are futile.

## CONCLUSION

Because the Luzerne County District Attorney acted as a state official in training subordinate assistant district attorneys, the proposed amendments are futile and I will deny the motion to amend. In light of this conclusion, I need to reach the parties' remaining arguments.

An appropriate Order follows.

| March 1, 2010 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FLORENCE WALLACE, et al., | **CONSOLIDATED TO:** |
| Plaintiffs, | CIVIL ACTION NO. 3:09-cv-286 |
| v. | |
| ROBERT J. POWELL, et al., | (JUDGE CAPUTO) |
| Defendants. | |

*******************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM CONWAY, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:09-cv-0291 |
| v. | |
| JUDGE MICHAEL T. CONAHAN, et al., | (JUDGE CAPUTO) |
| Defendants. | |

*******************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| H.T., et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:09-cv-0357 |
| v. | |
| MARK A. CIAVARELLA, JR., et al., | (JUDGE CAPUTO) |
| Defendants. | |

*******************************************************************************************

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMANTHA HUMANIK,

    Plaintiff,

    v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0630

(JUDGE CAPUTO)

## ORDER

**NOW**, this 1st day of March, 2010, **IT IS HEREBY ORDERED** that the Class Action Plaintiffs' Motion for Leave to File an Amended Master Complaint (Doc. 375) is **DENIED**.

                                                /s/ A. Richard Caputo
                                                A. Richard Caputo
                                                United States District Judge