**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FLORENCE WALLACE, et al.,

    Plaintiffs,

        v.

ROBERT J. POWELL, et al.,

    Defendants.

**CONSOLIDATED TO:**

CIVIL ACTION NO. 3:09-CV-286

(JUDGE CAPUTO)

*****************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM CONWAY, et al.,

    Plaintiffs,

        v.

JUDGE MICHAEL T. CONAHAN, et al.,

    Defendants.

CIVIL ACTION NO. 3:09-CV-291

(JUDGE CAPUTO)

*****************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

H.T., et al.,

    Plaintiffs,

        v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-CV-357

(JUDGE CAPUTO)

*****************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SAMANTHA HUMANIK,

    Plaintiff,

        v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-CV-630

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court are five motions to dismiss: (1) Defendant Barbara Conahan's Motion to Dismiss (Doc. 433); (2) Defendant Cindy Ciavarella's Motion to Dismiss (Doc. 435); (3) Defendants Robert J. Powell's and Vision Holdings, LLC's Motion to Dismiss the Master Complaints Pursuant to Fed R. Civ. P. 12(b)(6) (Doc. 437); (4) Motion to Dismiss by Mid-Atlantic Youth Services Corp, PA Child Care, LLC and Western PA Child Care, LLC (Doc. 439); and (5) Motion of Defendants Robert K. Mericle and Mericle Construction, Inc., Pursuant to Fed. R. Civ. P. 12, to Dismiss the Master Complaint for Class Actions and the Individual Plaintiffs' Master Long Form Complaint (Doc. 442). For the reasons discussed below, the motions of Defendants Cindy Ciavarella and Barbara Conahan will be granted, and the remaining motions will be granted in part and denied in part.

This Court has jurisdiction over the present action pursuant to 28 U.S.C. §§ 1331 ("federal question") and 1367 ("supplemental").

**BACKGROUND**

I.   **Factual Background**

The allegations of the Individual Plaintiffs' Master Complaint ("IC") (Doc. 134) and Class Action Plaintiffs' Master Complaint ("CAC") (Doc. 136) that are relevant to the present motions are as follows:

A.  Parties

Defendants Michael Conahan ("Conahan") and Mark Ciavarella were at all relevant times Judges of the Court of Common Pleas of the Eleventh Judicial District of the Commonwealth of Pennsylvania.  (IC ¶¶ 5, 6; CAC ¶¶ 161, 162.)  From approximately January 2002 until January 2007, Conahan served as President Judge.  (IC. ¶ 5.)  Conahan and Ciavarella were also owners, officers, shareholders, operators, and beneficiaries of Pinnacle Group of Jupiter, LLC ("Pinnacle") and Beverage Marketing of PA, Inc. ("Beverage").  (IC ¶¶ 5, 6; CAC ¶¶ 161, 162.)  Pinnacle was owned and operated by Defendants Barbara Conahan ("Mrs. Conahan") and Cynthia Ciavarella ("Mrs. Ciavarella"), the wives of Defendants Conahan and Ciavarella, respectively.  (IC ¶¶ 12-14; CAC ¶¶ 166, 167.)

Defendants Robert Powell ("Powell") and Gregory Zappala ("Zappala") were at all relevant times owners, officers, shareholders, and operators of Defendants PA Child Care, LLC ("PACC"), Western PA Child Care, LLC ("WPACC"), Mid Atlantic Youth Services ("MAYS"), Vision Holdings, LLC.  (IC ¶¶ 4, 11; CAC ¶¶ 163, 165.)  Powell was also an attorney-at-law and owner, officer, shareholder, and operator of Powell Law Group, P.C. (IC ¶ 4.)  PACC and WPACC are a limited liability companies which each own and operate a

3

youth detention center.  (IC ¶¶ 7, 8.) MAYS was  a corporation responsible for the operation of the PACC and WPACC facilities by virtue of contractual agreement.  (IC ¶ 18.) Defendant Robert Mericle ("Mericle") was at all relevant times an owner, shareholder, officer, and operator of Mericle Construction, Inc. ("Mericle Construction").  (IC ¶ 9; CAC ¶ 164.) Mericle Construction was at all times a closely held corporation.  (IC ¶ 10.)  Mericle was a contractor and friend of Ciavarella.  (IC ¶ 39.)

_____Plaintiffs are a number of juveniles who appeared before Ciavarella and their parents. (IC ¶ 3; CAC ¶¶ 10-160, 176-183, 192-648.)

B.  Conspiracy

A conspiracy existed "among the judges and [the other Defendants] to conceal $2.6 million in payments to the judges from Defendants and others as yet unknown in exchanged for referring children who appeared before [Ciavarella] to these juvenile correctional facilities."  (IC ¶  29; CAC ¶ 664.)  In exchange for this improper income, Conahan and Ciavarella entered into agreements guaranteeing placement of juvenile offenders exclusively with PACC, removed funding from the Luzerne County juvenile detention facility, facilitated the construction and expansion of PACC and WPACC, and directed juvenile be housed at PACC and WPACC.  (IC ¶ 34.)  "Defendants one and all participated in a scheme to ensure that a disproportionate number of juveniles. . . were incarcerated in juvenile detention facilities owned, operated, and influenced by Defendants."  (IC ¶ 36.)  "Defendants entered into and through various overt acts described above an agreement between themselves to illegally deprive Plaintiffs of their basic constitutional rights for their own personal enrichment and profit."  (IC ¶ 81.)  Implicit in the demand for kickbacks was the understanding that the

payments were *quid pro quo* for Conahan and Ciavarella's exercise of their judicial authority to send juveniles to PACC and WPACC "and to take other discretionary acts." (IC ¶ 46; CAC ¶ 656.)

