**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FLORENCE WALLACE, *et al.*,

Plaintiffs,

v.

ROBERT J. POWELL, *et al.*,

Defendants.

CIVIL ACTION NO. 3:09-CV-286

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are motions to dismiss filed by Robert Powell (Doc. 922), MAYS, PA Child Care, and Western PA Child Care (Doc. 927), Sandra Brulo (Doc. 929), Sam Guesto, Luzerne County, Luzerne County Department of Juvenile Probation, Greg Skrepenak, and Todd Vanderheid (Doc. 931), and Robert Mericle and Mericle Construction (Doc. 932).  For the reasons stated below, these motions will be granted in part and denied in part.

## BACKGROUND

Angela Rimmer Belanger, Kelly Farmer, Joseph Rimmer, and Zane Farmer ("Belanger plaintiffs") in their proposed class action, allege the following.

All four named plaintiffs live in Luzerne County, Pennsylvania.  Defendants Mark A. Ciavarella and Michael T. Conahan are former Luzerne County Court of Common Pleas judges.  Defendant Luzerne County is a county government organized under the laws of the state of Pennsylvania.  Defendant Sam Guesto is the former County Manager/Chief

1

Clerk of Luzerne County and held that position until January 2008.   Following his resignation, he was hired by defendant Ciavarella as a court administrator.   Defendants Gregory Skrepenak and Todd Vonderheid are former members of the Luzerne County Board of Commissioners.   Defendant Sandra Brulo is a former Deputy Director of Forensic Programs of the Luzerne County Department of Probation.   Defendant Luzerne County Department of Juvenile Probation is the Department of Juvenile Probation for Luzerne County.   Defendant Robert Powell is a former partner in PA Child Care, LLC and Western PA Child Care, LLC.   Defendant Robert Mericle is the owner of Mericle Construction, Inc. Defendant Mericle Construction is a close corporation registered under the laws of Pennsylvania.   Defendant PA Child Care LLC and Western PA Child Care, LLC are limited liability companies registered under the laws of Pennsylvania.   Defendant Mid-Atlantic Youth Services, Inc. ("MAYS") is a Pennsylvania corporation with its principal place of business in Emlenton, PA.

Defendants Powell and Mericle paid approximately $2.6 million in bribes to defendants Ciavarella and Conahan to ensure the placement of juveniles in PA Child Care and Western PA Child Care – facilities built by Mericle and run by Powell.  In Pennsylvania, juveniles retain the same rights as other criminal defendants, including the right to due process of law and the right to counsel.  Specifically, the bribes facilitated a "Placement Guarantee Agreement" that guaranteed substantial annual payments from Luzerne to the juvenile facilities operated by defendant Powell.  To ensure placements in these facilities, defendant Ciavarella often sentenced juveniles to terms of incarceration for minor offenses. Ciavarella also typically adjudicated these cases without any of the procedural protections normally associated with juvenile cases, including giving the juveniles legal counsel to

2

protect their rights.  Juveniles who appeared before Ciavarella were provided with a waiver of counsel form, prepared by defendant Brulo, which was insufficient and illegal on its face. Of the juveniles who waived counsel before Ciavarella, over half were incarcerated, compared with roughly ten percent of juveniles who waived counsel in the rest of the state. At least 5,000 children were adjudicated by Ciavarella during the period relevant to the complaint.  During that time, Luzerne County had the highest rate of juvenile incarceration in Pennsylvania by several orders of magnitude.  Thousands of childrens' lives were negatively affected by defendants' conduct, and the childrens' parents were similarly affected.

The Belanger plaintiffs further allege that several Luzerne County officials helped facilitate the bribery scheme.  Luzerne County initially rejected PA Child Care's unsolicited proposal in 2000 to build a juvenile detention facility in Pittston and to lease it to the County for $37 million over thirty years.  Although the County had an adequate juvenile facility, after Judge Conahan announced that juveniles would no longer be sent to it because of its deplorable conditions, the County made plans to build its own facility.  However, after the elections of Gregory Skrepenak and Todd Vonderheid as County Commissioners in 2004, the County agreed to contract with PA Child Care for $58 million over 20 years to house adjudicated juveniles. Through this period, Skrepenak and Vonderheid, allied politically and socially with Chivarella and Conahan and aware of the bribery scheme, abdicated their oversight responsibilities regarding personnel, budget, and contract decisions relating to juvenile detention, giving Ciavarella and Conahan a free hand.  The County's lease with PA Child Care was roundly criticized as grossly overpriced.  However, Skrepenak and Vonderheid continued to support it.  When Steve Flood, the Luzerne

