**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FLORENCE WALLACE, et al.,

    Plaintiffs,

        v.

ROBERT J. POWELL, et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-286

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM CONWAY, et al.,

    Plaintiffs,

        v.

MICHAEL T. CONAHAN, et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0291

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

H.T., et al.,

    Plaintiffs,

        v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0357

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SAMANTHA HUMANIK,

    Plaintiff,

        v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0630

(JUDGE CAPUTO)

***********************************************************************************

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RAUL CLARK, et al.,

    Plaintiffs,

        v.

MICHAEL T. CONAHAN, et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0357

(JUDGE CAPUTO)

***********************************************************************************

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WAYNE DAWN, et al.,

    Plaintiffs,

        v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-2535

(JUDGE CAPUTO)

***********************************************************************************

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ANGELA RIMMER BELANGER, et al.,

      Plaintiffs,

           v.

MARK A. CIAVARELLA, et al.,

      Defendants.

CIVIL ACTION NO. 3:10-cv-1405

(JUDGE CAPUTO)

## MEMORANDUM

Before the Court is a discovery dispute between Defendants Mid-Atlantic Youth Services, Corp., PA Child Care, LLC, and Western PA Child Care, LLC (together, the "Provider Defendants") and the Class and Individual Plaintiffs in this action. In particular, Plaintiffs oppose Provider Defendants' discovery requests implicating Juvenile Plaintiffs' delinquency adjudications that have previously been expunged by the Pennsylvania Supreme Court. Provider Defendants argue that the proposed discovery will demonstrate that any harm or damage suffered by Juvenile Plaintiffs as a result of the denial of their constitutional rights was caused by their own conduct, and not as a consequence of Provider Defendants' participation in the alleged conspiracy. Provider Defendants also claim that the proposed discovery is relevant to their defense to class certification.

Because causation and damages can be evaluated in this civil rights action based on Defendants' conduct and role in the alleged conspiracy without reconsideration on the merits of each Juvenile Plaintiff's criminal proceeding, Provider Defendants' proposed discovery related to Juvenile Plaintiffs' underlying adjudications will not be permitted as the requests are irrelevant and inconsistent with the Pennsylvania Supreme Court's expungement orders. Furthermore, because Juvenile Plaintiffs' family, social, educational, psychological and court histories (the "Juveniles' Histories") are not relevant to the issues for which class certification will be sought, Provider Defendants' proposed discovery of the

3

Juveniles' Histories in defense of class certification will not be permitted.[1]

## I. Background

As set forth in greater detail in my July 3, 2012 Memorandum, this civil action arises out of the alleged conspiracy related to the construction of juvenile detention facilities, and subsequent detainment of juveniles in these facilities, orchestrated by two former Luzerne County Court of Common Pleas judges, Michael Conahan and Mark Ciavarella. *See Wallace v. Powell*, No. 09-cv-286, 2012 WL 2590150, at *1 (M.D. Pa. July 3, 2012). Plaintiffs in this action, juveniles or the parents of juveniles who appeared before Ciavarella, seek redress from the former judges, as well as the individuals and business entities involved in the construction and operation of these facilities, for the alleged unlawful conspiracy and resulting deprivations of Juvenile Plaintiffs' rights.

On August 21, 2012, Provider Defendants and Plaintiffs submitted a joint letter to the Court in an effort to resolve various discovery disputes. (Doc. 1180.) Specifically, Plaintiffs oppose Provider Defendants' proposed requests for admission, interrogatories, and requests for production of documents directed to four named Juvenile Plaintiffs. (*Id*.) In total, Provider Defendants seek 1,057 requests for admission from these four Plaintiffs. (*Id*.) Provider Defendants intend to submit similar requests to each named Plaintiff in this action. (*Id*.) Provider Defendants' discovery requests implicate issues relating to Juvenile Plaintiffs' stays at the detention facilities and the facts and circumstances surrounding Juvenile Plaintiffs' underlying adjudications. According to Provider Defendants, the discovery requests are pertinent to oppose class certification and to the issues of causation, injuries, and damages. (*Id*.) In opposition, Plaintiffs emphasize that the Juveniles' Histories and the delinquency adjudication records are irrelevant to causation, damages, and class certification.

Thereafter, on September 5, 2012, a conference was held in an effort to resolve the

---

[1]     Plaintiffs, however, do not appear to dispute that some discovery related to the Juveniles' Histories may be relevant later in this litigation with respect to individualized damage claims.

discovery dispute. At the September 5, 2012 conference, the parties requested the opportunity to fully brief their positions in support of and against the proposed discovery. Subsequently, on October 19, 2012, oral argument was heard as to the parties' respective positions. Now, as Plaintiffs' opposition to Provider Defendants' proposed discovery has been fully briefed, the issue is ripe for disposition.

## II. Discussion

### A.	Section 1983

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, (1) acting under color of law, (2) violated the plaintiff's federal constitutional or statutory rights, (3) and thereby caused the complained of injury." *Elmore v. Cleary*, 299 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).[2]

A § 1983 plaintiff may raise three categories of due process claims under the Fourteenth Amendment: (1) claims incorporating "specific protections defined in the Bill of

---

[2]	In my July 3, 2012 Memorandum, I determined that Plaintiffs sufficiently established a violation of their rights to an impartial tribunal, but that genuine issues of material fact remained as to whether Private Defendants were state actors for purposes of § 1983 and whether Provider Defendants caused Plaintiffs' injuries. *See Wallace*, 2012 WL 2590150, at *9-*16.

Rights"; (2) substantive due process claims "bar[ring] certain arbitrary, wrongful, government actions regardless of the fairness of the procedures used to implement them"; and (3) procedural due process claims concerning the absence of procedural remedies where an individual is "depriv[ed] by state action of a constitutionally protected interest in life, liberty, or property." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (internal citations and quotation marks omitted).

In their submissions, Provider Defendants contend that: (1) Plaintiffs do not assert any substantive due process claims; and (2) the proposed discovery is relevant to (a) § 1983 causation, and (b) § 1983 damages. (Docs. 1196; 1206.) These issues will be addressed *in seratim*.

