**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FLORENCE WALLACE, et al.,

    Plaintiffs,

        v.

ROBERT J. POWELL, et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-286

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM CONWAY, et al.,

    Plaintiffs,

        v.

MICHAEL T. CONAHAN, et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0291

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

H.T., et al.,

    Plaintiffs,

        v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0357

(JUDGE CAPUTO)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SAMANTHA HUMANIK,

    Plaintiff,

        v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0630

(JUDGE CAPUTO)

*************************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RAUL CLARK, et al.,

    Plaintiffs,

        v.

MICHAEL T. CONAHAN, et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-0357

(JUDGE CAPUTO)

*************************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WAYNE DAWN, et al.,

    Plaintiffs,

        v.

MARK A. CIAVARELLA, JR., et al.,

    Defendants.

CIVIL ACTION NO. 3:09-cv-2535

(JUDGE CAPUTO)

*************************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ANGELA RIMMER BELANGER, et al.,

    Plaintiffs,

        v.

MARK A. CIAVARELLA, et al.,

    Defendants.

CIVIL ACTION NO. 3:10-cv-1405

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion for Class Certification as to All Issues of Defendants' Liability to Plaintiffs (Doc. 1319) filed by Plaintiffs in *H.T. v. Ciavarella*, No. 09-0357, and *Conway v. Conahan*, No. 09-0291 (collectively, "Plaintiffs"). Plaintiffs seek certification pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(c)(4) of Classes and Subclasses as to Defendants' liability on Plaintiffs' 42 U.S.C. § 1983, Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and 1962(d), and wrongful imprisonment claims. Defendants PA Child Care, LLC, Western PA Child Care, LLC, Mid-Atlantic Youth Services Corp., and Mark Ciavarella oppose Plaintiffs' request for class certification. Particularly, moving Defendants assert that certification of the proposed Classes is improper because Plaintiffs are unable to satisfy the threshold requirements for certification under Rule 23(a) or the predominance and superiority requirements of Rule 23(b)(3). Defendants further contend that too many individualized issues exist as to each class member to permit certification of the liability only Classes under Rule 23(c)(4). Lastly, Provider Defendants maintain that the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, - - - U.S. - - -, 133 S. Ct. 1426 (2013), prohibits certification of liability only classes. For the reasons that follow, Plaintiffs' motion will be

granted and the proposed Classes and Subclasses will be certified.

## I. Background[1]

**A.     Factual Background**

This civil action arises out of the alleged conspiracy related to the construction of two juvenile detention facilities, and subsequent detainment of juveniles in these facilities, orchestrated by two former Luzerne County Court of Common Pleas judges, Michael Conahan ("Conahan") and Mark Ciavarella ("Ciavarella"). The juvenile detention facilities, PA Child Care ("PACC") and Western PA Child Care ("WPACC"), were both constructed by Mericle Construction, Inc. Plaintiffs in this action, juveniles or the parents of juveniles who appeared before Ciavarella, seek redress from the former judges, as well as the individuals and business entities involved in the construction and operation of these facilities, for the alleged unlawful conspiracy and resulting deprivations of Juvenile Plaintiffs' rights.

As set forth in the Master Complaint for Class Actions, Plaintiffs assert claims for violations of 42 U.S.C. § 1983 and conspiracy to violate § 1983; violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and 1962(d) ("RICO"); and state-law false imprisonment against the following: Ciavarella and Conahan;[2] two entities controlled by Ciavarella and Conahan (Pinnacle Group of Jupiter, LLC, and Beverage

---

[1]     As the facts underlying this litigation have been recited at length on numerous occasions, *see, e.g., Wallace v. Powell*, No. 09-cv-286, 2012 WL 5379153 (M.D. Pa. Oct. 31, 2012); *Wallace v. Powell*, No. 09-cv-286, 2012 WL 2590150 (M.D. Pa. July 3, 2012); *Wallace v. Powell*, No. 09-cv-286, 2009 WL 4051974 (M.D. Pa. Nov. 20, 2009), only those facts necessary for the resolution of the instant motion will be repeated herein.

[2]     With respect to the claims against Ciavarella and Conahan, while the former judges are afforded judicial immunity for their "courtroom acts," no such protection is provided for their "non-judicial acts." *Wallace*, 2009 WL 4051974.

4

Marketing of PA, Inc.);[3] PACC, WPACC, and Mid-Atlantic Youth Services Corp. ("MAYS") (collectively, "Provider Defendants"); Robert J. Powell; and Vision Holdings, LLC, an entity controlled by Powell that was a member of both PACC and WPACC (collectively, "remaining Defendants" or "Defendants").[4] The current claims against the remaining Defendants in the Master Complaint are: (a) Count I- violation of Juvenile Plaintiffs' right to an impartial tribunal pursuant to 42 U.S.C. § 1983, against Ciavarella and Conahan only; (b) Count II-conspiracy to violate Juvenile Plaintiffs' right to an impartial tribunal pursuant to 42 U.S.C. § 1983, against all remaining Defendants; (c) Count III- violation of Juvenile Plaintiffs' right to counsel and/or a knowing, intelligent, and voluntary guilty plea pursuant to 42 U.S.C. § 1983, against Ciavarella only; (d) Count IV- conspiracy to violate Juvenile Plaintiffs' right to counsel and/or a knowing, intelligent, and voluntary guilty plea pursuant to 42 U.S.C. § 1983, against all remaining Defendants; (e) Count V- violation of RICO, 18 U.S.C. § 1962(c), against Ciavarella, Conahan, Powell, Vision Holdings, Beverage Marketing, and Pinnacle Group only; (f) Count VII- conspiracy to violate RICO, 18 U.S.C. § 1962(d), against all remaining Defendants; and (g) Count IX- wrongful imprisonment against Powell and Provider Defendants only. (Doc. 136.)[5]

---

[3] Defaults have been entered against Beverage Marketing of PA, Inc. (Doc. 301), and Pinnacle Group of Jupiter, LLC. (Doc. 467.)

[4] Class Plaintiffs also asserted claims against Gregory Zappala, Cindy Ciavarella, Barbara Conahan, Robert Mericle and Mericle Construction, Inc., and Luzerne County. (Doc. 136, ¶¶ 164-168, 175.) The claims against these defendants have all been dismissed or resolved by agreement of the parties.

[5] Count VI, which asserted a RICO claim under § 1962(b), was withdrawn by Plaintiffs. *See Wallace*, 2010 WL 3398995, at *9 n.7. And, the claim in Count VIII no longer remains in this action as it was asserted solely against Luzerne County. *See Wallace*, 2010 WL 2746394, at *2-3.

