**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FLORENCE WALLACE, et al., | |
| Plaintiffs, | NO. 3:09-cv-286 |
| v. | |
| ROBERT J. POWELL, et al., | (JUDGE CAPUTO) |
| Defendants. | |

**************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM CONWAY, et al., | |
| Plaintiffs, | NO. 3:09-cv-0291 |
| v. | |
| MICHAEL T. CONAHAN, et al., | (JUDGE CAPUTO) |
| Defendants. | |

**************************************************************************

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| H.T., et al., | |
| Plaintiffs, | NO. 3:09-cv-0357 |
| v. | (JUDGE CAPUTO) |
| MARK A. CIAVARELLA, JR., et al., | |
| Defendants. | |

**************************************************************************

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMANTHA HUMANIK, | |
| Plaintiff, | CIVIL ACTION NO. 3:09-cv-0630 |
| v. | |
| MARK A. CIAVARELLA, JR., et al., | (JUDGE CAPUTO) |
| Defendants. | |

*********************************************************************

## MEMORANDUM

Presently before me is Plaintiffs' Motion to Interpret Powell Defendants' Master Stipulation and Agreement of Settlement. (*See* Doc. 1752, *generally*). Specifically, Plaintiffs seek an order interpreting the terms of the settlement agreement between Plaintiffs and Powell Defendants,[1] including, *inter alia*, a determination of the amount of time necessary for the Net Worth Professional to complete his evaluation of Powell's net worth. For the reasons that follow, the motion will be granted.

## I. Relevant Background

Plaintiffs' motion is predicated upon the Master Stipulation and Agreement of Settlement ("MSA") entered into by Plaintiffs and Powell Defendants on March 10, 2015, (*see* Doc. 1676-1, *generally*), and approved by the Court on December 21, 2015. (*See* Doc. 1716, *generally*). Under the MSA, Powell Defendants were required to make an initial payment totaling $4.75 million into the designated Escrow Account and then, based upon Powell's net worth, potentially a second payment not to exceed $2.75 million. (*See* Doc. 1676-1, ¶¶ 1(uu), 5(a)-(c)). This second payment is to be made only

---

[1] "Powell Defendants" are Robert Powell ("Powell"), Vision Holdings, LLC, and the Powell Law Group, P.C.

if Powell's net worth is found to exceed $4.75 million as of the Net Worth Determination Date. (*See id*. at ¶ 6(c)). Within thirty (30) days after the Net Worth Determination Date, Powell Defendants were required to notify Plaintiffs of their estimation of Mr. Powell's net worth. (*See id*. at ¶ 7). Within ten (10) business days of receiving this figure, Plaintiffs were permitted to reject this estimation, in which case the parties were required to jointly engage the Net Worth Professional (the "NWP"), identified in the MSA as Thomas Pratt, CPA. (*See id*.; *see also id*. at ¶ 1(z)). In this scenario, the NWP determines Powell's net worth in accordance with the formula and process specified in paragraph 9(a) of the MSA. (*See id*. at ¶ 9). The MSA requires Powell Defendants to provide the NWP with "all documentation that the [NWP] may reasonably request for the purpose of determining Powell's net worth as of the Net Worth Determination Date[.]" (*Id.* ¶ 9(c)).

On January 20, 2017, counsel for Powell Defendants provided Plaintiffs with their estimation of Powell's net worth. (*See* Doc. 1744, Ex. C). Plaintiffs rejected this estimation that same day, triggering the retention of the NWP to determine Powell's net worth. (*See id*. at Ex. D). On February 7, 2017, the parties executed the NWP's engagement agreement. (*See id*. at Ex. F).

On February 17, 2017, the NWP sent Powell Defendants' counsel the First Information Request. (*See id*. at Ex. G). A week later, the NWP requested additional information from Powell Defendants' counsel that he deemed relevant to determining Powell's net worth. (*See id*. at Ex. J). Thereafter, the NWP sent an updated First Information Request on March 15, 2017. (*See id*. at Ex. K). This request contained thirty-one (31) itemized requests for documents and materials. (*See id*.).

On August 15, 2017, I denied without prejudice Plaintiffs' motion to enforce settlement and for sanctions against Powell Defendants. (*See* Docs. 1748-1749, *generally*). Therein, I noted that Powell Defendants represented that they would produce all documents requested by the NWP before the end of May 2017. (*See* Doc. 1748, 5-6). Given the representation by counsel, I denied without prejudice Plaintiffs'

request that Powell Defendants be directed to respond to the NWP's information request. (*See id*.). I also denied without prejudice Plaintiffs' motion for sanctions because Plaintiffs failed to present any convincing grounds supporting the imposition of sanctions for an approximate ten (10) week delay in producing documents responsive to the request by the NWP. (*See id*. at 6).

On August 10, 2017, Plaintiffs requested from the NWP an update of the status of his analysis. (*See* Doc. 1753, Ex. D). The NWP in response noted that the parties "have disagreed about the disclosure of our work between the parties" and suggested that the dispute be resolved by the parties. (*See id*.). In view of the NWP's response, Plaintiffs' counsel contacted Powell Defendants' counsel seeking an agreement allowing the NWP to list the documents he was provided (without revealing the contents of the documents), to identify by name only any outstanding documents requested but not produced by Powell Defendants (if any), and to provide a status update of his analysis. (*See id*.). Counsel for Powell Defendants responded to Plaintiffs that the terms of the MSA apply and the NWP will perform his duties outlined therein and in the retainer agreement. (*See id*.).