   C.  Construction of PACC and WPACC Facilities

   In approximately June 2000, Ciavarella had discussions with Powell who was interested in constructing a juvenile facility in Luzerne County. (IC ¶ 39; CAC ¶ 649.) Powell was then introduced to Mericle for the purpose of locating land and constructing the facility. (IC ¶ 39; CAC ¶ 649.) Powell and Zappala, doing business as PACC, acquired land in Luzerne County and entered into an agreement with Mericle to construct a juvenile detention center to be operated by PACC and MAYS. (IC ¶ 40; CAC ¶¶ 649-50.) In or before January 2003, Conahan and Ciavarella arranged to receive a payment of $997,600 for their actions accomplishing the construction of PACC's facility. (IC ¶ 43; CAC ¶ 656, 701.) In order to conceal this payment, Conahan, Ciavarella, Powell, and Mericle signed an agreement prepared by Mericle purporting to pay a broker's fee to Powell, when  a large portion of the money was intended for Conahan and Ciavarella. (IC ¶ 44; CAC ¶ 702.) Conahan and Ciavarella also took steps to close the existing Luzerne County juvenile facility. Conahan removed funding for the existing Luzerne County juvenile detention facility. (IC ¶ 42; CAC ¶ 655.) Conahan and Ciavarella publicly maintained that conditions at the existing facility were deplorable. (CAC ¶ 654.) They also demanded kickbacks from Powell in exchange for closing the existing Luzerne County juvenile facility. (IC ¶ 46.) On or about January 29, 2002, Conahan executed a "Placement Guarantee Agreement" between PACC and the Court of Common Pleas for Luzerne County to house juvenile offenders at the PACC facility. (IC ¶ 41; CAC ¶ 652.)

Due to the success of PACC, Powell and Zappala, doing business as WPACC, constructed a juvenile facility in western Pennsylvania. (IC ¶ 51; CAC ¶ 659.) This facility was also constructed by Mericle. (IC ¶ 51; CAC ¶ 659.) Upon completion of the WPACC facility in July 2005, a $1,000,000 payment was made to Conahan and Ciavarella by Powell. (IC ¶ 51; CAC ¶ 659, 709.) To conceal this payment, Conahan, Ciavarella, Powell, and Mericle signed a "Registration and Commission Agreement" purporting to be an agreement for Mericle to pay Powell a fee of $1,000,000, while the money was instead transferred to Pinnacle, an entity owned by Conahan and Ciavarella. (IC ¶ 52; CAC ¶ 659.) Mericle Construction was also hired to construct an addition onto the PACC facility. (IC ¶ 53; CAC ¶ 661.) Upon completion of that project in February 2006, a $150,000 payment was made to Conahan and Ciavarella via Pinnacle. (IC ¶ 53.) Again Conahan, Ciavarella, Powell, and Mericle signed a written agreement to hide this transaction. (IC ¶ 54.) In addition to these payments, "Powell made hundreds of thousands of dollars in concealed payments to Ciavarella and Conahan for their past and future acts relating to [PACC] and [WPACC]" through Pinnacle and Vision. (CAC ¶ 662.) Conahan and Ciavarella also engaged in a number of other transactions to hide any sums they received. (IC ¶¶ 48-50, 55-58, 60-65; CAC ¶¶ 703-21.)

D. Juvenile Adjudications

"For defendants' scheme to succeed, Ciavarella and Conahan had to ensure that youth were placed at the facilities and that youth were not aware of Ciavarella's or Conahan's financial stake in their placement." (CAC ¶ 665.) The consistent placement of youth facilitated the construction of WPACC's facility, the expansion of PACC's facility, and the continuing contract between Luzerne County and these private operators. (CAC ¶¶ 669-

6

670.)  Powell believed that if he stopped paying Conahan and Ciavarella they would have retaliated against him by sending no more juveniles to PACC and WPACC.  (IC ¶ 59.)  In approximately February 2003, Ciavarella began directing that youthful offenders be sent to PACC's facility.  (IC ¶ 55.)  In these juvenile adjudications, Ciavarella routinely deprived the juveniles of their constitutional rights.  (CAC ¶¶ 2, 672-73, 681-87.)  Conahan and Ciavarella also implemented "zero tolerance" policies for the purpose of making it virtually impossible for juveniles to avoid placement.  (CAC ¶¶ 676-77.)

## II.     Procedural Background

The present memorandum concerns four cases consolidated for purposes of discovery by this Court's May 14, 2009, Case Management Order.  (Doc. 82.)  Subsequent to consolidation, Plaintiffs filed one master amended complaint for individual plaintiffs (Doc. 134) and one master amended complaint for class-action plaintiffs (Doc. 136).  Defendants filed the present motions on March 22, 2010, requesting that all claims against them in both complaints be dismissed.  (Docs. 433, 435, 437, 439, 442.)  Each of these motions has been fully briefed and they are now ripe for disposition.


## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual

allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

Plaintiffs' Complaints bring a number of causes of action against Defendants:[1] (1) claims pursuant to § 1983 for violations of the Plaintiffs' federal constitutional rights (IC Counts III, IV, V); (2) claims pursuant to § 1983 for conspiracy to violate the Plaintiffs' rights (IC Count VIII; CAC Counts II, IV); (3) claims pursuant to civil RICO (IC Count I; CAC Counts V, VI); (4) claims of RICO conspiracy (IC Count II; CAC Count VII); (5) state law civil conspiracy (IC Count VIII); and (6) state law false imprisonment (IC Count IX; CAC Count IX). The sufficiency of Plaintiffs' allegations as to each claim will be discussed seriatim.

## I.      Federal Law Claims

### A.  Section 1983

Plaintiffs bring numerous claims pursuant to 42 U.S.C. § 1983 for violations of their federal constitutional rights. Section 1983 provides redress for individuals whose

---

[1]   Throughout the remainder of this opinion, the Court will use "Plaintiffs" "Defendants" to refer to those parties whose claims and motions are presently under consideration.

constitutional rights are violated by governmental actors.[2]  "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained injury."  *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005).

As a threshold matter, Defendants argue that there is an additional element necessary to prove the juvenile plaintiffs' claims.  Defendants cite *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000), and argue that because Plaintiffs' claims are analogous to the common law tort of malicious prosecution, to state a claim for which relief may be granted the juvenile plaintiffs must also allege that they were innocent of the charged offenses.  While the court in *Hector* analogized § 1983 actions to common law torts and discussed the impact of innocence on such claims, the court's ultimate holding related to the *damages* that were available.  *Id.* at 160.  Even if Defendants are correct that Plaintiffs must establish innocence before recovering certain damages, that would not defeat Plaintiffs' claims entirely as an award of nominal damages would be appropriate if no other damages were shown.  *See Carey v. Piphus*, 435 U.S. 247, 266 (1978).  Because Plaintiffs could state a claim for which relief may be granted without alleging any damages, it cannot be said that actual innocence is required to state a claim for which relief may be granted.  I find that there is no such additional element when alleging Plaintiffs' § 1983 causes of action.  I will now consider the sufficiency of Plaintiffs' claims using the two elements discussed above.

---

[2]  42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

1.  Under Color of State Law

Under the traditional definition of "acting under color of state law," the defendant must have "exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *David v. City and County of Denver*, 101 F.3d 1344, *cert denied*, 522 U.S. 858 (10th Cir. 1996). The parties do not dispute that the moving Defendants could not independently act under color of state law. Instead, Plaintiffs correctly argue that "a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). Thus, whether each Defendants acted under color of state law turns on the question of whether Plaintiffs sufficiently allege that each Defendant participated in a conspiracy to violate their constitutional rights.

Defendants argue that Plaintiffs fail to sufficiently allege that they were part of a conspiracy to violate Plaintiffs' rights. "'To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Williams v. Fedor*, 69 F. Supp.2d 649, 666 (M.D. Pa. 1999) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). Plaintiffs allege that the Defendants participated in a scheme to construct PACC and WPACC's facilities, and to ensure that a disproportionate number of juveniles were incarcerated at those facilities. (IC ¶ 36; CAC ¶ 664.) But standing alone this conclusory allegation is insufficient; Plaintiffs must provide factual allegations to support their claims. *Iqbal*, 129 S. Ct. at 1950. As to Mericle and Powell, the Plaintiffs outline at length the factual allegations as to each as to their interactions with Conahan and Ciavarella. (IC ¶¶ 39-54; CAC ¶¶ 649-702.) And because Mericle and Powell are alleged to be owners, operators,

officers, and controlling members of Mericle Construction, Vision, PACC, WPACC, and MAYS, Plaintiffs also provide sufficient factual allegations against those entities.[3]

As to Mrs. Conahan and Mrs. Ciavarella, however, Plaintiffs' factual allegations are significantly more limited. Plaintiffs allege that Pinnacle, an entity involved in the payment of kickbacks, was "owned and operated" by the Mrs. Conahan and Mrs. Ciavarella. (IC ¶¶ 12-14; CAC ¶¶ 166-67.) While allegations of ownership might be enough to bind Pinnacle for any actions by Mrs. Conahan or Mrs. Ciavarella, the inverse is not necessarily true, e.g. that conduct by Pinnacle must have involved the wives. It is entirely possible that other actors in an entity, such as Pinnacle, could act on its behalf without the knowledge of its owner. In the present case, Plaintiffs even allege that while Mrs. Conahan and Mrs. Civarella owned and operated Pinnacle generally, that *their husbands* controlled Pinnacle during the conspiracy. (CAC ¶ 709.) Plaintiffs provide no further factual allegations that the wives agreed, assisted, knew of, or otherwise participated in the alleged conspiracy beyond "owning and operating" an entity used by the conspiracy. I find that this allegation alone fails to provide sufficient factual basis for Plaintiffs' legal conclusion that Mrs. Conahan and Mrs. Ciavarella were part of the alleged conspiracy. Therefore, as to Mrs. Conahan and Ciavarella, I find that they did not act under color of state law, and their motions to dismiss will be granted.

Defendants' final argument is that even if a conspiracy existed, it did not extend to Ciavarella's adjudications. Effectively, they argue that at best the allegations demonstrate a conspiracy to pay kick-backs, and a separate conspiracy to violate Plaintiffs' constitutional

---

[3] Defendants argue that the *Monell* standard requiring a policy or custom by an entity applies to these private entities as it would to public entities. I need not address this issue because Mericle and Powell are clearly alleged to be in positions of policy-making authority. Thus under either *respondeat superior* or the *Monell* standard, there are sufficient factual allegations against these entities.

rights.  In support of their argument, Defendants point to the guilty plea colloquoies of Mericle and Powell.   While Defendants may factually dispute whether they were involved in a conspiracy to violate of Plaintiffs' rights, Plaintiffs clearly allege in their complaints that there was one overarching conspiracy.  At this stage of the proceedings, this Court must assume as true all well pleaded allegations.  Defendants' challenge is better suited for the summary judgment stage at which point all parties can marshal evidence in support of their positions. Therefore, as to all Defendants except Mrs. Conahan and Mrs. Ciavarella, I find that Plaintiffs sufficiently allege a conspiracy with state actors, and thus those Defendants' motions to dismiss on this ground will be denied.

      2.  Violation of Federal Constitutional Right

Plaintiffs may be considered in two groups when examining their claims for violations of their federal constitutional rights.  First, the individual and class-action plaintiffs who were juveniles brought before Ciavarella (hereinafter "Juvenile Plaintiffs").  The Juvenile Plaintiffs bring claims for violations of their substantive and procedural due process rights, their right to counsel, their right to an impartial tribunal, and their right against involuntary guilty pleas. Second, the individual plaintiffs who were parents or guardians of those in the first group. I will consider the claims of each separately (hereinafter "Parent Plaintiffs").  The Parent Plaintiffs may not bring claims for damages based upon violations of the Juvenile Plaintiffs rights, but instead bring claims for violations of their own substantive and procedural due process rights.  *See O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (party may not bring claim based on the violation of another's rights).   I will consider each group's allegations separately.

### a. Juvenile Plaintiffs' Claims

Defendants do not dispute that the juvenile plaintiffs sufficiently allege that their constitutional rights were violated by Ciavarella. Instead, Defendants argue that Ciavarella's conduct, not their conduct, was the proximate cause of the juvenile plaintiffs' injuries and that his actions were beyond the scope of the alleged conspiracy. As discussed above there are sufficient factual allegations to support Plaintiffs' allegations that Defendants, except for Mrs. Conahan and Mrs. Ciavarella, conspired not only to construct the juvenile facilities, but to fill those facilities through violations of the Juvenile Plaintiffs' rights. While Plaintiffs will ultimately have the burden of establishing the scope of the conspiracy, an evaluation of the strength of Plaintiffs' evidence is inappropriate at this juncture. It is sufficient that Plaintiffs allege that the purposes of the conspiracy included the depravation of the juveniles' rights.[4] Therefore, I find the Juvenile Plaintiffs have sufficiently alleged violations of their constitutional rights.

### b. Parent Plaintiffs' Claims

The parent plaintiffs raise two claims. First, the allege that their procedural due process rights were violated when they were deprived of monetary sums as a result of the juvenile adjudications without due process of law. Second, they allege that Defendants violated their substantive due process protected interest in the family relationship between parent and child.

---

[4] Plaintiffs also may be able to establish "the requisite causal connection . . . not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Pilchesky v. Miller*, Civil Action No. 3:CV-05-2074, 2006 WL 2884445, at *4-5 (M.D. Pa. Oct. 10, 2006) (quoting *Hydrick v. Hunter*, 449 F.3d 978, 991 (9th Cir. 2006), *rev'd on other grounds*, 466 F.3d 676 (9th Cir. 2006)). In light of the conclusion that Plaintiffs sufficiently allege that the conspiracy covered the alleged constitutional violations, I need not decide whether Plaintiffs establish a claim under this standard.

Defendants first argue that the Parent Plaintiffs fail to state a claim for violations of their due procedural process rights. To establish a cause of action for a procedural due process violation, a plaintiff must first prove that a person acting under color of state law deprived him of a protected property interest; and second, he must show that the procedures available to him failed to provide him with due process of law. *See, e.g., Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Defendants argue that the Parent Plaintiffs do not seek damages for violations of their own rights, but rather that they are impermissibly bringing claims for damages they suffered as a result of violations of the Juvenile Plaintiffs' rights. *See O'Malley*, 477 F.2d at 789 (party may not bring claim based on the violation of another's rights). Plaintiffs counter that the same adjudications which violated the Juvenile Plaintiffs' rights also deprived the Parent Plaintiffs of their own property, monetary sums through the applications of fines, restitution, and other similar sanctions.[5] Plaintiffs cite *Stacey v. City of Hermitage*, 178 Fed. Appx. 94 (3d Cir. 2006) and argue that both the Juvenile Plaintiffs and the Parent Plaintiffs were each deprived of their own rights simultaneously. In *Stacey*, the home of one of the plaintiffs was allegedly demolished by the local municipality in violation of her constitutional rights. *Id.* at 98. Plaintiffs, the home owner and her son, brought a civil rights action pursuant to § 1983 alleging violations of their constitutional rights. *Id.* The Third Circuit Court of Appeals reversed in part the district court's order and permitted the claims of both plaintiffs. *Id.* at 103. In doing so, the court noted that the son sufficiently alleged a violation of his own Fourth Amendment right because he had private property in

---

[5] It is unclear whether the juveniles were ordered to pay costs which were then voluntarily assumed by the parents, or whether the parents or guardians themselves were sanctioned as a result of the juveniles' adjudications. While Plaintiffs do not explicitly explain how they were required to pay, they do allege that they were compelled to do so through wage garnishment, the loss of eligibility for public assistance, and similar measures. These allegations, combined with the allegations that Plaintiffs were required to pay sums, are sufficient for the present stage of these proceedings.

his mother's home, thus both he and his mother suffered simultaneous rights violations through a single governmental act. *Id.* at 100. Similar to the son in *Stacey*, the Parent Plaintiffs allege that their property was taken without due process during the same adjudications which violated the Juvenile Plaintiffs' rights. I find that the Parent Plaintiffs sufficiently allege that their own property was taken by the Defendants' conduct, and thus that the Plaintiffs sufficiently allege their procedural due process claim.[6]

Defendants also argue that the Parent Plaintiffs fail to allege a substantive due process violation. "It is by now well-settled that the Due Process Clause protects certainly narrowly defined fundamental rights of parents in their relationships with their children." *McCurdy v. Dodd*, 352 F.3d 820, 826 (3d Cir. 2003). To sufficiently state a due process claim for interference with the parent-child relationship, a plaintiff must allege *deliberate* conduct that the defendant sought to harm that relationship. *Chambers ex rel. Chambers v. School Dist. Of Philadelphia Bd. Of Educ.*, 587 F.3d 176, 192 (3d Cir. 2009). In *McCurdy*, the Third Circuit Court of Appeals rejected a parent's substantive due process claim for interference with the parent-child relationship arising from the fatal shooting of plaintiff's adult son. *McCurdy*, 352 F.3d at 830. While the court ultimately held that the plaintiff's claim was barred because the decedent was an adult, the court stated that it was "hesitant to extend the Due Process Clause to cover official actions that were not deliberately directed at the parent-child relationship." *Id*. at 829. The court also noted that "it would . . . stretch the concept of due process too far if we were to recognize a constitutional violation based upon official actions that were not directed at the parent-child relationship." *Id.* at 830. Subsequently in *Chambers* the Third Circuit Court of Appeals explicitly held that this

_____

[6] It is unclear at this time what type of process was due to the Parent Plaintiffs, or whether they had any opportunity to appeal the allegedly improper adjudications. The Defendants do not argue this issue, and thus I need not consider it at this time.

requirement that defendant's conduct be deliberately directed at the parent-child relationship also extends to situations involving minor and un-emancipated children. *Chambers*, 587 F.3d at 192. Applying this requirement to the present case, while Plaintiffs allege that the Defendants deliberately acted to place the Juvenile Plaintiffs' into PACC and WPACC, they do not allege that Defendants' deliberately sought to interfere with the Parent Plaintiffs' parent-child relationships. While it must be said that placing juveniles into PACC and WPACC would be disruptive to the parent-child relationship, given that the disruption caused by the death of a child is insufficient to create a substantive due process claim for a parent unless the defendant deliberately sought to interfere in the parent-child relationship, the conduct alleged here does not rise to the level of a substantive due process violation. Therefore, Defendants' motion to dismiss this claim will be granted.

### 3. Punitive Damages

Defendants Mericle and Mericle Construction also argue that Plaintiffs have failed to allege a factual basis for their § 1983 punitive damages claims. It is clear that in certain circumstances punitive damages may be awarded for violations of civil rights. *Cochetti v. Desmond*, 572 F.2d 102, 105 (3d Cir. 1978). The test for determining whether punitive damages should be awarded for civil rights violations is whether Defendants acted with actual knowledge that they were violating a federally protected right or with reckless disregard for whether they were doing so. *Cochetti*, 572 F.2d at 106. While Defendants again dispute whether the conspiracy was intended to violate Plaintiffs' rights, as stated above Plaintiffs sufficiently allege that Mericle, and thus Mericle Construction, was involved in the conspiracy to intentionally violate Plaintiffs' rights in furtherance of making PACC and WPACC profitable ventures for the conspirators. Defendants' request to dismiss claims for punitive damages will be denied.

B.  Civil RICO

The Racketeer Influenced and Corrupt Organizations Act ("RICO") contains both criminal and civil consequences for violative conduct.  18 U.S.C. § 1961, *et seq*.  RICO makes it unlawful to corruptly engage in a pattern of racketeering activity via an enterprise engaged in interstate commerce.  *Id.* § 1962 (listing prohibited activities).  In addition to criminal penalties, RICO authorizes "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ."  *Id.* § 1964(c).  Plaintiffs bring causes of action alleging that Defendants Conahan, Ciavarella, Mericle, and Powell violated § 1962(c), and that all Defendants violated § 1962(d).[7]  (IC Counts I and II; CAC Counts V and VII.)  Section 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  *Id.* § 1962(c).  Section 1962(d) makes in unlawful to conspire to violate the other subsections of § 1962.  *Id.* § 1962(d).  Defendants argue that the Plaintiffs lack standing to make RICO claims, that they do not sufficiently allege RICO violations under subsection (c), and that they do not sufficiently allege a RICO conspiracy under subsection (d).  I will consider each of these arguments in turn.

1.  Standing

The Third Circuit Court of Appeals has noted that there are two distinct parts of the standing requirement of a civil RICO action: (1) that the plaintiff suffered an injury to

---

[7]  Plaintiffs have withdrawn claims at Count IV of the Class Complaint for violations of § 1962(b), and the claims at Count I of the Individual Complaint and Count V of the Class Complaint against PACC, WPACC, MAYS, Mrs. Conahan, and Mrs. Ciavarella. (Br. in Opp'n 63 n. 24, Doc. 473.)

business or property and (2) that the injury was proximately caused by the defendant's RICO violation. *Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir.2000). In *Zimmerman*, the Third Circuit Court of Appeals noted that a plaintiff seeking recovery pursuant to RICO must allege injury "in his business or property" which was caused by a violation of the act. *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir.1987) (citing 18 U.S.C. § 1964). The court has also noted that " 'a showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest.' " *Maio*, 221 F.3d at 482. Plaintiffs bringing RICO causes of action are those alleging that they suffered economic harm when forced to pay monetary fines and other similar sums after the Juvenile Plaintiffs were adjudicated delinquent as part of the Defendants' conspiracy.[8] This type of economic harm clearly satisfies a "property" interest protected by RICO.

To have standing to bring civil RICO claims, however, Plaintiffs' injuries must also have been proximately caused by the underlying predicate acts. At common law, proximate cause was the demand for some direct relation between the injury asserted and the injurious conduct alleged. *Holmes v. Securities Investor Protection Corp.*, 503 US. 258, 268 (1992). Proximate cause, however, "is a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 2142 (2008). "[T]he compensable injury flowing from a [RICO violation] 'necessarily is the harm caused by the predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.' " *Anza v. Ideal Steel Supply Corp.* at 457 (quoting *Sedmia, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)). When considering whether an alleged injury is sufficiently direct, the Supreme Court has looked to three of the underlying

---

[8] Plaintiffs have clarified that their claims should be interpreted as only being brought on behalf of those individuals.

justifications for the requirement of proximate causation: (1) difficulty in calculating the amount of a plaintiff's damages attributable to remote violations; (2) avoiding the need to apportion damages among different "levels" of plaintiffs and to avoid multiple recoveries; and (3) the general interest in deterrence is already served where other plaintiffs with more direct injuries may assert claims. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 269-70 (1992)). Applying these considerations, the Supreme Court has addressed civil RICO's proximate cause requirement several times in recent years.

In *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), the plaintiff brought a civil RICO claim against a competing business. *Id*. at 454. The plaintiff alleged that the underlying pattern of racketeering activity was the submission of fraudulent tax returns which gave the competitor an advantage and caused lost profits for the plaintiff. *Id*. The Court rejected the argument that the proximate causation requirement was satisfied merely because the defendant's alleged aim was to increase its own market share at the expense of the plaintiff. *Id.* at 460-61 (citing *Associated Gen. Contractors*, 459 U.S. at 537). Instead, the Court looked to the predicate acts and determined that the direct victim of the fraud was the state that lost tax revenue as a result of the filings, not the plaintiff. *Id.* at 458. In confirming this conclusion, the Court discussed the difficulty in calculating what portion, if any, of the plaintiff's lost profits were caused by the competitor's tax fraud. *Id.* at 258-59. And while acknowledging that there was no risk of multiple recovery, the Court noted that the immediate victim, the state, would be able to vindicate its rights with its own claim, satisfying the law's objective of deterrence without the need for more "indirect" actions such as the plaintiff's. *Id.* at 460. The Court ultimately held that the plaintiff's alleged injury was not proximately caused by the RICO violations, and thus that the plaintiff had no standing to bring its claim. *Id.* at 461.

The Court again discussed the issue of RICO proximate causation in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. - - -, 128 S. Ct. 2131 (2008). *Bridge* involved a county treasurer's office's public auction selling tax liens on delinquent taxpayers' property. *Id.* at 2135. Instead of bidding in cash amount, prospective buyers bid in percentage penalties the property owner must pay the bidder in order to clear the lien. *Id.* As a result of stiff competition for these liens, most parcels attracted multiple bidders willing to accept the lowest possible penalty. *Id.* When resolving ties the county allocated parcels on a rotating basis. *Id.* To avoid allowing a party to receive a disproportionate number of liens via the rotation, the county had implemented a "Single, Simultaneous Bidder Rule" requiring each party to submit bids in its own name and prohibits the submission of other simultaneous bids for the same parcel through other agents. *Id.* The plaintiff alleged that defendant had committed fraud by violating submitting multiple bids via proxies to obtain an unequal share of the tax liens. *Id.* at 2136. While the holding of the Court ultimately related to the issue of whether first-party reliance is required for a RICO claim predicated on mail fraud, in the course of that discussion the Court addressed the requirement of proximate causation. *Id.* at 2141-45. The Court stated that the plaintiff's alleged injury, the loss of valuable liens, was the direct result of the defendant's fraud. *Id.* at 2144. It distinguished *Anza* using the directness factors stating "there are no independent factors that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue." *Id.*

Most recently, in *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010), the Supreme Court considered the issue of proximate cause in an action relating to the sale of cigarettes in New York City. *Id.* at 986. New York State and the City of New York each are permitted under New York law to tax the sale of cigarettes. *Id.* at 987. When purchasers

buy cigarettes from in-state vendors, those vendors are responsible for charging, collecting, and remitting these taxes. *Id.* When sold by out-of-state vendors, they vendor need only file a report with the state listing the name, address, and quantity of cigarettes purchased so that the taxes may be collected. *Id.* The defendant was an out-of-state vendor who allegedly failed to provide the buyers' information to New York State. *Id.* As a result, New York City also did not get this information, depriving it of the ability to collect its portion of the taxes. *Id.* New York City brought a RICO action against the defendant, alleging as its harm the lost tax income as a result of defendant's mail and wire fraud in failing to submit buyer information. *Id.* 987-88. A plurality of four justices stated that New York City's theory of causation was "far too indirect." *Id.* at 989. They noted that the conduct directly responsible for the harm was the *customers* failure to pay taxes, and that the fraud only made enforcement more difficult. *Id. at* 990. The plurality also stated that the disconnect here was even more significant than in *Anza*; the defendant allegedly defrauded New York State, who then passed on insufficient information to New York City, which made it easier for the taxpayers to cause the harm. *Id.* The *Hemi* plurality also rejected the dissenting justices' argument that RICO's proximate causation requirement should turn on forseeability, rather than on the directness of the relationship between the predicate act and the harm. *Id.* at 991. They also rejected New York City's argument that the defendant's acts should be characterized as a systemic scheme to defraud tax revenue, stating "the City cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct. Otherwise our RICO proximate cause precedent would become a mere pleading rule." *Id.* The plurality also distinguished *Bridge*, stating that in that case each time the fraud occurred a legitimate bidder was directly harmed and only those plaintiffs, not the county, were harmed. *Id.* at 992.

Applying these precedents to the present case, it is necessary to begin with the alleged predicate acts in violation of RICO. *Anza*, 547 U.S. at 461 (central question is whether the alleged RICO violation led directly to the plaintiff's injuries). Plaintiffs allege Defendants committed a pattern of predicate racketeering acts which can be split into two categories. First, Plaintiffs allege that the Defendants committed mail and wire fraud by deceptively hiding the sums paid to Conahan and Ciavarella. It is clear that these predicate acts cannot be said to be the proximate cause of the Plaintiffs' injuries. Not only would it be difficult to calculate how the hiding of income caused the alleged monetary damages to the Plaintiffs, but there are also more direct victims of this conduct; namely, the United States and Pennsylvania who were defrauded from successfully collecting on this taxable income. *Id.* at 461 (rejecting argument that tax fraud also proximately harms third party). Therefore, these allegations cannot support Plaintiffs' claims.

Plaintiffs also allege that Defendants' committed honest services fraud, a specific type of mail fraud, and state law bribery as the predicate acts. Each of these alleged offenses relates to the payment of bribes or kickbacks to Conahan and Ciavarella, in return for favorable judicial adjudications. *See Skilling v. United States*, 130 S.Ct. 2896, 2931 (2010) ("we now hold that [mail fraud] criminalizes *only* the bribe-and-kickback core"). Specifically, Plaintiffs allege that the payments to Ciavarella directly resulted in the monetary sanctions these Plaintiffs were forced to pay. The fact that the Plaintiffs may have been the target of the predicate acts, however, is not enough. *Anza*, 547 at 460-61 (citing *Associated Gen. Contractors*, 459 U.S. at 537). Similarly, it is not sufficient that the harm suffered by Plaintiffs was foreseeable. *Hemi*, 130 S.Ct. at 991. Plaintiffs must instead have been directly harmed by the predicate acts.

Defendants argue that there is a more immediate victim, namely the Commonwealth of Pennsylvania and the citizens of Luzerne County, who were deprived of the honest services of their judicial officer. However, the statutory codification of honest services fraud specifically states that honest services fraud includes "a scheme or artifice to deprive another of the intangible rights of honest services." 18 U.S.C. § 1346. Even if the group most directly affected by Conahan's and Ciavarella's fraud were the people of Pennsylvania or Luzerne County, the injury they suffered would be, by definition, intangible. In order to serve the deterrence goals articulated in the Supreme Court's proximate cause jurisprudence, it would be imprudent to hold that the only group whose injuries were proximately caused by honest services fraud is a group that suffered no tangible injury and is not in a position to bring suit. Thus the present case is most analogous to *Bridge*, where the government, although most directly connected to the fraud, did not suffer any tangible injury and would not be able to maintain a civil RICO action. The loss of the "honest services" of a judicial officer cannot be said to be the same time of concrete injury as the losses of tax income suffered in *Anza* and *Hemi*.

Plaintiffs' claims also better achieve the other objectives underlying proximate cause than any other. For example, calculating and apportioning the damages as to the value of honest judicial services vis a vis the citizens of Luzerne County as whole would not be logistically feasible. Similarly, there is no concern about apportioning damages or multiple recovery, because as stated above no other group suffered this type of economic harm. Ultimately, as was the case in *Bridge*, while the government may have been defrauded, the economic impact was felt immediately by the Plaintiffs each time conduct occurred. Because Plaintiffs allege an economic injury proximately related to the predicate acts of honest services fraud, they have standing to bring civil RICO claims.

2.  Violation of § 1962(c)

Plaintiffs first allege that Defendants Conahan, Ciavarella, Mericle and Powell are civilly liable for violating RICO § 1962(c).  In *United States v. Irizarry*, 341 F.3d 273 (3d Cir. 2003), the Third Circuit Court of Appeals described the requirements for establishing a violation of this section, stating:

> To establish a § 1962(c) RICO violation, the government must prove the following four elements: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated in, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity.

*Id.*  at 285 (quotation and citation omitted).  As a threshold issue, Defendants PACC, WPACC, MAYS, Mrs. Conahan, and Mrs. Ciavarella move to dismiss claims that they are liable under this section because they are not alleged to have taken action in direct violation of this provision.  Because Plaintiffs concede this point and have withdrawn the claims against these Defendants for violations of § 1962(c), their motions to dismiss will be granted as to  Count I of the Individual Plaintiffs' Complaint and Count V of the Class Plaintiffs' Complaint.  (Br. in Opp'n 63 n. 24, Doc. 473.)

The remaining Defendants make several arguments in favor of dismissal of Plaintiffs' claims based upon § 1962(c).  They argue that Plaintiffs have not sufficiently alleged the structure of the enterprise and that the enterprise existed separate and apart from the alleged conspiracy.  Plaintiffs only allegation of a RICO enterprise is that an association-in-fact enterprise existed among Defendants.  In *United States v. Turkette*, 452 U.S. 576 (1981), the Supreme Court set forth three factors for establishing such an enterprise: (1) 'an ongoing organization, formal or informal"; (2) that "the various associated function as a continuing unit"; and (3) that the enterprise exists "separate and apart from the pattern of

activity in which it engages." *Pappa v. Unum Life Ins. Co. Of America*, No. 3:07-CV-0708, 2008 WL 744820, at *10 (citing *Hollis-Arrington v. PHH Mortg. Corp.*, 205 Fed. App'x 48, 53 (3d Cir. 2006))(citing *Turkette*, 452 U.S. at 583.)   While Defendants are correct that ultimately Plaintiffs will need to establish each of these factors, at the early juncture of a motion to dismiss it is sufficient merely to allege the existence of an association-in-fact enterprise. *Id.* at *11(citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 789 (3d Cir.1984)).  While Defendants arguments that the enterprise did not exist apart from the racketeering activity and that there was an insufficient decision-making structure may have merit, Plaintiffs need not satisfy these requirements at this stage.   Because Plaintiffs sufficiently allege that an association-in-fact enterprise existed, they have satisfied the pleading requirements of this element at this stage.

　　　　3.  Conspiracy under § 1962(d)

　　　　Plaintiffs allege that all Defendants participated in a conspiracy to violation § 1962(d). As stated above, Plaintiffs sufficiently allege that all Defendants, except Mrs. Conahan and Mrs. Ciavarella, participated in a conspiracy which included conduct in violation of § 1962(c). *See supra* Part I.A.1.   Again, while the Defendants dispute the scope of the conspiracy, Plaintiffs have sufficiently alleged that a universal conspiracy existed to violate Plaintiffs' rights and to commit the predicate acts described above.  Therefore, the motions to dismiss of Mrs. Conahan and Mrs. Ciavarella will be granted, and the remaining motions will be denied.

**II.**　　**State Law Claims**

　　　　A.  False Imprisonment

　　　　The Individual Plaintiffs allege at Count IX that Defendants PACC, WPACC, Powell, and MAYS falsely imprisoned the Juvenile Plaintiffs.   Defendants raise three types of

arguments in favor of dismissal: (1) that some of the Plaintiffs' claims are barred by the statute of limitations; (2) that Plaintiffs fail to state a claim for which relief may be granted; (3) that they are immune from claims relating to facially valid orders. I will consider each argument in turn.

1. Statute of Limitations

Defendants argue that some of the Juvenile Plaintiffs' false imprisonment claims are barred by the statute of limitations. Plaintiffs and Defendants agree that the statute of limitations for claims of false imprisonment in Pennsylvania is two (2) years. 42 Pa. Cons. Stat. Ann. § 5524(1). Generally, the statute of limitations begins to run "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Because Plaintiffs allege that they were aware of their detentions, the statute of limitations on each claim would ordinarily have started running on the date each was released. *See Martin v. Red Lion Police Dept.*, 146 Fed. Appx. 558, 561 (3d Cir. 2005) (statute of limitations began upon release from hospital or at least when aware of nature of treatment therein). Plaintiffs and Defendants also agree, however, that by statute the claims of minors are tolled until they reach age eighteen (18). 42 Pa. Cons. Stat. Ann. § 5533(b). Thus the false imprisonment claim of each Minor Plaintiff who turned eighteen (18) more than two (2) years prior to the filing of their action would be barred by the statute of limitations.

Plaintiffs argue that the statute of limitations should be equitably tolled until January 26, 2009, the date that the U.S. Attorney filed a criminal information outlining the Defendants' alleged conspiracy. (Br. in Opp'n 117, Doc. 473.) First, they argue that the "discovery rule" should toll the statute of limitations. "The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has

not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (citation omitted). While it may be true that the Minor Plaintiffs did not know of the *conspiracy* until that date, the discovery rule acts to toll the statute of limitations until the *injury* is known. In this case, the alleged injuries arise from the imprisonment, which Plaintiffs allege were known from the time of incarceration. I find that the discovery rule is inapplicable here.

Plaintiffs also argue that equitably estoppel should bar Defendants from raising a statute of limitations defense because of their intentional fraud or concealment of the facts relating to Juvenile Plaintiffs' causes of action. "A party relying on this doctrine will be entitled to a tolling of the Statute of Limitations by proving that there has been either intentional or unintentional deception by the Defendant, *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 96, 204 A.2d 473 (1964), and the statute will be tolled until the Plaintiffs would, through the exercise of reasonable diligence, have discovered the fraudulent concealment." *Piccolini v. Simon's Wrecking*, 686 F. Supp. 1063, 1074 (M.D. Pa. 1988) (other citation omitted). "The Plaintiff, however, must prove such fraud or concealment by clear, precise, and convincing evidence." *Id.* (citing *Ritter v. Theodore Pendergrass*, 514 A.2d 930, 935 n. 8 (1986)). Plaintiffs sufficiently allege that Defendants intentionally acted to conceal their conspiracy from Plaintiffs and others. (IC ¶ 44, 48-50, 52, 60-65; CAC ¶ 659, 702-21.) Concealment of the conspiracy could prevent Plaintiffs from bringing the present cause of action. Ultimately, Plaintiffs will be required to prove the alleged fraud or concealment in order to equitable toll the statute of limitations until January 26, 2009, the date of the U.S. Attorney's criminal information, is appropriate here. But, considering only the allegations in the complaint I find that estoppel might be appropriate here and I will deny Defendants' motion

to dismiss.

2.  Failure to State a Claim

Defendants next argue that Plaintiffs fail to state a claim for false imprisonment. There are two elements to a claim of false imprisonment under Pennsylvania law: "(1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Defendants do not dispute that Plaintiffs have satisfied these elements, and instead they make several other arguments. Defendants first argue that Plaintiffs have failed to sufficiently allege that their detentions lacked probable cause. When detention is in the form of an arrest, to show the unlawfulness of that detention, Plaintiff must show "that the process used for the arrest was void on its face or that the issuing tribunal was without jurisdiction; it is not sufficient that the charges were unjustified." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 984-85 (Pa. Super. 1997). In order to consider the claims of false imprisonment and false arrest collectively, however, the confinement must be "inextricably intertwined with the unlawful arrest." *Gagliardi v. Lynn*, 285 A.2d 109, 128 (1971). Plaintiffs do not allege that the Juvenile Plaintiffs' arrests were unlawful or that the arresting officials were part of the conspiracy, thus it cannot be said that the arrest and confinement were "inextricably intertwined." Therefore, Plaintiffs need not allege a lack of probable cause to state a claim for false imprisonment.

Defendants also argue that several time periods of detention should be excluded from Plaintiffs' false imprisonment claims. First, they argue that the pre-adjudicatory detentions, detentions before juveniles were placed by Ciavarella, cannot be said to be unlawful. I disagree. The alleged conspiracy here involved not just the adjudication of juveniles but the opening and operation of PACC and WPACC generally. I find Plaintiffs sufficiently allege that they were also unlawfully detained pre-adjudications. Second, Defendants argue that

Plaintiffs may not bring false imprisonment claims against institutions where they were not personally held. Plaintiffs allege "Juvenile Plaintiffs were detained at Defendants PACC and/or WPACC." (IC ¶ 166.) While Defendants may dispute factually where, if at all, each Juvenile Plaintiff was held, at this stage of the proceedings this Court must accept as true all factual allegations. Defendants' argument is better suited for summary judgment. Finally, Defendants argue that MAYS and WPACC may not be held liable as to torts occurring before MAYS and WPACC existed. To demonstrate the start-up dates for MAYS and WPACC Defendants submit evidence of "public records" and asks that this Court take judicial notice of them. I decline to do so. Again, this type of argument, relying upon extrinsic evidence not attached or discussed directly in the complaints, is better suited for summary judgment. Therefore, Defendants' motions to dismiss for failure to state a claim of false imprisonment will be denied.

### 3. Enforcement of Court Order

Defendants also argue that because they received orders for the detentions they are shielded from liability unless the orders were facially invalid or issued without jurisdiction. *See Hamay v. County of Washington*, 435 A.2d 606, 609 (1981) . In order for tort liability to attach for a party executing a court order for detention, "they would have had to have been enforcing orders that were ordered by the judge acting without any jurisdiction at all." As discussed above, however, Plaintiffs sufficiently allege that Defendants were part of the conspiracy to  hold these juveniles in PACC and WPACC, and thus it must be said that Plaintiffs have alleged that Defendants *knew* the orders were invalid. Defendants' motion to dismiss on this ground will be denied.

B.  Civil Conspiracy

The Individual Plaintiffs allege at Count VIII that Defendants PACC, WPACC, Powell, Mericle, Mericle Construction, MAYS, Conahan, Mrs. Conahan, Ciavarella, and Mrs. Ciavarella, committed state law civil conspiracy.  To state a claim for civil conspiracy under Pennsylvania law, a complaint must allege:

> (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.

*McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000).  Moreover, if there is no civil cause of action for a particular act, there can be no cause of action for conspiracy to commit that act.  *Id.*  As stated above, Plaintiffs sufficiently allege that all Defendants, except Mrs. Conahan and Mrs. Ciavarella, participated in a conspiracy which included conduct in violation of § 1962(c).  *See supra* Part I.A.1.  And while only some Defendants are alleged to have committed the tort of false imprisonment, Plaintiffs have sufficiently alleged that the remainder were part of the conspiracy to do so.  Therefore, the motions to dismiss of Mrs. Conahan and Mrs. Ciavarella will be granted, and the remaining motions will be denied.


**CONCLUSION**

Plaintiffs have provided sufficient factual and legal allegations to support many of their claims of rights violations under § 1983, Civil RICO, false imprisonment, and conspiracies to do the same.  As to Mrs. Conahan and Mrs. Ciavarella, Plaintiffs' do not allege a sufficient factual basis for their claims, and thus their motions to dismiss will be granted.  Plaintiffs also fail to sufficiently state a claim for interference with the Parent Plaintiffs' substantive due process rights, therefore, as to these claims Defendants' motions

will be granted.  As to the remaining claims, Plaintiffs have sufficiently alleged a factual and legal basis for their claims.  And while Defendants dispute the scope of the conspiracy and the sufficiency of the RICO allegations, Plaintiffs' allegations are sufficient to deny the present motions to dismiss.  Therefore, the remaining portions of Defendants' motions will be denied.

An appropriate order follows.


 August 24, 2010                                     /s/ A. Richard Caputo
Date                                                      A. Richard Caputo
                                                             United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FLORENCE WALLACE, et al.,

     Plaintiffs,

        v.

ROBERT J. POWELL, et al.,

     Defendants.

**CONSOLIDATED TO:**

CIVIL ACTION NO. 3:09-CV-286

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM CONWAY, et al.,

     Plaintiffs,

        v.

JUDGE MICHAEL T. CONAHAN, et al.,

     Defendants.

CIVIL ACTION NO. 3:09-CV-291

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

H.T., et al.,

     Plaintiffs,

        v.

MARK A. CIAVARELLA, JR., et al.,

     Defendants.

CIVIL ACTION NO. 3:09-CV-357

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SAMANTHA HUMANIK,

    Plaintiff,

       v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-CV-630

(JUDGE CAPUTO)

## ORDER

**NOW**, this __24th__ day of August, 2010, **IT IS HEREBY ORDERED** that:

(1)    Defendant Barbara Conahan's Motion to Dismiss (Doc. 433) is **GRANTED**.

(2)    Defendant Cindy Ciavarella's Motion to Dismiss (Doc. 435) is **GRANTED**.

(3)    Defendants Robert J. Powell's and Vision Holdings, LLC's Motion to Dismiss the Master Complaints Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 437) is **GRANTED IN PART** and **DENIED IN PART** as follows:
    (a)    As to Count V of the Individuals Master Complaint (Doc. 134) the motion is **GRANTED**.
    (b)    As to the remainder, the motion is **DENIED**.

(4)    Motion to Dismiss by Mid-Atlantic Youth Services Corp, PA Child Care, LLC and Western PA Child Care, LLC (Doc. 439) is **GRANTED IN PART** and **DENIED IN PART** as follows:
    (a)    As to Counts I and V of the Individuals Master Complaint (Doc. 134), and Count V of the Class Action Master Complaint (Doc. 136), the motion is **GRANTED**.
    (b)    As to the remainder, the motion is **DENIED**.

(5)    Motion of Defendants Robert K. Mericle and Mericle Construction, Inc., Pursuant to Fed. R. Civ. P. 12, to Dismiss the Master Complaint for Class Actions and the Individual Plaintiffs' Master Long Form Complaint (Doc. 442) is **GRANTED IN PART** and **DENIED IN PART** as follows:
    (a)    As to Count V of the Individuals Master Complaint (Doc. 134) the motion is **GRANTED**.
    (b)    As to the remainder, the motion is **DENIED**.

                  /s/ A. Richard Caputo
                  A. Richard Caputo
                  United States District Judge