3

County Controller, launched an investigation into the matter, Skrepenak and Vonderheid obstructed his investigation.  Additionally, Sam Guesto, a member of the conspiracy closely aligned with both Skrepenak and the Judges, in his position as Luzerne County manager, participated in the decision to hire PA Child Care and helped draft the agreement.  Sandra Brulo, Deputy Director for Forensic Services for the Luzerne County Probation Department, was also a member of the bribery conspiracy.  She used her position to implement Conahan's "zero tolerance policy" regarding juvenile crimes – initiated just days after the opening of the PA Child Care facility.  Brulo instructed Luzerne County probation officers that all juveniles supervised in Luzerne County had to have their probation violated.  Such a policy was to ensure that PA Child Care would remain full.  She also recommended juveniles be placed in rehabilitation facilities in order to legitimize placements made by Conahan and Chivarella and altered probation reports to ensure further detention.

As a result of the defendants' actions, the lives of the Belanger plaintiffs have been dramatically affected.  After Zane Farmer was arrested following a verbal altercation with his mom, Kelly Farmer, Judge Ciavarella sentenced him to six months incarceration without due process or being advised of his right to counsel.  Joseph Rimmer, after being charged with vandalism, was sentenced to thirty days incarceration – later increased to several months – by Judge Ciavarella after a summary proceeding in which he was denied due process.  Angela Rimmer Belanger, Joseph's mother, was later sued by Luzerne County for child support during Joseph's incarceration.

In their complaint, the Belanger plaintiffs bring the following claims: conspiracy to violate 42 U.S.C. § 1983 (count I), against all defendants; violation of 42 U.S.C. § 1985 (count II), against all defendants; violation of 42 U.S.C. § 1986 (count III), against the

4

Luzerne County defendants; violation of 42 U.S.C. § 1983 (count IV), against the Luzerne County defendants; violation of right to substantive due process under 42 U.S.C. § 1983 (count V), against the Luzerne County defendants; unconstitutional policies and practices under 42 U.S.C. § 1983 (count VI) against the Luzerne County defendants; wrongful taking under 42 U.S.C. § 1983 (count VII) against Sandra Brulo, the Luzerne County Department of Juvenile Probation, and Luzerne County; violation of the Juvenile Justice and Delinquency Prevention Act of 1974 under 42 U.S.C. § 1983 (count VIII) against Sandra Brulo and the Luzerne County Department of Juvenile Probation; injunctive relief for wrongful payment to municipality (count IX), against Luzerne County and the Luzerne County Department of Juvenile Probation; wrongful payment to municipality of child support (count X), against Sandra Brulo, Luzerne County, and the Luzerne County Department of Juvenile Probation, and punitive damages against all defendants except Luzerne County and the Luzerne County Department of Juvenile Probation.

The Belanger plaintiffs have amended their complaint twice. Following the second set of amendments, defendants re-filed their motions to dismiss. Each motion has been briefed and is ripe for review. Each will be discussed in turn below.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise

a reasonable expectation that discovery will reveal evidence of'" each necessary element,

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550

U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a

complaint to set forth information from which each element of a claim may be inferred).

In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the

defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson*

*v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555).  "[T]he

factual detail in a complaint [must not be] so undeveloped that it does not provide a

defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515

F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663,

667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the

complaint, exhibits attached to the complaint, and matters of public record.  *See Pension*

*Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The

Court may also consider "undisputedly authentic" documents when the plaintiff's claims are

based on the documents and the defendant has attached copies of the documents to the

motion to dismiss.  *Id.*  The Court need not assume the plaintiff can prove facts that were

not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256,

263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'"

*Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).  "While legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether a plaintiff will ultimately prevail.  *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### I.      Defendant Powell's Motion to Dismiss (Doc. 922)

Defendant Robert Powell moves to dismiss the three claims against him in the Belanger plaintiffs' second amended complaint: (1) the claim that Powell conspired to deny plaintiffs of their rights to due process, an impartial tribunal, and familial relations, in violation of their Fifth, Sixth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 (count I); (2) the 42 U.S.C. § 1985(3) claim (count II); and (3) the punitive damages claim. Since the Court has already ruled that allegations similar to those underlying the § 1983 conspiracy – as they relate to the procedural due process and impartial tribunal claims – and punitive damage claims were sufficient under Fed. R. Civ. P. 12(b)(6), *see Clark v. Conahan*, 737 F.Supp.2d 239 (M.D.Pa. 2010), these counts will not be dismissed as to defendant Powell.  The Court will, however, grant defendant Powell's motion to dismiss the § 1985(3) claim and the aspect of the § 1983 conspiracy claim relating to the interference with familial relations.

### A.      The § 1983 conspiracy claim

This Court previously held in *Clark* that allegations stemming from the same events

stated claims under 12(b)(6) for violations of juveniles' Fifth, Sixth, and Fourteenth Amendment rights under 42 U.S.C. § 1983.  Powell, incorporating arguments made by defendant Mericle in his motion to dismiss, argues that this ruling was wrong.  The Court does not agree.

The Supreme Court has repeatedly held that a plaintiff cannot bring a cognizable claim pursuant to 42 U.S.C. § 1983 if a judgment in favor of the plaintiff "would necessarily imply the invalidity of his conviction or sentence," unless the plaintiff can demonstrate that the conviction or sentence has been invalidated. *Edwards v. Balisok*, 520 U.S. 641, 643, (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).  As to Plaintiffs' Fifth, Sixth and Fourteenth Amendment claims, although the precise contours of those claims are unclear at this stage of the proceeding, those claims necessarily will imply the invalidity of the underlying juvenile conviction and sentences.

This Court held in *Clark* that:

Defendants argue that *Kossler v. Crisanti*, 564 F.3d 181 (3d Cir.2009), stands for the proposition that a favorable termination must be indicative of actual innocence.  While it is true that *Kossler* does stand for this proposition, it is unclear whether *Kossler*, which very explicitly limited its holding to the facts of that case, applies with equal force to § 1983 claims that are brought under a claim other than malicious prosecution. *See Kossler*, 564 F.3d at 187, 192. Assuming without deciding that *Kossler* does require an indication of actual innocence, the Third Circuit Court of Appeals went on to list six (6) ways in which a plaintiff may indicate his innocence:1) discharge by a magistrate at a preliminary hearing, 2) the refusal of a grand jury to indict, 3) the formal abandonment of the proceedings by the prosecutor, 4) the quashing of an indictment or information, 5) acquittal, or 6) a final order in favor of the accused by a trial or appellate court. Id. at 187–88 (citing *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir.2002)).

In the instant case, the adjudications of probation violations that occurred after January 1, 2003 were vacated by the Pennsylvania Supreme Court's order of October 29, 2009. Thus, [plaintiff] was the beneficiary of a final order in favor of

the accused by an appellate court, which is one of the terminations of a criminal proceeding that indicates innocence. As [plaintiff] has received a favorable termination of these adjudications, he is not barred by Heck and may bring actions pursuant to § 1983 for any injury arising from the actions taken against him after January 1, 2003.

*Clark*, 737 F.Supp.2d at 260.

The Court applies the same findings here and will deny defendant Powell's motion to dismiss the § 1983 conspiracy claims relating to violation of the Belanger plaintiffs' rights to due process and an impartial tribunal.

However, the Belanger plaintiffs' substantive due process stemming from interference with the family relationship will be denied.  In *Wallace v. Powell*, which dealt with the same underlying allegations, this Court held that:

It is by now well-settled that the Due Process Clause protects certainly narrowly defined fundamental rights of parents in their relationships with their children." *McCurdy v. Dodd*, 352 F.3d 820, 826 (3d Cir.2003). To sufficiently state a due process claim for interference with the parent-child relationship, a plaintiff must allege deliberate conduct that the defendant sought to harm that relationship. *Chambers ex rel. Chambers v. School Dist. Of Philadelphia Bd. Of Educ.*, 587 F.3d  176, 192 (3d Cir.2009). In McCurdy, the Third Circuit Court of Appeals rejected a parent's substantive due process claim for interference with the parent-child relationship arising from the fatal shooting of plaintiff's adult son. *McCurdy*, 352 F.3d at 830. While the court ultimately held that the plaintiff's claim was barred because the decedent was an adult, the court stated that it was "hesitant to extend the Due Process Clause to cover official actions that were not deliberately directed at the parent-child relationship." *Id.* at 829. The court also noted that "it would ... stretch the concept of due process too far if we were to recognize a constitutional violation based upon official actions that were not directed at the  parent-child relationship." *Id.* at 830. Subsequently in *Chambers* the Third Circuit Court of Appeals explicitly held that this requirement that defendant's conduct be deliberately directed at the parent-child relationship also extends to situations involving minor and un-emancipated children. *Chambers*, 587 F.3d at 192. Applying this requirement to the present case, while Plaintiffs allege that the Defendants deliberately acted to place the Juvenile Plaintiffs' into PACC and WPACC, they do not allege that Defendants' deliberately sought to interfere with the Parent Plaintiffs' parent-child relationships. While it must be said that placing juveniles into PACC and WPACC would be disruptive to the parent-child relationship, given that the

9

disruption caused by the death of a child is insufficient to create a substantive due process claim for a parent unless the defendant deliberately sought to interfere in the parent-child relationship, the conduct alleged here does not rise to the level of a substantive due process violation. Therefore, Defendants' motion to dismiss this claim will be granted.

No. 3:09-CV-286, 2010 WL 3398995 (M.D.Pa. Aug. 24, 2010).  For the same reasons, the Court will grant defendant Powell's motion to dismiss that part of the § 1983 conspiracy claim dealing with the substantive due process\interference with familial relations allegations.

**B.     The § 1985(3) claim**

The Court will also dismiss the § 1985 claim against defendant Powell because juveniles are not a discrete and insular minority who have historically been subjected to pervasive discrimination.

42 U.S.C. § 1985(3) states:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To state a claim under §§ 1985(2) or (3), a plaintiff must allege four things: (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge*, 403 U.S. 88 (1971).  In *Magnum v. Archdiocese of Philadelphia*, 253 Fed.Appx. 224 (3d Cir. 2007), plaintiffs, alleging sexual abuse by certain Diocesan priests,

brought civil RICO claims against the  Archdiocese as well as claims under § 1985 and § 1986.  The Third Circuit, upholding the district court's dismissal of the § 1985 claim, held that: "minor children – who have not been recognized as "victims of historically pervasive discrimination" and whose sole classifying characteristic ( i.e., their minority) is not immutable – fall outside the ambit of [1985]."

Following *Magnum*, the Court will grant defendant Powell's motion to dismiss the Belanger plaintiffs' § 1985 claim against him.

### C.     The Punitive Damages Claim

The Court will deny defendant Powell's motion to dismiss the punitive damages claim.

It is clear that in certain circumstances punitive damages may be awarded for violations of civil rights. *Cochetti v. Desmond*, 572 F.2d 102, 105 (3d Cir.1978). The test for determining whether punitive damages should be awarded for civil rights violations is whether Defendants acted with actual knowledge that they were violating a federally protected right or with reckless disregard for whether they were doing so. *Cochetti*, 572 F.2d at 106.   In *Wallace*, the Court denied a similar motion brought by defendants Mericle and Mericle Construction.  Here, as in *Wallace*, defendant Powell argues that the complaint does not allege he acted with actual knowledge that he was violating the plaintiffs' rights. However, the complaint alleges a quid pro quo whereby Ciavarella and Conahan violated the plaintiffs' civil rights by unjustly incarcerating them in facilities run by Powell in exchange for cash.   These allegations satisfy the "actual knowledge" requirement for punitive damages.

## II.     MAYS', PA Child Care's, and Western PA Child Care's motion to dismiss (Doc. 927)

Similarly, most of the issues in the motion to dismiss filed by MAYS, PA Child Care, and Western PA Child Care have already been ruled on.  The punitive damages and juvenile plaintiffs' § 1983 claims will not be dismissed, but the § 1985 claim and the interference with familial relationships claims will be.  Although these defendants argue all claims brought against them should be dismissed because Rimmer and Farmer acknowledge their guilt in the pleadings, the Court finds the second amended complaint ambiguous on this point and will not dismiss the complaint on this ground.  The Court will also deny the motion to strike.

## III.     Sandra Brulo's motion to dismiss (Doc. 929)

Defendant Brulo's motion to dismiss will be granted in part and denied in part as follows.  Again, many of these issues have already been decided by this Court in previous opinions.

### A.     "Official capacity" claims

Plaintiffs have not brought any claims against defendant Brulo in her official capacity.  This argument is therefore moot.

### B.     Quasi-judicial immunity for "personal capacity" claims

Defendant Brulo argues she is entitled to quasi-judicial immunity for actions stemming from her role as Chief Juvenile Probation Officer of Luzerne County.

Absolute immunity is available to government actors that are performed in their "quasi-judicial" role for conduct that is "intimately associated with the judicial phase of the criminal process." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir.1992); *Imbler v.*

*Pachtman*, 424 U.S. 409, 430 (1976). In determining whether to grant such immunity, courts must take a functional approach, focusing on "the nature of the function performed, not the identity of the actor who performed it and evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function." *Stankowski v. Farley*, 487 F.Supp.2d 543, 552 (M.D.Pa.2007) (quoting *Light v. Haws*, 472 F.3d 74, 78 (3d Cir.2007)), *aff'd*, 251 Fed.Appx. 743 (3d Cir.2007). However, where a government actor is acting in his or her investigative or administrative capacity, those actions are only protected by qualified immunity, not absolute quasi-judicial immunity. *Kulwicki*, 969 F.2d at 1463. Probation officers enjoy quasi-judicial immunity for participation in the preparation of pre-sentence reports. *Stankowski*, 487 F.Supp.2d at 552–53.

> Regarding this precise issue, this Court has previously held:

> In this case, Defendant Brulo is subject to absolute quasi-judicial immunity regarding her actions stemming from her sentencing recommendations. These activities are intimately associated with the judicial phase of the juvenile proceedings; as noted above, there is precedent in this district for holding that such activities are subject to immunity. *See id.* However, the other actions alleged against Brulo, such as altering drug tests, or conjuring up fake probation violations, were taken in her investigative role as a probation officer. As such, these activities are not subject to quasi-judicial immunity.

*Clark*, 737 F.Supp.2d 239,259 (M.D.Pa. 2010).

Therefore, Brulo's motion to dismiss will be granted for all her actions regarding sentencing recommendations and denied as to the other activities.

### C. Qualified immunity

Defendant Brulo argues she is entitled to qualified immunity for plaintiffs' Fifth and Sixth Amendment claims.  Qualified immunity protects government officials from suit for conduct that does not violate a clearly established statutory or constitutional right of which

13

a reasonable person would be aware. *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   This Court has already ruled any reasonable person would know that what she is accused of doing violated the plaintiffs' constitutional rights. *Clark*, 737 F.Supp.2d at 257.   Therefore Brulo is not entitled to qualified immunity for these actions, and the motion to dismiss will be denied on that count.

### D.    Sovereign immunity under 42 Pa. C.S. § 8521

Defendant Brulo argues she is entitled to immunity under 42 Pa. C.S. § 8521. Sovereign immunity is only available to state employees while they are acting within the scope of their duties. 1 Pa. C.S. § 2310. The probation department is an arm of the state, and its employees are state actors, making them subject to sovereign immunity. *See Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 198 (3d Cir.2008). Conduct of an employee is within the scope of employment when (1) it is of a kind and nature that the employee is employed to perform, (2) it occurs substantially within the authorized time and space limits, and (3) the action is prompted, at least in part, by a purpose to serve the employer. *Larsen v. State Employees' Ret. Sys.* 553 F.Supp.2d 403, 420 (M.D.Pa.2008).

This Court has already ruled that defendant Brulo is not entitled to sovereign immunity because the alleged acts are not within the scope of her employment:

> Altering drug tests, changing recommendations as part of a scheme to ensure the detention of juveniles, and concocting fake probations violations to have juveniles placed in custody are not the type of conduct that juvenile probation officers are hired to perform. As such, the allegations fail to fall within the first prong of the scope of employment test, and, therefore, Defendant Brulo's actions cannot be shielded by sovereign immunity.

*Clark*, 737 F.Supp.2d at 258.

14

Therefore, the Court will deny defendant Brulo's motion to dismiss on the ground of sovereign immunity.

### E.    Failure to establish actual innocence

Defendant Brulo argues that plaintiffs have failed to establish "actual innocence" as required to pursue their § 1983 claims.  As mentioned above, this Court has already ruled that the Pennsylvania Supreme Court's vacating of the juvenile adjudications involving these plaintiffs meets the "actual innocence" requirement.  Brulo additionally argues that plaintiffs Zane Farmer and Joseph Rimmer admit their guilt in their complaint.  In light of the foregoing, the Court finds these admissions of "involvement" in the incidents with which they were charged of no consequence.

### F.    Dismissal of parent plaintiffs' Sixth and Eighth Amendment claims

This Court has previously ruled that the parent plaintiffs cannot use violations of their children's rights to make out claims that *their* rights were violated. *Id.* at 273.  The Sixth Amendment provides for a right to counsel in criminal proceedings.  Supreme Court precedent makes it clear that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (citations omitted).  Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Since the parent plaintiffs were not personally involved in any criminal proceedings and have not alleged they were forced to pay excessive fines or bail, the Court will dismiss these claims.

15

### G.     Parent plaintiffs Fifth and Fourteenth Amendment due process claims for support payments they were required to make

Defendant Brulo argues that the parent plaintiff claims stemming from the support payments they were required to make for their children's incarceration should be dismissed because: (1) the Fifth Amendment only applies to *federal* employees; (2) there was no "taking" here since parents are required to support their children; (3) these claims are barred under *Rooker-Feldman*.

The due process clause of the Fifth Amendment only applies to *federal* government actors, not *state* actors like defendant Brulo. *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52 (3d Cir. 1983).

The United States has "eschewed the development of any set formula for identifying a forbidden "taking" . . . and have relied instead on ad hoc, factual inquiries into the circumstances of each particular case." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 224 (1986). In this factual inquiry, three factors have been deemed to have particular significance: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Connolly*, 475 U.S. at 225 (internal citations omitted).

The *Rooker–Feldman* doctrine is derived from the two Supreme Court cases*, Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483–84 (1983). The doctrine is rooted in the statutory propositions that federal district courts are courts of original, not appellate, jurisdiction and that the United States Supreme Court is the only federal court that has

16

jurisdiction to review final judgments from a state's highest court. *See* 28 U.S.C. § 1257(a); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284–85 (2005). Simply put, the *Rooker–Feldman* doctrine divests a lower federal court of subject matter jurisdiction of an action if the relief requested would effectively reverse a state court decision or void its ruling. *See, e.g., Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 547 (3d Cir.2006).

For a number of years, many courts in the Third Circuit applied a two-part test in evaluating whether the *Rooker–Feldman* doctrine applied: (1) if the federal claim was actually litigated in state court prior to the filing of the federal action; or, (2) if the federal claim was "inextricably intertwined" with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. *E.g., McClain v. Bank of New York*, 2010 WL 1837908, at *2 (E.D.Pa. Apr.29, 2010).

In *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir.2010), the Third Circuit altered the *Rooker–Feldman* analysis to be employed by courts in this Circuit. The court instructed the lower courts in this Circuit to cease considering whether the federal claim was "inextricably intertwined" with the state court judgment. *Id.* at 170 ("The phrase 'inextricably intertwined' does not create an additional legal test or expand the scope of *Rooker–Feldman*"). The court articulated the following four-part test for dismissal of a federal claim for lack of subject matter jurisdiction based on Rooker–Feldman:

> (1) the federal plaintiff lost in state court;
>
> (2) the plaintiff complains of injuries caused by the state court judgment;

17

(3) those judgments were rendered before the federal suit was filed; and,

(4) the plaintiff is inviting the federal court to review and reject the state judgments. *Id.* at 166.  The Third Circuit observed that the second and fourth elements of the test are "key to determining whether a federal suit presents an independent, non-barred claim." *Id.*  Focusing on the second requirement—that the injuries be caused by the state court judgment—the court stated that "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Id.* at 167.

Here, while the Fifth Amendment claim against defendant Brulo is obviously out, she claims the Fourteenth Amendment due process claim should be out as well because, since the parents were already obliged to support their children, the support payments they were forced to pay as a result of their children's allegedly illegal incarceration is not a "taking." This argument lacks merit.  The parent plaintiffs had no expectation that their children would be incarcerated in violation of their constitutional rights in order to further a kickback scheme, and additionally, they would have to pay for the privilege.  The corrupt nature of these alleged actions further substantiates the view that this was a "taking" and the claims will not be dismissed on this ground.  Additionally, *Rooker-Feldman* does not apply because: (1) the parent plaintiffs' claim was not previously litigated in state court, (2) they did not lose in state court, (3) the source of the injury is defendant Brulo's actions, and (4) parent plaintiffs are not asking the court to reject state judgments.  Also, the state judgments have been vacated, so there is no worry here of this Court interfering with a state court action or overstepping this Court's authority.

18

### H.    The § 1985(3) and § 1986 claims

Defendant Brulo's motion to dismiss the § 1985(3) and § 1986 claims against her will be granted.  As discussed above, the Third Circuit has already held that juveniles fall outside the ambit of § 1985(3).  § 1986 states in part that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act[.]

Therefore, liability under § 1986 presupposes liability under § 1985.  Since the § 1985(3) claim is out, so is the § 1986 claim.

### I.    The Juvenile Justice and Delinquency Prevention Act (JJDPA) claim

Defendant Brulo moves to dismiss the claim for violation of the JJDPA, 42 U.S.C. § 5633.  The JJDPA was intended to provide a private right of action only against state or local agencies, *not* individuals. *Doe v. Borough of Clifton Heights*, 719 F.Supp. 382, 384 (E.D.Pa. 1984).  The Court will therefore dismiss this claim.

### IV.    Motion to dismiss by Sam Guesto, Luzerne County, Luzerne County Department of Juvenile Probation, Greg Skrepenak, and Todd Vanderheid (Doc. 931)

This motion will be granted.  In its ruling on plaintiffs' leave to amend, this Court held that plaintiffs proposed second amended complaint failed to state any claims against Luzerne County, Luzerne County Department of Juvenile Probation, Greg Skrepenak, and Todd Vanderheid, and denied the motion for leave to amend as to claims against these defendants. (Doc. 840.)  However, perhaps misunderstanding the Court's ruling, plaintiffs

submitted their second amended complaint with claims against these defendants.  Since, as the Court has already held, plaintiffs have failed to any state claims against these defendants, their motion to dismiss will be granted.

**V.**     **Robert Mericle and Mericle Construction's motion to dismiss (Doc. 932)**

Defendants Mericle and Mericle Construction's motion to dismiss will be granted in part and denied in part.  The majority of the arguments brought in this motion have already been ruled on by the Court.  As a result, the interference with familial relationships and § 1985(3) claims will be dismissed, but not the juvenile plaintiffs' § 1983 or punitive damages claims.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss have been granted in part and denied in part.  An appropriate order follows.


 11/30/11                                                    /s/ A. Richard Caputo
Date                                                          A. Richard Caputo
                                                             United States District Judge

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FLORENCE WALLACE, *et al.*,

      Plaintiffs,

                              CIVIL ACTION NO. 3:09-CV-286

ROBERT J. POWELL, *et al.*,

                              (JUDGE CAPUTO)

      Defendants.

## ORDER

    **NOW**, this  30th  day of November, 2011, upon consideration of defendants' motions

to dismiss (Docs. 922, 927, 929, 931, and 932), **IT IS HEREBY ORDERED** that the

motions are **GRANTED in part and DENIED in part** as follows:

(1)    Defendant Powell's Motion to Dismiss (Doc. 922): The interference with familial relationships and § 1985(3) claims **are dismissed**.  The remaining §  1983 claims and the punitive damages claims **are not dismissed**.

(2)    MAYS', PA Child Care's, and Western PA Child Care's motion to dismiss (Doc. 927): The interference with familial relationships and § 1985(3) claims **are dismissed**.  The remaining 1983 claims and the punitive damages claims **are not dismissed.**

(3)    Sandra Brulo's motion to dismiss (Doc. 929): The § 1985(3), § 1986, the JDPA, and the parent plaintiffs' Sixth and Eighth Amendment claims **are dismissed**. Defendant Brulo also has **quasi-judicial immunity** for all claims stemming from her sentencing recommendations.  The remaining § 1983 claims and the punitive damages claims are **not dismissed.**

(4)    Motion to dismiss by Sam Guesto, Luzerne County, Luzerne County Department of Juvenile Probation, Greg Skrepenak, and Todd Vanderheid

(Doc. 931): All claims against these defendants are **dismissed**.

(5)     Robert Mericle and Mericle Construction's motion to dismiss (Doc. 932): The interference with familial relationships and § 1985(3) claims **are dismissed**. The remaining § 1983 claims and the punitive damages claims **are not dismissed**.

(6)     Motions to dismiss filed prior to the filing of the second amended complaint (Doc. 906-909) are **moot**.


                                          /s/ A. Richard Caputo
                                          A. Richard Caputo
                                          United States District Judge