**1. Plaintiffs allege claims relating to all three categories of due process identified by the Supreme Court in *Zinermon* and liability is not dependent on the underlying adjudications.**

Initially, Provider Defendants argue that the proposed discovery is relevant in this action based on the type of § 1983 claims asserted by Plaintiffs. Specifically, Provider Defendants argue that this action involves claims relating to procedural due process and the denial of constitutional protections set forth in the Bill of Rights. (Doc. 1206.) Provider Defendants further contend that substantive due process is not at issue in this action. Thus, Provider Defendants dispute my previous statement that "Juvenile Plaintiffs allege not only a deprivation of procedural due process, but also a significant denial of substantive due process rights." *Wallace v. Powell*, No. 09-286, 2012 WL 2007294, at *3 (M.D. Pa. June 5, 2012).

Here, a review of Plaintiffs' § 1983 claims demonstrates that the allegations in this action include claims for procedural due process violations, denial of specific rights guaranteed by the Bill of Rights, and claims under the "substantive" prong of the Due Process Clause. (*Individual Plfs.' Master Long Form Compl.*, Count III.) First, Plaintiffs

allege procedural due process violations because they were denied a fair procedure prior to the deprivation of their liberty interests. Second, Plaintiffs assert violations of their Fifth and Sixth Amendment rights- protections guaranteed by the Bill of Rights. These "rights protected via incorporation are technically part of the Fourteenth Amendment's substantive due process protection." *John Corp. v. City of Houston*, 214 F.3d 573, 577 n.3 (5th Cir. 2000) ("one form of substantive due process is the substantive protections in the Bill of Rights that have been incorporated into the Fourteenth Amendment to limit the power of the States"). Lastly, Plaintiffs assert a claim under the "substantive" prong of the Due Process Clause, as they allege Provider Defendants engaged in conscience shocking, arbitrary behavior resulting in the deprivation of Juvenile Plaintiffs' liberty interests. (*Individual Plfs.' Master Long Form Compl.*, Count III.)

With respect to liability for these claims, guilt or innocence is not relevant to the determination of whether a constitutional right has been violated. If someone were subjected to a search and seizure in violation of the Fourth Amendment, the fact that the the search produced incriminating evidence and may even have resulted in a criminal conviction, would not nullify the violation of the Fourth Amendment or necessarily bar a § 1983 claim for damages. Indeed, this is the hypothetical posed by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 487 n.7, 114 S. Ct. 2364, 129 L. Ed. 2d (1994):

> For example, *a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction*. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*See id.* (internal citations omitted). This is the result here. Whether Plaintiffs' constitutional rights were violated is not dependent on the past conduct of Plaintiffs, it is dependent on

the conduct of Provider Defendants. Moreover, given the nullification of their proceedings by the Pennsylvania Supreme Court, the exercise of examining whether these Plaintiffs were delinquent in any event would be to nullify the nullification of the constitutionally defective determination of delinquency (as discussed in more detail below).

**2.    The proposed discovery is not relevant to the issue of § 1983 causation or damages.**

Provider Defendants next assert that "due to the Juvenile's own actions and their family, social, educational, psychological and court histories ('Juveniles' Histories'), the Juveniles would have been detained and adjudicated, and would have received the same dispositions notwithstanding the alleged payments and alleged violations of constitutional rights." (Doc. 1196.) The Juveniles' Histories, according to Provider Defendants, will demonstrate that Juvenile Plaintiffs committed the crimes they were charged with, and, as a result, they are responsible for their own injuries and damages they suffered regardless of Provider Defendants' participation in the denial of Juvenile Plaintiffs' constitutional rights.

**a.    Causation as to the § 1983 claims hinge on the conduct of Powell and Provider Defendants, not the guilt or innocence of Juvenile Plaintiffs.**

Provider Defendants first argue that the proposed discovery is relevant to § 1983 causation.[3] According to Provider Defendants, "they had no motive to pay the judges" and "the alleged bribes were needless because police would have delivered the juveniles to detention, and Ciavarella would have detained and adjudicated them and rendered the same dispositions because of the Juveniles' Histories." (Doc. 1196.) Provider Defendants

---

[3]    In the July 3, 2012 Memorandum, I set forth the causation standard that governs Plaintiffs' 42 U.S.C. § 1983 claims against Provider Defendants. *See Wallace*, 2012 WL 2590150 ("Although Plaintiffs argue that the applicable causation standard to apply to Provider Defendants and Vision Holdings is the 'setting in motion' theory discussed above, the Court agrees with Provider Defendants that the causation inquiry for these Defendants is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).").

elaborate that:

> These Juveniles' Histories demonstrate that the Juveniles would have been detained, adjudicated and sentenced anyway, whether or not the judges received any payments, and prove that Provider Defendants had no motive to conspire to bribe the judges. Powell had no more incentive to bribe the judges in his alleged capacity as an agent for Provider Defendants than did the Provider Defendants. The Juveniles' Histories discredit Powell's testimony that he paid the judges because he feared that they would stop sending Juveniles to the PACC and WPACC facilities, while they simultaneously support Provider Defendants' evidence that Powell acted instead for his own purposes to enhance his own law practice, to purchase or rent a condominium, to rent a boat dock, or to hide his assets from his wife.

(*Id*.) Provider Defendants also argue that what former judge Ciavarella did is essentially of no consequence. Likewise, they contend that Plaintiffs' loss of liberty would have occurred regardless of whether they received a fair tribunal or not, simply because of their past histories.

It does not follow that Juvenile Plaintiffs' past behavior would demonstrate that Provider Defendants had no motive to pay the former judges. It appears the argument is that because Plaintiffs were "bad" (and would have been declared delinquent in any event) Provider Defendants had no motive to pay the judges money. This, of course, begs the question of whether Provider Defendants wanted to assure the right result in the adjudicatory court.[4] This question can also be answered without reference to Juvenile Plaintiffs' past behavior. The past behavior has no bearing on whether the tribunal was fair and whether Provider Defendants were involved in that violation.

This, along with the necessity of retrying Juvenile Plaintiffs' underlying criminal cases has been addressed before:

> More importantly, the Provider Defendants have failed to convincingly demonstrate that an investigation into the factual background of each Juvenile Plaintiff's adjudication is necessary to their defense on the issues of causation and damages. The question of causation in this case does not appear to turn on whether the Defendants' actions caused the incarceration of the Juvenile

---

[4] It also begs the question of whether payment was made to ensure a stream of youths to PACC or WPACC and not other facilities.

> Plaintiffs, but rather whether the Defendants' actions caused a deprivation of the Juvenile Plaintiffs' rights to a fair trial. Moreover, in view of the expungement of the records of all of the juvenile plaintiffs because they were denied due process and a fair tribunal, they have, ipso facto, been damaged. Determining damages by the degree of culpability a plaintiff had regarding the delinquency allegations would involve a trial of each plaintiff on the delinquency allegations, which would effectively nullify the determination that the proceedings conducted by former Judge Ciavarella violated the rights of those juveniles. Neither causation nor damages are appropriately evaluated by resurrecting the expunged records of each juvenile plaintiff. For these reasons, the promotion of fairness does not require the granting of a modification to or relief from the Protective Order.

*Wallace v. Powell*, No. 09-CV-286, 2012 WL 1191607, at *4 (M.D. Pa. Apr. 10, 2012). This position was further discussed in the same opinion:

> Finally, I must emphasize that I am hesitant to grant any order that would result in the unnecessary reopening and reinvestigation of the Juvenile Plaintiffs' prior convictions. Whether a particular juvenile would have been declared delinquent if given due process would require a fair retrial of the juvenile. Such an exercise is inconsistent with the expungement on the basis that the juvenile was denied due process. Therefore, the reconsideration of the merits of each juvenile plaintiff's case on the issue of causation and/or damages is inappropriate, and discovery of their records for those purposes will note [sic] be permitted.

*Id*.

Thereafter, Provider Defendants sought reconsideration of the April 10, 2012 Memorandum and Order. By Memorandum and Order dated June 5, 2012, Provider Defendants' request for reconsideration was denied, and I reiterated my ruling regarding reconsideration of the merits of each Juvenile Plaintiffs' criminal case, observing:

> Moreover, the Court is not convinced that *Carey* compels the resolution in this action advanced by Provider Defendants. Provider Defendants, applying *Carey*, imply that if Juvenile Plaintiffs would have been detained, or adjudicated guilty, even in the absence of Ciavarella's improper conduct, then, unless emotional distress is proven by Plaintiffs, they have not suffered actual injuries. Unrecognized by Provider Defendants, however, is that the factual scenario in this case- denial of procedural and substantive due process rights related to an impartial tribunal, including, *inter alia*, the right to counsel, the right to an unbiased fact finder, and the right to a fair trial- implicate issues far different from the school district's deprivation of pre-suspension hearings in *Carey*. Rephrased, unlike the students in *Carey*, Juvenile Plaintiffs allege not only a deprivation of procedural due process, but also a significant denial of substantive due process rights. In light of these considerations, the Court, at this time, is not convinced that *Carey* conclusively resolves the issue of damages in this case. *See also Stachura*, 477 U.S. at 316 (Marshall, J., concurring) ("I do not understand the Court, however, to hold that deprivations

10

of constitutional rights can never themselves constitute compensable injuries. Such a rule would be inconsistent with the logic of *Carey*, and would defeat the purpose of § 1983 by denying compensation for genuine injuries caused by the deprivation of constitutional rights.").

*Wallace v. Powell*, No. 09-CV-286, 2012 WL 2007294, at *3 (M.D. Pa. June 5, 2012).

Provider Defendants' insistence on exploring the guilt or innocence of each Juvenile Plaintiff misapprehends the relevant causation inquiry with respect to the § 1983 claims in this case. That is, the issue of causation in this action does not depend on what Juvenile Plaintiffs allegedly did or did not do which put them in the position to appear before former judge Ciavarella. Stated differently, Juvenile Plaintiffs' conduct- which resulted in them being susceptible to the denial of their constitutional rights in Ciavarella's courtroom- is irrelevant to the issue of causation in this § 1983 case. Rather, the causation inquiry as to Provider Defendants depends on whether federal law has been violated by an act of their policymaker. *See Wallace*, 2012 WL 2590150, at *13 (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)). Provider Defendants' insistence that causation in this matter can be determined simply based on the "goodness" or "badness" of each Juvenile Plaintiff misconstrues the issue of causation in this action. Accordingly, a retrial of each Juvenile Plaintiff's criminal case with respect to causation will not be held.[5]

---

[5]     Provider Defendants suggest that "Plaintiffs grasp at the alleged violations of Juveniles' right to an impartial tribunal and substantive due process as if they were strict liability torts." (Doc. 1196.) Provider Defendants' statement is flawed in a number of respects. First, as recognized by the Pennsylvania Supreme Court and this Court in addressing Plaintiffs and Provider Defendants' cross-motions for summary judgment, Juvenile Plaintiffs' claim that their right to an impartial tribunal has not simply been alleged, it has been conclusively established. *See Wallace*, 2012 WL 2590150, at *8 ("Plaintiffs have made the required objective showing of the denial of their constitutional right to a fair and impartial tribunal."). Second, Plaintiffs, in their filings in connection with the instant discovery dispute and their summary judgment motion, have argued that their § 1983 claims require proof of causation. Provider Defendants' argument to the contrary is not supported by the documents of record in this case. Third, even strict liability torts require proof of causation. *See, e.g., DiPaolo v. Black and*

### b. Reopening and reinvestigation of each Juvenile Plaintiff's underlying delinquency adjudication is not necessary to resolve the issue of damages in this action.

Provider Defendants also assert that Juvenile Plaintiffs' prior adjudications are relevant to the issue of damages in this action. Provider Defendants argue that the delinquency adjudications are necessary to defend against Plaintiffs' claim for punitive damages, to show that Juvenile Plaintiffs would have been adjudicated guilty even in the absence of the due process violations- thus limiting recovery to nominal damages, and to establish that Plaintiffs' claims for violations of their substantive rights do not warrant recovery of presumed damages.

Conversely, Class and Individual Plaintiffs argue that they are entitled to recover damages without consideration of Juvenile Plaintiffs' delinquency adjudications. According to Class Plaintiffs, they may recover two categories of compensatory damages: (1) damages stemming directly from the deprivation of their rights themselves; and (2) damages based on the injuries sustained by plaintiffs as a result of their unconstitutional adjudications and incarcerations- such as emotional damage. (Doc. 1195.) Class Plaintiffs contend that they are entitled to presumed damages for their loss of liberty claim, in addition to any special damages related to any physical, emotional, or economic suffering they, individually, may establish, as well as punitive damages. (Doc. 1205.) Developing that position, Individual Plaintiffs assert that damages available under their § 1983 claims include damages "for everything other than detention/incarceration" such as: (1) mental and

_Decker (US) Inc._, No. 07-4314, 2009 WL 5064548, at *6 (E.D. Pa. Dec. 15, 2009) (to prevail on strict liability claim under Pennsylvania law, plaintiff must prove, among other elements, "that the defect caused the harm"); _DeSantis v. Frick Co._, 745 A.2d 624, 629 (Pa. Super. 1999) )(strict liability requires proof that "the defect was a proximate cause of the plaintiff's injuries"); _Thompson & Phillips Clay Co. v. Dep't of Envtl. Res._, 582 A.2d 1162, 1165 (Pa. Cmwlth. 1990) ("all torts, including those which fall into the strict liability category, require cause, the relationship between the actor's conduct and the harm, to be shown.").

emotional distress damages; (2) "the value of the rights violated;" (3) presumed damages; (4) punitive damages; and (5) disgorgement. (Doc. 1194.)  Individual Plaintiffs also claim that they may recover "damages for incarceration/detention" based on "two substantive aspects of their Fourteenth Amendment claims"- the violation of their rights under the Bill of Rights and the deprivation of their substantive due process rights based on the conscious shocking behavior of Defendants. (*Id.*)  Both Class and Individual Plaintiffs maintain that Juvenile Plaintiffs' adjudications are irrelevant to the issue of damages.

        **i.**       **The framework for compensatory damages in § 1983 actions-** *Carey v. Piphus* **and** *Memphis Cmty. Sch. Dist. v. Stachura***.**

The Supreme Court in *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d (1978) and *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986) established the basic parameters for recovery of compensatory damages in § 1983 actions.  Because these cases provide the broad framework for the issue of damages in this action, which in turn addresses Provider Defendants' efforts to reinvestigate Juvenile Plaintiffs' underlying delinquency adjudications with respect to damages, *Carey* and *Stachura* will both be examined before proceeding to the relevancy of the prior adjudications to the issue of damages.

According to Provider Defendants, Juvenile Plaintiffs' adjudications are critical to the issue of compensatory damages under the Supreme Court's decision in *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d (1978).  Pursuant to *Carey*, Provider Defendants argue that "Juvenile Plaintiffs will not be entitled to compensatory damages if the Juveniles would have been detained, adjudicated, and disposed of as they actually were after having been accorded [sic] their constitutional rights." (Doc. 1196, 15.)

In *Carey*, the Supreme Court reviewed two consolidated cases implicating "the elements and prerequisites for recovery of damages by students who were suspended from

public elementary and secondary schools without procedural due process." *Carey*, 435 U.S. at 248, 98 S. Ct. 1042. In one action, Respondent Jarius Piphus was suspended from school for violation of a school rule against the use of drugs. *See id*. at 249. Although school officials arranged a meeting to discuss the suspension with Respondent Piphus' mother, the purpose of the meeting was solely to explain the reasons for the suspension. *See id*. Subsequently, the respondent commenced a § 1983 action claiming that he had been suspended without due process of law. *See id*. The second consolidated action in *Carey* involved the suspension of Respondent Silas Briso for wearing an earring in violation of a school rule prohibiting male students from wearing earrings. *See id*. at 250. Like Respondent Piphus, Respondent Brisco commenced a § 1983 action for the deprivation of his Fourteenth Amendment rights. *See id*.

The cases were consolidated for trial, and the district court held that both students had been suspended without procedural due process. *See id*. at 251. No determination was made by the trial court, however, on whether the respondents would have been suspended if they had received hearings. *See id*. at 252. On appeal, the Seventh Circuit held that even if the respondents' suspensions were justified, "they would be entitled to recover substantial 'nonpunitive' damages simply because they had been denied procedural due process." *Id*. The Supreme Court subsequently granted certiorari to "consider whether, in an action under § 1983 for the deprivation of procedural due process, a plaintiff must prove that he was actually injured by the deprivation before he may recover substantial 'nonpunitive' damages." *Id*. at 253.

As to compensatory damages for injuries caused by the suspensions and denial of procedural due process, the Supreme Court agreed with the Seventh Circuit's finding that "if petitioners can prove on remand that 'respondents would have been suspended even if a proper hearing had been held,' then respondents would not be entitled to recover

damages to compensate them for injuries caused by the suspensions.'" *Id*. at 260 (citations omitted).

The Supreme Court next addressed whether the respondents could recover substantial, unspecified damages to compensate them for "the injury which is inherent in the nature of the wrong," because "injury fairly may be 'presumed' to flow from every denial of procedural due process." *Id*. at 260-61. The respondents argued that injury should be presumed even if they were guilty of the conduct charged because they were denied the opportunity to present facts in mitigation to the initial decision maker. *See id*. at 261 n.16. In rejecting the respondents' contention, the Court reiterated that the Seventh Circuit found that compensatory damages would not be recoverable if the suspensions were justified, thus negating presumed damage compensation (due to the lack of injury). *See id*. Importantly, "[t]his holding . . . necessarily assumes that the District Court *can* determine what the outcome would have been if respondents had received their hearing." *Id*. (emphasis in original).[6]

The Supreme Court, however, rejected the Seventh Circuit's finding that substantial nonpunitive damages could be awarded for the denial of procedural due process "even if . . . there is no proof of individualized injury to the plaintiff." *Id*. at 253. The *Carey* Court disagreed with the Seventh Circuit that damages could be presumed where procedural due process is denied without any showing that injury was caused by the constitutional deprivation. Indeed, the Court found the authority relied upon by the respondents and the Seventh Circuit unpersuasive because those cases actually "held or implied that some

---

[6]    Accordingly, to recover distress damages, the plaintiff must show he or she suffered distress because of the procedural due process deprivation. *See id*. at 263-64 ("we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.").

actual, if intangible, injury must be proved before compensatory damages can be recovered." *Id*. at 264.   Nevertheless, he Court cautioned that "the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another." *Id*. at 264-65.   Rather, "these issues must be considered with reference to the nature of the interests protected by the particular right in question." *Id*. at 265.[7]

The Supreme Court elaborated on the principles of *Carey* eight years later when it decided *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986).   In *Stachura*, the respondent, a tenured public school teacher, was suspended with pay after he showed his class pictures and films concerning human growth and sexuality. *See id*. at 300-01.   The respondent subsequently filed suit alleging that his suspension violated his due process rights and his First Amendment right to academic freedom. *See id*. at 301-02.   A jury found the petitioners liable for the deprivation of the respondent's constitutional rights, and the Sixth Circuit affirmed, holding that the respondent's suspension violated both procedural due process and the First Amendment. *See id*. at 303.   The Supreme Court granted certiorari "limited to the question whether the Court of Appeals erred in affirming the damages award in light of the District Court's instructions that authorized not only compensatory and punitive damages, but also damages for the deprivation of any 'constitutional right.'" *Id*. at 304 (citation omitted).   The challenged jury instruction provided:

The precise value you place upon any Constitutional right which you find was

---

[7]     The *Carey* Court further held that "if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners." *Id*. at 267.

denied to Plaintiff is within your discretion. You may wish to consider the importance of this right in our system of government, the role which this right has played in the history of our republic, [and] the significance of the right in the context of the activities which the Plaintiff was engaged in at the time of the violation of the right.

*Id*. at 302-303.

At the outset, the Court rejected the respondent's claim that *Carey* did not apply to cases involving substantive constitutional rights. *See id*. at 309. *Carey*, according to the *Stachura* Court, "does not establish a two-tiered system of constitutional rights, with substantive right afforded greater protection than 'mere' procedural safeguards." *Id*. And, while the elements and prerequisites of damages vary depending on the interests protected by the constitutional right at issue, damages must always be designed to compensate injuries caused by constitutional deprivations. *See id*. Thus, "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in such cases." *Id*. at 311.

The *Stachura* Court similarly rejected the respondent's claim that the challenged instruction simply authorized the jury to award a form of "presumed" damages. *See id*. "Presumed damages are a substitute for ordinary compensatory damages, not a supplement for an award that fully compensates the alleged injury." *Id*. According to the *Stachura* Court, "[w]hen a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may be appropriate. In those cases, presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure." *Id*. Expanding on this passage, Justice Marshall, concurring in the judgment, emphasized that:

The Court properly remands for a new trial on damages. I do not understand the Court, however, to hold that deprivations of constitutional rights can never themselves constitute compensable injuries. Such a rule would be inconsistent with the logic of *Carey*, and would defeat the purpose of § 1983 by denying compensation for genuine injuries caused by the deprivation of constitutional rights.

17

*Id.* at 316 (Marshall, J., concurring).

The Court, however, concluded that the challenged instruction did not, in fact, instruct the jury on presumed damages. *See id.* at 311. This was precisely because the challenged instruction did not seek to compensate the plaintiff for harm that occurred but was impossible to measure. *See id.* Instead, since the instruction required the jury to measure damages based on a subjective evaluation of the importance of the right, the instruction could not fairly be characterized as a presumed damage instruction. *See id.*

In their briefs, the parties vigorously debate how *Carey* and *Stachura* should be applied to this action, what remedies are available with respect to Plaintiffs' § 1983 claims, and whether Juvenile Plaintiffs' delinquency adjudications must be reinvestigated, and essentially retried, with respect to damages. For the reasons that follow, Juvenile Plaintiffs' prior adjudications are not properly reinvestigated for purposes of damages.

> ii. **Retrying whether a particular Juvenile Plaintiff would have been declared delinquent would be inconsistent with the Pennsylvania Supreme Court's expungement orders.**

Pursuant to the declaration of the Pennsylvania Supreme Court, Juvenile Plaintiffs' adjudications have been declared a nullity. *See In re: J.V.R.*, No. 81 MM 2008, Slip. Op. (Oct. 29, 2009) (per curiam). As articulated by the Pennsylvania Supreme Court:

> [T]his Court now approves of Judge Grim's recommendation that, for all cases in which Ciavarella entered adjudications of delinquency or consent decrees between January 1, 2003 and May 31, 2008, orders shall be entered vacating those adjudications and consent decrees, regardless of whether the juvenile was represented by counsel.
>
> . . .
>
> [G]iven the nature and extent of the taint, the Court simply cannot have confidence that any juvenile matter adjudicated by Ciavarella during this period was tried in a fair and impartial manner.
>
> This Court approves of Judge Grim's further recommendation that adjudications of delinquency and consent decrees be reversed and dismissed with prejudice, and that expungement of records proceed (with copies to be retained under seal in accordance with any other order of court), in all cases, whether final or not, where a juvenile either proceeded before Ciavarella without counsel, or was committed by Ciavarella to PA Childe Care or Western

18

PA Child Care.

*Id*. Allowing a retrial of Juvenile Plaintiffs' adjudications for purposes of damages would effectively nullify the determination that Ciavarella violated Juvenile Plaintiffs' constitutional rights and would be inconsistent with the expungement on the basis that Juvenile Plaintiffs were denied due process.

**iii.** ***Carey*** **does not compel reconsideration of the merits of each Juvenile Plaintiff's criminal proceeding.**

Provider Defendants have attempted, on multiple occasions, to align this case with the *Carey* Court's finding that if "petitioners can prove on remand that respondents would have been suspended even if a proper hearing had been held, then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions." *Carey*, 435 U.S. at 261, 98 S. Ct. 1042. For the same reason, the *Carey* Court rejected the respondents' claim that damages should be presumed "even if they were guilty of the conduct charged [because] they were deprived of the chance to present facts or arguments in mitigation to the initial decisionmaker." *Id*. at 261 n.16. Attempting to apply this analysis, Provider Defendants opine that Plaintiffs are limited to recovery of nominal damages in this action if Juvenile Plaintiffs would have been detained, adjudicated, and disposed of as they actually were after having been afforded their constitutional rights.

Provider Defendants' argument fails to recognize a core component of the *Carey* Court's analysis as to whether the school district could demonstrate that the suspensions were justified:

> This holding, which respondents do not challenge, *necessarily assumes that the District Court can determine what the outcome would have been if respondents had received their hearing. We presume that this determination will include consideration of the likelihood that any mitigating circumstances to which respondents can point would have swayed the initial decisionmaker.*

*Carey*, 435 U.S. at 261 n.16, 98 S. Ct. 1042 (emphasis added).

*Carey* presented a straightforward application- would the students have been

19

suspended had they received an administrative hearing? Conversely, the instant case presents much more complex questions. This action implicates the denial of multiple, fundamental constitutional guarantees necessary to ensure the fairness of criminal proceedings. As a result, predicting the outcome of Juvenile Plaintiffs' delinquency adjudications had they appeared before an impartial tribunal with counsel is significantly more difficult than the issue addressed, and assumed, by the Seventh Circuit and the Supreme Court in *Carey*. Particularly, in this case, to determine what "the outcome would have been" may require consideration of a number of unknown and unascertainable components, including, but not necessarily limited to: the legal strategy Juvenile Plaintiffs would have pursued had they been afforded counsel; the legal strategy Juvenile Plaintiffs would have pursued had they been fully informed of the consequences of a guilty plea; and the extent to which Juvenile Plaintiffs' proceedings would have differed in an impartial courtroom. Based on these variables, it would be impossible to determine whether Juvenile Plaintiffs would have been adjudicated "as they actually were" after being afforded their constitutional rights. (Doc. 1196.) Thus, a critical assumption to the *Carey* analysis is not present in this case- an ability to accurately predict what the outcome would have been had Plaintiffs been afforded their rights. Discovery of the facts related to Juvenile Plaintiffs' delinquency adjudications is therefore not necessary to the determination of compensatory damages in this action.

### iv. The proposed retrials are not tenable.

Provider Defendants also argue that the defense they seek to rely on under *Carey*- if "Juveniles would have been detained, adjudicated, and disposed of as they actually were after having been accorded [sic] their constitutional rights," (Doc. 1196, 15)- does not require that juvenile court be recreated in this action as part of their defense. Provider Defendants assert that "there is no need to duplicate juvenile court in this forum" because:

> [We] are defendants in this civil, federal § 1983 actions. Federal juries regularly determine guilt or innocence in both criminal and civil cases. Provider Defendants desire to use the Juveniles' Histories to defend against Plaintiffs' scurrilous claims. "A 'preponderance of the evidence' is sufficient to establish criminal conduct as a defense in a civil action." *United States v. Regan*, 232 U.S. 37, 34 S. Ct. 213, 58 L. Ed. 494 (1914). A civil jury applying the preponderance of the evidence standard can make findings of fact that a criminal jury did not find under the reasonable doubt standard. *Mullins v. City of Phila.*, 287 F. App'x 201, 203 (3d Cir. 2008).

(Doc. 1196.)

In opposition, Class Plaintiffs argue that the proposed retrials would require the Court or a jury to stand in the place of the juvenile court and determine for each class member: (1) what evidence would have been available at the time of the hearing; (2) what evidence would have been admissible at the time of the hearing; (3) what evidence and witnesses would have been credible; and (4) what direct and cross-examination would have ensued with respect to each witness in each case. (Doc. 1195.) And, after making all of these determinations, "the Court would then have to determine whether an impartial juvenile court judge would have adjudicated the Plaintiff delinquent on proof beyond a reasonable doubt, and then what each Juvenile Plaintiff's disposition would have been, . . . " (*Id*.) This process, according to Class Plaintiffs, would result in a hopelessly complex inquiry, requiring the Court or jury to determine "by a preponderance of the evidence, whether each particular juvenile was delinquent 'beyond a reasonable doubt.'" (*Id*.) Thus, Class Plaintiffs argue that the proposed retrial of each Juvenile Plaintiff is unworkable.

In reply to Class Plaintiffs' brief, Provider Defendants contend that they "may prove their defense, even the Juveniles' vilest criminal acts, only by a preponderance of the evidence." (Doc. 1206.) And, "contrary to Class Plaintiffs' bald assertions, the jury does not have to stand in the shoes of a juvenile court, is not required to apply *Miranda* or other exclusionary rules, or determine by a preponderance of the evidence [sic] what a theoretical judge would have done." (*Id*.)

I am unconvinced by Provider Defendants' argument that retrial of each Juvenile

21

Plaintiff's criminal case would not require juvenile court to be replicated in this action. Initially, even if I found *Carey's* reasoning regarding the "outcome" of the adjudications to be applicable in this case, Provider Defendants' analysis is inconsistent with the Supreme Court's reasoning. As noted, *Carey* limited the recovery of damages to the respondents if the school district could demonstrate that the suspensions were "justified", which required a showing that the students would have been suspended "even if a *proper hearing* had *been held*." *Carey*, 435 U.S. at 260, 266, 98 S. Ct. 1042 (emphasis added).

I interpret these passages in *Carey* to mean that for Juvenile Plaintiff's adjudications to have been "justified", Provider Defendants would be required to establish how Juvenile Plaintiffs' proceedings would have proceeded after eliminating all of the defects that made the underlying proceedings unconstitutional. Then, once these constitutional defects have been remedied, Provider Defendants would be required to demonstrate the outcome/disposition of Juvenile Plaintiffs' readjudications. Because this process would have occurred in juvenile court, it necessarily implies that all protections afforded to juvenile defendants would need to be afforded to determine how Juvenile Plaintiffs would have been adjudicated. This exercise would require: (1) an impartial tribunal, including the rights that were previously denied, and all other constitutionally guaranteed rights; and (2) strict compliance with the procedures set forth in the Pennsylvania Juvenile Act, 42 Pa. Cons. Stat. Ann. §§ 6301, *et seq*.

Under the Juvenile Act:

> If the court finds on *proof beyond a reasonable doubt* that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed.

42 Pa. Cons. Stat. Ann. § 6341(b) (emphasis added).

The retrials proposed by Provider Defendants, however, do not comport with this Juvenile Act requirement. Instead, Provider Defendants attempt to discard the "beyond a

22

reasonable doubt" standard of proof on the basis that this is a civil action. Provider Defendants apparently believe that they can present evidence to the jury of Juvenile Plaintiffs' conduct, and then have a jury determine that they committed the alleged crime by a preponderance of the evidence to satisfy *Carey*. This analysis, however, is incomplete. Under *Carey*, Provider Defendants must prove by a preponderance of the evidence that Juvenile Plaintiffs would have been adjudicated of and disposed of the same had they received a proper hearing (*i.e.*- an impartial tribunal). But, to be adjudicated delinquent requires a juvenile court determination of delinquency "beyond a reasonable doubt." As a result, proof of guilt alone (by a preponderance of the evidence) would not satisfy *Carey*. Instead, Provider Defendants must show that Juvenile Plaintiffs would have been declared delinquent in juvenile court even if they had been afforded their constitutional rights. This would include not just the rights Juvenile Plaintiffs were denied, such as the right to counsel, but would also require consideration of issues regarding the admissibility of evidence and whether evidence should have been suppressed as well issues involving *Miranda* and the voluntariness of any Juvenile Plaintiff's confession.

This exercise is not tenable. Provider Defendants have not articulated a clear method with which they can return to the juvenile adjudications and afford Juvenile Plaintiffs their constitutional rights before exploring their guilt or innocence as to the underlying criminal charges. Provider Defendants have merely argued that the proposed retrials would proceed in the following manner: Juvenile Plaintiffs or other witnesses would take the stand in this action, be shown or asked about records, statements, and/or events, and then Provider Defendants would argue to the jury that if they find that Plaintiffs committed the alleged criminal acts, then Juvenile Plaintiffs have not suffered actual injury. This exercise may allow a jury to reach a determination, on a civil standard of proof, as to whether or not each Juvenile Plaintiff in question engaged in the alleged criminal conduct. This exercise,

however, would not show the outcome of each Juvenile Plaintiff's criminal proceeding, or how each Juvenile Plaintiff would have been disposed of, had their constitutional rights been provided and had their criminal cases been presented to an impartial tribunal- the key to the *Carey* analysis. Thus, a jury would be left to predict the dispositions of Juvenile Plaintiffs' criminal proceedings if they were before an impartial tribunal.[8] Such an exercise would be based on pure speculation- inviting the jury to guess how an unbiased tribunal would have resolved Juvenile Plaintiffs' criminal proceedings had they received the full panoply of guaranteed constitutional rights. Outside of resorting to speculation, the finder of fact in this action can simply not determine how a theoretical, impartial juvenile court would have adjudicated Juvenile Plaintiffs' criminal actions. This reason alone, without regard for the other deficiencies related to Provider Defendants' efforts to align this case with *Carey*, reinforces my determination that Juvenile Plaintiffs' delinquency adjudications should not be retried with respect to damages.

Finally, the legal propositions advanced by Provider Defendants do not compel a contrary result. Provider Defendants argue that a civil jury can make findings of fact that a criminal jury did not find. Provider Defendants cite, for example, *Mullins v. City of Philadelphia*, 287 F. App'x 201, 203 (3d Cir. 2008), where a civil jury returned a verdict against the plaintiff, who claimed he was assaulted by two deputy sheriffs. On appeal, the plaintiff argued that the trial court erred in excluding evidence that he was found not guilty of assaulting the officers. *See id*. In recognizing that the standards of proof differ in civil and criminal cases, the Third Circuit stated "[t]hat a factfinder did not find beyond a reasonable doubt that [the plaintiff] assaulted [the officer] does not mean that a civil jury could not find

---

[8]   As described at the September 5, 2012 discovery conference and in Class Plaintiffs' submissions, the proposed retrials would require the finder of fact in this action to determine, by a "preponderance of the evidence," whether Juvenile Plaintiffs would have been adjudicated delinquent "beyond a reasonable doubt" had they been afforded all of their deprived constitutional rights.

by a preponderance of the evidence that [the plaintiff] started the conflict." *Id*. (citing *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 235, 93 S. Ct. 489, 34 L. Ed. 2d 438 (1972)). Here, however, Provider Defendants are not attempting to show civil and criminal juries reached different verdicts on the same facts (upon differing standards of proof). Rather, Provider Defendants are asking a civil finder of fact to predict of how a juvenile court would have resolved Juvenile Plaintiffs' criminal proceedings.

Also unconvincing is Provider Defendants' arguments that certain constitutional protections are irrelevant to this case because it is a civil action. First, Provider Defendants contend that "the Court need not be concerned that it will be required to resolve *Miranda* issues" about the two hundred fourteen Juvenile Plaintiffs that admitted their delinquent acts because *Miranda* need not be met to admit statements in civil cases. (Doc. 1196.) While Provider Defendants are correct that "the results of interrogation without *Miranda* warnings are admissible in civil cases," *Hanson v. Dane Cnty.*, 608 F.3d 335, 339 (7th Cir. 2010) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 315, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976)), Provider Defendants misconstrue how *Miranda* is applicable in these cases. Under Provider Defendants' proposed retrials of Juvenile Plaintiffs, *Miranda* is implicated as a constitutional guarantee with respect to Juvenile Plaintiffs' underlying adjudications. Because Provider Defendants would have to show Juvenile Plaintiffs would have been declared delinquent even had they not been denied their constitutional rights to comport with *Carey*, it necessarily follows that *Miranda* issues would need to be resolved with respect to the reenactment of Juvenile Plaintiffs' criminal proceedings. For the same reasons, the exclusionary rule, although inapplicable to civil actions, *see, e.g., Cyrus v. City of N.Y.*, 450 F. App'x 24, 26 (2d Cir. 2011) ("exclusionary rule does not apply to § 1983 claims"), would still be relevant with respect to Juvenile Plaintiffs' hypothetical criminal proceedings.

> **v.** **The damages available in this action do not require a retrial on the merits of each Juvenile Plaintiffs' underlying criminal case.**

Provider Defendants argue that many Juvenile Plaintiffs suffered no harm because

they were guilty anyway, their past records demonstrate no harm could have been inflicted on them by any constitutional violation, and that in any event, any claim of damages for emotional distress or economic loss would be diminished, if not eliminated, by their past behavior. Thus, Provider Defendants contend that Plaintiffs are limited to recovery of nominal damages in this action. Class and Individual Plaintiffs vigorously dispute these arguments, and assert that they are entitled to recover compensatory, presumed, emotional distress, economic, and/or punitive damages.

While the parties' submissions implicitly seek a determination as to what remedies and damages are properly available in this action, I do not believe that such a pronouncement is necessary at this stage in the litigation. Instead, for purposes of the issue before me, it is sufficient to note that discovery related to Juvenile Plaintiffs' underlying adjudications is not relevant with respect to Plaintiffs' § 1983 claims and to emphasize that "'the basic purpose' of § 1983 damages is 'to compensate people for injuries that are caused by the deprivation of constitutional rights.'" *Stachura*, 477 U.S. at 307, 106 S. Ct. 2537 (quoting *Carey*, 435 U.S. at 254, 98 S. Ct. 1042). Issues related to the available remedies in this action will be resolved at a future point in this litigation.

In sum, a reinvestigation and retrial on the merits of each Juvenile Plaintiff's underlying adjudication is not necessary to resolve the issue of § 1983 damages in this case. This exercise would be inconsistent with the Pennsylvania Supreme Court's expungement orders and is not justified under any controlling Supreme Court or Third Circuit precedent. Therefore, a readjudication on the merits of each Juvenile Plaintiff's criminal case, and discovery of the related records, will not be permitted.[9]

---

[9] Provider Defendants arguments for discovery of the juvenile adjudications with respect to the RICO and false imprisonment claims are similarly unpersuasive.

**B.    Class Certification**

Provider Defendants also argue that discovery of the Juveniles' Histories is relevant to the class descriptions and to class certification.  Provider Defendants' arguments are unconvincing.

**1.    The proposed discovery of the Juveniles' Histories is not relevant to determinating membership in the proposed classes.**

According to Provider Defendants, "Class Plaintiffs must prove that Ciavarella adjudicated and placed the Juveniles in order for the defined classes to survive.  Therefore, the Juveniles' Histories are relevant to the existence of the classes."  Class Plaintiffs, however, have the more convincing position.  As to composition of the juvenile class, Class A, members of both Subclass A1 (juveniles who waived counsel and/or pled guilty without counsel or without appropriate colloquies on the record) and Subclass A2 (juveniles who were placed at PACC  or WPACC) can be determined solely by reference to the daily case lists and the transcripts of hearings.  Composition of Class B, juveniles and parents who paid costs, fines, or other charges associated with the juveniles' adjudications and/or placements, can be determined without discovery of the Juveniles' Histories.  This, as noted by Class Plaintiffs, can be determined based on the daily case lists and account statements maintained by Juvenile Probation and the Domestic Relations branch of the Luzerne County Court of Common Pleas.  Discovery of the Juveniles' Histories is therefore not necessary for determining membership in the classes.

**2.    The proposed discovery is not relevant for class certification.**

Provider Defendants also claim that discovery of the Juveniles' Histories is necessary to address and resolve issues relevant to class certification.  In particular, they cite the class certification requirements of predominance and typicality.  Initially, it is necessary to note that it would be premature in connection with a discovery dispute to determine how class certification should proceed.  The following discussion is therefore intended only to address

Provider Defendants' specific claim that discovery of the Juveniles' Histories is necessary in anticipation of class certification.

### a. The proposed discovery is not necessary to resolve the predominance inquiry.

The predominance requirement for class actions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Provider Defendants suggest an analogy to products liability cases and decisions that indicate common questions do not predominate where the defenses may depend on the facts of each plaintiff's case. *See, e.g., Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012). Again, however, Provider Defendants are offering the Juveniles' Histories as impacting on the predominance of common issues. The predominate concern is whether Juvenile Plaintiffs were deprived of an impartial tribunal, an element common to all Plaintiffs, which is unrelated to Juvenile Plaintiffs' adjudications or histories. Further, the allegations implicate a single conspiracy through the ultimate action of a single decision-maker, and whether Provider Defendants participated in this conspiracy is not dependent on the Juveniles' Histories.

### b. The proposed discovery is not necessary to resolve the typicality inquiry.

Provider Defendants' likewise assert that the Juveniles' Histories prove a lack of typicality. Typicality derives its legal significance from its ability to "'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" *Id.* at 598 (quoting 7A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1764 (3d ed. 2005)). "If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that

claim atypical if it is based on the same legal theory as the claims of the class.' *Id*. (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)). Again, the issues of constitutional deprivation and causation have no relationship to the Juveniles' Histories. Indeed, the claims arise from the same event, practice, and course of conduct- the conspiracy to operate for-profit detention centers at the expense of Juvenile Plaintiffs' constitutional rights- which are all based on the same legal theory. Thus, discovery of the Juveniles' Histories is not necessary as to the typicality consideration prior to class certification.

> c. **The proposed discovery is not necessary to resolve the commonality inquiry.**

Finally, Provider Defendants argue that commonality is not satisfied because the "crucial questions here are: why was I detained, why was I adjudicated and why was my case disposed of in this way. Because of the widely varying, complex Juveniles' Histories there can be no common answer to these questions."

"The threshold for establishing commonality is straightforward: 'The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994)). In this case, all Plaintiffs identically claim that Defendants engaged in a concerted effort to achieve one illegal objection: to fill private, for profit juvenile detention facilities with children to ensure monetary gain in direct violation of the youths' constitutionally guaranteed rights. Thus, all Plaintiffs present a single issue, one that can produce a common answer to all class members' claims for relief without consideration of the Juveniles' Histories.

### III. Conclusion

For the above stated reasons, Provider Defendants' proposed discovery related to the facts and circumstances of Juvenile Plaintiffs' underlying criminal proceedings will not

be permitted.  Whether Juvenile Plaintiffs were guilty or innocent in their underlying criminal proceedings is unrelated to Provider Defendants' liability for Plaintiffs' claims in this action. Thus, Juvenile Plaintiffs' delinquency adjudications will not establish whether Provider Defendants' caused the denial of Plaintiffs' constitutional rights or whether Plaintiffs were damaged by Provider Defendants' conduct.   The proposed discovery is likewise unnecessary with respect to the issue of class certification.

An appropriate order follows.


October 31, 2012                                     /s/ A. Richard Caputo
Date                                                         A. Richard Caputo
                                                               United States District Judge