**B.     Class Certification Motion**

On February 1, 2013, Plaintiffs filed a motion for class certification. (Doc. 1319.) Plaintiffs seek class certification of all issues as to Defendants' liability pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4). Plaintiffs propose the following Classes and Subclasses for certification:

### Class A

### Violations of Right to Impartial Tribunal

All children who were adjudicated delinquent or referred to placement by Ciavarella between 2003 and May 2008, whose adjudications were vacated, expunged, and dismissed with prejudice by orders of the Pennsylvania Supreme Court dated October 29, 2009 or March 29, 2010. *See* in re Expungement of Juvenile Records and Vacatur of Luzerne County Juvenile Court Consent Decrees or Adjudications from 2003-2008, No. 81-MM-2008 (Pa.)

### Subclass A.1

### Violations of Right to Counsel and/or Colloquy

All children in Class A who were adjudicated delinquent or referred to placement by Ciavarella without counsel and/or without colloquies on the record that informed them of their rights and the consequences of waiving those rights, before either waiving counsel and/or pleading guilty, during the time between 2003 and May 2008.

### Subclass A.2

### False Imprisonment

All children in Class A who were referred to placement at PA Child Care and/or Western PA Child Care by Ciavarella between 2003 and May 2008.

### Class B

### Violations of RICO Act

All children who were adjudicated delinquent or referred to placement by Ciavarella who paid fees, costs, fines, restitution, or any other monetary charges associated with their adjudications and/or placements during the time period between 2003 and May 2008, as well as all children's parents or guardians who paid fees, costs, fines, restitution, or any other monetary charges associated with their children's adjudications and/or placements during the same time period.

(Doc. 1320, 12-14.)

Class A includes approximately 2,421 juveniles, and is represented by Paige Cicardo, Elizabeth Habel, Angelia Karsko, H.T., Jessica Van Reeth, Dezare Dunbar, and Alexandra Fahey. (*Id*. at 12.) Subclass A.1 includes at least 1,855 juveniles. Subclass A.1 is represented by Paige Cicardo, H.T., and Jessica Van Reeth. (*Id*. at 13.) Subclass A.2, represented by Paige Cicardo, Elizabeth Habel, and Angelia Karsko, contains approximately 1,442 juveniles. (*Id*. at 14.) Class B, estimated by Plaintiffs to be comprised of over 2,400 juveniles and parents, is represented by Elizabeth Habel and Jack Van Reeth. (*Id*. at 14.)

On March 1, 2013, Provider Defendants filed a brief in opposition to Plaintiffs' motion for class certification.[6] First, Provider Defendants dispute Plaintiffs' calculation of the size of the Classes, and assert that there "are no more than 1,787 actual class members, and as many as 535 have opted out." (Doc. 1345, 6.)[7] Second, Provider Defendants contend that Rule 23(c)(4) does not allow for certification of liability only classes in this case, which they claim is also supported by *Comcast Corp. v. Behrend*, - - - U.S. - - -, 133 S. Ct. 1426 (2013). Third, Provider Defendants argue that the Classes and Subclasses cannot be certified because Plaintiffs are unable to satisfy the requirements of Rules 23(a) and 23(b)(3).

On April 30, 2013, oral argument was held on the motion for class certification. The motion is now ripe for disposition.

---

[6] Ciavarella joined Provider Defendants' opposition to the request for class certification. (Doc. 1374.)

[7] Plaintiffs contend that Provider Defendants' assertion is inaccurate based on Juvenile Probation's records that 2,421 juveniles were adjudicated delinquent or referred to placement by Ciavarella between 2003 and May 2008 and whose adjudications were vacated, expunged, and dismissed with prejudice by the Pennsylvania Supreme Court. (Doc. 1367, 2.) Thus, even if all Juvenile Plaintiffs that filed individual actions or opted out of the Mericle Settlement were to elect to opt out of the Classes if certified, this would amount to approximately 343 Juvenile Plaintiffs in Class A, which comprises only 14% of that class. (*Id*. at 3.)

**II. Discussion**

**A.    Legal Standard**

Rule 23 of the Federal Rules of Civil Procedure provides for class action certification. Under Rule 23(a), class certification may be appropriate if the following requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Once the requirements of 23(a) are satisfied, the class may be certified if at least one of the three subsections of 23(b) are met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008).  Here, Plaintiffs seek to certify the Classes and Subclasses pursuant to Rules 23(b)(3) and 23(c)(4).

A court may certify a class action only if it "is satisfied, after a rigorous analysis, that the [requirements of Rule 23] have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).  In weighing the merits of class certification, a "district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *Hydrogen Peroxide*, 552 F.3d at 307.  Specifically, a certifying court must find that each element of Rule 23 is met by a preponderance of evidence, and it "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits- including disputes touching on elements of the cause of action." *Id.* at 305.  This reflects the notion that Rule 23 is more than a "mere pleading standard," and a plaintiff "seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes*, - - - U.S. - - -, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

**B.    Certification Under Rule 23(a)**

Plaintiffs as the moving party bear the burden of first showing that the requirements of Rule 23(a) are satisfied, and then demonstrating that the elements of subsection (b)(3) are met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14, 117 S. Ct. 2231, 138

L. Ed. 2d 689 (1997); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

The "threshold requirements" of Rule 23(a) are referred to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613, 117 S. Ct. 2231. Each requirement will be evaluated in turn.

### 1. Numerosity

The first requirement for a class action is that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "'No single magic number exists satisfying the numerosity requirement." *Logory v. Cnty. of Susquehanna*, 277 F.R.D. 135, 140 (M.D. Pa. 2011) (quoting *Florence v. Bd. of Chosen Freeholders*, No. 05–3619, 2008 WL 800970, at *6 (D. N.J. Mar. 20, 2008)). However, the Third Circuit has opined that while there is technically no minimum class size, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Here, Class A consists of approximately 2,421 juveniles that were adjudicated delinquent or referred to placement by Ciavarella between 2003 and May 2008. (Doc. 1367, Ex. 1.) Subclass A.1 is comprised of the approximately 1,855 juveniles adjudicated delinquent or referred to placement without counsel by Ciavarella during the class period, together with the juveniles who did not have a constitutionally adequate colloquy before pleading guilty. Subclass A.2 includes the approximately 1,442 juveniles placed at PACC and/or WPACC by Ciavarella between 2003 and May 2008. And, Class B is likely in excess of 2,400 Juvenile Plaintiffs and Parent Plaintiffs who made payments in connection with the juvenile adjudications between 2003 and May 2008. These Classes well surpass the lower limits for numerosity, and Rule 23(a)(1) has been met.

### 2. Commonality

To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). Commonality requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at

2551. "Commonality does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001) (internal quotation marks omitted); *see also Marcus,* 687 F.3d at 597-98 (3d Cir. 2012).

Recently, however, the Supreme Court opined that commonality is not the mere existence of a classwide question, but instead the potential for a "classwide resolution." *Dukes*, 131 S. Ct. at 2551. "What matters to class certification . . . is not the raising of common 'questions'- even in droves- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

In this case, the allegations raise a number of common issues capable of classwide resolution with respect to the liability of Defendants. For example, as to the constitutional claims, common issues include: whether the non-judicial Defendants willfully participated in joint activity with Ciavarella and Conahan; whether Defendants conspired with the former judges to deprive Juvenile Plaintiffs of their constitutional rights; and whether Powell had final policymaking authority for PACC, WPACC, MAYS, and/or Vision Holdings. The RICO claims implicate common issues such as whether an association-in-fact enterprise was established by Defendants, as well as whether a universal conspiracy existed to violate Plaintiffs' rights and to commit the predicate acts. *See Wallace*, 2010 WL 3398995, at *13-14. Lastly, as to the wrongful imprisonment claim, a common issue exists as to whether, based on the alleged conspiracy, Defendants knew Ciavarella's detention orders were invalid. *See id*. at *16. Since these issues can be answered commonly by way of a classwide proceeding, Rule 23(a)(2) is satisfied. *See, e.g., Marcus*, 687 F.3d at 597.

Provider Defendants, however, insist that commonality does not exist in this case pursuant to the Supreme Court's decision in *Dukes*. In *Dukes*, three current or former Wal-Mart employees, representing the 1.5 million members of the certified class, claimed that

the company discriminated against them on the basis of their sex. *Dukes*, 131 S. Ct at 2548. The members of the class "held a multitude of different jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed . . . ." *Id*. at 2557 (citation omitted). The class certified by the district court consisted of "'all women employed at any Wal-Mart domestic retail store at any time since December 26, 1998, who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices.'" *Id*. at 2549 (quoting *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 141-42 (N.D. Cal. 2004)). The district court's certification order was substantially affirmed by a divided en banc Court of Appeals for the Ninth Circuit. *See id*. (citing *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (en banc)). The Supreme Court granted certiorari to address whether certification of the plaintiff class was consistent with Rules 23(a) and (b)(2). *See id*. at 2547.

In finding that the respondents failed to establish commonality as required by Rule 23, the Court noted that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id*. at 2551 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). To satisfy Rule 23(a)(2), claims must:

> depend upon a common contention- for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id*. And, in a case such as *Dukes* where the "respondents wish[ed] to sue about literally millions of employment decisions at once," the Court emphasized that "[w]ithout some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id*. at 2552 (emphasis in original). This passage, Provider Defendants contend, demonstrates that "the crucial questions here are: why was I detained, why was I adjudicated and why was my case disposed of in this way. Because

11

of the widely varying, complex Juveniles' Histories, there can be no common answer to these questions." (Doc. 1345, 36-37.)

Provider Defendants disregard *Dukes*' emphasis that a court should focus on the "dissimilarities" between class members only "to determine (as Rule 23(a)(2) requires) whether there *is* even a single common question." *Dukes*, 131 S. Ct. at 2556 (emphasis in original). As set forth above, and in contrast to *Dukes* where the plaintiffs failed to identify a single common question, common questions permeate this litigation. Essentially, the claims rest on the common contention that Defendants "acted in conspiracy with Conahan and Ciavarella to deprive Juvenile Plaintiffs of their constitutionally guaranteed rights, . . . organized an association-in-fact enterprise, and . . . participated in the affairs of an entity through a pattern of racketeering activity." *Wallace*, 2012 WL 6552134, at *6. As all class members claim the same injury, denial of rights, and as the common contention of why Ciavarella deprived juveniles of these rights is capable of classwide resolution, the claims at issue are markedly different from those in *Dukes*.

Moreover, this case differs from *Dukes* in another crucial respect. *Dukes* specifically recognized that a common contention in that case could be predicated by an assertion of bias "on the part of the *same supervisor*." *Dukes*, 131 S. Ct. at 2551 (emphasis added). The common contention here fits squarely into that reasoning, as the claims are predicated on a conspiracy that resulted in the unconstitutional and unlawful adjudications of all Juvenile Plaintiffs by the same judge. This provides the "glue" that was absent in *Dukes*. And, this common contention is capable of classwide resolution, as the answer to why Juvenile Plaintiffs were deprived of their rights will be resolved in one stroke. In essence, unlike the class members in *Dukes* that were "sprinkled across 50 states, with a kaleidoscope of supervisors . . . , subject to a variety of regional policies that all differed," *Dukes*, 131 S. Ct. at 2557, Juvenile Plaintiffs here were all adjudicated in the same county, before the same judge, and as a result of the same alleged unlawful conspiracy. The commonality requirement is therefore satisfied.

12

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The concepts of typicality and commonality are closely related and often tend to merge." *Marcus*, 687 F.3d at 597 (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994)). "The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal*, 43 F.3d at 57. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id*. at 58 (citation omitted). When analyzing typicality, a court must compare the situation of the proposed representative to that of the class as a whole by considering "the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).

The claims of the representatives with respect to liability are typical of the claims of the Classes they represent. Like all Class A members, Paige Cicardo, Elizabeth Habel, Angelia Karsko, H.T., Jessica Van Reeth, Dezare Dunbar, and Alexandra Fahey appeared before Ciavarella and were adjudicated delinquent or referred to placement between 2003 and May 2008, and their adjudications were vacated, expunged, and dismissed with prejudice by the Pennsylvania Supreme Court. The Class A representatives' claims are typical of those of all Class A members as they all allege that the former judges' undisclosed conflict-of-interest in adjudicating children delinquent and sending them to placement resulted in the denial of their constitutional rights. The Subclass A.1 representatives, Paige Cicardo, H.T., and Jessica Van Reeth, assert, like all other members of Subclass A.1, that they were adjudicated delinquent or referred to placement by Ciavarella during the class

period without counsel and/or without colloquies on the record informing them of their rights and the consequences of waiving those rights, before either waiving counsel and/or pleading guilty. Similarly, the Subclass A.2 representatives, Paige Cicardo, Elizabeth Habel, and Angelia Karsko, like all other members of the Subclass, were referred by Ciavarella to PACC and/or WPACC for placement. Lastly, Elizabeth Habel and Jack Van Reeth, the Class B representatives, allege, like all other members of Class B, that Defendants' conduct resulted in their paying court fees, fines, restitution, and other monetary charges associated with the adjudications or placements by Ciavarella betwen 2003 and May 2008.

Thus, the class representatives and class members all rely on identical theories of liability. Moreover, with respect to liability, the class representatives do not face any unique or atypical defenses different from other class members. As such, since the representatives' claims are highly typical of those of the Classes and Subclasses generally, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (citing *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005)). Essentially, the adequacy inquiry considers whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988) (citations omitted).

Adequacy of counsel under Rule 23(a)(4) is based upon the factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010) ("Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the

adequate representation requirement of Rule 23(a)(4) . . . those questions have, since 2003, been governed by Rule 23(g).").  That subsection lists several non-exclusive factors that a district court must consider in determining "counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), including: (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

To date, proposed Class Counsel, Hangley Aronchick Segal Pudlin & Schiller ("Hangley"), Juvenile Law Center ("JLC"), and Anapol Schwartz ("Anapol"), has efficiently and effectively prosecuted this litigation on behalf of the Classes by coordinating these consolidated civil actions, preparing and filing comprehensive briefs in opposition to Defendants' motions to dismiss and cross-motions for summary judgment, litigating discovery disputes, and pursuing settlements.  In obtaining approval of the Mericle Settlement, Co-Lead Counsel was found to satisfy the requirements of Rule 23(a)(4).

> Class Counsel has the experience, skill, and qualification necessary to conduct this litigation.  In particular, the individual attorneys in this action have extensive experience  in complex class action litigation involving mass actions and civil rights claims.  Consistent with their impressive qualifications, Class Counsel, throughout this litigation, has demonstrated considerable ability in prosecuting this case. . . .  Class Counsel has pursued this action vigorously and with great dedication on behalf of all Plaintiffs.

*Wallace*, 2012 WL 6552134, at *8.  This finding is equally applicable here, and, as such, proposed Class Counsel is capable of fairly and adequately representing the interests of the class members.

While Provider Defendants do not suggest that the proposed Class Counsel lacks the skill or ability to adequately represent the class members, Provider Defendants contend that Anapol cannot adequately represent the Classes because it also represents ninety-seven (97) plaintiffs individually.   Provider Defendants insist that "Anapol's dual representations of class members and individual plaintiffs are clearly conflicts of interest that preclude them from adequately representing the class." (Doc. 1345, 40.)

15

Provider Defendants cite district court cases from other Circuits to support their claim that Anapol cannot simultaneously represent class and individual Plaintiffs. (*Id*. citing *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557 (S.D. Ohio 200); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995); *Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992); *Jacksaw Pontiac, Inc. v. Cleveland Press Publ'g Co.*, 102 F.R.D. 183 (N.D. Ohio 1984); *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 258 (N.D. Cal.1978)). Moreover, "[c]ourts have consistently held that counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants in a different proceeding." 1 McLaughlin on Class Actions § 4:39 (5th ed. 2009) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999) (stating that "an attorney who represents another class against the same defendant may not serve as class counsel," and finding conflict of interest where attorneys represented proposed settlement class and also separately represented individual clients with prior-negotiated, more favorable settlement)).

> Here, however, only one . . . of class counsel, [Anapol], has brought individual cases against Defendant based on the Policies. Presumably, the other class counsel would not allow their colleague to put the interests of his individual cases before the interests of the class. Moreover, Defendant has not demonstrated that Plaintiffs' counsel suffers from an actual conflict. Admittedly, situations may arise where counsel seeking to represent both class members and individual plaintiffs in separate actions against the same defendant suffers from actual conflict (*e.g.*, pursuing a class action as well as actions on behalf of individual plaintiffs when both actions pursue a common pool of assets that might be insufficient to support the total amount sought). *See, e.g., Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992).

*Ruderman ex rel. Schwartz v. Washington Nat'l Ins. Co.*, 263 F.R.D. 670, 685 (S.D. Fla. 2010). In this case, just as in *Ruderman ex rel. Schwartz*, "the individual actions and the purported class action appear to pursue the same goal: . . ." *Id*. Likewise, "Defendant[s] ha[ve] not alleged that the proposed class members and individual plaintiffs seek recovery from a single pool of assets." *Id*. Accordingly, I perceive no conflict, and Plaintiffs' proposed Class Counsel can fairly and adequately represent the Classes as required by Rule

23(a)(4). *See also Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 590 (3d Cir. 1999).[8]

With respect to the second prong of the adequacy inquiry, the Third Circuit has "recognized that the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183 (citations omitted). The adequacy requirement "is designed to ferret out" intra-class conflicts, and to ensure that the named plaintiffs have the incentive to represent the claims of the class. *Id.* at 184 (citations omitted). If any conflicts "undercut the representative plaintiffs' ability to adequately represent the class" they are "fundamental," such that class representation is structurally faulty and Rule 23(a)(4) cannot be satisfied. *Id.* at 184-85.

The class representatives' interests are aligned with those of the class members. There appears to be no conflicts between or among the Classes, and the representatives are "'part of the class and possess the same interest and suffer the same injury as the class members.'" *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem Prods.*, 512 U.S. at 625-26, 117 S. Ct. 2231). As the representatives share a common interest with the Classes in establishing Defendants' liability for the alleged unlawful conduct, they will adequately protect the interests of the class members.

Accordingly, the representatives' interests are not in conflict with those of the Classes and proposed Class Counsel is capable of representing the Classes. The requirements of Rule 23(a)(4) are fully satisfied.

Based on the foregoing, Plaintiffs have satisfied the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a).

---

[8]     Of course, "[o]nce the decision to certify a class has been made, the court remains under a continuing duty to monitor the adequacy of representation to ensure that class counsel provides zealous, competent representation through the proceedings and to address conflicts of interests if they develop." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1112 (10th Cir. 2001) (citing *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986); *In re Fine Paper Antitrust Litig.*, 617 F.2d 22, 27 (3d Cir. 1980)).

## C.    Certification under Rule 23(b)(3) and Rule 23(c)(4)

Having met the threshold requirements under Rule 23(a), Plaintiffs must also satisfy one of the three sub-parts of Rule 23(b). *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). In this case, Plaintiffs are seeking certification as to liability only pursuant to Rules 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

Rule 23(b)(3) allows for a class action to proceed if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are commonly separated into the "predominance" and "superiority" requirements. *See In re Cmty. Bank of N. Va.*, 418 F.3d at 308-09. The factors pertinent to finding predominance and superiority are: (A) the class members' interest in individually controlling the prosecution of separate actions; (B) the extent and nature of any class member's litigation concerning the controversy; (C) the appropriateness of concentrating the litigation in this forum; and (D) any likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3). Although the plain language of Rule 23(b)(3) directs courts to consider these factors in evaluating predominance and superiority, "in a majority of cases courts consider these factors solely with respect to making a determination of superiority." *Powers v. Lycoming Engines*, 272 F.R.D. 414, 426 n.25 (E.D. Pa. 2011) (citation omitted).

Rule 23(c)(4) provides "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Like any other certification determination under Rule 23, a district court's decision to exercise its discretion pursuant to Rule 23(c)(4) "'must be supported by rigorous analysis.'" *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 272 (3d Cir. 2011) (citing *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200-01 (3d Cir. 2009)). The Third Circuit has explained that Rule 23(c)(4) "'both imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified, and gives it ample power to treat common things in common and to distinguish the distinguishable.'" *Id*. (quoting *Chiang v. Veneman*, 385 F.3d 256, 267

(3d Cir. 2004), *abrogated on other grounds by Hydrogen Peroxide*, 552 F.3d at 318 n.18).

The interplay between the requirements for class certification under Rule 23(a) and (b) and the recognition of issue classes under Rule 23(c)(4) "is a difficult matter that has generated divergent interpretations among the courts." *Id*. (quoting *Hohider*, 574 F.3d at 200 n.25). Nevertheless, "'[c]ourts frequently use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication.'" *Carroll v. Stettler*, No. 10-2262, 2011 WL 5008349, at *4 (E.D. Pa. Oct. 19, 2011) (citing *Chiang*, 385 F.3d at 267). In determining whether common issues are divisible from individual issues so as to decide whether to certify an issue class:

> the trial court should consider: the type of claim(s) and issue(s) in question; the overall complexity of the case; the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*Gates*, 655 F.3d at 273 (citing Principles of the Law of Aggregate Litigation §§ 2.02–05 (2010); *Hohider*, 574 F.3d at 201).

Additionally, the Third Circuit has instructed that when certifying an issue class, the issues to be tried should be clearly enumerated. *Id*. (citing *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 184-85 (3d Cir. 2006)). Likewise, the district court should explain how the remaining issues will be resolved. *Id*. (citing Principles of the Law of Aggregate Litigation §§ 2.02(e) (2010)).

With these considerations in mind, Plaintiffs' request for certification of the Classes and Subclasses for liability purposes will be granted for the following reasons.

## 1.     Predominance

The predominance inquiry under Rule 23(b)(3) "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc) (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)).  "Parallel with Rule 23(a)(2)'s commonality element, which provides that a proposed class must share a common question of law or fact, Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Id*. (citing *Ins. Brokerage*, 579 F.3d at 266).  Thus, the Third Circuit "'consider[s] the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to analyze the two factors together, with particular focus on the predominance requirement.'" *Id*. (quoting *Ins. Brokerage*, 579 F.3d at 266).  And, Third Circuit precedent "provides that the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Id*. at 298.

In assessing predominance, "a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)." *Marcus*, 687 F.3d at 600 (quoting *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011)).  Thus, "[a] plaintiff must 'demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Id*. (quoting *Hydrogen Peroxide*, 552 F.3d at 311).

### a.     Section 1983 Claims

Plaintiffs' 42 U.S.C. § 1983 claims assert that Defendants violated or conspired to violate their rights to an impartial tribunal and their right to counsel and/or a knowing, intelligent, and voluntary guilty plea. (Doc. 136, Counts I-IV.)  "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, (1) acting under color of law, (2) violated the plaintiff's federal constitutional or statutory rights, (3) and thereby caused

the complained of injury." *Elmore v. Cleary*, 299 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)). Liability under § 1983 does not require proof of actual damages. *See Wallace*, 2010 WL 3398995, at *5.

### i.     Impartial Tribunal

Plaintiffs first allege under § 1983 that Defendants are liable for the denial of Juvenile Plaintiffs' right to an impartial tribunal. With respect to liability for the impartial tribunal claims, the predominance requirement is satisfied. Particularly, Defendants' conduct in denying or allegedly conspiring to deprive Juvenile Plaintiffs of their right to an impartial tribunal is identical to all class members, and all class members were injured by the same alleged conduct of Defendants. In addition, whether the non-judicial Defendants were "state actors" for purposes of § 1983 liability is capable of proof at trial through evidence common to the class members. The predominance requirement of Rule 23(b)(3) is met for the impartial tribunal claims as questions common to the Classes predominate over those affecting only individual members.

### ii.    Right to Counsel

Common issues as to liability also predominate regarding the denial of Plaintiffs' right to counsel claims. Again, as noted above, a determination of whether Defendants are "state actors" is capable of common proof. Moreover, all class members claiming that they were adjudicated delinquent or referred to placement without counsel and/or without on-the-record colloquies similarly assert that they were denied the protections afforded them under the Sixth Amendment.[9] Whether the class members were denied the right to counsel is capable of common proof in the form of the daily case lists maintained by Juvenile Probation. And, since the resolution of whether Defendants' conduct caused Ciavarella to

---

[9]     The right to counsel under the Sixth Amendment applies to the States under the Due Process Clause of the Fourteenth Amendment. *See McMahon v. Fulcomer*, 821 F.2d 934, 944 (3d Cir. 1987) (citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 342-45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)).

adjudicate or place class members without counsel and without knowing and voluntary waivers of the right to counsel is capable of proof common as to all members, the predominance requirement is satisfied with respect to the right to counsel claims.

Provider Defendants contend, however, that too many Juvenile Plaintiff specific questions exist as to whether each class member was denied the right to counsel to permit this litigation to proceed as a class action. Those unique, individualized issues, according to Provider Defendants, include: forty-three (43) juveniles were before Ciavarella for multiple hearings and had an attorney present on at least one occasion; seventeen (17) expressly waived counsel; 159 Class or Individual Plaintiffs received *Miranda* warnings from police or probation officers; many juveniles received "written advice" of their right to an attorney before entering Ciavarella's courtroom; some parents declined public defenders due to a perceived conflict of interest; some families were not income-eligible for a public defender; public defenders were in the courtroom during some juvenile adjudications but refused to "step in for them"; and some juveniles were advised by police officers, attorneys, or probation officers that an attorney was not necessary. (Doc. 1345, 15-16.) Provider Defendants argue that "[t]his information is unique to each Juvenile and relevant to whether the Juveniles were denied counsel or trial, or chose not to have counsel or trial for reasons other than the lack of colloquy." (*Id*. at 16.)

These individualized issues have no impact on whether Juvenile Plaintiffs' right to counsel was denied and not waived. "The right to assistance of counsel is 'one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty.'" *Appel v. Horn*, 250 F.3d 203, 218 (3d Cir. 2001) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)); *see also In re Gault*, 387 U.S. 1, 41, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). Nevertheless, a criminal defendant may waive the right to counsel. *See, e.g., United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004). To be effective, however, the relinquishment of the right to counsel must be knowing, voluntary, and intelligent. *See id*. Prior to waiving counsel, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record

will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)*; see also United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982) ("a defendant's waiver of counsel can be deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary."). According to the Third Circuit:

> It is clear from the Supreme Court's decision in *Faretta* . . . and this Court's decision in *Welty* . . . that the district court must undertake an affirmative on-the-record colloquy to explain to the defendant the possibility of waiver and give the defendant an awareness of the dangers and disadvantages inherent in defending oneself.

*Thomas*, 357 F.3d at 362; *see also United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995) (court must "engage in an on-the-record colloquy to ensure that a defendant who chooses to represent himself is making a knowing, intelligent and voluntary waiver of his Sixth Amendment right to counsel.").

Here, subclass members all uniformly claim that they were not provided in court and on-the-record colloquies by Ciavarella prior to waiving their right to counsel. The subclass members thus all similarly allege that since no such colloquy was provided before proceeding without counsel, they did not knowingly and intelligently waive the right to counsel. As the Sixth Amendment "imposes the serious and weighty responsibility upon the trial judge in determining whether there is an intelligent and competent waiver by the accused," *Johnson*, 304 U.S. at 465, 58 S. Ct. 1019, and "whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record," *id*., individual Juvenile Plaintiffs' circumstances cited by Provider Defendants are irrelevant to the determination of whether the right to counsel was violated. That is, whether a Sixth Amendment deprivation occurred (and whether Defendants caused such a deprivation) is unaffected by the fact that some class members received *Miranda* warnings, had been represented by an attorney on other occasions, had income exceeding the financial eligibility requirements for a public defender, or had been advised by people outside of the courtroom that an attorney was unnecessary.

23

Accordingly, issues common to the Subclass predominate over those affecting only individual members with respect to the right to counsel claims.

### iii. Guilty Plea Colloquy

Lastly, Plaintiffs seek to hold Defendants liable under § 1983 for the denial of a constitutionally adequate guilty plea. When a plea of guilty is entered, several constitutional rights are waived. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury guaranteed by the Sixth Amendment, and the right to confront one's accusers protected by the Sixth Amendment are all waived by entering a guilty plea). As a result, a guilty plea must be knowing and voluntary. *See United States v. Schweitzer*, 454 F.3d 197, 202 (3d Cir. 2006). Accordingly, "courts may not accept a guilty plea without first determining, on the record, that the guilty plea was the result of a knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Jamison v. Klem*, 544 F.3d 266, 272 (3d Cir. 2008) (citing *Boykin*, 395 U.S. at 243-44, 89 S. Ct. 1709). Therefore, "absent 'a record adequate' to determine that a guilty plea is a knowing, voluntary and intelligent waiver, a reviewing court can not conclude that the guilty plea complied with constitutional safeguards." *Id*. at 274 (citing *Boykin*, 395 U.S. at 244, 89 S. Ct. 1709).

As to the guilty plea colloquy claims, Defendants' conduct was common as to all class members. And, proof of whether Defendants deprived or conspired to deprive Juvenile Plaintiffs of knowing and voluntary guilty pleas can be established by proof common to all class members. Moreover, based on Defendants' alleged conduct, Plaintiffs contend that they all suffered the same injury, the denial of their constitutional right to an intelligent and voluntary guilty plea. Common issues as to liability therefore predominate over individual questions on the denial of voluntary and constitutionally adequate guilty plea claims.

### b. RICO Claims

Plaintiffs also allege violations of RICO, 18 U.S.C. § 1962(c) and (d).[10] To establish a § 1962(c) RICO violation, Plaintiffs must establish: (1) the existence of an enterprise affecting interstate commerce; (2) Defendants' association with the enterprise; (3) Defendants' participation in the conduct or affairs of the enterprise; and (4) Defendants' participation through a pattern of racketeering activities. *See Wallace*, 2010 WL 3398995, at *13; *see also Ins. Brokerage*, 579 F.3d at 269 (establishing liability under § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," plus an injury to "business or property."). For the § 1962(d) claims, Plaintiffs must establish "(1) an agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (citing *Odesser v. Continental Bank*, 676 F. Supp. 1305, 1312 (E.D. Pa. 1987)).

Here, common legal and factual determinations predominate over individual issues with respect to the RICO claims. Violations of § 1962(c) can be established by common proof as to the activities of Defendants, whether an enterprise existed, and whether Defendants associated and participated in the affairs of the enterprise. *See Ins. Brokerage*, 579 F.3d at 269-70. Likewise, proof of the remaining elements would encompass common questions of law and fact, notably whether activities that constitute racketeering were occurring through the enterprise, and whether these racketeering activities were occurring in a pattern that could be established. *See id*. at 270. Thus, common issues concerning liability for a violation of § 1962(c) predominate and are capable of proof common to the Class. Similarly, the § 1962(d) conspiracy claim focuses on the conduct of Defendants and whether Defendants "conspire[d] to violate § 1962(c)." *Id*. at 269. This proof is common to all Class B members. And, to the extent any individual issues exist with respect to

---

[10]     As noted, the § 1962(c) claim is asserted against Ciavarella, Conahan, Powell, Vision Holdings, Beverage Marketing, and Pinnacle Group, while the § 1962(d) claim is against all remaining Defendants.

damages, these issues do not predominate over those common and relevant to resolution of Defendants' liability for Plaintiffs' RICO claims. Therefore, common issues predominate as to Defendants' liability for the RICO claims.

### c. Wrongful Imprisonment Claim

Plaintiffs also assert a wrongful imprisonment claim against Provider Defendants and Powell. There are two elements to a claim of false imprisonment under Pennsylvania law: (1) the detention of another person, and (2) the unlawfulness of such detention. *See Wallace*, 2010 WL 3398995, at *15 (citing *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994)); *see also Goldstein v. United Lift Serv. Co.*, No. 09-286, 2010 WL 4236932, at *4 (E.D. Pa. Oct. 25, 2010) (elements for false imprisonment under Pennsylvania law are: (1) defendant acts intending to confine a person within boundaries fixed by the actor; (2) defendant's act directly or indirectly results in such confinement of that person; and (3) the person confined is conscious of the confinement or is harmed by it). Proof of false imprisonment liability requires no proof of damages. *See Carter v. May Dep't Store Co.*, 853 A.2d 1037, 1041 (Pa. Super. 2004) (noting that the fact that there has been a false imprisonment establishes a cause of action for at least nominal damages).

Common issues predominate over individual issues in regard to Plaintiffs' false imprisonment claims against Provider Defendants and Powell. First, whether class members were detained or placed at PACC or WPACC by Ciavarella between 2003 and May 2008 can be determined by Provider Defendants and Juvenile Probation's records and files. Second, the unlawfulness of the detentions, and Provider Defendants and Powell's liability for false imprisonment, can be determined by common proof as to their conduct. That is, whether Provider Defendants and/or Powell conspired with the former judges and knew Ciavarella's detention orders were invalid is susceptible to proof of Defendants' conduct which is the same as to all class members. *See Wallace*, 2010 WL 3398995, at *16 . Thus, common issues predominate as to Provider Defendants and Powell's liability for the wrongful imprisonment claim.

####     d.    *Comcast Corp. v. Behrend*

Following the close of the briefing period on Plaintiffs' motion for class certification, the United States Supreme Court, on March 27, 2013, issued its opinion in *Comcast Corp. v. Behrend*, - - - U.S. - - -, 133 S. Ct. 1426 (2013). In light of the Court's decision, Provider Defendants were granted leave to file a supplemental brief to address *Comcast*'s impact on Plaintiffs' motion for class certification. (Doc. 1378.)

Provider Defendants contend that *Comcast*: (1) prohibits the Court from certifying a class as to Defendants' liability; (2) supports Provider Defendants' claim that the proof of the existence and cause of each alleged injury must be considered before addressing the damages caused by each alleged injury; and (3) supports Provider Defendants' *Carey v. Piphus* defense. (Doc. 1392.) *Comcast*, as stated by Provider Defendants, holds that "a district court may not certify a class unless damages are measurable on a class-wide basis." (*Id*. at 1.)

In *Comcast*, the respondents, the plaintiffs in the district court, subscribed to Comcast's cable-television services. *See Comcast*, 133 S. Ct. at 1430. The respondents claimed that the petitioners, Comcast Corporation and its subsidiaries, engaged in an anti-competitive clustering strategy in the Philadelphia Market Area "by acquiring competitor cable providers in the region and swapping their own systems outside the region for competitor systems located in the region." *Id*. As a result of this strategy, the petitioners' share of subscribers in the region increased from 23.9 percent in 1998 to 69.5 percent in 2007. *Id*. The clustering scheme, claimed the respondents, eliminated competition and kept prices above competitive levels. *See id*.

The respondents sought to certify a class of all Comcast cable customers in the Philadelphia cluster during the class period pursuant to Rule 23(b)(3). *See id*. To satisfy the predominance requirement, the district court held that the respondents had to show that the "antitrust impact" was "'capable of proof at trial through evidence that was common to the class rather than individual to its members'" and that the "damages resulting from that injury were measurable on a 'class-wide basis through' use of a 'common methodology.'"

*Id*. (quoting *Behrend v. Comcast Corp*., 264 F.R.D. 150, 154 (E.D. Pa. 2010)).[11]   The respondents proposed four theories of antitrust impact; however, the district court accepted only the "overbuilder" theory as capable of classwide proof, and the respondents' proof of antitrust impact was limited to that theory. *See id*. at 1431(citing 264 F.R.D. at 165, 174, 178, 181).   The district court also found that the damages resulting from this theory could be calculated on a classwide basis. *See id*.   The regression model relied on by the respondents' expert, however, did not isolate damages resulting from the overbuilder theory from the other three theories of antitrust impact that were not susceptible to proof on a classwide basis. *See id*.   Nevertheless, the district court certified the class. *See id*.

A divided panel of the Third Circuit affirmed. *See id*.   On appeal, the petitioners argued that the class was improperly certified because the regression model, among other shortcomings, failed to attribute damages solely to the overbuilder theory, the only antitrust impact theory remaining in the case. *See id*.   The Third Circuit did not consider the argument because "such an 'attack on the merits of the methodology had no place in the class certification inquiry.'" *Id*. (quoting *Behrend v. Comcast Corp.*, 655 F.3d 182, 207 (3d Cir. 2011)).

The Supreme Court granted certiorari to consider whether certification was appropriate under Rule 23(b)(3).   The question presented was: "Whether a district court may certify a class action without resolving whether the plaintiff class had introduced admissible evidence, including expert testimony, to show that the case is susceptible to awarding damages on a class-wide basis." *Id*. at 1431 n.4.   Despite the respondents' claims that the petitioners forfeited their ability to answer this question in the negative because the petitioners did not object to the admission of the expert's testimony in the district court, the Supreme Court concluded that this forfeit only made it impossible for the petitioners to argue that the expert's testimony was not admissible evidence. *Id*.   However, the forfeit did "not make it impossible for [the petitioners] to argue that the evidence failed 'to show that

---

[11]     This holding was not contested by the parties before the Supreme Court.

the case is susceptible to awarding damages on a class-wide basis'" because the petitioners had "argued below . . . that certification was improper because respondents had failed to establish that damages could be measured on a classwide basis. That is the question we address here." *Id*.

The Supreme Court held that the class action was improperly certified under Rule 23(b)(3). *See id*. at 1432. The Court reasoned that the Third Circuit's failure to consider arguments against the respondents' damages model ran afoul of Supreme Court precedent. *See id*. at 1432-33. And, applying the proper legal standard, the Court found it clear that the "respondents' model falls far short of establishing that damages are capable of measurements on a classwide basis. Without presenting another methodology, respondents cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id*. In reaching this conclusion, the Court "start[ed] with an unremarkable premise. If respondents prevail on their claims, they would be entitled only to damages resulting from reduced overbuilder competition, since that is the only theory of antitrust impact accepted for class-action treatment by the District Court." *Id*. As a result, a model serving "as evidence of damages in this class action must measure only those damages attributable to that theory." *Id*. "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id*. Thus, the Court concluded that the district court and Third Circuit erred by failing to translate "'the legal theory of the harmful event into an analysis of the economic impact of that event.'" *Id*. at 1435 (quoting Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011)).

In dissent, Justices Ginsburg and Breyer, joined by Justices Sotomayor and Kagan, emphasized that the majority opinion "breaks no new ground on the standard for certifying a class action under Federal Rule of Civil Procedure 23(b)(3)." *Id*. at 1435 (Ginsburg, J. and Breyer, J., dissenting). In particular, the dissenting Justices noted that "when adjudications of questions of liability common to the class will achieve economies of time and expense,

the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Id*. at 1437 (citing Advisory Committee's 1966 Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C. App. p. 141). This, as set forth by the dissent, is consistent with the Federal Rules of Civil Procedure which permit a class to "be certified for liability only, leaving individual damages calculations to subsequent proceedings." *Id*. at 1437 n.*. Accordingly, the Court's ruling is "good for this day and case only," as the "black letter rule" remains that a class may be certified under Rule 23(b)(3) "when liability questions common to the class predominate over damages questions unique to class members." *Id*. at 1437.

Based on the Supreme Court's reasoning, Provider Defendants insist that a liability only class cannot be certified in this case. I disagree.

First, the *Comcast* Court's analysis followed from an uncontested holding of the district court: satisfaction of predominance under Rule 23(b)(3) required the respondents to show that the damages resulting from the alleged antitrust injury were measurable on a classwide basis through the use of a common methodology. *See Comcast*, 133 S. Ct. at 1430. Second, *Comcast* involved a request for certification of the entire case, including both liability and damages. Here, however, Plaintiffs have only sought certification of Classes for a liability determination under Rule 23(c)(4), a subsection of Rule 23 that was not at issue in *Comcast* or even mentioned in the majority opinion. Consequently, *Comcast*'s discussion of the defectiveness of the respondents' damages model when compared to the theories of antitrust impact susceptible to classwide proof does not impact a case such as this where classwide resolution is sought only with respect to liability. Based on the differences in the requests for certification in this case when compared to *Comcast*, I am hesitant to interpret *Comcast* in the manner suggested by Provider Defendants. (Doc. 1392, 4 ("*Comcast* teaches that the Supreme Court will . . . deny class certification in any case in which plaintiffs cannot establish that damages are capable of measurement on a class-wide basis.").) Rather, in the absence of authority to the contrary, I am not inclined to extend *Comcast* beyond its facts and holding. Thus, *Comcast* does not foreclose a district court from certifying a liability only class under Rule 23(c)(4), and Plaintiffs have

30

satisfied the predominance requirement of Rule 23(b)(3).

### 2. Superiority

According to Rule 23(b)(3), the considerations relevant to the superiority inquiry include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Specifically, the superiority requirement asks a trial court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008) (quoting *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d Cir.1996)).

Here, considering the interest of putative members of the Classes in individually controlling the actions, and balancing the merits of the class action device with respect to efficiency and fairness with individual prosecutions, the interests of the putative members of the proposed Classes weigh in favor of certification because the costs of prosecution and the potentially numerous amount of class members suggest that a class action is the superior method of adjudication. Significantly, some class members have relatively small claims and lack incentive to undertake the burden of litigation. "Addressing the rights of those who would not otherwise be appropriately incentivized to bring their own singular claims was precisely the aim of the Advisory Committee in promulgating Rule 23(b)(3)." *Logory*, 277 F.R.D. at 146 (citing *Amchem*, 521 U.S. at 617, 117 S. Ct. 2231). And, as Plaintiffs aptly note, the instant litigation is premised on claims by juveniles relating to the denial of their constitutional rights during the course of their adjudication proceedings. As a result of their experiences during these proceedings, many class members harbor a distrust of the judicial system, rendering it unlikely that they will seek redress individually. Thus, allowing "this to proceed as a class action would not be removing claims from the hands of the class members, but would instead afford them an opportunity to pursue them."

*Logory*, 227 F.R.D. at 146. The presence of numerous common questions of law and fact as to class members' claims also supports class treatment as it will promote efficiency and preserve judicial resources. Lastly, the Court envisions no practical difficulties in managing this class action. The superiority requirement of Rule 23(b)(3) is therefore satisfied.

### 3. Rule 23(c)(4)

In addition to those arguments addressed previously, Provider Defendants also contend that certification of a liability class under Rule 23(c)(4) is improper in this case because there are too many uncommon issues about injuries, the damages jury would be required to revisit the fact of injury on an individual basis, Class Plaintiffs' case-in-chief requires proof that Ciavarella erred in each Juvenile's case, and that Defendants have a right to prove that the Juveniles would have been detained, adjudicated, and sentenced as they actually were after having been afforded their constitutional rights.

The majority of these arguments have already been rejected by the Court and need not be addressed again. *See Wallace*, 2012 WL 5379153, at *1 (individualized issues related to each Juvenile's family, social, education, psychological and court histories not relevant to issues of liability for class certification).

Next, Provider Defendants opine that certification of a Rule 23(c)(4) class in this case fails to satisfy many of the relevant factors set forth by the Third Circuit in *Gates*, 655 F.3d at 273, and *Hohider*, 574 F.3d at 201. However, as discussed in detail above, certification of specific issues relevant to Defendants' liability on Plaintiffs' § 1983, RICO, and wrongful imprisonment claims is particularly appropriate in this case. Certification is consistent with a number of the ALI's Principles of Aggregate Litigation: the substantive law in this case does not require a person-by-person inquiry to determine classwide liability; a single body of law applies to the claims; certification will provide an effective method to resolve these proceedings; certification of a liability class will be significantly more efficient than resolving each of these cases individually; individual proceedings will have no impact on the class proceeding; and the evidence presented in support of liability will be different than that needed to establish individualized damage claims. *Gates*, 655 F.3d 255 at 273 (citing

Principles of Law of Aggregate Litigation §§ 2.02-05 (2010); *Hohider*, 574 F.3d at 201).

With regard to the last factor, Provider Defendants' contention that the claims of particular damages asserted by Juvenile Plaintiffs would have to be tried twice- once as part of the liability determination and again as part of the damages determination- misconstrues the proof and evidence relevant to these separate determinations.  As noted by Class Plaintiffs, "the type and amount of damages will not be a part of the liability determination under the substantive law of Class Plaintiffs' claims." (Doc. 1367, 8.)  Instead, individualized damages will be addressed only once (if Defendants are found liable).  Moreover, Provider Defendants improperly conflate "injury" and "damages," as they claim that "proof of the cause and fact of Class Plaintiffs' emotional, medical, educational, employment and monetary injuries, and the defenses thereto, require assessments too individualized and divergent to warrant class certification under Rule 23(c)(4)." (Doc. 1345, 14.)  These individualized assessments impact on the computation of damages, not whether each Plaintiff was in fact injured and denied their rights as a result of Defendants' conduct.

Lastly, to the extent that Provider Defendants suggest that Plaintiffs have failed to provide sufficient specificity as to how these actions will proceed if they are found liable, "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).  These solutions include bifurcating liability and damage trials with different juries or "decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages." *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 249 (W.D. Pa. 2008) (quoting *Carnegie*, 376 F.3d at 661).  Thus, once the question of liability is answered concerning Defendants' conduct, the Court may consider whether to decertify the Classes or take other appropriate measures.

### III. Conclusion

For the above stated reasons, Plaintiffs' motion for class certification will be granted, and the Classes and Subclasses will be certified for classwide determination of Defendants' liability.

An appropriate order follows.

 May 14, 2013  
Date

/s/ A. Richard Caputo  
A. Richard Caputo  
United States District Judge