On September 8, 2017, Plaintiffs' counsel again contacted Powell Defendants' counsel about whether he would be "willing to provide Plaintiffs with information identifying what information and documentation has been provided to Mr. Pratt, what additional information Mr. Pratt has requested and when these requests were made. To be clear, Plaintiffs are not seeking to see any of the materials that were provided to Mr. Pratt." (*See id*. at Ex. F). Counsel for Powell Defendants responded by requesting Plaintiffs' counsel to provide "citations to the MSA or other authority supporting [the] request." (*Id*. at Ex. G).

On September 13, 2017, Plaintiffs' counsel wrote to Powell Defendants' counsel again regarding the information produced to the NWP. (*See id*. at Ex. H). Powell Defendants' counsel in response reiterated his position that Powell was in compliance with the MSA and if he was not, the NWP's report would reflect that fact. (*See id*. at

4

Ex. I).

Based on the foregoing, Plaintiffs filed the instant motion to interpret the MSA on September 29, 2017. (*See* Doc. 1752, *generally*). Plaintiffs seek an order interpreting the terms of the MSA, including whether Powell Defendants have the ability under the agreement to prohibit the NWP from providing an update on the status of his evaluation. (*See* Doc. 1753, 1). Plaintiffs also request an order to determine the amount of time necessary for the NWP to complete his evaluation. (*See id*.). Plaintiffs acknowledge that although the MSA is silent as to when the NWP must issue his report on Powell's net worth, the MSA provides that this Court retained jurisdiction to interpret the terms of the agreement. (*See id*. at 2, 9). Thus, Plaintiffs argue that an order should be issued interpreting the MSA to ensure the fair and orderly administration of the settlement. (*See id*. at 13).

In opposition, Powell Defendants argue that nothing in the MSA permits the disclosure of the documents relied on by the NWP in performing his analysis. (*See* Doc. 1754, 1). Additionally, Powell Defendants emphasize that Paragraph 9(a) of the MSA "contains no time limitations or deadlines for the Net Worth Professional to complete this analysis." (*Id*. at 5 (emphasis omitted)). Powell Defendants highlight that the MSA was a heavily negotiated agreement involving numerous lawyers negotiating the MSA's terms and conditions. (*See id*. at 9). Nonetheless, Powell Defendants note that the MSA "does not provide any date or deadline for the completion of the Net Worth Report" and "[t]here is no such need" "to add terms related to time lines or deadlines for preparation of the Net Worth Determination." (*Id*.). Powell Defendants therefore conclude that the motion to interpret the MSA should be denied and to discourage such filings in the future, Plaintiffs should be directed to reimburse Powell Defendants for the costs and fees incurred in preparing the response to the instant motion. (*See id*. at 11).

Plaintiffs filed a timely reply brief, arguing that the Court should determine whether Powell Defendants are in compliance with the MSA and whether the NWP is

5

permitted to provide a status update regarding his analysis. (*See* Doc. 1755, *generally*). Plaintiffs' motion to interpret the MSA has now been fully briefed and is ripe for disposition.

## II. Discussion

Settlement agreements are governed by the ordinary principles of contract law. *See In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000). It is not contested by the parties that the MSA contains no contractually agreed upon deadline by when the NWP must issue his report. Nonetheless, "it is a well-settled principle that where no time for performance is provided in the written agreement the law implies it shall be done within a reasonable time depending upon the nature of the business." *Walther & Cie v. U.S. Fidelity & Guaranty Co.*, 397 F. Supp. 937, 943 (M.D. Pa. 1975) (citations omitted); *see also Everest Stables, Inc. v. Jester*, No. 14-1631, 2016 WL 892359, at *4 (M.D. Pa. Mar. 9, 2016) ("when a contract does not specify the time for performance, Pennsylvania courts routinely 'require that the obligation be performed within a reasonable time.'"); *Hodges v. Penn. Millers Mut. Ins. Co.*, 673 A.2d 973, 974 (Pa. Super. Ct. 1996) (holding that when no time is specified for performance of a contractual obligation, the law implies that the obligation be performed within a "reasonable time."). "A 'reasonable time' is one which 'comports with community standards of fairness and policy.'" *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 643 F. Supp. 2d 675, 687 (E.D. Pa. 2009) (quoting Restatement Contracts § 204).

Here, as stated, the MSA is silent as to the deadline by which the NWP must complete his analysis of Powell's net worth and issue his final report. (*See* Doc. 1676-1, ¶ 9). As such, the net worth calculation must be completed within a reasonable time. Given that the parties executed the engagement agreement with the NWP on or about February 7, 2017, I find that one (1) year is a reasonable time for the NWP to ascertain Powell's net worth and advise the parties of same. Therefore, in accordance with the MSA, the NWP shall issue his final report on or before February 6, 2018.

### III. Conclusion

For the above stated reasons, Plaintiffs' motion to interpret settlement agreement will be granted in part, and the Net Worth Professional's evaluation of Robert Powell's net worth shall be completed on or before February 6, 2018.

An appropriate order follows.

December 7, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge